WHEREFORE, Petitioner, Settlers respectfully asks this Court to grant Settlers declaratory relief by declaring, *inter alia*, that the following assets are not property of the First National Life estate, but, instead, are subject to constructive trusts and shall be turned over to Settlers:

(1)     The $29,035,500.00 that is the subject of United States v. $29,035,500.00, Civil No. 3:01CV1515(EBB).

(2)     The $11,014,165.20 that is the subject of United States v. $11,014,165.20, Civil No. 3:99CV02589(EBB).

## COUNT II

### DECLARATORY JUDGMENT OF
### CONSTRUCTIVE TRUST FOR PEOPLES AND VETERANS

79.     Peoples and Veterans incorporate each of the preceding paragraphs of this Petition as if fully set forth herein.

80.     Peoples and Veterans are entitled to the return of their Reserve Fund.

81.     Peoples and Veterans entered into the Peoples and Veterans Agreement and transferred the Peoples and Veterans Reserve Fund to First National Life in reliance on First National Life's misrepresentations that it was a solvent and prosperous company and that any funds transferred to First National Life under the Peoples and Veterans Agreement would be used to administer the book of business and pay policyholder claims.

82.     First National Life has received money through its fraudulent conduct that in good conscience should be returned to Peoples and Veterans. First National Life should not be allowed to enrich itself at the expense of Peoples and Veterans.

-21-

83.    Property that is obtained by fraud is subject to a constructive trust and remains the property of the original owner. Both the Peoples and Veterans Reserve Fund were taken from Peoples and Veterans through the fraudulent scheme of First National Life. These assets belong to Peoples and Veterans and are not part of the First National Life estate.

84.    Furthermore, the Liquidator is seeking through the various forfeiture proceedings in other courts to bring property that rightfully belongs to Peoples and Veterans into the First National Life estate.

85.    The Peoples and Veterans Reserve Fund was obtained by First National Life by fraud and First National Life should not, in good conscience, hold the Reserve Fund.

86.    A constructive trust confers on the true owners, Peoples and Veterans, an interest in the property that is superior to the Liquidator, who stands in the shoes of First National Life who obtained the Reserve Fund by fraud. Peoples and Veterans are entitled to reclaim the Reserve Fund.

87.    Furthermore, the Peoples and Veterans Agreements should be rescinded *ab initio* because Peoples and Veterans were fraudulently induced into entering the Agreements. First National Life intentionally defrauded Peoples and Veterans out of the Reserve Fund. First National Life never had any intention of complying with the terms of the Agreements. The Agreements were never fully executed. Moreover, the Liquidator has effectively rescinded the Agreements by not accepting and paying policyholder claims under the ceded insurance policies. Rescission is an appropriate remedy for fraud.

88.    As set forth above, Peoples and Veterans can trace substantial portions of the Reserve Fund to the assets currently subject to forfeiture proceedings in Connecticut.

-22-

WHEREFORE, Petitioners, Peoples Benefit Life Insurance Company and Veterans Life Insurance Company, respectfully asks this Court to grant Peoples and Veterans declaratory relief by declaring, *inter alia*, that the following assets are not property of the First National Life estate, but, instead, are subject to constructive trusts and shall be turned over to Peoples and Veterans:

(1)   $3,241,500.00 of the assets that are the subject of United States v. $29,035,500.00, Civil No. 3:01CV1515(EBB).

(2)   The $11,014,165.20 that is the subject of United States v. $11,014,165.20, Civil No. 3:99CV02589(EBB).

## COUNT III

## RECISSION OF THE SETTLERS AGREEMENT

89.   Settlers incorporates each of the preceding paragraphs of this Petition as if fully set forth herein.

90.   The Settlers Agreement was obtained by fraud and can be rescinded by Settlers. A constructive trust should be imposed against First National Life who received the Settlers Reserve Fund as a result of the fraud. Title to the Settlers Reserve Fund did not pass to First National Life. Accordingly, any portions or proceeds of the Settlers Reserve Fund held or acquired by the Liquidator are held for the benefit of Settlers and are not property of the First National Life estate.

91.   A party that is induced into entering a contract through a fraudulent or material misrepresentation by another party is entitled to void the contract. Here, there is no dispute that Settlers was induced to enter into the Agreement based on the fraudulent misrepresentations of some of First National Life's officers. Therefore, Settlers is entitled to void the Agreement. Furthermore, the Liquidator has not made any attempt to perform under the terms of the Settlers Agreement, has

-23-

not given value in exchange for the Agreement, and has not relied on any aspect of the Agreement to its detriment. Accordingly, the Agreement between Settlers and First National Life is a nullity. No accounting is due from Settlers to First National Life. The ownership of the Reserve Fund was never transferred from Settlers to First National Life, and First National Life has never had the slightest intent, nor made the slightest effort, to treat the Agreement as real or in effect. The Settlers Agreement should therefore be declared void *ab initio* and rescinded, and the Reserve Fund should be returned in its entirety to Settlers.

92.    As set forth above, Settlers can trace the Reserve Fund to the assets currently subject to forfeiture proceedings in Connecticut.

WHEREFORE, Petitioner, Settlers respectfully asks this Court to grant Settlers declaratory relief by rescinding the Settlers Agreement and declaring, *inter alia*, that the following assets are not property of the First National Life estate, but, instead, are subject to constructive trusts and shall be turned over to Settlers:

(1)    The $29,035,500.00 that is the subject of United States v. $29,035,500.00, Civil No. 3:01CV1515(EBB).

(2)    The $11,014,165.20 that is the subject of United States v. $11,014,165.20, Civil No. 3:99CV02589(EBB).

## COUNT IV

## RESCISSION OF THE PEOPLES AND VETERANS AGREEMENT

93.    Peoples and Veterans incorporate each of the preceding paragraphs of this Petition as if fully set forth herein.

-24-

94.   The Peoples and Veterans Agreements were obtained by fraud and can be rescinded by Peoples and Veterans.   A constructive trust should be imposed against First National Life who received the Peoples and Veterans Reserve Fund as a result of the fraud.   Title to the Peoples and Veterans Reserve Fund did not pass to First National Life.   Accordingly, any portions or proceeds of the Peoples and Veterans Reserve Fund held or acquired by the Liquidator are held for the benefit of Peoples and Veterans and are not property of the First National Life estate.

95.   A party that is induced into entering a contract through a fraudulent or material misrepresentation by another party is entitled to void the contract.   Here, there is no dispute that Peoples and Veterans were induced to enter into the Agreements based on the fraudulent misrepresentations of some of First National Life's officers.   Therefore, Peoples and Veterans are entitled to void the Agreements.   Furthermore, the Liquidator has not made any attempt to perform under the terms of the Agreements, has not given value in exchange for the Agreements, and has not relied on any aspect of the Agreements to its detriment.   Accordingly, the Agreements between Peoples and Veterans and First National Life are a nullity.   No accounting is due from Peoples and Veterans to First National Life.   The ownership of the Reserve Fund was never transferred from Peoples and Veterans to First National Life, and First National Life has never had the slightest intent, nor made the slightest effort, to treat the Agreements as real or in effect.   The Agreements should therefore be declared void *ab initio* and rescinded, and the Reserve Fund should be returned in their entirety to Peoples and Veterans.

96.   As set forth above, Peoples and Veterans can trace the Reserve Fund to the assets currently subject to forfeiture proceedings in Connecticut.

-25-

WHEREFORE, Petitioners, Peoples Benefit Life Insurance Company and Veterans Life Insurance Company, respectfully asks this Court to grant Peoples and Veterans declaratory relief by rescinding the Peoples and Veterans Agreements and declaring, *inter alia*, that the following assets are not property of the First National Life estate, but, instead, are subject to constructive trusts and shall be turned over to Peoples and Veterans:

(1)  $3,241,500.00 of the assets that are the subject of <u>United States v. $29,035,500.00</u>, Civil No. 3:01CV1515(EBB).

(2)  The $11,014,165.20 that is the subject of <u>United States v. $11,014,165.20</u>, Civil No. 3:99CV02589(EBB).

## COUNT V

### DECLARATORY JUDGMENT THAT SETTLERS IS A SECURED CREDITOR

97.  Settlers incorporates each of the preceding paragraphs of this Petition as if fully set forth herein.

98.  In the alternative, Settlers has a secured claim to the Reserve Fund. The Mississippi Liquidation and Rehabilitation Act defines a "secured claim" as "any claim secured by mortgage, trust deed, pledge, deposit as security, escrow, or otherwise." Miss. Code Ann. § 83-24-7(p). The "or otherwise" language encompasses the common law and equitable concept of constructive trusts. Money taken by fraud therefore gives rise to a secured claim to the funds. Therefore, Settlers has a secured claim to the Reserve Fund.

WHEREFORE, Petitioner, Settlers, respectfully asks this Court to grant Settlers declaratory relief by declaring that Settlers is a secured creditor in the amount of the Reserve Fund, that its claims

-26-

should be re-classified accordingly and that, *inter alia*, the following assets are not property of the First National Life estate, but, instead, are subject to constructive trusts and shall be turned over to Settlers:

    (1)  The $29,035,500.00 that is the subject of United States v. $29,035,500.00, Civil No. 3:01CV1515(EBB).

    (2)  The $11,014,165.20 that is the subject of United States v. $11,014,165.20, Civil No. 3:99CV02589(EBB).

## COUNT VI

### DECLARATORY JUDGMENT THAT
### PEOPLES AND VETERANS ARE SECURED CREDITORS

    99.  Peoples and Veterans incorporate each of the preceding paragraphs of this Petition as if fully set forth herein.

    100.    In the alternative, Peoples and Veterans have a secured claim to the Reserve Fund. The Mississippi Liquidation and Rehabilitation Act defines a "secured claim" as "any claim secured by mortgage, trust deed, pledge, deposit as security, escrow, or otherwise." Miss. Code Ann. § 83-24-7(p). The "or otherwise" language encompasses the common law and equitable concept of constructive trusts. Money taken by fraud therefore gives rise to a secured claim to the funds. Therefore, Peoples and Veterans have secured claims to the Reserve Fund.

    WHEREFORE, Petitioners, Peoples Benefit Life Insurance Company and Veterans Life Insurance Company, respectfully asks this Court to grant Peoples and Veterans are secured creditors in the amount of the Reserve Fund, that their claims should be re-classified accordingly and that, *inter alia*, the following assets are not property of the First National Life estate, but, instead, are subject to constructive trusts and shall be turned over to Peoples and Veterans:

-27-

(1) $3,241,500.00 of the assets that are the subject of <u>United States v. $29,035,500.00</u>, Civil No. 3:01CV1515(EBB).

(2) The $11,014,165.20 that is the subject of <u>United States v. $11,014,165.20</u>, Civil No. 3:99CV02589(EBB).

**DATED** this the 11th day of March, 2002.

Respectfully submitted,

PEOPLES BENEFIT LIFE INSURANCE COMPANY, VETERANS LIFE INSURANCE COMPANY, and HUFF-COOK, INC., IN THE RIGHT OF AND ON BEHALF OF SETTLERS LIFE INSURANCE COMPANY, the Petitioners

By: _Michael V.J_____
    One of their Attorneys

OF COUNSEL:

Alex A. Alston, Jr., MSB #1543
Richard L. Jones, MSB #3229
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
248 East Capitol Street, 1400 Trustmark Bank Bldg.
P. O. Drawer 119
Jackson, Mississippi 39205
Telephone:  (601) 948-3101
Facsimile:  (601) 960-6902

Forrest B. Lammiman
Timothy M. Maggio
Brian I. Hays
LORD, BISSELL & BROOK
Chicago, Illinois 60603
Telephone:  (312) 443-0700
Facsimile:  (312) 443-0336

-28-

## CERTIFICATE OF SERVICE

I, Richard L. Jones, do hereby certify that on this the 11th day of March, 2002, I caused a true

and correct copy of the foregoing document to be forwarded via United States mail, postage prepaid,

to the following:

Charles G. Copeland, Esq.
COPELAND COOK TAYLOR & BUSH
P. O. Box 6020
Ridgeland, MS  39158

Richard L. Jones

# REINSURANCE AGREEMENT
## BETWEEN
## SETTLERS LIFE INSURANCE COMPANY
### AND
## FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA

**SETTLERS LIFE INSURANCE COMPANY**, an Insurer organized and operating under the laws of the state of Virginia (hereinafter referred to as "Ceder"), and **FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA**, an Insurer organized and operating under the laws of the state of Mississippi (hereinafter referred to as the "Reinsurer"), enter into this Reinsurance Agreement (hereinafter referred to as the "Agreement") and mutually agree and covenant as follows:

## ARTICLE I
## DEFINITIONS

As used in this Agreement:

A.  <u>Assumption date(s)</u> shall mean, with respect to any of the Policies, the date on which a particular policy or contract included in the Reinsured Policies is assumed by Reinsurer.

B.  <u>Coinsurance Effective Date</u> shall mean April 1, 1999.

C.  <u>Coinsurance claims</u> shall be equal to the Reinsurer's portion of the death claims incurred after the Coinsurance Effective Date on policies coinsured hereunder.

D.  <u>Coinsurance Surrender Benefits</u> shall be equal to the Reinsurer's portion of the surrender benefits paid after the Coinsurance Effective Date on policies coinsured hereunder.

E.  <u>Monthly Coinsurance Premium</u> shall be equal to the gross premiums collected less premium refunds during the month on the Reinsurer's portion of the policies coinsured hereunder.

F.  <u>Net Policy Reserves</u> means reserves established as of the Coinsurance Effective Date for the Reinsured Policies in an amount identified and defined in Exhibit A. Such Net Policy Reserves shall be computed in accordance with commonly accepted actuarial standards consistently applied and fairly stated in accordance with sound actuarial principles and practices and based on the methodology as approved by the Virginia Bureau of Insurance.

G.  <u>Net Consideration</u> shall be equal to the Net Policy Reserves less the Initial Ceding Commission as defined and identified in Exhibit A.

H.  <u>Reinsured Policies</u> mean only those policies as identified in the attached Exhibit B, including paid up Policies which are in force on the Coinsurance Effective Date. A policy will be deemed to be in force on the Coinsurance Effective Date if the premium thereon has been paid to or beyond the Coinsurance Effective Date or if the premium shall be paid to or beyond the Coinsurance Effective Date within the grace period permitted in the policy and by Ceder's customary practice. If, on the Coinsurance Effective Date, the premium on a policy is unpaid beyond said grace period, it will be deemed not to be in force; except that if the holder of such policy pays the premium and complies with Ceder's usual and customary reinstatement requirements and practices, the policy will be deemed to be in force on the Coinsurance Effective Date. A policy that on the Coinsurance Effective Date is on extended term insurance status or reduced paid up status under a nonforfeiture option shall be deemed to be in force.

1

**EXHIBIT**

**1**

I.    Administration Effective Date shall mean the date on which the Reinsured Policies are administered at the office of the Reinsurer.

J.    Administration Agreement shall mean the agreement entered into between Reinsurer and Ceder which defines the responsibilities of each party for administration of the Reinsured policies during the time period between the Coinsurance Effective Date and the Administration Effective date.

# ARTICLE II
## COINSURANCE OF POLICIES

A.    Generally
      Subject to the terms and conditions of this Agreement, Ceder hereby cedes to Reinsurer and Reinsurer hereby accepts reinsurance as of the Coinsurance Effective Date on a coinsurance basis of 100% of Ceder's obligations, rights and liabilities with respect to the Reinsured Policies.

B.    Amount of Coinsurance
      With respect to each of the Reinsured Policies, the amount of coinsurance hereunder shall be maintained in force without reduction so long as the policy remains in force without reduction. If there is a reduction with respect to a Reinsured Policy, Reinsurer's liability with respect thereto shall be equally reduced. All coinsurance for which Reinsurer is liable hereunder shall be subject to the same rates, terms, conditions, limitations and restrictions as are contained in each Reinsured Policy.

C.    Termination of Coinsurance
      As to any Reinsured Policy which due to objection by the policyholder is not assumed under Article III hereof, the coinsurance under this Article II shall remain in full force and effect until the liabilities under the Reinsured Policies have been discharged in full. On the assumption of a Reinsured Policy previously coinsured, coinsurance of such policy shall automatically terminate.

D.    Settlement
      A monthly coinsurance settlement shall be made only as long as policies are coinsured under Article II.  Within 20 days after the end of each month, Ceder will pay Reinsurer the Monthly coinsurance Premium for the month.

      Within 20 days after the end of each month, Reinsurer will pay Ceder the sum of:
      1.    Coinsurance Claims;
      2.    Coinsurance Surrender Benefits; and
      3.    Premium Taxes.

Payments, as required by this Article, shall be netted.  An additional settlement shall be made as required and as follows:  For any death claim paid after the Coinsurance Effective Date and incurred prior to the Coinsurance Effective Date, Ceder shall pay such claim and Reinsurer shall reimburse Ceder the Net Policy Reserve on the Policy for which the claim is being paid, calculated as of the Coinsurance Effective Date.

2

E.  Coinsurance Reporting

While any policy is in force under coinsurance, the party administering the policy shall provide the other party monthly settlement reports. Quarterly, a report known as the Periodic Coinsurance Report shall be furnished detailing the reserves and such other Items as are required to compute the Reserve Liability and any other amount required for the functioning of this agreement and for statutory financial reporting.

# ARTICLE III
## ASSUMPTION OF POLICIES

A.  Generally

Subject to the terms and conditions of this Agreement, Ceder hereby agrees to assign, cede, transfer, sell, bargain and convey unto Reinsurer by way of Assumption Reinsurance all of its obligations, rights, privileges and liabilities under the Reinsured Policies, and Reinsurer hereby agrees to assume all of the obligations, rights, privileges and liabilities of Ceder with respect to the Reinsured Policies under the terms of each Reinsured Policy. It is the intent of the parties to accomplish, as of the Assumption Date(s), a full and complete transfer of all rights and liabilities under the Reinsured Policies to the end that Reinsurer, as transferee, in all respects and conditions shall directly assume all of Ceder's risks and liabilities and shall succeed Ceder as the insurer under the terms and provisions of each of the Reinsured Policies as though Reinsurer had originally issued the Reinsured Policies. In connection with such assumption, the Reinsurer shall be entitled to any and all defenses, offsets, counterclaims, and cross actions to which Ceder would otherwise be entitled and other legal actions or remedies, whether the same be known to exist or hereafter discovered. Reinsurer agrees to file the necessary documents to accomplish the assumption of the business reinsured hereunder with the appropriate regulatory agency within ninety (90) days of the Coinsurance Effective Date. Further, Reinsurer and Ceder agree to use their best efforts to obtain regulatory approval.

B.  Assumption Subject to Regulatory Approval

This Agreement and any assumption of policies pursuant to this Agreement are subject to and contingent upon receipt by Ceder and Reinsurer of any required regulatory approvals of the transaction contemplated by this Agreement. After the Coinsurance Effective Date, Reinsurer, at Reinsurer's sole expense, shall make all regulatory filings which each state's insurance authority requires for the assumption reinsurance of such Reinsured Policies by Reinsurer. Reinsurer shall use its best efforts to obtain such regulatory approvals, consents or waivers of this Agreement or the assumption by Reinsurer of any of the Reinsured Policies. Reinsurer agrees that any guaranty fund assessments that remain with Ceder on the Assumption Date that are associated with Reinsured Policies are to be assumed by Reinsurer. Both Ceder and Reinsurer shall assist each other by providing all necessary information and assistance as shall be reasonably requested by the other party for purposes of satisfying all contractual requirements under this Agreement and for satisfying all regulatory requirements in each state. Reinsurer shall have the obligation to assume, unless prohibited by regulation, all those Reinsured Policies identified in Exhibits B and C and still in-force on the Reinsurance effective date. Reinsurer agrees to undertake the responsibility to take all action necessary to accomplish the purposes of this Article III (B) and further agrees that Ceder shall be required to take independent corporate action only when such action by Ceder is necessary as a precondition to proceeding on the Assumption Date as to a particular state. Ceder and Reinsurer hereby agree that the terms and conditions of this agreement may be modified by mutual agreement of the parties, if necessary, to obtain regulatory approvals in the various states having jurisdiction over this Agreement. Should the receipt of a regulatory approval, consent or waiver require or be conditioned upon a modification of the terms and conditions of this Agreement, each party hereto agrees that it will consent to

3

such modification unless it determines in good faith that such modification (i) would conflict with any law, regulation or agreement by which it is bound or (ii) would otherwise materially and adversely affect its interests.

C. <u>Assumption Closing(s)</u>
Each assumption by the Reinsurer of the Reinsured Policies shall take place on an Assumption Date after all necessary requirements for such assumption have been met. However, such Assumption Date must be within 90 days from the date that all necessary requirements for such assumption have been met. Exhibit C of this agreement shall list each state in which the Reinsured Policies have been assumed and the Assumption Date with respect to each state. Reinsurer shall update Exhibit C as needed.

D. <u>Proof of Regulatory Approvals Consents or Waiver</u>
Within 30 days of any Assumption Date contemplated by this Agreement, Reinsurer shall provide notification and evidence that all regulatory approvals, consents or waivers required by this Agreement have been obtained.

# ARTICLE IV
# TRANSFER OF ASSETS

A. Generally
The net consideration due Reinsurer pursuant to this Agreement shall be an amount equal to the Net Policy Reserves held by Ceder for the Reinsured Policies less an Initial Ceding Allowance that shall be due to Ceder. The Ceder's independent actuary firm shall calculate the Net Policy Reserves as of March 31, 1999 and provide Reinsurer sufficient detailed information to review and verify such Net Policy Reserve calculations. The agreed upon total amounts of the Net Policy Reserves to be transferred by Ceder and the Initial Ceding Allowance to be paid Ceder will be clearly stated and identified in Exhibit A. Should the parties through their actuaries be unable to reach an agreement as to the methodology of evaluating the Net Policy Reserves, then this Reinsurance Agreement shall become null and void.

B. ASSETS TO BE TRANSFERRED
Upon reaching an agreement for the Net Consideration (the Net Policy Reserves less the Initial Ceding Allowance) as reflected in the signed Exhibit A, Ceder shall transfer cash or other assets acceptable to Reinsurer equal to the agreed upon consideration. In addition to the net consideration, Ceder shall also pay the Reinsurer interest at 5.5% APR from April 1, 1999 to the date the consideration is paid to Reinsurer. Ceder and Reinsurer agree that the Net Consideration is the agreed upon total value of the transaction and the agreed upon value of net assets to be transferred to Reinsurer.

4

# ARTICLE V
## ASSUMPTION CERTIFICATE

Each policyowner shall be mailed an Assumption Certificate in a form substantially similar to the form attached hereto as Exhibit D or in such other form as may be required by the insurance regulation of the state in which the policyowner resides. If required by the insurance regulatory authority of the state in which the policyowner resides such Assumption Certificate shall contain a 30-day opt out provision allowing any policyowner the right to reject the assumption of such contract as contemplated by this Agreement. The expiration date of the opt out provision shall be thirty-five (35) days from the date of the mailing of the Assumption Certificate. As soon as possible after the Assumption Date(s) and within the time prescribed by applicable Insurance laws, Reinsurer shall mail to the last known address of each policyowner of the Reinsured Policies such Assumption Certificate and Reinsurer shall provide evidence satisfactory to Ceder of proof of such mailing.

# ARTICLE VI
## ADMINISTRATION AGREEMENT

Ceder and Reinsurer shall enter into an Administration Agreement in conjunction with this agreement which defines the responsibilities of each party for administration of the Reinsured policies during the time period between the Coinsurance Effective Date and the Administration Effective date.

# ARTICLE VII
## REPRESENTATIONS AND WARRANTIES OF CEDER

Ceder hereby represents and warrants to the Reinsurer that:

A. <u>Organization, Standing and Power</u>
Ceder is a corporation duly organized, validly existing, and in good standing under the laws of the state of Virginia and is duly licensed, qualified or admitted to do business and is in good standing in all jurisdictions in which the ownership, use or leasing of its assets or properties or the conduct or nature of its business makes such licensing, qualification or admission necessary. Ceder has full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

B. <u>Authority</u>
The execution, delivery and compliance with the terms of this Agreement by Ceder and performance by Ceder of its obligations hereunder has been duly and validly authorized by all necessary corporate action on the part of Ceder and this Agreement constitutes a valid and binding obligation of Reinsurer which is enforceable against Reinsurer in accordance with its terms.

C. <u>Effect of Agreement</u>
The execution and delivery of this Agreement by Ceder does not and the performance by Ceder of its obligations under this Agreement will not:
   (1)  violate any existing term or provision of any law or any writ, judgment, decree, injunction or similar order applicable to Ceder;
   (2)  conflict with or result in a violation or breach of, or constitute (with or without notice or lapse of time or both) a default under, any of the terms, conditions, or provisions of the articles or certificate of incorporation or bylaws of Ceder;

5

(3) result in the creation or imposition of any lien, charge, or encumbrance upon Ceder or any of its assets or properties that individually or in the aggregate with any other liens, charges, or encumbrances has or may reasonably be expected to have a material adverse effect on the validity or enforceability of this Agreement, or on the ability of Ceder to perform its obligations under this Agreement; or

(4) conflict with or result in a violation or breach of, or constitute (with or without notice or lapse of time or both) a default under, or give to any person or entity any right of termination, cancellation, acceleration, or modification in or with respect to, any contract or agreement to which Ceder is a party or by which its assets or properties may by bound, and as to which any such conflicts, violations, breaches, defaults or rights individually or in the aggregate have or may reasonably be expected to have a material adverse effect on the validity or enforceability of this Agreement, or on the ability of Ceder to perform its obligations under this Agreement, except as to any rights preserved by federal or state laws to the policyowners of the Policies.

# ARTICLE VIII
## REPRESENTATIONS AND WARRANTIES OF REINSURER

Reinsurer hereby represents and warrants to Ceder that:

A. <u>Organization, Standing and Power</u>

Reinsurer is a corporation duly organized, validly existing, and in good standing under the laws of the state of Mississippi and is duly licensed, qualified or admitted to do business and is in good standing in all jurisdictions in which the ownership, use or leasing of its assets or properties or the conduct or nature of its business makes such licensing, qualification or admission necessary, except as previously disclosed by Reinsurer to Ceder in writing. Reinsurer has full corporate power and authority to enter into this Agreement and to perform its obligations hereunder, except to the extent exercise of such power and authority requires regulatory approval consent or Waiver as contemplated by Article III(B).

B. <u>Authority</u>

The execution, delivery and compliance with the terms of this Agreement by Reinsurer and performance by Reinsurer of its obligations hereunder has been duly and validly authorized by all necessary corporate action on the part of Reinsurer and this Agreement constitutes a valid and binding obligation to Reinsurer which is enforceable against Reinsurer in accordance with its terms.

C. <u>Effects of Agreement</u>

The execution and delivery of this Agreement by Reinsurer do not, and the performance by Reinsurer of its obligations under this Agreement will not:

(1) violate any existing terms or provision of any law or any writ, judgment, decree, injunction or similar order applicable to Reinsurer;

(2) conflict with or result in a violation or breach of, or constitute (with or without notice or lapse of time or both) a default under any of the terms, conditions, or provisions of the articles or certificate of incorporation or bylaws of Reinsurer;

any of its assets or properties that individually or in the aggregate with and other liens, changes, or encumbrances has or may reasonably be expected to have a material adverse effect on the validity or enforceability of this Agreement, or on the ability of Reinsurer to perform its obligations under this Agreement; or

(4)    conflict with or result in violation or breach of, or constitute (with or without notice or lapse of time or both) a default under, or give to any person or entity any right of termination, cancellation, acceleration, or modification in or with respect to, any contract or agreement to which Reinsurer is a party or by which its assets or properties may be bound, and as to which any such conflicts, violations, breaches, defaults or rights individually or in the aggregate have or may reasonably be expected to have a material adverse effect on the validity or enforceability of this Agreement, or on the ability of Reinsurer to perform its obligations under this Agreement.

# ARTICLE IX
# INDEMNIFICATION

A.    Reinsurer Indemnification of Ceder

Reinsurer agrees to indemnify Ceder and hold Ceder free and harmless of and from any and all liability including but not limited to extra contractual, punitive, exemplary and/or consequential damages, reasonable attorneys' fees and court costs, or settlement fees and costs Ceder may incur in connection with the Reinsured Policies arising out of an event which occurred after the Reinsurance Agreement has been executed and Ceder has transferred the Net Consideration.

Subject to the conditions and provisions of this Agreement, Reinsurer hereby agrees to indemnify and hold Ceder or any successor of Ceder free and harmless, as to the Reinsured Policies assumed by Reinsurer, from and against any and all demands, claims, actions or causes of action, assessments, losses, damages, liabilities, deficiencies, costs and expenses of all kinds whatsoever including, without limitation, interest, penalties and reasonable attorneys' fees, damages, awards, and fines assessed against or imposed upon or incurred by arising or resulting from a breach of any term, condition or provision contained in this Agreement or any facts or circumstances constituting such a breach by Reinsurer.

B.    Ceder Indemnification of Reinsurer

Ceder agrees to indemnify Reinsurer and hold Reinsurer free and harmless of and from any and all liability including but not limited to extra contractual, punitive, exemplary and/or consequential damages, reasonable attorney's fees and court costs, or settlement fees and costs Reinsurer may incur in connection with the Reinsured Policies arising out of an event which occurred on or before the Coinsurance Effective Date. Subject to the conditions and provisions of this Agreement, Ceder hereby agrees to indemnify and hold Reinsurer or any successor of Reinsurer free and harmless, as to the Reinsured Policies assumed by Reinsurer, from and against any and all demands, claims, actions or causes of action, assessments, losses, damages, liabilities, deficiencies, costs and expenses of all kinds whatsoever, including, without limitation, interest, penalties and reasonable attorneys' fees, damages, awards, and fines assessed against or imposed upon or incurred by arising or resulting from a breach of any term, condition or provision contained in this Agreement or any facts or circumstances constituting such a breach by Ceder. If process is served upon Ceder with respect to any of the Reinsured Policies after the Assumption Date as to such of the Reinsured Policies, Ceder shall give prompt notice thereof to

7

Reinsurer, and Reinsurer then, in its own name and at its own cost and expense, may interpose any defense in, or may settle, compromise or otherwise dispose of, such action at Reinsurer's discretion. Any correspondence or inquiries or requests related to any of the Reinsured Policies assumption reinsured hereunder shall promptly be forwarded by Ceder to Reinsurer.

C.   Notice

The party indemnified shall give the indemnifying party at least ten (10) days written notice of any claims asserted against or imposed upon or incurred by the party indemnified, for which indemnification or reimbursement may be sought on account of the provisions of this Agreement.  If the indemnifying party shall not notify the party indemnified of its election of the right to defend such claim, action or proceeding within five (5) days of receipt of written notice of claim as required above, of its election to conduct the defense, the party indemnified shall nevertheless have the right to participate in the defense thereof, but such participation shall be fully at the expense of the party indemnified without a right of further reimbursement of the expense of such participation. The party indemnified may at any time notify the indemnifying party of its intention to settle, compromise or satisfy any such claim, action or proceeding (the defense of which the indemnifying party has not previously elected to conduct) and may make such settlement, compromise or satisfaction (at the indemnifying party's expense) unless the indemnifying party shall notify the party indemnified in writing within fifteen (15) days after receipt of such notice of intention to settle, compromise or satisfy its election to assume at its sole expense the defense of any such claim, action or proceeding and promptly thereafter take appropriate action or proceeding defended only by the indemnifying party as fully as though it alone has assumed the defense thereof and a final judgment or decree had been entered in such proceeding or action by a court of competent jurisdiction in the amount of such settlement, compromise, judgment or decree.

# ARTICLE X
# ARBITRATION

Any dispute that may arise under this Agreement between Ceder and Reinsurer shall be settled by an equitable rather than a strictly legal interpretation pursuant to arbitration conducted in accordance with the commercial Rules of the American Arbitration Association. In such cases, the parties will submit their differences to three arbiters, who shall be officers of insurance companies other the than the parties and their affiliates, or subsidiaries: one to be selected by Ceder, one to be selected by Reinsurer, and the third to be selected by the arbiters named by the parties herein. In the event of disagreement between the arbiters, the decisions will rest with the majority. The decision of the majority of the arbiters shall be binding upon the parties herein without appeal. The arbiters will be relieved of all judicial formality and may abstain from the strict rules of law.  Either Ceder or Reinsurer (the Petitioner) may initiate arbitration by written notice to the other party identifying the nature of the dispute, demanding arbitration and naming its arbiter. The other party (the respondent) shall have 10 days after receipt of said notice within which to designate its arbiter. The third arbiter shall be chosen by the two arbiters named by the parties within 10 days thereafter and the arbitration shall be held at the place hereinafter set forth 10 days after the appointment of the third arbiter.  Should the two arbiters not be able to agree on the choice of the third, then the appointment shall be as follows: Each party will chose three arbiters, two of which shall be refused by the opposing party. The third arbiter shall then be selected by lot from the remaining two. If the respondent does not name its arbiter within 10 days, the petitioner may designate the second arbiter and the respondent will not be aggrieved thereby. Arbitration shall take place at a site agreed upon by the arbiters. The expense of the arbitration proceeding shall be borne by the losing party; provided that each party shall be responsible for expenses it incurs with respect to preparation for and presentation of evidence and witnesses at the proceeding, including the expense of the arbiter it selects. The decision of the arbiters may be entered as a final judgment in any court of competent jurisdiction.

8

# ARTICLE XI
## NOTICE

Any notice allowed or required by the provisions of this Agreement shall be sent by certified mail, postage pre-paid, return receipt requested, to each party addressed as follows or to such other address as may be requested by such party by giving notice pursuant to this provision:

Ceder

**SETTLERS LIFE INSURANCE COMPANY**
1969 Lee Highway
Bristol, Virginia 24201

Reinsurer

**FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA**
377 Riverside Drive
Suite 400
Franklin, Tennessee 37064

# ARTICLE XII
## TERMINATION

This Agreement may not be terminated.

# ARTICLE XIII
## GENERAL PROVISIONS

A. **ENTIRE AGREEMENT** - This agreement, including the exhibits attached hereto, constitutes the entire understanding between Ceder and Reinsurer.

B. **AMENDMENT** - This Agreement cannot be changed, modified or varied except in writing signed by duly authorized representatives of both Ceder and Reinsurer.

C. **COSTS AND EXPENSES** - Whether or not the transaction contemplated hereby is consummated, all costs and expenses incurred in connection with this Agreement and the transaction contemplated hereby shall be paid by the party incurring such costs and expenses unless otherwise expressly provided for herein.

D. **FURTHER ASSURANCES** - Ceder and Reinsurer agree to perform such additional acts and execute such additional documents and agreements as may be necessary or desirable to carry out the purpose and objectives of this Agreement.

E. **COUNTER PARTS** - This Agreement may be executed in any number of counterparts each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

F. **BINDING EFFECT** - This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

9

G. CAPTIONS - The Article ... ions in this Agreement are for reference only and are not part of this Agreement. As such, they are not to be used in the interpretation or construction to this Agreement.

H. EXHIBITS - All exhibits in this Agreement are attached hereto and incorporated into this Agreement by reference.

The undersigned have executed and delivered this Agreement as of the date first written above

BY _Charles P. Olinger_____     ATTEST: _Terry C. Frye_____

      Charles P. Olinger                                    Title: Corporate Counsel
      CEO
      SETTLERS LIFE INSURANCE COMPANY
      1969 Lee Highway
      Bristol, Virginia 24201


BY _____     ATTEST: _____

      John A. Hackney                                       Title: Assistant Secretary
      President & CEO
      FIRST NATIONAL LIFE INSURANCE OF COMPANY AMERICA
      377 Riverside Drive, Suite 400
      Franklin, Tennessee 37064

# EXHIBIT A
## NET POLICY RESERVES
## AND
## INITIAL CEDING ALLOWANCE

This Exhibit A is incorporated and becomes an integral and inseparable part of Reinsurance Agreement between Settlers Life Insurance Company (Ceder) and First National Life Insurance Company of America (Reinsurer) with a Coinsurance Effective Date of April 1, 1999. This Exhibit reflects the Net Policy Reserves and the Initial Ceding Allowance determined as the Net Consideration due Reinsurer in execution of the Reinsurance Agreement.

A. Net Policy Reserves as of March 31, 1999 are calculated and agreed upon as follows:

|  | Statutory Policy Reserves | Tax Policy Reserves |
|---|---|---|
| 1. Exhibit 8 Policy Reserves | $46,522,945 | $38,063,098 |
| 2. Advance less Due Premiums | 22,531 |  |
| Total Net Policy Reserve | $46,545,476 |  |

B. Initial Ceding Allowance          $1,750,000
                                                  $44,795,476

C. Net Consideration                   (A - B)

The undersigned, by executing this Exhibit, acknowledge their acceptance of the Net Consideration specified above as total value of assets to be transferred to the Reinsurer in completing the Reinsurance Agreement between Ceder and Reinsurer.

BY _Charles P. Olinger_

Charles P. Olinger
CEO
Settlers Life Insurance Company
1969 Lee Highway
Bristol, Virginia 24201

BY _Tom Hull_

Tom Hull
President
Actuarial Management Resources, Inc.
4035 University Parkway, Suite 100
Winston-Salem, NC 27106

BY _John A. Hackney_

John A. Hackney
President & CEO
First National Life Insurance Company of America
377 Riverside Drive
Suite 400
Franklin, Tennessee 37064

BY _Dennis J. Roos_

Dennis L. Roos
Actuary
First National Life Insurance Company of America
377 Riverside Drive, Suite 400
Franklin, Tennessee 37064

Post-It® Fax Note    7871    Date 4/7/97 | pages 1
To Charles O.    From Wade W
/Dept.    Co.
ona #    Phone #
x #    Fax #

11

**Settlers Life Insurance Company**
**Care Plans**
**Statutory Reserves 3/31/99**

| Status | Count | Coverage | Res Run | Stat Res |
|---|---|---|---|---|
| Active | 1,156 | 4,067,116 | 3,191,099 | 3,191,099 |
| Paid-Up | 9,667 | 33,168,211 | 43,168,632 | 43,168,632 |
| RPU | 34 | 59,883 | 57,442 | 29,385 |
| ETI | 261 | 835,548 | 713,218 | 120,859 |
| Error List | | | | 4,000 |
| Deficiency | | | | 8,970 |
| | | | | |
| Total | 11,118 | 38,130,758 | 47,130,391 | 46,522,945 |

### Settlers Life Insurance Company
### Care Plans
### Tax Reserves 3/31/99

| Status | Count | Coverage | Res Run | Tax Res |
|---|---|---|---|---|
| Active | 1,156 | 4,067,116 | 2,304,123 | 2,304,123 |
| Paid-Up | 9,667 | 33,168,211 | 35,602,731 | 35,602,731 |
| RPU | 34 | 59,883 | 39,993 | 29,385 |
| ETI | 261 | 835,548 | 467,293 | 120,859 |
| Error List | | | | 6,000 |
| Deficiency | | | | 0 |
| | | | | |
| Total | 11,118 | 38,130,758 | 38,414,141 | 38,063,098 |

**Settlers Life Insurance Company**
**03/31/99**
**Premium Accruals**

| Gross Advance | Gross Due | Net |
|---|---|---|
| 24,729 | 2,198 | 22,531 |

04/07/99

**Settlers Life Insurance Company**
**Care Plans**
**Active Premium Paying Business**
**3/31/99**

| Code | Count | Coverage | Stat Res |
|------|-------|----------|----------|
| C04 | 48 | 137,500 | 79,827 |
| C08 | 56 | 187,000 | 128,114 |
| C27 | 7 | 28,778 | 32,620 |
| C28 | 2 | 4,596 | 4,560 |
| C29 | 1 | 3,435 | 3,019 |
| C2A | 106 | 403,573 | 387,014 |
| C2C | 1 | 3,762 | 2,452 |
| C2F | 240 | 855,446 | 578,026 |
| C36 | 1 | 1,000 | 1,152 |
| C37 | 45 | 212,429 | 232,635 |
| C38 | 10 | 25,382 | 27,674 |
| C39 | 14 | 56,086 | 56,109 |
| C3A | 160 | 557,125 | 542,136 |
| C3B | 4 | 14,883 | 12,826 |
| C3C | 2 | 6,278 | 4,575 |
| C3D | 3 | 11,665 | 7,741 |
| C3E | 3 | 9,571 | 5,813 |
| C3F | 272 | 914,854 | 627,892 |
| C57 | 13 | 38,400 | 50,280 |
| C58 | 27 | 89,500 | 88,569 |
| C6A | 1 | 1,374 | 508 |
| C6F | 2 | 7,736 | 543 |
| C7A | 2 | 5,062 | 2,183 |
| C7F | 11 | 53,003 | 10,980 |
| U27 | 2 | 5,786 | 6,690 |
| U2A | 6 | 31,004 | 26,136 |
| U2F | 15 | 56,791 | 33,701 |
| U36 | 1 | 2,106 | 2,439 |
| U37 | 1 | 4,218 | 4,439 |
| U38 | 4 | 9,344 | 8,740 |
| U39 | 3 | 9,165 | 6,736 |
| U3A | 35 | 118,706 | 96,859 |
| U3B | 1 | 4,130 | 3,435 |
| U3F | 57 | 197,428 | 114,675 |
| Total | 1,156 | 4,067,116 | 3,191,099 |