UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

       Plaintiff,

   v.  :  Civil No. 3:01 CV 1515 (EBB)

$29,035,500 IN ACCOUNT NUMBER 20X6875(06), HELD IN THE NAME OF U.S. CUSTOMS SUSPENSE ACCOUNT AT THE FEDERAL RESERVE BANK OF NEW YORK, et al.

       Defendants.

-----------------------------------------------------

UNITED STATES OF AMERICA

       Plaintiff,

   v.  :  Civil No. 3:02 CV 889 (EBB)

277 DIAMONDS VALUED AT APPROXIMATELY $2,461,093.00, et al.

       Defendants.

**MEMORANDUM IN OPPOSITION TO THE RECEIVERS'
MOTION TO DISMISS AND IN SUPPORT OF THE MOTION FOR LIMITED
ABSTENTION PENDING A RULING ON THE STATE LAW QUESTION BY THE
MISSISSIPPI SUPREME COURT**

This Court **should** defer any ruling on the Receiver-Claimants' Motion to Dismiss Claims of Peoples Benefit Life Insurance Company, Veterans Life Insurance Company, Huff-Cook, Inc. and Settlers Life Insurance Company ("Motion to Dismiss") pending the outcome of the appeal of Huff-Cook, Inc. ("Settlers"), Peoples Benefit Life Insurance Company ("Peoples") and Veterans Life Insurance Company ("Veterans") to the Mississippi Supreme Court. Oral argument before the Mississippi Supreme Court has been scheduled for April 5, 2005. The

1

                                                                                            **Oral Argument Requested**

ruling in the Mississippi case likely will either render the Receivers' Motion to Dismiss moot, or, alternatively, will require the dismissal of Settlers, Peoples and Veterans' claims in this Court.

This Court has jurisdiction to decide the competing claims to the forfeited assets and is the best forum for resolving all claims in a single litigation. Furthermore, this Court has discretion to postpone consideration of the Receivers' Motion to Dismiss until after the Mississippi Supreme Court's authoritative decision on the state law issue. The Receivers could have filed their Motion to Dismiss one year ago when the lower state court issued its February 3, 2004 order. Instead, they waited and on December 10, 2004, the Receivers asked this Court to try the dispute between the Receivers and Settlers, Peoples and Veterans regarding who is the rightful owner of the forfeited assets. With the help of the United States Attorney's office, all parties agreed to a scheduling order. This matter is set for trial on September 8, 2005. Accordingly, Settlers, Peoples and Veterans respectfully request that this Court stay its hand for a brief time, until the Mississippi Supreme Court has ruled on the key state law issue, deny the Motion to Dismiss and allow the trial schedule to go forward.

## Factual Background

The claims of Settlers, Peoples and Veterans arise from the notorious theft of hundreds of millions of dollars **orchestrated** by, among others, First National Life Insurance Company of America ("FNL"), under the ownership, control and direction of Martin Frankel. Frankel, along with his henchmen at FNL, John Hackney and Gary Atnip, have pled guilty to felonies based on their roles in this fraudulent scheme. Settlers, Peoples and Veterans are three of the largest victims of FNL's fraud, having been defrauded of approximately $60 million.

This Court heard some of the details of how FNL defrauded Settlers from the testimony of the late Jack Harmon,[*] the former President of Settlers, at the criminal trial of one of Frankel's accomplices, Mona Kim. (Mona Kim Trial 1/17/03 Tr., p. 48-64, a copy of which is attached hereto as Exhibit 1.)  Mr. Harmon testified that FNL, acting through John Hackney, defrauded Settlers out of approximately $45 million.  *(Id.* at 57, 59.) Peoples and Veterans were similarly defrauded out of approximately $15 million.

Through a series of misrepresentations and omissions, FNL fraudulently induced Settlers, Peoples and Veterans into entering reinsurance agreements whereby Settlers, Peoples and Veterans transferred blocks of insurance policies along with approximately $60 million in reserve funds associated with the policies to FNL, with liability under the policies to be transferred to FNL when state insurance regulators **approved** the novation. These agreements were fraudulent from the first - Frankel and FNL intended to **misappropriate the *funds*** for the **personal benefit of** Frankel and **his accomplices. The** contracts were **void ab** *initio* and title to the funds never passed to FNL.

The damage inflicted by FNL's fraud has been devastating. Although Settlers, Peoples and Veterans transferred their respective reserve funds to FNL, FNL never obtained the necessary regulatory approval from the Mississippi Department of Insurance for the transfer of the liabilities on the policies to FNL. Settlers, Peoples and Veterans have remained liable for and have been paying claims on the policies after having been fraudulently induced to part with the funds reserved for those policies.

There is no serious dispute that the forfeited assets were (and still should be) property of Settlers, Peoples and Veterans. Almost immediately after Settlers, Peoples and Veterans sent the

---

[*] **Mr. Harmon passed away in February of 2004.**

funds to FNL, the directors and officers of FNL transferred the funds to Frankel's control. The funds were sent on to a Swiss bank account controlled by Frankel. Through records obtained in other related cases, the approximately $60 million in reserve funds now can be traced from the bank accounts of Settlers, Peoples and Veterans, through accounts owned by FNL in Tennessee, on to Frankel's Swiss bank account and from there to monies, gold coins and diamonds which currently are the **subject of these forfeiture proceedings.**

To take the **key example,** Settlers is **the** only **party to this litigation** who can trace its assets to $26,499,980.00 in *United States v. $29,035,500.* In the spring of 1999, Tennessee regulators reviewing one of FNL's affiliates were concerned that the company's assets were not in Tennessee and demanded that the FNL affiliate deposit assets in a Tennessee bank. To meet this demand, Frankel transferred funds out of the Swiss bank account at Banque SCS Alliance leaving the account with less than $1 million. On April 9, 1999, Settlers transferred almost $45 million to FNL's bank account in Tennessee. These funds were promptly sent to the Banque SCS Alliance account. Few other assets were deposited into that account before the account was frozen by the Swiss authorities. On June 28, 2000, the $29,035,500 remaining in the Banque SCS Alliance account was returned to the United Sates and is the subject of *United States v. $29,035,500.* **Accordingly,** over **90% of the** funds from the **Banque** SCS Alliance **account** can be traced to Settlers.[2]

Settlers, **Peoples** and **Veterans** have **filed verified** statements **of** interest in these **forfeiture proceedings. They** ask this Court to impose a **constructive** trust for their **benefit on** the forfeited assets **traceable** to **the** funds **obtained** from them through FNL's fraud.

---

[2] The **concerns** expressed in *United States v. One 1995 Turbo Commander Aircraft,* No. **3:99-CV-2590 (EBB),** 3:99-**CV-2589 (EBB),** 2000 WL 1838334, *2 (D. **Conn.** Oct. 31, 2000), **and** *United States v. Peoples Benefit Life Ins. Co.,* 271 F.3d 411, 417 (2d Cir. 2001), are **not** an issue in these cases. Settlers, Peoples **and** Veterans can now trace their property to the forfeited assets.

In addition to filing claims in these forfeiture cases, Settlers, Peoples and Veterans filed claims in the FNL liquidation proceedings pending in the Chancery Court of Hinds County Mississippi seeking a declaration that the $60 million taken from them through FNL's fraud is property of Settlers, Peoples and Veterans and not the FNL estate. (Motion to Dismiss, Exh. A.) The Chancery Court entered summary judgment against Settlers, Peoples and Veterans on their constructive trust claims. (Motion to Dismiss, Exh. B.) The Chancery Court held that Settlers, Peoples and Veterans, though concededly victims of the massive web of fraud created by Martin Frankel, FNL and others using insurance companies Frankel secretly controlled, are barred as a matter of Mississippi law from asserting a constructive trust in the traceable proceeds of the $60 million taken from them by Frankel and FNL. *(See Id.* at 2.) Settlers, Peoples and Veterans have appealed this order to the Mississippi Supreme Court. The appeal is fully briefed and now set for oral argument on April 5, 2005.

The FNL Receiver received notice of the oral argument date on or about January 28, 2005. *(See* Jan. 28, 2005 Letter from Mississippi Supreme Court Administrator, a copy of which is attached hereto as Exhibit 2.) Just two weeks after being notified that the appeal was set for oral argument, the Receivers filed the Motion to Dismiss in these cases.

## Argument

The Receivers have raised two defenses in their Motion to Dismiss. First, the Receivers claim that Settlers, Peoples and Veterans' claims are barred by *res judicata.* In the alternative, the Receivers ask this Court to dismiss Settlers, Peoples and Veterans' claims arguing that these claims must be resolved by the Mississippi state court. (Motion to Dismiss at 7.) This Court has exclusive jurisdiction over the forfeited assets and may exercise its discretion to decide all of the competing claims to the forfeited assets while relying upon the Mississippi Supreme Court to

authoritatively decide the pivotal state law question. Furthermore, principles of wise judicial administration favor waiting for a final determination of the question presented to the Mississippi Supreme Court in the pending appeal before ruling on the Receivers' Motion to Dismiss. These cases should proceed to trial on the schedule proposed by the Receivers, agreed to by all of the parties, and adopted by this Court on December 16, 2004.

### I. This Court Has Exclusive Jurisdiction to Decide the Ownership of the Forfeited assets

This Court has exclusive *in rem* jurisdiction to decide the ownership of the funds held in these forfeiture proceedings. 28 U.S.C. § 1335 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for . . . forfeiture"). In proceedings *in rem,* the state or federal court having custody of the property has exclusive jurisdiction to proceed. *F.D.I.C. v. Four Star Holding Co.,* 178 F.3d 97, 102 (2d Cir. 1999) (court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts); *Lankenau v. Coggeshall & Hicks,* 350 F.2d 61, 64 (2d Cir. 1965) (same). There is no question that this Court has custody of the forfeited assets and has the authority to decide who the rightful owner(s) is(are). All of the claimants to the forfeited assets have filed claims in these cases seeking an adjudication of ownership under theories of constructive trust. This Court has jurisdiction to decide ownership of the properties once and for all.

### II. This Court Is the Most Appropriate Forum for Deciding the Competing Ownership Claims

This Court is the best **forum** for **adjudicating** all of the **competing** claims to the forfeited assets. This court is the only forum that can give all of the claimants complete relief. Neither the Mississippi court nor any other state could do so. If there is any substantial doubt as to whether complete relief can be had in a parallel state case, it would be a serious abuse of discretion for a federal court to grant a motion to dismiss. *Currie v. Group Ins. Commission,* 290

F.3d 1, 12 (1st Cir. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28 (1983)). There is more than substantial doubt as to whether Settlers, Peoples and Veterans can obtain complete relief in the Mississippi state court because this Court is the only forum in which all parties with claims to the forfeited assets are parties. The other Receivers are not parties to the FNL liquidation in Mississippi.

Because all claimants have already appeared in these cases, this Court is the most convenient forum for all of the parties. Deciding the ownership question here will avoid piecemeal litigation in each of the state receiverships of the various Frankel controlled insurance companies. *See* ***Colorado*** *River Water **Conservation** District v. **United** States,* **424** U.S. 800, 817-18 (1976). Each of the Receivers has asserted a claim that the forfeited assets are property of its estate and should be sent to Mississippi, Tennessee, Arkansas, Oklahoma or Missouri for distribution to the various claimants against those estates. Dismissing Settlers, Peoples and Veterans from these cases could result in chaotic, piecemeal litigation and conflicting results. *Prosperity Realty, Inc. v. **Haco-Canon**,* 724 F. Supp. 254, 257 (S.D.N.Y. 1989) **(declining** abstention where "[t]he paramount consideration in these cases is the likelihood of piecemeal litigation if the single subject matter is litigated in two forums."). If this Court were to distribute the properties to the Receivers in the absence of Settlers, Peoples and Veterans, they would be forced to litigate their claims in each of the state receivership courts. The state courts in each of those cases could reach a different result as to ownership of the properties, and in all events, multiplying the burden and expense of litigation to the victims of FNL's fraud would be highly prejudicial.

These cases are also the furthest advanced toward a trial on the merits. *See Colorado River,* 424 U.S. at 817-18. Although the Mississippi case will soon decide the state law question

of whether victims of fraudulently induced transactions can assert constructive trust claims to recover their property, these forfeiture cases are only months away from trial. Unlike the other state court cases, at the Receivers' request, a trial date has been set in these cases. Plaintiff United States has gathered a significant number of documents necessary to trace the funds back to their rightful owner. Settlers, Peoples and Veterans have served discovery and requests for admissions on the Receivers which are due on March 14, 2005.[3]

Although property rights to the forfeited funds are governed by state law and not federal law, the legal issues presented to the Mississippi Supreme Court for decision can be readily applied by this Court. If the Mississippi Supreme Court rules in the **appeal** that victims of fraud perpetrated by an insolvent insurance company can recover their property through a constructive trust, this Court can easily try the fraud case and determine whether Settlers, Peoples and Veterans are entitled to a constructive trust. Because the sole question of state law will answered by the Mississippi Supreme Court in the pending appeal, no exceptional circumstance justifying dismissal or abstention in these cases exists. *Colorado River,* 424 U.S. at 813 (abdication of the obligation to decide cases can be justified only under exceptional circumstances).

---

[3] The requests for admissions served on the Receivers simply ask them to admit the basic facts tracing the funds from Settlers, Peoples and Veterans bank accounts to FNL's account, on to the Frankel controlled account at Banque SCS Alliance in Switzerland, and on to these forfeiture proceedings. For example, Request No. 37 asks the Receivers to admit: "On April 9, 1999, Settlers Life Insurance Company transferred a total of $44,795,476 from First Union Accounts No. 5056681511 ($18,795,476) and No. 5056492342 ($26,000,000) to First Tennessee Bank Account No. 100057727." " (Request for Huff-Cook, Inc., Peoples Benefit Life Insurance Company and Veterans Life Insurance Company's First Request for Admissions from First National Life Insurance Company of America, a copy of which is attached hereto as Exhibit 3.) In an attempt to avoid addressing the substantive merits of the tracing element of the competing constructive trust claims, the Receivers filed a motion with the Court seeking a protective order that would allow them to avoid responding to these simple requests. *(See* **Receiver-Claimants' Motion for Protective Order Staying Certain Discovery**, a copy of which is attached hereto as Exhibit 4.)

III.  **The Court Should Abstain Only from Ruling on the Motion to Dismiss Pending a Definitive Ruling on the Sole Open Question of State Law By the Mississippi Supreme Court**

The Court should defer any ruling on the Motion to Dismiss pending the outcome of the Mississippi appeal. Because the determinative question of Mississippi law will be resolved shortly by the Mississippi Supreme Court, there is no reason to dismiss this case. Rather, the Court should grant Settlers, Peoples and Veterans' Motion for Limited Abstention and defer any ruling on the merits of the Receivers' Motion to Dismiss until after the Mississippi Supreme Court rules. *See Arizonians for Official English v. Arizona,* 520 U.S. 43, 79 (1997) (better to certify unsettled questions of state law or stay proceedings while an appeal was pending before the state supreme court than abstain or dismiss a case); *Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 44 (1970) *(per curiam)* (directing District Court to "hold its hand until the Puerto Rican Supreme Court has authoritatively ruled on the local law question in light of the federal claims") (footnote omitted)); *United Gas Pipe Line Co. v. Ideal Cement Co.,* 369 U.S. 134, 135-136 (1962) *(per curiam)* ("Wise judicial administration in this case counsels that decision of the federal question be deferred until the potentially controlling state-law issue is authoritatively put to rest"); *Clay v. Sun Ins. Office Ltd.,* 363 U.S. 207, 212 (1960) (approving "postponement of decision"). As the First Circuit explained in *Currie:*

> the *res judicata* effect of a lower state court judgment does not compel the active exercise of federal jurisdiction, rather than a stay when federal doctrines of restraint counsel otherwise. This is true whether the doctrines of restraint counsel certification of questions "to the State's highest court" to avoid reaching federal questions, or whether they counsel abstention.
> Here the doctrine of sound judicial administration which underlies *Colorado River* deferral has even more force because the state proceeding is already on **appeal** on a fully developed record.... <u>[T]he interests served by *res judicata* are better served by the stay.</u>

*Currie,* 290 F.3d at 11 n.8 (emphasis added, citations and quotation omitted).

The appeal pending before the Mississippi Supreme Court involves a question of first impression under the Mississippi Insurers Rehabilitation and Liquidation Act (Miss. Code. § 83-24-1 *et seq.*): whether a victim of fraud perpetrated by an insolvent insurance company, who can trace assets to property held in forfeiture proceedings, can recover the property through a constructive trust? *(See* Petitioners' Brief in Support of Their Appeal, a copy of which is attached hereto as Exhibit 5.)

If the Mississippi Supreme Court answers the question in favor of Settlers, Peoples and Veterans, these cases here will be ripe for this Court's adjudication on the merits under a straightforward **application** of property law and constructive trusts. A temporary stay on the issue of the preclusive effect of the lower Mississippi court's order pending the appeal is therefore warranted:

> *Colorado River* has special **appeal where** a state court decision "may substantially, perhaps even fully, answer certain questions of state law in a way that will permit easy answers, relatively speaking, to the federal ones."

*Currie v. Group Ins. Commission,* 290 F.3d 1, 11 (1st Cir. 2002) (citation omitted).

The Receivers' argument that the Mississippi liquidation proceedings provides the exclusive remedy for Settlers, Peoples and Veterans assumes that the Mississippi Supreme Court **affirms the judgment of the Chancery Court on appeal. However, if the Mississippi Supreme Court reverses and holds that victims of fraud can recover their property through a constructive** trust, then the factual determination regarding who is the rightful owner of the forfeited assets will be squarely before this Court. Until this Court has made that determination, none of the forfeited assets is an asset or property of any of the seven insolvent insurance companies' estate. *See* ***McDonough Caperton Shepherd*** *Group, Inc. v.* ***Academy of Medicine,*** 888 F.2d 1392, 1989 WL 128675, *5 (6th Cir. Oct. 30, 1989) ("this interpleader action is an invitation to the Liquidator to come in and try to obtain more assets for [the insurer's] estate. The rightful owner

of the *res* on deposit with the district court has never been adjudicated before the New York state court.").[4]

The only questions left after a reversal by the Mississippi Supreme Court will be the purely factual issues of whether Settlers, Peoples and Veterans were fraudulently induced into entering into the reinsurance agreements and whether the property taken from them can be traced to the forfeited assets. This Court, acting pursuant to the jurisdiction granted by Congress in 28 U.S.C. § 1335, would simply be applying settled state law to the facts of these cases. *See Meredith v. City of Winter Haven,* 320 U.S. 228, 236-37 (1943) (discerning no "policy which would exclude cases from the jurisdiction [of federal courts] merely because they involve state law or because the law is uncertain or difficult to determine").

### IV.     The Receivers Have Waived Any *Res Judicata* Defense

The Mississippi Chancery Court entered its summary judgment order on February 3, 2004. The Receivers did nothing and filed nothing in these forfeiture cases for more than a year. At the December 10, 2004 status conference, at the request of the Receivers, this Court ordered these cases to proceed to trial with Settlers, Peoples and Veterans as parties. At that status conference, the parties discussed the status of the Mississippi state court case. The parties informed the Court of the Mississippi Chancery Court's order granting the FNL Receiver summary judgment on Settlers, Peoples and Veterans' Petition for Declaratory Relief. The parties also informed the Court that Settlers, Peoples and Veterans had filed an appeal to the Mississippi Supreme Court and that the appeal was fully briefed. In that same status conference,

---

[°] The FNL Receiver is only "vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation."  Miss. Code Ann. § 83-24-35(1). The Receivers cannot distribute property that belongs to others.

the Receivers asked the Court to set a trial date to try the dispute between the Receivers and Settlers, Peoples and Veterans regarding who is the rightful owner of the forfeited assets.

After the status hearing, the Receivers submitted two proposed scheduling orders setting discovery deadlines, dates for filing dispositive motions and trial dates in the various Frankel related forfeiture cases pending before this Court to the United States Attorney's office, Settlers, Peoples and Veterans. One proposed schedule was for these cases in which Settlers, Peoples and Veterans are parties. The other schedule was for the two cases in which Settlers, Peoples and Veterans have not filed claims. These orders were then submitted to the Court by the United State's Attorney's office. On December 16, 2004, this Court entered those scheduling orders.

Although counsel for the Receivers alluded to *a res judicata* defense on December 10, 2004, the Receivers did not even ask the Court to set a briefing schedule on the issue at the December status conference. Instead, the Receivers urged the Court to set a trial date and enter the scheduling orders. They asserted the defense only after the Mississippi Supreme Court scheduled oral argument for the appeal. The failure to timely raise the defense of *res judicata is* deemed to be a waiver of the defense. *Evans v.* **Syracuse** *City School Dist.,* **704** F.2d 44, **48 (2d** Cir. 1983).

But for the FNL Receiver's delays in the Mississippi appeal, the question before the Mississippi Supreme Court may have already been decided. The FNL Receiver requested <u>three</u> extensions before filing his response brief with the Mississippi Supreme Court. These extensions resulted in at least a two month delay in the appeal. The FNL Receiver should not be allowed to delay **adjudication** on the merits in the Mississippi appeal and then use that delay as the basis for an untimely *res judicata* defense in these cases.

V.   Conclusion

In light of the Court's exclusive jurisdiction over the *res,* the Court should defer any ruling on the Receivers' Motion to Dismiss, retain jurisdiction over these cases and allow the cases to proceed to a trial on the merits in September.

WHEREFORE, for the reasons set forth above and in the Motion for Limited Abstention Pending a Ruling on the State Law Question by the Mississippi Supreme Court, Settlers, Peoples and Veterans respectfully request that this Court enter an order either (1) staying any ruling on the Motion to Dismiss pending a ruling by the Mississippi Supreme Court in *Huff-Cook Inc. v. Dale,* No. 2004-CS-617 (Miss. filed Mar. 22, 2004) or (2) denying the Motion to Dismiss.

Dated:  March 4, 2005

Respectfully submitted,

**PEOPLES BENEFIT** LIFE INSURANCE COMPANY, VETERANS LIFE INSURANCE COMPANY, HUFF-COOK, INC.

David N. Rosen (00196)

400 Orange Street
New Haven, CT 06511
Telephone: (203) 787-3513
Telecopy: (203) 789-1605

*Of Counsel*
Forrest B. Lammiman (CT 21508)
Randall A. Hack (CT 14314)
Brian I. Hays (CT 21601)
LORD, BISSELL & BROOK LLP
115 S. LaSalle Street
Chicago, IL 60603
**Telephone: (312) 443-0700**
**Facsimile: (312) 443-0336**

<u>Certificate of Service</u>

I hereby certify that on March 4, 2005, a true and correct copy of the foregoing was served by U.S. Mail, first class postage pre-paid to the following:

| | |
|---|---|
| **Plaintiff U.S.A.**<br>Julie G. **Turbert**<br>**Assistant U.S. Attorney**<br>**U.S. Attorney's Office**<br>**157 Church Street**<br>**P.O. Box 1824**<br>23rd **Floor**<br>**New Haven,** CT   **06510**<br>(203) 821-3700 | |
| **Claimants**<br>James A. **Lenes, Esq.**<br>**Douglas S. Skalka, Esq.**<br>**Neubert, Pepe, Monteith**<br>**195 Church Street**<br>13th **Floor**<br>**New Haven,** CT   **06510-2026**<br>**(203) 821-2000** | Susan Loving, Esq.<br>Lest, Loving & Davies<br>1701 South Kelly<br>Edmund, OK 73013 |
| **Andrew B. Campbell, Esq.**<br>**Graham Matherne, Esq.**<br>**Wyatt Tarrant & Combs**<br>**2525 West End Avenue**<br>**Suite 1500**<br>**Nashville,** TN   **37203**<br>**(615) 244-0020** | Charles G. Copeland, Esq.<br>Copeland, Cook, Taylor & Bush, P.A.<br>1062 Highland Colony Parkway<br>Suite 200<br>P. O. Box 6020<br>Ridgeland, MS 39157 |
| **Douglas J. Schmidt, Esq.**<br>**Blackwell Sanders Peper Martin, LLP**<br>**2300 Main Street**<br>**Suite 1000**<br>**Kansas City,** MO   **64108** | |

David N. Rosen