```
 1            MR. CALIFANO:  No further questions,
 2       Your Honor.
 3            THE COURT:  Shall we take the break at this
 4       time?
 5            MR. KELLY:  Thank you, Your Honor, sure.
 6
 7            (Recess:  10:45 to 11:00.)
 8
 9                    CROSS-EXAMINATION
10
11  BY MR. KELLY:
12     Q   How do you do, Mr. Harmon. My name is Peter Kelly,
13  and I represent a lady named Mona Kim; and Mona Kim is seated
14  over here.  Would you stand up, Ms. Kim?
15
16            (Defendant rises at counsel table.)
17
18  BY MR. KELLY:
19     Q   Do you recognize this person?
20     A   No, sir.
21     Q   To your knowledge, have you ever had any dealings
22  with Mona Kim?
23     A   Not to my knowledge.
24     4   I'm just going to ask you a couple of questions
25  about this agreement -- and we all know the terrible thing
```

1  that **happened --** but on this reinsurance agreement, now, as
2  I understand it, you transferred some money to -- which
3  company was it? First National?
4     **A**   **First National, right.**
5     Q   **And what was** the business purpose for you?  **Why did**
6  **you think this was a good arrangement? What was the benefit**
7  going to be to Settlers **Insurance?**
8     A   Well, they accepted the 44 million, but we had
9  **approximately** a **million-eight** more.  The **advantage** to us was
10 enhancing our value by **the** difference between the reserve
11 that we had on the business and the reserve that they were
12 willing to take for the business.
13    Q   I'm not an insurance lawyer, but if I understand
14 the agreement and your testimony correctly, they were going
15 to take over responsibility for these claims?
16    **A**   Yes.
17    Q   Now, before you entered into this agreement, I'm
18 assuming there was a period of some negotiation and checking
19 out different things?
20    **A**   Sure.
21    Q   Do you know who -- who was your company dealing
22 with at First National?
23    A   My company dealt with a fellow named Wayne Willis,
24 but John Hackney -- John Hackney -- and Wayne Willis was the
25 actuary who come to our office and looked over the block of

1  business.
2       Q    Now, **have** you met Mr. Hackney before?
3       A    I met Mr. Hackney years ago when he first started
4  with the Franklin American in Tennessee, but it's been years
5  **since** I **have**.  I **have** met him, yes, sir.
6       Q    Okay.  Now, again, my questions now have to do
7  with this **reinsurance agreement you** testified **about**, and my
8  question is:  In putting this agreement together, do you
9  remember if Mr. Hackney approached you first or if you
10 **approached** him?
11      A    I can't answer that question.
12      Q    Okay.  Is it because you're not sure how it got
13 started?
14      A    To be exact, no.
15      Q    I understand you had other people working for you
16 doing other things; correct?
17      A    Charles Olinger was the fellow who made the
18 negotiations.
19      Q    Okay.  But I assume that there was -- are you
20 familiar with the term "due diligence" in business matters?
21      **A**    Sure.
22      Q    And why don't you tell the jurors what your
23 understanding of due diligence is?
24      A    Well, due diligence is making sure you have all the
25 facts before you go into a transaction, and we depended on

1   the bureau of insurance, the best rating, plus the
2   investigation that they done.  And I was convinced that
3   Charlie Olinger, who is a CPA, and our attorney, Terry Frye,
4   in-house, had done the due diligence.
5       Q    So, as far as you were concerned, you had properly
6   checked out Mr. Hackney and his companies; correct?
7       A    Me personally?
8       Q    No, no. I mean your company had done its work?
9       A    So far as I know. So far as I know.
10      Q    And what you learned later on was that there was a
11  fraudulent scheme and you were really bamboozled out of that
12  money; correct?
13      A    An understatement.
14      Q    Right.  So I guess that in order to have tricked
15  accountants and actuaries, this had to be a pretty clever
16  scheme; would you agree?
17      A    Unbelievable.
18           MR. KELLY:  Thank you.  I don't have any
19       further questions, Mr. Harmon.
20           MR. CALIFANO:  No further questions,
21       Your Honor.  Thank you, Mr. Harmon.
22           THE COURT:  Thank you, Mr. Harmon.
23           THE WITNESS:  Thank you.
24
25           (Witness excused:  11:07 a.m.)

# Exhibit 2



# SUPREME COURT OF MISSISSIPPI

POST OFFICE BOX 117
JACKSON, MISSISSIPPI 39205
TELEPHONE (601) 359-3697
FAX (601) 359-2443

JAMES W. SMITH, JR.
CHEF JUSTICE

WILLIAM L WALLER, JR.
KAY B. COBB
PRESIDING JUSTICES

OLIVER E. DIAZ, M.
CHUCK EASLEY
GEORGE C. CARLSON, JR.
JAMES B. GRAVES, JR.
JESS H. DICKINSON
MICHAEL K. MNDOLPH
JUSTICES

STEPHEN J. KIRCI IMAYR
OOUBTADMINISTRATOR

January 28, 2005

Alex A. Alston, Jr.
Brunini, Grantham, Grower &
Hewes, PLLC
P O Drawer 119
Jackson, MS 39205

Ricky G. Luke
Craig Hester Luke & Dodson
P O Box 12005
Jackson, MS 39236-2005

David L. Martin
Kristina M. Johnson
Watkins, Ludlam, Winter &
Stennis, PA.
P O Box 427
Jackson, MS 39205-0427

Forest B. Lam*miman*
Brian 1. Hays
Randall A_ Hack
Lord Bissell & Brook
115 S. LaSalle Street
Chicago, IL 60603

Charles G. Copeland
Rebecca Suzanne Blunden
Copeland Cook Taylor & Bush .
P O Box 6020
Ridgeland, MS 39158-6020

Charles T. Richardson
Baker & Daniels
805 15th Street, NW, Suite 700
Washington, DC 20005

Dear Counselors_

Re-   *Huff-Cook, Ina Peoples Benefit Life Ins. Co.* **and** *Veterans Life Ins. Co. v.* **George**
      *Dale, Commissioner of Insurance of the State of Missi   pp4 In His Capacity as*
      *Liquidator of First National Life Ins. Co. of America, Mississippi Life and Health Ins.*
      *Guaranty Assn. and National Organization of Life and Health Ins. Guaranty*
      *Associations* - 2004-CA-0061 ?-SCT

    In accordance with Supreme Court of Mississippi Rule 34, your request for oral argument is granted and <u>set for Tuesday, April 5, 2005, at 10:30 AM.</u>  Each side will be allowed 20 (TWENTY) minutes for *oral* argument. However, if you desire your case to be submitted on briefs alone without oral argument, please notify this office immediately_

    Oral arguments can be viewed live on the Court's website at <u>www,mssc,state.ms.(ts,</u>  Click the Docket Calendar button to view the live broadcast schedule.

Please acknowledge receipt of this notice by photocopying this letter, signing below, and returning to the undersigned no later than two weeks prior to the scheduled date of argument.

Sincerely yours,
FOR THE COURT

STEVE KIRCHMAYR
Court Administrator

cc: Supreme Court Clerk

Name _____  31, 05

# INFORMATION SHEET
## FOR ATTORNEYS APPEARING BEFORE THE
## SUPREME COURT OF MISSISSIPPI

1) Enclosed is a map of the third floor of the Gartin Justice Building where you will appear for the oral argument. Due to construction, parking is extremely limited and attorneys appearing before the Court should park in the public parking areas on High Street across from the Gartin Justice Building.

2) Upon arrival, please check in with the Court Bailiff, inside the courtroom on the third floor, by 9:15 a.m. for arguments scheduled for 9:30 a.m. and by 1:15 p.m. for arguments scheduled for 1:30 p.m.

3) Appellant(s) attorneys should sit to the Justices' right side, as indicated on the map. Appellee(s) attorneys should sit on the Justices' left side, as indicated on the map.

4) When each side's argument begins, each attorney should introduce himself/herself to the Court.

5) The podium from which the attorneys will argue contains a panel of lights. • Should you indicate to the Bailiff that you wish a two-minute warning before your allotted time for argument has expired, a yellow light will come on when two minutes remain. A red limit will come on when argument time has expired. These lights are the official indicator of elapsed time. If possible, the Bailiff may also give verbal warnings; however, the Bailiff will not interrupt you or a Justice to give a verbal warning unless there is a natural break in the flow of the argument.

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>    v.<br><br>$29,035,500 IN ACCOUNT NUMBER 20X6875(06), HELD IN THE NAME OF U.S. CUSTOMS SUSPENSE ACCOUNT AT THE FEDERAL RESERVE BANK OF NEW YORK, et al.<br><br>        Defendants. | Civil No. 3:01 CV 1515 (EBB) |
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>    v.<br><br>277 DIAMONDS VALUED AT APPROXIMATELY $2,461,093.00, et al.<br><br>        Defendants. | Civil No. 3:02 CV 889 **(EBB)** |

**HUFF-COOK, INC., PEOPLES BENEFIT LIFE INSURANCE COMPANY AND VETERANS LIFE INSURANCE COMPANY´S FIRST REQUEST FOR ADMISSIONS FROM FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA**

TO:    Douglas S. Skalka
           Newbert, Pepe & Monteith
           195 Church St.
           13th Floor
           New Haven, CT 06510

HUFF-COOK, INC., PEOPLES BENEFIT LIFE INSURANCE COMPANY AND VETERANS LIFE INSURANCE COMPANY (collectively, "PVS"), by their attorneys, Forrest B. Lammiman, Randall A. Hack, Brian I. Hays and David N. Rosen, submit the following Requests for Admission, pursuant to Rule 36 of the Federal Rules of Civil Procedure, to George

Dale, Liquidator of First National Life Insurance Company of America ("Receiver"). PVS requests that Receiver respond to each request separately, fully, in writing, and under oath within 30 days of service hereof.

To the extent that any answer to these Requests may at any time be incomplete or incorrect due to information acquired by Receiver subsequent to the filing of its answers, PVS requests that Reciever promptly serve and file supplemental answers reflecting the complete and correct information, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

## I.   INSTRUCTIONS

Please comply with the following instructions:

1.   To the extent that you believe any of the Requests are objectionable, answer so much of the Request as is not objectionable and separately state the portion of each Request to which you object and the grounds or basis for the objection.

2.   To the extent that you believe any of the Requests call for the production or disclosure of information that you consider to be protected by a privilege, answer so much of the Request as is not objectionable and produce a privilege log indicating, for each document, communication, or other piece of information as to which you contend is protected by a privilege: (i) the nature of the document, communication, or other piece of infonnation (e.g., letter, notes, memorandum, telephone conversation, meeting, etc.), (ii) identify the date the document was created, the communication occurred, or the infonnation was generated; (iii) describe, in general, the subject matter of the document, communication, or information; (iv) identify the individual and/or entity to whom it pertains; (v) identify the persons *who* authored, wrote, signed, dictated, said or otherwise participated in the creation of the document, communication or information; (vi) identify all persons *who* received or heard an original or copy of each such document, communication or information; (vii) state the privilege you believe

2

protects the document, communication or information from disclosure and the basis for your contention that the document, communication or information is subject to that privilege.

## II. REQUESTS FOR ADMISSION

Admit or deny each of the following requests for admissions:

**Request No. 1:** Banque SCS Alliance Account No. 70026 ("Account No. 70026") was held in the name of Bloomfield Investments, Ltd.

Response:

**Request No. 2:** Martin Frankel ("Frankel") opened Account No. 70026 on or about July 1, 1992.

**Response:**

**Request No. 3:** Frankel incorporated and controlled Bloomfield Investments, Ltd.

**Response:**

**Request No. 4:** Frankel was authorized to make deposits and withdrawals from Account No. 70026.

**Response:**

**Request No. 5:** On December 24, 1997, Frankel gave Kaethe Schuchter a power of attorney authorizing her as an additional person authorized to approve deposits and withdrawals from Account No. 70026.

**Response:**

**Request No. 6:** Frankel owned and controlled Devonshire Technologies, Ltd.

**Response:**

**Request No. 7:** Frankel was the President and Secretary of Devonshire Technologies, Ltd.

**Response:**

**Request No. 8:** Dreyfus Cash Management Account No. 719-079-1438435 at the Bank of New York Account No. 8900052252 ("BONY Account") was held in the name of LNS Inc.

**Response:**

**Request No. 9:**   The BONY Account was opened on July 29, 1998 by a caller identifying himself as Eric Stevens.

**Response:**

**Request No. 10:**   Eric Stevens was a pseudonym used by Frankel.

**Response:**

**Request No. 11:**   All funds deposited into the BONY Account were instructed to be transferred to UBS AG (then, Swiss Bank Corp.) Account No. 101-WA 206626-000 ("UBS Account") for fmal deposit in Account No. 70026.

**Response:**

**Request No. 12:**   The UBS Account was held in the name of Banque SCS Alliance SA.

**Response:**

**Request No. 13:**   On November 6, 1998, Peoples Benefit Life Insurance Company ("Peoples") and Veterans Life Insurance Company ("Veterans") transferred $7,287,504.00 from First National Bank of Maryland Account No. 89487248 ("P&V Account") to First Tennessee Bank Account No. 100057727.

**Response:**

**Request No. 14:**   First Tennessee Bank Account No. 100057727 was held in the name of First National Life Insurance Company of America.

**Response:**

**Request No. 15:**   On November 10, 1998, $5,000,000.00 was transferred from First Tennessee Bank Account No. 100057727 to the BONY Account. TN 48199, 48204

**Response:**

**Request No. 16:**   On November 17, 1998, $5,000,000 was transferred from the BONY Account to the UBS Account for further credit to Account No. 70026.

**Response:**

**Request No. 17:**   On November 17, 1998, $5,004,936.51 was transferred from the BONY Account to Account No. 70026 receipt from "Dreyfus Cash Management Plus Inc."

**Response:**

4

**Request No. 18:**     On January 19, 1999, Peoples and Veterans transferred $2,134,101.00 from the P&V Account to First Tennessee Bank Account No. 100057727.

**Response:**

**Request No.** 19:     On January 20, 1999 $2,134,000.00 was transferred from First Tennessee Bank Account No. 100057727 to the BONY Account.

**Response:**

**Request No. 20:**     On February 25, 1999, Peoples and Veterans transferred $5,267,988.00 from the P&V Account to First Tennessee Bank Account No. 100057727. TN 48201, 48209, AEG 599

**Response:**

**Request No. 21:**     On March 2, 1999, $5,400,000.00 was transferred from First Tennessee Bank Account No. 100057727 to the BONY Account.

**Response:**

**Request No. 22:**     On March 11, 1999, $7,553,786.84 was transferred from the BONY Account to Account No. 70026.

**Response:**

**Request** No. 23:     On March 26, 1999, $3,000,000.00 less correspondence charges was transferred from Account No. 70026 to Bank Leumi Account No. 0102931920.

**Response:**

**Request No. 24:**     **Bank** Leumi Account No. 0102931920 was held in the name of World Wide Diamonds.

**Response:**

**Request No. 25:**     The foregoing March 26, 1999 transfer to Account No. 0102931920 was authorized by Frankel.

**Response:**

**Request No. 26:**     On April 1, 1999, $2,000,050.62 less correspondence charges was transferred from Account No. 70026 to Bank Leumi Account No. 0102931920.

**Response:**

5

**Request No.** 27:    Bank Leumi Account No. 0102931920 was held in the name of Robert A. Weiner d/b/a World Wide Diamonds.

**Response:**

**Request No. 28:**    On April 1, 1999, $1,999,985.00 was credited to Bank Leumi Account No. 01029319 held in the name of Robert A. Wiener d/b/a Worldwide Diamond Co. for the benefit of Devonshire Technologies, Ltd.

**Response:**

**Request No. 29:**    The foregoing amount transferred to Bank Leumi Account No. 01029319 on April 1, 1999 was used to purchase diamonds from Robert A. Wiener d/b/a Worldwide Diamond Co.

**Response:**

**Request No. 30:**    **Frankel** placed the order for the purchase of diamonds with the foregoing funds transferred from Account No. 70026 to Bank Leumi Account No. 01029319.

**Response:**

**Request** No. 31:    At least a portion of these diamonds were seized by the United States government and became subject to a civil forfeiture action pending before Judge Burns in the United States District Court for the District of Connecticut entitled, United States v. 277 Diamonds, Civil No. 3:02 CV 889 (EBB).

**Response:**

**Request No. 32:**    On April 6, 1999, $16,000,050.41 less correspondence charges was transferred from Account No. 70026 to Farmers & Merchants Bank Account No. 01069446.

**Response:**

**Request No. 33:**    Farmers & Merchants Bank Account No. 01069446 was held in the name of Monex Deposit Company.

**Response:**

**Request** No. 34:    The foregoing amount transferred to Farmers & Merchants Bank Account No. 01069446 was made by order of Devonshire Technologies Limited.

**Response:**

6