Exhibit 5

# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2004-CA-00617

HUFF-COOK, INC., PEOPLES BENEFIT LIFE
INSURANCE COMPANY, and VETERANS LIFE
INSURANCE COMPANY                                                    APPELLANTS

vs.

GEORGE DALE, COMMISSIONER OF INSURANCE
OF THE STATE OF MISSISSIPPI                                          APPELLEE

### PETITIONERS' BRIEF IN SUPPORT OF THEIR APPEAL

### ORAL ARGUMENT REQUESTED

SUBMITTED BY:

Alex A. Alston, Jr. (MB #1543)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
1400 Trustmark Building
248 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205-0119
Telephone: (601) 948-3101
Fax: (601) 960-6902

*Of Counsel*
Forrest B. Lammiman
Randall A. Hack
Brian I. Hays
LORD, BISSELL & BROOK LLP
115 S. LaSalle Street
Chicago, Illinois 60603
Telephone: (312) 443-0700
Fax: (312) 443-0336

### ATTORNEYS FOR APPELLANTS

## Certificate of Interested Persons

Case No. 2004-TS-00617, Huff-Cook, Inc., et al. v. Dale.

The undersigned counsel of record certifies that the following listed persons have an interest in the **outcome** of this case. These **representations** are made in order that the justices of the Supreme Court and/or the judges of the Court of Appeals may **evaluate** possible **disqualification** or recusal.

1. Veterans Life Insurance Company is party.

2. Peoples Benefit Life Insurance Company is a party.

3. Monumental Life Insurance Company is the parent of Peoples Benefit Life Insurance Company.

4. Capital General Development Corporation is the parent of Monumental Life Insurance Company.

5. Commonwealth General Corporation, a Delaware corporation, is the parent of Capital General Development Corporation.

6. TransAmerica Holding Company, a Delaware corporation; is the parent of Commonwealth General Corporation.

7. AEGON USA, Inc., an Iowa corporation, is the parent of TransAmerica Holding Company.

8. AEGON U.S. Holding Corporation, a Delaware corporation, is the parent of AEGON USA, Inc.

9. The AEGON Trust is the parent of AEGON U.S. Holding Corporation.

10. AEGON International, N.V., a Netherlands Corporation, is the parent of The AEGON Trust.

11. AEGON, N.V., a Netherlands Corporation, is the parent of AEGON International, N.V.

12. Huff-Cook, Inc. is a party.

13. Settlers Life Insurance Company by agreement dated December 15, 1999 assigned its claims against First National Life Insurance Company of America to Huff-Cook, Inc. Under the terms of the agreement, Settlers Life Insurance Company will receive a percentage of any amounts recovered by Huff-Cook, Inc.

14.    **National Guardian Life Insurance Company purchased the stock of Settlers Life Insurance Company in the receivership.**

15.    George Dale, Commissioner of the State of Mississippi, is a party.

16.    First National Life Insurance Company of America is a party.

17.    **The National Organization of Life and Health Guaranty Associations is a creditor of First National Life Insurance Company of America and has filed an appearance with the Chancery Court.**

18.    **The Mississippi Life and Health Guaranty Association is a creditor of First National Life Insurance Company of America and has been allowed to intervene in the case below.**

**Attorney of record for Appellants**

i4

{}

{!

## Table of Contents

Table of Contents............................................................................................iv
Table of Authorities.........................................................................................v
STATEMENT OF ISSUES............................................................................ 1
STATEMENT OF THE CASE........................................................................ 2
SUMMARY OF THE ARGUMENT............................................................... 11
**ARGUMENT**.................................................................................................. **14**
**I.**    STANDARD OF REVIEW.....................................................................15
H.    PETITIONERS ARE ENTITLED TO CONSTRUCTIVE TRUSTS TO RECOVER THEIR STOLEN PROPERTY..........................................................................16
   A.    Mississippi Has Long Recognized Constructive Trusts to Remedy Fraud and Breaches of Confidence......................................................................................... 17
   B.    Constructive Trusts Are Routinely Applied By Courts in Insolvency Proceedings........ 19
   C.    Because of FNL's Fraud, Petitioners Have Stated Claims for Constructive Trusts and to Establish Title in Petitioners' Property ...................................................................21
      1.    The Petitioners Have Adequately Alleged Facts Supporting Their Claim that FNL Fraudulently Induced Them to Enter into the Reinsurance Agreements ........................22
      2.    The Petitioners Have Adequately Alleged Facts Supporting Their Claim That FNL Breached Its Duty of Utmost Good Faith................................................................ 24
      3.    The Petitioners Are Able to Trace Their Property to the Forfeiture Proceedings ....... 25
   D.    Petitioners' Constructive Trust Arose at the Time of FNL's Fraudulent Acts, Prior to FNL Being Placed into Rehabilitation and Liquidation...............................................26
HI.    THE CHANCERY COURT ERRED IN HOLDING THAT THE LIQUIDATION OF FNL DEFEATS THE PETITIONERS' PROPERTY RIGHTS TO THE FORFEITED FUNDS 27
   A.    The Assets of the FNL Estate Are Defined by Mississippi Property Law ....................28
   B.    The Chancellor Erred in Giving the Receiver Rights that He Is Not Entitled to Under the Liquidation Act.............................................................................................. 29
   C.    The Chancellor Erred as a Matter of Law in Applying the Priority Statute to the Funds Being Held in the Forfeiture Proceedings ............................................................. 30
   D.    The Chancellor Erred in Finding that the Petitioners' Constructive Trust Claims Were Too Indirect **and** Contingent, **and,** Therefore Not Cognizable.......................................32
W.    ALLOWING THE DECISION BELOW TO STAND WOULD NOT SERVE THE PUBLIC POLICY OF ALLOWING VICTIMS TO RECOVER THEIR STOLEN PROPERTY34
V.    THE CHANCERY COURT ERRED IN NOT ADDRESSING THE PETITIONERS' CLAIMS IN THE ALTERNATIVE THAT THEY ARE SECURED CREDITORS............... 36
VI.    CONCLUSION ..........................................................................................3 8

n

### Table of Authorities

**Cases**

Allstate Ins. Co. v. Estes, 345 So. 2d 265, 266 (Miss., 1977) ..............................................

Anderson v. Yates, 99 So. 499, 501 (Miss. 1924) .................................................................22

Begier v. I.R.S., 496 U.S. 53, 59 (1990) ...............................................................................34

Belisle v. Plunkett, 877 F.2d 512, 515 (7th Cir. 1989)..........................................................31

Boyd v. Doskocil Sausage Co., 686 F. Supp. 875, 878 (D. Kan. 1988) ...............................27

Brown v. Credit Center, Inc., 44 So. 2d 358, 362 (Miss. 1987)............................................16

Butner v. United States, 440 U.S. 48 (1979)......................................................................29, 32

City of Tupelo v. Martin, Nos. 97-IA-01542-SCT (¶ 26), 747 So. 2d 822, 829 (1999)..............15

Commercial National Bank of Shreveport v. Superior Court, et al., 14 Cal. App. 4th 393, 17 Cal.Rptr.2d 884, 900 (1993) ...................................................................................20, 21

Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 43 (1st Cir. 2000) .........24

Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp., 944 F. Supp. 986, 995-96 (D. Mass. 1996)....................................................................................24

Covington v. University Hospitals of Cleveland, 778 N.E.2d 54, 57 (Ohio Ct. App. 2002).........21

Dale v. ALA Acquisitions I, Inc., et al., Case No. 3:00 CV 359LN (S.D. Miss.) ...........................38

Daniels v. GNB, Inc., 629 So. 2d 595, 599 (Miss. 1993)........................................................15

East v. Crowdus, 302 F.2d 645, 649-650 (8th Cir. 1962) ................................................34, 35

Eisenberg v. Grand Bank for Savings, FSB, No. 02-60695, 2003 WL 21683600, *5 (5th Cir. Jul. 18, 2003).....................................................................................................18, 25

FDIC v. Ernst & Young, 967 F.2d 166, 171 (5th Cir. 1992)..................................................22

First Nat'l Bank of Jackson v. Huff, 441 So. 2d 1317, 1320-21 (Miss. 1983) ...........................26

Franklin v. Thompson, No. 97-CA-00897-SCT (19), 722 So. 2d 688, 691 (Miss. 1998)............16

Gardner v. Jones, 464 So. 2d 1144, 1150 n.3 (Miss. 1985).....................................................18

Georgia Pacific Corp. v. Sigma Sew. Corp., 712 F.2d 962, 968 (5th Cir. 1983)..........................34

Gorman v. Littlefield, 229 U.S. 19, 25 (1913) .......................................................................13

In re Advanced Cellular Systems, 235 B.R. 713, 717-18 (Bankr. D. Puerto Rico 1999) ............20

In re Howard's Appliance Corp., 874 F.2d 88, 93 (2d Cir. 1989)...........................................34

In re Koreag, Controle et Revision S.A., 961 F.2d 341, 351 (2d Cir. 1992) .........................34

In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1576 (9th Cir. 1985)..................35

In re Stridacchio, 107 F. Supp. 486, 487 (D.N.J. 1952).........................................................23

In re Wade, 287 B.R. 874, 880 n.8 (S.D. Miss. 2001).............................................................30

In the Matter of Anjopa Paper & Board Manufacturing Co., 269 F. Supp. 241, 260 n.23 (S.D.N.Y. 1967)..............................................................................................................35

In the Matter of First Columbia Life Ins. Co., 724 So. 2d 790, 795 (La. Ct. App. 1998) ...........21

In the Matter of Haber Oil Co., 12 F.3d 426, 435 (5th Cir. 1994)..........................................34

In the Matter of Kennedy & Cohen, Inc., 612 F.2d 963, 965 (5th Cir. 1980) ....................19, 34

In the Matter of Liquidation of Union Ind. Ins. Co., 674 N.E.2d 313, 320 (N.Y. 1996)........24, 29

In the Matter of Maple Mortg., Inc., 81 F.3d 592, 596 (5th Cir. 1996)............................... 34

In the Matter of Paragon Sec. Co., 589 F.2d 1240, 1242 (3d Cir. 1978) .................................23

In the Matter of Pinetree, Ltd., 876 F.2d 34, 36-37 (5th Cir. 1989) .......................................30

In the Matter of Quality Holstein Leasing, 752 F.2d 1009, 1012 (5th Cir. 1985)........................19

J.R. Haralson v. E.F. Hutton Group, Inc., 919 F.2d 1014, 1026 (5th Cir. 1991) ......................22

Kountouris v. Varvaris, 476 So. 2d 599, 603 n. 3 (Miss. 1985).............................................15

Lackey v. Lackey, 691 So. 2d 990, 995 (Miss. 1997)..............................................................29

**McDonough**Caperton Shepherd Group, Inc. v. Academy of Medicine, 888 F.2d 1392,1989 WL
128675, *4 (**6th** Cir. Oct. 30, **1989**) ................................................................ 28

McNeil v. Hester, **No. 97-CA-00048-SCT (1 25),** 753 So. 2d 1057, 1064 (2000) ................ 19, 21

Milliken & Michaels, Inc.**v. Fred**Netterville Lumber Co., 676 So. 2d 266, 271 (Miss. **1996**) ...21

Nichols v. American Risk**Management, Inc.,** No. 89 Civ. 2999 (JSM), 2002 WL 31556384, *1
(S.D.N.Y. **Nov.** 18, 2002) .........................................................................................24

**Nicklaus v. Bank of Russellville,** 336 F.2d 144, 145 (8th Cir. 1964) ................................ 22, 23

**Pearlman v. Reliance**Ins. Co., 371 **U.S.** 132, **135-36** (1962) ...............................................13

Pine Top Ins. Co. v. Republic Western Ins. Co., 123 B.R. 277, 281 (N.D.I11. 1990) .................21

**Pioneer Annuity Life Ins. Co. v. National Equity Life Ins. Co.,** 765 P.2d 550, 555 (Ariz. App.
**1988**) ........................................................................................................... 36, 37

Planters**Bank**&**Trust Co. v. Sklar,** 555 So. 2d 1024, 1034 (Miss. 1990) ................................17

Rawlings v. American Oil Co., 161 **So. 851, 854** (Miss. 1935).............................................. 12, 29

**Reed v. Charping,** 41 So. 2d 11, 12 (Miss. 1949) ...........................................................18

**Richardson v.**Lloyds of**London,** 896 F. Supp. 428, 431(E.D. Pa. 1995)..................................33

Russell v. Douglas, **243** Miss. 497 (Miss. 1962)...................................................................17

**Saulsberry v. Saulsberry,** 223 Miss. 684, 690, 78 So. 2d 758, 760 (1955) .....................11, 17, 22

**Sender v. Simon,** 84 F.3d 1299, 1307 (10th Cir. 1996) .................................................... 29

Shell Pipe Line Corp. v. West Texas Marketing Corp., 540 F. Supp. 1155, 1160 (S.D. Tex. 1982)

**Simmons v. Atkinson**&**Lampton**Co., 69 Miss. 862, 867 (Miss. **1896**)....................................18

**Sojourner v. Sojourner,** 153 So. 2d 803, 807 (1963)...........................................................17

South Mississippi Finance Co. v. Mississippi State Tax Cont., 605 So. 2d 736, 739 (Miss. 1992)

Stephens v. American Home Ins. Co., 811 F. **Supp.** 937, 947, **(S.D.N.Y.** 1993) ................. 12, 30

**United**Fire & Cas. Co.**v. Arkwright Mut. Ins. Co.,** 53 F. Supp. 2d 632, 642 (S.D.N.Y. **1999**) .. 24

United of Omaha Life Ins. Co. v. Udisky, No. C-2-00-158, 2001 WL 102670, *5 (S.D. Ohio **Jan.**
23, 2001) .........................................................................................................33

**United States v.** $11,014,165.20, Civil No. **3:99 CV 2589 (EBB)** ............................................3

**United States v.** $140,000.00, Civil No. 3:00 CV 01910 **(EBB)** ...............................................3

**United States v.** $29,035,500.00, Civil No. 3:01 CV 1515 **(EBB)**..............................................3

**United**States**v.** $29,035,500.00, Civil No. 3:01CV1515(EBB)........................................... 10

**United**States**v.** $596,013.77, Civil No. 3:00 CV 02010 (EBB) .............................................3

United States v. $662,310.70, Civil No. 3:00 CV **02009 (EBB)**...............................................3

**United**States v. 277**Diamonds,** Civil No. 3:00 CV 889 (EBB)................................................3

**United**States v. 50 Cases of Wine, Civil No. 3:00 CV 02008 (EBB) ........................................3

**United**States**v. 895 Lake Ave.,** Civil No. **3:99** CV 01772 **(EBB)**.............................................3

United States**v.**One**1995 Turbo**Commander Aircraft,**No.** 3:99-CV-2590 (EBB), 3:99-CV-
2589 **(EBB), 2000** WL **1838334,** *2 (D. Conn. Oct. 31, 2000) ..........................................3

**United**States**v.**One**1995 Turbo Commander,** Civil No. 3:99 CV 02590 **(EBB)** .......................3

**United**States**v.**One**1999 Chevrolet Tahoe,** Civil No. 3:00 CV 02007 (EBB) ...........................3

United States v. One Parcel of Property Located at 1303 Signal Point Alabama, Civil No. 3:00
CV 0247 **(EBB)**...................................................................................................3

United States v. One Parcel of**Property**Located at**889**Lake Ave., Civil No. 3:99 CV 00979
**(EBB)** ...............................................................................................................3

United States**v. Peoples**Benefit Life Ins. Co., 271 F.3d 411, 417 (2d Cir. 2001) .....................3, 32

United States v. Peoples Benefit Life Insurance Company, 271 F.3d 411 (2d Cir. 2001) .......20, 32

<u>Village of Canon v. Bankers Trust Co.,</u> No. 95 Civ. 3706 (JGK), 1997 WL 47804, *6 (S.D.N.Y. Feb. **5, 1997**) ...................................................................................................27

<u>Wholey v. Cal-Maine Foods, Inc.,</u> 530 So. 2d 136, 140-41 (Miss. 1988) ...................................26

## Statutes

§ **83-24-1**.............................................................................................................. 13

§ **83-24-3**.............................................................................................................**36**

§ **83-24-35**.........................................................................................................13, 30

§ **83-24-7**........................................................................................................1, 29, 37

§ **83-24-83**..................................................................................................4, 22, 31, 32

11 **U.S.C.** § 541....................................................................................................21, **35**

**ARIZ. REV.** STAT. ANN. § **20-611**...............................................................................37

## Treatises

**44** C.J.S. **Insurance** § 163..........................................................................................**28, 31**

**5 Collier on Bankruptcy (15th rev. ed. 2001) 541** ..........................................................21

**54** Am. Jur., Trusts, § 218............................................................................................18

5A WRIGHT & MILLER, FEDERAL PRAC. & PROC. § **1369**...............................................16

**65** Am. Jur. 2d, Receivers § 199...................................................................................21

75 C.J.S. Receivers § 105............................................................................................30

75 C.J.S. Receivers § 106............................................................................................30

76 Am Jur 2d, Trusts, § 21..........................................................................................18

**89** C.J.S. Trusts, § 142..............................................................................................19

9 Am. Jur. 2d § 903...................................................................................................24

Rest. (1st) Restitution § 161.......................................................................................20

Rest. (1st) Restitution § 202.......................................................................................20

n

t

## **STATEMENT OF ISSUES**

1.      Did the Chancery Court err as a matter of law in holding that the Petitioners, concededly victims of a fraud perpetrated by a failed insurance company and who can trace their property to funds held in forfeiture proceedings, cannot recover their property through a constructive trust?

2.      In granting summary judgment without addressing the Petitioners' claims as secured creditors, did the Chancery Court err as a matter of law in holding that funds subject to a constructive trust do not give rise to a secured claim as defined in Mississippi Code § 83-24-7(p)?

0

11

## STATEMENT OF THE CASE

This matter arises from the **notorious** theft of hundreds of millions of dollars orchestrated by, among others, First National Life Insurance Company of America ("FNL") under the ownership, control and direction of Martin Frankel. Frankel, along with his henchmen at FNL, John Hackney and Gary Atnip, have pled guilty to felonies based on their roles in this fraudulent scheme.  **Huff-Cook,** Inc. ("Settlers"), Peoples Benefit Life Insurance Company ("Peoples") and Veterans Life Insurance Company ("Veterans") (collectively, "Petitioners") are three of the largest victims of FNL's fraud, having been **defrauded** of $60 million.

FNL, at the direction and for the benefit of Frankel, defrauded Settlers out of approximately $45 million and defrauded Peoples and Veterans out of approximately $15 million. Through a series of misrepresentations and omissions, FNL fraudulently induced the Petitioners into entering reinsurance agreements whereby the Petitioners were to transfer blocks of insurance policies along with approximately $60 million in reserve funds associated with the policies to FNL, with liability under the policies to be transferred to FNL when state insurance regulators approved the novation. These agreements were fraudulent from the first - Frankel and FNL intended to misappropriate the funds for the personal benefit of Frankel and his accomplices.

Although the Petitioners transferred their respective reserve funds to FNL, FNL never obtained the necessary regulatory approval from the Mississippi Department of Insurance for the transfer of the liabilities on the policies to FNL.   Therefore, the Petitioners have remained liable for and have been administering and paying claims on the policies after having been fraudulently induced to part with the funds reserved for those policies.

Almost immediately after the Petitioners sent the reserve funds to FNL, the directors and officers of FNL transferred the funds to Frankel's control. The funds were sent on to a Swiss

2

1

r

t

bank account controlled by Frankel. Through records obtained in this and other related cases, the approximately $60 million in reserve funds now can be traced from the Petitioners' bank **accounts, through** accounts owned by FNL in Tennessee, **on** to **Frankel's** Swiss **bank account** and from there to monies, **gold coins** and **diamonds which currently** are the **subject** of four of the **numerous** forfeiture **proceedings pending** in the **United** States District Court for **the** District **of Connecticut** (the **"Forfeiture Proceedings"),** [1]

The Petitioners filed statements **of** claim in two of the **Forfeiture Proceedings.** [2]  These claims are still pending. The Petitioners filed motions to intervene in two other Forfeiture Proceedings that had commenced earlier without notice to the Petitioners? The District Court denied the motions to intervene.  United States v. One 1995 Turbo Commander Aircraft, No. 3:99-CV-2590 (EBB), 3:99-CV-2589 (EBB), 2000 WL 1838334, *2 (D. Conn. Oct. 31, 2000). The United States Court of Appeals for the Second Circuit affirmed the lower court's ruling, based in part upon the Petitioners' inability to trace their funds at that time and also because the Second Circuit concluded that the Petitioners should pursue their constructive trust claims in FNL's liquidation proceeding in Mississippi. See  United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 417 (2d Cir. 2001).

Through both the statements of claim and the motions to intervene, the Petitioners have

:J

---

Eight other forfeiture **proceedings have been** filed **by the** United States **against** other **properties** traced **to** Frankel's **fraud. The** Petitioners **have not** asserted claims **in** these **other proceedings.** See **United**States v. One Parcel of Property**Located**at 1303 Signal**Point Alabama,** Civil No. 3:00 CV 0247 (EBB); United States v.**$140,000.00,** Civil No. 3:00 CV 01910 (EBB); United States v. 895 Lake Ave., Civil No. **3:99** CV 01772 **(EBB); United**States v. One Parcel of Property Located at**889**Lake Ave., Civil No. 3:99 CV **00979** (EBB); United States v. $596,013.77, Civil No. 3:00 CV 02010 (EBB); **United**States v. One**1999 Chevrolet Tahoe,** Civil No. 3:00 CV 02007 (EBB); United States v. $662,310.70, Civil No. 3:00 CV 02009 (EBB); United States v. 50 Cases of Wine, Civil No. 3:00 CV 02008 (EBB).

[2] United States v. 277 Diamonds, Civil No. 3:02 CV **889** (EBB); United States v. $29,035,500.00, Civil No. 3:01 CV 1515 (EBB).

United States v. $11,014,165.20, Civil No. 3:99 CV 2589 (EBB); United States v. One 1995 Turbo Commander, Civil No. 3:99 CV 02590 (EBB).

3

asserted their property rights to the forfeited properties under theories of constructive trusts. In affirming the denial of the motions to intervene, the Second Circuit directed the Petitioners to the FNL **liquidation** proceedings as the proper venue for **adjudicating** the Petitioners' property rights to the funds held in the **Forfeiture** Proceedings. Id. at 417.

### Course of Proceedings and Disposition Below

In addition to filing statements of claim and motions to intervene in the Forfeiture Proceedings, the Petitioners also filed proofs of claim in the FNL liquidation asserting the same claims to recover their property held in the Forfeiture Proceedings under theories of constructive trusts. The Receiver rejected the Petitioners' constructive trust claims and classified the Petitioners as Class 6 unsecured creditors as defined in § 83-24-83.

On March 11, 2002, the Petitioners filed their Petition for Declaratory Relief of Huff-Cook, Inc., Peoples Benefit Life Insurance Company and Veterans Life Insurance Company ("Petition") in the Hinds County Chancery Court asking the court to impose constructive trusts in favor of the Petitioners over certain properties that are traceable as the Petitioners' funds. The Receiver filed his Answer and Defenses to Petition for Declaratory Relief of Huff-Cook Inc., Peoples Benefit Life Insurance Company and Veterans Life Insurance ("Answer") on May 10, 2002. Discovery was proceeding, subpoenas had been issued, documents produced and the parties were scheduling deposition dates for witnesses.

On June 25, 2003, in the middle of scheduling depositions, the Receiver filed a Motion for Protective Order, Stay, and Discovery Conference seeking a stay of deposition discovery on the basis that the Receiver intended to file a Rule 12(c) motion for judgment on the pleadings. The Chancery Court granted the stay of discovery on July 15, 2003.

On September 15, 2003, the Receiver filed a Motion for Judgment on the Pleadings ("Receiver's 12(c) Motion") asking the Chancery Court to enter judgment against the Petitioners

4

on their claims. In his motion the Receiver argued that constructive trusts are not recognized in the context of an **insurance liquidation.** (Receiver's 12(c) Motion, R. 379.) In their **response,** the Petitioners argued that constructive trusts had long been **applied** by courts in insolvency, **receivership** and **bankruptcy** proceedings and that **nothing** in the Liquidation Act stripped the Petitioners of their property rights or granted the Receiver greater rights to the properties than FNL itself would have had if FNL were not in liquidation. (Petitioners' Response to Receiver's Motion for Judgment on the Pleadings ("Response to 12(c) Motion"), R. 505-510, 514-516.) In the alternative, the Petitioners argued that they are Class 2 secured creditors. (Id., R. 518-520.)

On February 4, 2004, without prior notice or the opportunity to present evidence, the Chancery Court converted the Rule 12(c) motion for judgment on the pleadings to a Rule 56 motion for summary judgment and entered summary judgment in favor of the Receiver. (Order Granting Motion for Summary Judgment ("Summary Judgment Order"), R. 608-610.) The Chancery Court held that the Petitioners, though concededly victims of the massive web of fraud created by Martin Frankel, FNL and others using insurance companies Frankel secretly controlled, are barred as a matter of Mississippi law from asserting a constructive trust in the traceable proceeds of the $60 million taken from them by Frankel and FNL. (Id., R. 609.) The Chancery Court held that the Petitioners could not assert a constructive trust in those proceeds because the remedy of a constructive trust is not available to defrauded parties when the fraud was perpetrated through an insurer placed in liquidation proceedings. (Id., R. 610.) The Chancellor treated the Petitioners' claims as a dispute over the distribution of FNL's assets instead of an action to decide what property belongs to the FNL estate in the first instance. (Id., R. 609-610 ("Petitioners must adhere to that priority scheme just as any other claimant to the FNL liquidation estate"))

The Petitioners submit that the Chancery Court erred as a matter of law: Nothing in the Mississippi priority scheme creates property rights in the Receiver or divests the Petitioners of their property rights under settled Mississippi law.

## Statement of Facts

As alleged in the Petition, and admitted by the Receiver, Frankel and his henchmen controlled FNL and used FNL to perpetrate the fraud on the Petitioners. (Petition, R. 61-63, ¶¶ 9, 13-14; Receiver's 12(c) Motion, R. 365-366.)

**A.  Frankel, Hackney, Atnip and Jordan Create the Thunor Trust.**  In August 1991, Frankel established the Thunor Trust.   Hackney was named the sole trustee in order to conceal Frankel's ownership and control of the Trust. (Answer, R. 133-34, ¶ 9.) Frankel established the Thunor Trust to acquire various insurance companies and loot their assets. He then used the acquired companies to defraud third parties, including Petitioners. (Petition, R. 61, ¶ 9.)

**B.  Frankel Acquires and Controls FNL.**  In 1998, through a shell named International Financial Corporation ("IFC"), the Thunor Trust purchased FNL. (Petition, R. 61, ¶ 9, Answer, R. 133-34, ¶ 9.) Hackney, acting as the sole trustee of the Thunor Trust and, therefore, the purported owner of FNL, appointed himself as the President and CEO of FNL. (Petition, R. 62, ¶ 10.) Hackney and Atnip served as the investment committee for FNL. (Petition, R. 62, ¶ 11.)

By early 1998, the fraudulent scheme began to unravel and the various insurance companies under Frankel's control were short of funds. Frankel instructed his co-conspirators at FNL to cause FNL to enter into reinsurance deals with other insurers. (Receiver's 12(c) Motion, R. 366.) By December 31, 1998, FNL was insolvent. Its admitted assets were less than its liabilities. (Final Order of Liquidation & Finding of Insolvency, R. 42-43.)

**C.  FNL Defrauds Settlers.**  Settlers owned a block of existing policies for burial insurance called the "Care Plan" business. As Settlers no longer sold this type of policy, it was

6

interested in selling this business to another insurance company. **(Petition, R. 64, ¶ 19.)** In early 1999, FNL agreed to pay $1.75 million for the Care Plan business. This payment was to take the form of a **"ceding commission" which would be deducted** from the **reserves, which** Settlers would transfer to FNL. In other words, Settlers would transfer to FNL approximately $46 million in liabilities associated with the Care Plan business and $44,795,476 in cash reserves (the "Settlers Reserve Fund"). (Petition, R. 64,1 20.)

To induce Settlers to enter into the reinsurance agreement, FNL provided Settlers with false and misleading information regarding FNL's financial condition and investment strategy. FNL misrepresented that it was a solvent and prosperous company. (Petition, R. 64, 77, ¶¶ 21, 72.) FNL failed to inform Settlers of FNL's true financial condition, failed to disclose that FNL had sent its own funds to an investment company secretly controlled by Frankel whose broker-dealer license had been permanently revoked in 1992, failed to disclose Frankel's control of FNL and failed to disclose that Frankel and FNL planned to use the Settlers Reserve Fund for the personal benefit of Frankel and others, rather than administering and paying claims under the insurance policies.

On April 9, 1999, Settlers transferred a total of $44,795,476 to FNL's account at First Tennessee Bank. FNL intended from the first to defraud Settlers and to immediately misappropriate the Settlers Reserve Fund for the benefit of certain of FNL's insiders, e.g., Frankel, Hackney and Atnip. FNL acted quickly to consummate the fraud by transferring the Settlers Reserve Fund from First Tennessee Bank to Frankel's Banque SCS Alliance Account. (Petition, R. 65, ¶ 23.)

FNL's immediate misappropriation of the Reserve Fund for the use of FNL's insiders, rather than as a reserve to pay claims and administer the book of business, was disastrous for