establish the ownership of negotiable bonds through a constructive trust over money fraudulently obtained by the individual owner of the bankrupt. Nicklaus, 336 F.2d at 145. The bankruptcy trustee had sued to recover the bonds and money from the bank. Id. The trial court found that the bankrupt corporation had been used by its sole owner to perpetrate a fraud on the bank. Id. at 146. In holding that the bankruptcy trustee had no right to recover the property tainted by the fraud, the court explained:

> a Trustee in Bankruptcy can have no interest in property acquired by the fraud of a bankrupt, or anyone else, as against the claim of the rightful owner of such property. "Creditors have no right to profit by the fraud of a bankrupt, to the wrong and injury of the one defrauded." 9 Am. Jur. 2d § 903, p.667... . Manifestly, those bonds are tainted with fraud, not only by the acts of [the owner of the bankrupt], **individually,** but also by fraud of [the] bankrupt, for it is apparent that the **individual** here used the corporate entity to perpetrate fraud on appellee.
> 
> ***
> 
> Property obtained by fraud of the bankrupt, or by other tort, is not properly part of the assets of a bankrupt's estate.

Id. at 146, 147 (emphasis added). See also In the Matter of Paragon Sec. Co., 589 F.2d 1240, 1242 (3d Cir. 1978). After citing to Nicklaus, the Paragon court went on to note that

> fraud renders all contracts voidable, and that neither in law nor in morals would the trustee be justified in holding goods obtained by the fraud of the bankrupt for the benefit of other creditors. Such creditors have no right to profit by the fraud of the bankrupt to the wrong and injury of the party who has been deceived and defrauded.

Id. (quoting In re Stridacchio, 107 F. **Supp.** 486, 487 (D.N.J. 1952)) (emphasis added).

As in Nicklaus, Frankel, the sole owner of FNL, used FNL to defraud the Petitioners out of nearly $60 million. Even the Receiver acknowledges that Frankel, through the Thunor Trust and IFC, completely owned and controlled FNL (Answer, R. 133-34, ¶ 9), and that Frankel and his co-conspirators used FNL as a vehicle to defraud Petitioners and other insurance companies. (Receiver's 12(c) Motion, R. 366.) The fraudulent conduct of FNL, acted under the orders of its

sole owner Frankel and through the criminal conduct of FNL's officers and directors **Hackney** and Atnip, rendered the reinsurance agreements voidable and the Receiver has no right to the reserve funds obtained by fraud?

### 2. The Petitioners Have Adequately Alleged Facts Supporting Their Claim That FNL Breached Its Duty of Utmost Good Faith

"[R]einsurance relationships are governed by the traditional principle of `utmost good faith' Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 43 (1st Cir. 2000). Parties to a reinsurance contract owe each other a duty of utmost good faith. Nichols v. American Risk Management, Inc., No. 89 Civ. 2999 (JSM), 2002 WL 31556384, *1 (S.D.N.Y. Nov. 18, 2002); see also United Fire & Cas. Co. v. Arkwright Mut. Ins. Co., 53 F. Supp. 2d 632, 642 (S.D.N.Y. 1999) ("the duty of utmost good faith is a mutual one; it is an obligation of the reinsurer as well as of the cedent"); Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp., 944 F. Supp. 986, 995-96 (D. Mass. 1996) (no distinction between a duty of "utmost good faith" and a fiduciary duty); In the Matter of Liquidation of Union Ind. Ins. Co., 674 N.E.2d at 320 (duty of utmost good faith requires disclosure of all circumstances that would influence reinsurer's underwriting decision). The same facts supporting the Petitioners' fraudulent inducement claims also state constructive trust claims based on FNL's breach of the duty of utmost good faith. FNL's misrepresentations and omissions about Frankel's role in owning and controlling FNL, the financial condition of FNL, the fact that FNL was insolvent at the time it entered into the reinsurance agreements, and FNL's plan to send the reserve funds to Frankel's Swiss bank account for his own personal benefit state claims for breach of the duty of utmost good faith in a reinsurance agreement giving rise to the imposition of constructive trusts.

---

[9] To the extent the Receiver may argue that the conduct of Frankel and his henchmen cannot be imputed to FNL, the question of whether the fraudulent acts of an owner and corporate insiders can be imputed to the corporation is a question of fact for the trier of fact to decide.

### 3. The Petitioners Are Able to Trace Their Property to the Forfeiture Proceedings

The Petitioners are also entitled to recover their property because they are able to trace their funds to the Forfeiture Proceedings. Eisenberg, 2003 WL 21683600 at *5. The Petition sets forth in great detail, and discovery in this case and related cases now has produced even more evidence, the path the reserve funds took from the Petitioners' bank accounts to the Forfeiture Proceedings.

In Eisenberg, the plaintiff sued a third party to recover money taken from him by fraud and transferred by the malefactor to the third party. Eisenberg, 2003 WL 21683600 at *1. The plaintiff invested $1 million by depositing the amount into an account held by the malefactor. Prior to the deposit, the bank account contained $432.05. After the $1 million had been deposited, the malefactor transferred $415,000 to the third party. The court found that because no other funds had been deposited into the malefactor's account, the money transferred out was clearly traceable to the plaintiff's $1 million. Id. at *5. The court affirmed summary judgment and ordered the funds returned from the third party to the plaintiff. Id.

As in Eisenberg, FNL never gained title to funds it obtained from the Petitioners by fraud and breach of duty, and, as in Eisenberg, the stolen funds may be traced. Unlike other victims of FNL's fraud, the Petitioners can trace their funds to specific property in the Forfeiture Proceedings. To take one telling example from the Petition, the $26.5 million in the account seized by the authorities and now the subject of one of the Forfeiture Proceedings are readily traceable to the Settlers Reserve Fund obtained by FNL's fraud. (Petition, R. 68, ¶ 39.) Prior to the transfer of Settlers $44.8 million reserve fund to Frankel's Banque SCS Alliance Account in Switzerland, the account balance had been reduced to $931,946.62. No other significant funds were deposited in the account prior to Commissioner Dale placing FNL into receivership one

25

month later. The $26.5 million left in the Swiss account that is now part of one of the Forfeiture Proceeding is traceable to Settlers and there is no other possible source for those funds. Therefore, the Petitioners are able to follow their property to the Forfeiture Proceedings.

### D. Petitioners' Constructive Trust Arose at the Time of FNL's Fraudulent Acts, Prior to FNL Being Placed into Rehabilitation and Liquidation

The Petitioners are not asking this Court or the Chancery Court to create rights the Petitioners do not already have. The Petitioners' rights to recover their property that is currently held in the Forfeiture Proceedings vested at the time of FNL's fraud and breach of duty, long before Commissioner Dale sought to have FNL placed into receivership on May 10, 1999. The constructive trust over the Petitioners' property arose at the time the funds were first transferred from the Petitioners to FNL and Frankel. First Nat'l Bank of Jackson v. Huff, 441 So. 2d 1317, 1320-21 (Miss. 1983). As this Court explained in Huff:

> A constructive trust and equitable lien arose by operation of law at that point in time. The [property] was then **burdened** with a constructive trust and equitable lien. "[T]he trust was not created by the decree of the court below declaring its existence, as contended by appellant, but the lien of the trust arose by operation of law from the misapplication of funds by the testator in acquiring the particular property, and existed from the time of such **misappropriation,** and the heirs and devisees acquired and held the property subject to the trust."

Id. (citation omitted). See also, Wholey v. Cal-Maine Foods, Inc., 530 So. 2d 136, 140-41 (Miss. 1988) ("[t]he right to enforce an implied or constructive trust accrues at the time of performance of the act from which the constructive trust results. The statute runs from the time when the act was done by which the party became chargeable as trustee by implication.")

The Receiver has admitted that Frankel caused FNL to enter into reinsurance agreements "[a]s part of his scheme" to defraud. (Response in Opposition to Appellants' Motion for Stay Pending Appeal at ¶ 2.) The reinsurance agreements were fraudulent from the first; and Frankel always intended to **misappropriate** the funds for his own personal benefit. Id. The Petitioners'

26

rights to recover the stolen property through a constructive trust therefore vested prior to April 9, 1999 and prior to FNL's receivership. As explained in Part III.B below, the Receiver's claim to any property is only as great as FNL's and is subject to the same limits and defenses as could be asserted against FNL as of the date of the rehabilitation order.

### III. THE CHANCERY COURT ERRED IN HOLDING THAT THE LIQUIDATION OF FNL DEFEATS THE PETITIONERS' PROPERTY RIGHTS TO THE FORFEITED FUNDS

The Chancery Court did not hold that the Petitioners had failed to state a claim for a constructive trust. Instead, the court held, without engaging in any genuine legal analysis, that "the theory of constructive trust does not apply" in an insurance liquidation. (Summary Judgment Order, R. 610.) In holding that a constructive trust claim is not cognizable in insurance insolvency proceedings, the Chancery Court ignored long-standing principles of receivership, insolvency and bankruptcy law. See supra Part H.B. It is well-settled that an order liquidating an insurer only authorizes the receiver to marshal and preserve the assets of the company and then distribute those assets to the proper claimants. A liquidation order does not deprive third parties like the Petitioners of their property rights. 44 C.J.S. Insurance § 163.

A proper motion for judgment on the pleadings or for summary judgment cannot ask the Court to resolve ultimate and disputed issues of fact. Village of Canon v. Bankers Trust Co., No. 95 Civ. 3706 (JGK), 1997 WL 47804, *6 (S.D.N.Y. Feb. 5, 1997); Boyd v. Doskocil Sausage Co., 686 F. Supp. 875, 878 (D. Kan. 1988). Yet the Chancellor's opinion pretends that the trial is already over and that the Receiver has already won:

> Mississippi has specific insurance liquidation statutes. Those statutes set forth the only relevant priorities of claims from an insurance liquidation estate, and the Petitioners must adhere to that priority scheme just as any other claimants to the FNL liquidation estate.

(Summary Judgment Order at R. 609 (emphasis added).) [10] But the Chancellor ignored the fact that the determination of whether the funds even belong to the FNL estate under Mississippi property law is exactly the issue for trial.

### A. The Assets of the FNL Estate Are Defined by Mississippi Property Law

The Liquidation Act defines "general assets" as "all property, real, personal, or otherwise, not specifically mortgaged, pledged, deposited or <u>otherwise encumbered</u> for the security or benefit of specified persons or classes of persons." § 83-24-7(i) (emphasis added). Thus, under the plain language of the Liquidation Act, the Receiver only has rights to property that rightfully belongs to the insolvent insurer and that is not "otherwise encumbered." The question of whether the property in the Forfeiture Proceedings was stolen from the Petitioners and, therefore "otherwise encumbered" is for the trier of fact to decide. Until the issue of ownership in the property held in the Forfeiture Proceedings is determined, the property is not properly part of the FNL liquidation estate. <u>McDonough Caperton Shepherd Group, Inc. v. Academy of Medicine</u>, 888 F.2d 1392, 1989 WL 128675, *4 (6th Cir. Oct. 30, 1989) ("Until the issue of ownership of the *res* was determined, the *res* could not properly be a part of the liquidation proceedings. We do not agree with Ideal that because it and the Liquidator asserted a claim to the *res,* the adjudication of their claim to ownership had to take place in the [liquidation] court.").[11]

---

[10] The Receiver made the same erroneous assumption:
> the sums of money at issue were paid to FNL as consideration for FNL agreeing to accept (assume) responsibility of claims payments or reimbursements for some on certain blocks of insurance policies. These payments of consideration for the contacts, made by Petitioners to FNL, became assets of FNL. The payments of consideration where then stolen from FNL by Martin Frankel.
> [] The FNL Estate is both entitled to, and required to, recover its assets.

(Receiver's 12(c) Motion, R. 381-382.)

[11] <u>See also</u> <u>Shell Pipe Line Corp. v. West Texas Marketing Corp.</u>, 540 F. Supp. 1155, 1160 (S.D. Tex. 1982) ("The Chicago Bankruptcy Court does not have exclusive jurisdiction over the disputed 155,000 barrels of oil for the very reason that it has yet to be determined whether or not the oil was property of the bankrupt's (Ed 's) estate at the commencement of the Chicago bankruptcy proceeding. The question raised by Shell in this interpleader action is precisely, to whom does the oil belong? This issue will be resolved at a full trial on the merits before this Court").

B.   **The Chancellor Erred in Giving the Receiver Rights that He Is Not Entitled to Under the Liquidation Act**

The Liquidation Act only authorizes the Receiver to take possession of the assets of the estate. The Liquidation Act gives the Receiver certain limited powers:

> An order to liquidate the business of a domestic insurer shall appoint the commissioner and his successors in office as liquidator, and shall direct the liquidator forthwith to take possession of the <u>assets of the insurer</u> and to administer them under the general supervision of the court. <u>The liquidator shall be vested by operation of law with the title to all of the property, contracts and rights of action,</u> and all of the books and records <u>of the insurer ordered liquidated,</u> wherever located, as of the entry of the final order of liquidation.

§ 83-24-35 (1) (emphases added). In seeking to recover assets of the FNL estate, the Receiver stands in the shoes of FNL and is subject to any claims that could have been asserted against FNL. <u>Lackey,</u> 691 So. 2d at 995. "[L]iquidation cannot place the liquidator in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation." <u>In the Matter of Midland Ins. Co.,</u> 590 N.E.2d 1186, 1192 (N.Y. 1992). <u>See also</u> <u>Rawlings v. American Oil Co.,</u> 161 So. 851, 854 (Miss. 1935) <u>("The Mississippi receiver F], of course, had no greater right in these funds than the company itself")</u> (emphasis added); <u>Sender v. Simon,</u> 84 F.3d 1299, 1307 (10th Cir. 1996) (trustee "stands in the shoes of the bankrupt . . . and has no greater rights than the [bankrupt] had as of the bankruptcy filing"); <u>In the Matter of Liquidation of Union Ind. Ins. Co.,</u> 674 N.E.2d 313, 320 (N.Y. 1996) (same).[12]

Nothing in the Liquidation Act abrogates the general principles of state property law. See <u>Butner v. United States,</u> 440 U.S. 48, 55 (1979); <u>In the Matter of Pinetree, Ltd.,</u> 876 F.2d 34,

---

[12] <u>See also</u> 75 C.J.S. Receivers § 105 (Receiver "cannot acquire any other, greater, or better interest than the debtor had in the property. To this extent the receiver has been held to stand in the shoes of the debtor or insolvent; having the same right which the latter would have had, and being unable to set up any rights against claims which the debtor could not have set up."); 75 C.J.S. Receivers § 106 ("a receiver takes the property of the debtor in the same condition and subject to the same claims, priorities, equities and liens as existed against it in the hands of the person or corporation out of whose possession it was taken.").

36-37 (5th Cir. 1989); In re Wade, 287 B.R. 874, 880 n.8 (S.D. Miss. 2001). In seeking the funds that FNL fraudulently acquired from the Petitioners, the Receiver demands greater rights than FNL itself had to the funds. Indeed, the Receiver's asks this Court to accept as a matter of law that FNL bears no corporate accountability for its actions and those of its owner, Frankel, and other insiders. (Receiver's 12(c) Motion, R. 366, 381-382; Answer, R. 133, ¶ 8, R. 136, ¶21, R. 143, ¶ 63.) The Receiver's contention that FNL was a purely innocent actor is at odds with Petitioners' allegations (and also at odds with the plea bargains of FNL's principals). As the Court well knows, those allegations control at this stage of the case. The Receiver hardly establishes a right to judgment as a matter of law by simply pretending otherwise.

  **C. The Chancellor Erred as a Matter of Law in Applying the Priority Statute to the Funds Being Held in the Forfeiture Proceedings**

  In reaching its wholly unprecedented conclusion, the Chancery Court mistakenly used the Priority Statute (§ 83-24-83) governing a receiver's distribution of the defunct insurer's assets among creditors. (Summary Judgment Order, R. 609-610.) The Chancellor failed to understand, however, that the Priority Statute by its terms deals only with how the receivership's own assets should be distributed; such a statute does not and cannot create substantive property rights that the insurer itself never had. Stephens v. American Home Ins. Co., 811 F. **Supp.** 937, 947 (S.D.N.Y. 1993), rev'd on other grounds, 70 F.3d 10, 12 (2d Cir. 1995). Certainly, nothing in the Liquidation Act even remotely suggests that other persons, such as the Petitioners here, lose their right under Mississippi law to seek a constructive trust in assets they lost through fraud merely because a receiver also claims to own those assets. 44 C.J.S. Insurance § 163 (a liquidation order does not deprive third parties of their property rights). *Nothing in the Liquidation Act conveys property to a receiver that under Mississippi property law would belong to another party.*

The Chancellor's limited discussion of the Priority Statute demonstrates why it does not apply here. Without citation to any authority, the Chancery Court held that the Mississippi Priority Statute is an exclusive remedy for distributing assets of the estate to creditors and that constructive trusts are not recognized in insurance insolvency proceedings. (Summary Judgment Order, R. 609-610.)

However, the Petition does not seek to have the Petitioners share in the assets of FNL's estate. The Priority Statute is by its terms a limited avenue that deals only with how the property of the estate is distributed: "The priority of distribution of claims <u>from the insurer's estate</u> ...." § 83-24-83 (emphasis added). As explained above, the Petitioners' reserve funds are not assets or property of the FNL estate. Rather, the Petitioners seek a declaration from the Chancery Court that the funds subject to the Forfeiture Proceedings belong to Petitioners and not FNL. With such an order in hand, Petitioners will be entitled to go to Connecticut and take possession of their property.

Furthermore, because the funds were never part of the FNL estate, the Petitioners are not seeking to "leapfrog" ahead of FNL's creditors or policyholders nor do the Petitioners seek a "super-priority" under the Priority Statute. (Receiver's 12(c) Motion, R. 378-379.) The Petitioners simply seek the return of their property stolen by FNL.

In <u>Belisle v. Plunkett,</u> 877 F.2d 512, 515 (7th Cir. 1989), in answering the same question presented here - may a receiver bring into the estate property that is subject to a constructive trust for victims of the debtor's fraud? - the court reasoned:

> <u>If the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a judgment creditor, and ... therefore would defeat the claims of all of the debtor's creditors.</u> Whether or not we say that the debtor holds the ring in "constructive trust" for the owner is a detail. Under state law the owner's claims are paramount; the debtor could not defeat those rights by pledging or selling the ring, and the creditors in bankruptcy receive only what state law allows them.

31

Id. (citing <u>Butner,</u> 440 U.S. 48 (1979)) (emphasis added). FNL took the Petitioners' reserve funds through fraud and breach of duty. Funds in the Forfeiture Proceedings, traced from the Petitioners to Frankel's Swiss account, other accounts, diamonds and gold coins, remain the property of the Petitioners and defeat the claims of FNL, its policyholders and creditors.

> D. **The Chancellor Erred in Finding that the Petitioners' Constructive Trust Claims Were Too Indirect and Contingent, and, Therefore Not Cognizable**

The Chancellor cited to the Second Circuit's opinion in <u>United States v. Peoples Benefit Life Insurance Company,</u> 271 F.3d 411 (2d Cir. 2001), for the proposition that the Petitioners' claims for constructive trusts were "indirect and contingent, and therefore not cognizable." (Summary Judgment Order, R. 610.) However, the Second Circuit explicitly did not address the merits of the Petitioners' constructive trust claims. The court expressly stated that its ruling would not affect the Petitioners' property rights in the forfeited funds:

> In view of our decision to affirm, [Petitioners] are not parties to the forfeiture proceedings and therefore any ruling that the district court may make concerning the ownership of the Property does not affect [Petitioners] rights.

Id. at 417 n.5.

Furthermore, at the time Peoples and Veterans filed the motions to intervene in two of the Forfeiture Proceedings, they did not have the benefit of the documents that have since been produced or otherwise obtained through informal discovery. When they filed their motions to intervene, Peoples and Veterans believed that discovery would allow them to trace their property. Because Peoples and Veterans could not trace their funds at that time, the court reasoned: "This distinction weighs strongly against recognizing a constructive trust as **a** sufficiently `direct, as opposed to remote or contingent,' interest to satisfy Rule 24(a)(2) in this case, particularly in light of this Court's requirement that funds be traceable <u>before</u> a constructive trust will be recognized in analogous cases." <u>Peoples Benefit Life Ins. Co.,</u> 271 F.3d at 416

(emphasis in original, citations omitted). Discovery taken since the Second Circuit's decision has produced more evidence of where the Petitioners' reserve funds went. The Petitioners now have the evidence and can trace their property to the Forfeiture Proceedings. (See Petition, R. 67-71, 75-77.)

The Second Circuit's decision to not hear the Petitioners' claim in that forum and to allow the Chancery Court in the FNL liquidation proceeding to determine which of the constructive trust claimants, the Petitioners or the Receiver, is the rightful owner of the property is not a reflection of the merits of the Petitioners' claims. Rather, the ruling is consistent with other federal courts that have abstained from exercising jurisdiction over property claimed by a liquidator in favor of the jurisdiction of the liquidation courts or have held that such claims were preempted by the McCarran-Ferguson Act. See e.g., United of Omaha Life Ins. Co. v. Udisky, No. C-2-00-158, 2001 WL 102670, *5 (S.D. Ohio Jan. 23, 2001); Richardson v. Lloyds of London, 896 F. Supp. 428, 431 (E.D. Pa. 1995). Allowing the Chancery Court to decide what property constitutes assets of the FNL estate promotes consistent adjudication. However, the Chancery Court must **properly apply** Mississippi property law, including the law relating to constructive trusts, to determine what assets are and are not property of the FNL estate. The Chancery Court's refusal to apply constructive trust law in the context of an insurance liquidation is a clear error as a matter of law.

As set forth in Part II.B **above,** the rule that **constructive** trusts claims operate against insolvent estates is well-established across the full range of insurance, bankruptcy and **receivership** law. Property in which the debtor **holds** only legal title and not an equitable interest becomes property of an **insolvency** estate only to the extent of a debtor's legal title to *such* property, **but** not to the extent of any **equitable** interest in *such* **property** that the debtor does not

hold. Georgia Pacific Corp. v. Sigma Sew. Corp., 712 F.2d 962, 968 (5th Cir. 1983) (citing 11 U.S.C. § 541 (a)(1)); In re Howard's Appliance Corp., 874 F.2d 88, 93 (2d Cir. 1989); In re Koreag, Controle et Revision S.A., 961 F.2d 341, 351 (2d Cir. 1992) (same); In the Matter of Kennedy & Cohen, Inc., 612 F.2d at 965 ("Property held by a bankrupt in trust belongs to the beneficiary and never becomes a part of the bankruptcy estate."); East v. Crowdus, 302 F.2d 645, 649-650 (8th Cir. 1962) ("No creditor (can) justly demand that (a receivership) estate be **augmented** by a wrongful conversion of the property of another, . . . or the application to the general estate of property which never rightfully belonged to it) (citation and quotation omitted).[13] In the present case, the Receiver has neither legal title to nor an equitable interest in the funds held in the Forfeiture Proceedings and the Chancery Court should not have entered summary judgment in favor of the Receiver.

## IV. ALLOWING THE DECISION BELOW TO STAND WOULD NOT SERVE THE PUBLIC POLICY OF ALLOWING VICTIMS TO RECOVER THEIR STOLEN PROPERTY

No public policy is served by denying the Petitioners the right to recover their stolen property. In denying the Petitioners' claims to their funds traced to the Forfeiture Proceedings, the Chancery Court, in effect, ratified FNL's fraud. Furthermore, turning the Petitioners' property over to the Receiver would not protect policyholders. Virtually all of the policyholders have already been protected either by the Petitioners, by the rehabilitation of Settlers, or by Life and Health Guaranty Associations.[14] **The Receiver simply** seeks the Petitioners' **Reserve** Funds

---

[13] See also Begier v. I.R.S., 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not `property of the estate.'"); In the Matter of Maple Mortg., Inc., 81 F.3d 592, 596 (5th Cir. 1996); In the Matter of Haber Oil Co., 12 F.3d 426, 435 (5th Cir. 1994).

[14] Peoples and Veterans are administering the policies and paying policyholder claims for the block of business that was the subject of the P&V Agreements. The Settlers' policyholders were protected through the Settlers' rehabilitation in Virginia by the State Corporation Commission of Virginia. FNL's policyholders have been provided for through the Guaranty Association's sale of FNL's business to Madison National Life Insurance Company.

to reimburse the Guaranty Associations. No public policy is served by enabling the Receiver to misappropriate the Petitioners' property so that he can reimburse creditors of FNL.

Contrary to the Receiver's contentions below, imposing a constructive trust here does not contradict the principles of insurance insolvency law. (Receiver's 12(c) Motion, R. 379.) While the purpose of the Liquidation Act is for "the protection of the interests of insureds, claimants, creditors and the public generally" (§ 83-243), this purpose will not be served by allowing the Receiver to obtain the Petitioners' Reserve Funds. FNL and its creditors have no interest in property acquired by FNL's fraud. In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1576 (9th Cir. 1985) ("trustees have ... no interest in property acquired by fraud of bankrupts, as against the rightful owners of the property [] ... the creditors should not benefit from fraud at the expense of those who have been defrauded.") (citations omitted). See also East, 302 F.2d at 650 ("No creditor (can) justly demand that (a receivership) estate be augmented by a wrongful conversion of the property of another, . . . or the application to the general estate of property which never rightfully belonged to it.") (citation omitted); In the Matter of Anjopa Paper & Board Manufacturing Co., 269 F. Supp. 241, 260 n.23 (S.D.N.Y. 1967) (creditors of the wrongdoer cannot object to allowing the innocent party to recover its funds).

Lastly, any speculation that allowing constructive trusts to be honored in the context of disputes with insolvency estates will lead to an overwhelming flood of such claims is unfounded. (Receiver's 12(c) Motion, R. 379.) Constructive trust claims are routinely heard by **bankruptcy** and receivership courts, and often granted, without leading to a "parade of horribles". So far as the Petitioners know, with the exception of the Receiver and the other receivers in Frankel-related proceedings in other states, the Petitioners are the only **parties arguing** for a **constructive** trust on funds that the Receiver **seeks** to **obtain** for **the** FNL estate.

35

## V. THE CHANCERY COURT ERRED IN NOT ADDRESSING THE PETITIONERS' CLAIMS IN THE ALTERNATIVE THAT THEY ARE SECURED CREDITORS

The Chancery Court did not even address the Petitioners' contention in the alternative that they are entitled to a secured claim under Class 2 of the Mississippi Priority Statute. (Petition, R. 84-86.) If this Court finds as a matter of law that the property in the Forfeiture Proceedings is part of the FNL estate, the Petitioners have stated a claim entitling them to a declaration that their claims are secured claims. Based upon the same factual allegations supporting the Petitioners' claims for constructive trusts discussed above, the Petitioners have stated a claim entitling them to be classified as Class 2 secured creditors.

The Liquidation Act defines a "secured claim" to include "any claim secured by mortgage, trust deed, pledge, deposit as security, escrow, or otherwise; but not including special deposit claims or claims against general assets. The term also includes claims which have become liens upon specific assets by reason of judicial process." § 83-24-7(p) (emphasis added).

In construing identical language in the Arizona insurance liquidation statute's definition of "secured claim,"[15] the Arizona Court of Appeals held that the "or otherwise" language "is broad enough to encompass a constructive trust." Pioneer Annuity Life Ins. Co. v. National Equity Life Ins. Co., 765 P.2d 550, 555 (Ariz. App. 1988). As in the present case, in Pioneer Annuity, the Arizona Insurance Commissioner argued that the insurers liquidation act is entirely comprehensive legislation that **supplants** and **excludes** the operation of traditional **equitable** remedies such as a constructive trust. Id. In rejecting this argument the court explained:

---

[15] The **Arizona** statute **defined** "secured claim" to mean **"any** claim secured **by mortgage,** trust deed, **pledge, deposit** as security, escrow **orotherwise, including** federal, state **or local tax** liens **that are** perfected before the **commencement of a delinquency proceeding but not including a special deposit claim or claims against general assets."** ARIZ. REV. STAT. ANN. § 20-611(12) (West 2001) (formerly § 20-611(11)) **(emphasis added).**

36

> the insurers liquidation act is comprehensive, but it is also designed to embrace and to be <u>applied harmoniously with consistent common law and equitable concepts.</u> We believe the "or otherwise" language in [the statutory definition of "secured claim"] is broad enough to encompass a constructive trust.

Id. (emphasis added).

The Receiver's attempts to distinguish <u>Pioneer Annuity</u> below are to no avail. (Receiver's 12(c) Motion, R. 381.) The Receiver seeks to minimize the holding by claiming that the court held only that it "might" be permissible to impose a constructive trust. In fact, the court stated: "We stress `may,' because <u>notwithstanding the apparent propriety of such relief</u> on the basis of the record before us, trial may produce facts which cast a different light." Id. at 556 (emphasis added). The court held that a constructive trust gave rise to a secured claim; it reversed the trial court's grant of summary judgment and remanded so that the constructive trust claims could proceed to trial. Id.

While the Liquidation Act is generally designed to favor individual insureds and consumers over reinsurers and reinsureds, imposing a constructive trust for the benefit of the Petitioners is not at cross-purposes with that intent. FNL's estate should not be unjustly enriched at the expense of the Petitioners whose policyholders ultimately paid the premiums that make up the funds held in the Forfeiture Proceedings. See <u>Pioneer Annuity Life Ins. Co.</u>, 765 P.2d at 556. The Petitioners are entitled to a secured claim to recover the Reserve Funds.

The Receiver's attempt to distinguish <u>Pioneer Annuity</u> below actually contradicts its argument against constructive trusts. The Receiver acknowledges that constructive trusts are an available remedy in insurance liquidation proceedings. However, without citation to any authority, the Receiver claims that constructive trusts are only available to receivers. (Reply Memorandum in Support of Motion for Judgment on the Pleadings as to Declaratory Petition of **Huff-Cook,** Peoples and Veterans ("Receiver's 12(c) Reply") at 4-5.) **Although** the fact pattern

37