

ENTERED
03/29/01

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

UNITED STATES DIST.
AT ABINGDON, VA
FILED

MAR 29 2001

HUGH F. DUFF, JR. CL
BY _____
CLERK

HUFF-COOK, INC.,                      )
                                      )
          Substitute                  )
          Plaintiff,                  )
                                      )
v.                                    )     CIVIL ACTION NO.
                                      )     1:99CV00109
GEORGE E. DALE,                       )
Commissioner of                      )
Insurance of the State               )     MEMORANDUM OPINION AND
of Mississippi, as                   )     ORDER
liquidator of FIRST                  )
NATIONAL LIFE                         )     BY: GLEN M. WILLIAMS
INSURANCE COMPANY OF                  )     SENIOR U.S. DISTRICT
AMERICA, a Mississippi                )     JUDGE
corporation; MARTIN R.                )
FRANKEL; and THE                      )
THUNOR TRUST, a Trust                 )
organized and existing                )
under the laws of                     )
Tennessee,                            )
                                      )
          Defendants.                 )


## I. Introduction

This case is before the court on defendants' motion to dismiss plaintiff's amended complaint. Having reviewed both parties' motions and memoranda and after

hearing from both parties by way of oral argument it is the opinion of this court that the issues in this action are ripe for disposition. Therefore, for the reasons set forth below, this court hereby denies defendants' motion to dismiss pursuant to the <u>Burford</u> abstention doctrine. However, it is the judgment of this court that the case shall be stayed pending the outcome of the First National Life Insurance Company (hereafter FNLIC) liquidation proceedings pending before state courts in Mississippi.

## II.  Background

The plaintiff filed suit in this matter on July 9, 1999. The amended and supplemental complaint filed on September 27, 2000 by the substitute plaintiff alleges the following facts. In April, 1999 Settlers Life Insurance Company (hereafter Settlers) entered into a reinsurance agreement with FNLIC to transfer to FNLIC a group of burial insurance policies known as a "care plan" book. Settlers maintained $46 million in

2

reserve for the payment of claims associated with these policies. The agreement contemplated that Settlers would transfer all liability derived from the policies to FNLIC plus $44.795 million in cash. In essence, FNLIC would receive $46 million in liability, but only $44.795 million in cash. Thus, FNLIC agreed to pay $1.75 million for the "care plan" book[1]. On April 9, 1999, FNLIC requested a transfer of $44,795,476.00 from Settlers as the reserves for polices that were to be assumed by FNLIC under the agreement. The money was transferred from two of FNLIC's accounts at First Union Bank in Charlotte, North Carolina. The money was transferred to FNLIC's account at First Tennessee Bank in Memphis, Tennessee.

Plaintiff alleges that FNLIC was controlled by the Thunor Trust (hereafter Thunor) which operated out of Franklin, Tennessee. Plaintiff further alleges

---

[1]This is referred to as a ceding commission.

3

that Thunor was controlled indirectly by Mr. Martin Frankel, a former securities investment advisor who has been banned by the United States Security and Exchange commission from investing other peoples money.[2]  Thunor had set up two holding companies, International Financial Corporation and Franklin American Corporation.  International Financial Corporation was wholly owned by Thunor.  Franklin American Corporation had a public offering of stock in 1991, and 15.5% of Franklin American's stock was owned by the public with the balance controlled by Thunor. One of the companies owned by International Financial Corporation was the defendant, FNLIC.  According to the plaintiff, the custodian of Thunor's investments was an entity named Liberty National Securities, Inc. which was controlled by Mr. Frankel.

In early 1999, Thunor and its subsidiaries were

_____

[2]Mr. Frankel has been indicted for embezzling money from various insurance companies; he has been arrested and has been extradited to the United States.

4

coming under scrutiny by state regulatory agencies.
Insurance Department examiners from Mississippi were
investigating FNLIC, and Tennessee examiners were
investigating other Thunor holdings.  At the same time
these investigations were proceeding, FNLIC made a
written proposal contemplating the reinsurance
transaction discussed above.  Settlers agreed to
transfer the funds contemplated by the agreement only
if FNLIC sent a financial statement for the year 1998
to Settlers.  This statement was requested by Settlers
and provided by FNLIC.  The statement was signed by
the trustee of Thunor under oath and showed over $100
million in assets.  The plaintiff claims that at the
time the statement was sent to Settlers, the trustee
and others at FNLIC knew that the assets claimed by
FNLIC in the statement were not controlled by FNLIC.

Settlers claims that the agreement entered into by
Settlers and FNLIC did not comply with regulatory
standards provided by either the Commonwealth of

5

Virginia or the state of Mississippi. In particular,
the agreement did not contain an insolvency clause.
The agreement also contained a clause providing that
it was subject to and contingent upon receipt by ceder
[Settlers] and reinsurer [FNLIC] on any required
regulatory approvals of the transaction. Settlers
claims that the required regulatory approvals of the
transaction were never obtained. Despite these facts,
on April 9, 2000, at the request of FNLIC, Settlers
transferred $44,795,476.00 to FNLIC. Plaintiff claims
that the money was sent to FNLIC's account in Memphis,
Tennessee. From the bank in Tennessee, the money was
transferred by wire to the Bank of New York, in New
York, New York, to a Dreyfus account in the name of
FNLIC. Plaintiff claims that the Dreyfus account was
controlled by Mr. Frankel. Settlers alleges that
Frankel had given standing instructions to Dreyfus
that any securities received in the account were to be
redeemed, and together with cash in the account were

6

to be transferred by wire to another bank in New York

City, UBS, for further transfer to Banque SCS Alliance

SA, in Geneva, Switzerland.  As a result of these

instructions on April 12, 1999, Dreyfus wired

$44,795,476.00 along with $17,640.49 in accrued

interest to the account in Switzerland of which Mr.

Frankel was the beneficial owner.

In early May, 1999, all of Thunor's subsidiaries

were placed in receivership by the Insurance

Commissioners of each company's state.  FNLIC was

placed in rehabilitation in Mississippi on May 10,

1999, and Settlers was notified that the $44.795

million transferred to FNLIC had been stolen.  This

had the effect of making Settlers insolvent and on May

14, 1999, Settlers was placed in receivership in

Virginia, and the State Corporation Commission was

appointed receiver.  The original plaintiff Virginia

Insurance Commissioner, Alfred Gross, was appointed as

Deputy Receiver to marshal the assets of Settlers.

The former plaintiff Commissioner Gross[3] notified
defendant Dale[4] that the plaintiff took the position
that Settlers' execution of the April 1999 reinsurance
agreement with FNLIC was obtained through material
misrepresentations and omissions by FNLIC. The
plaintiff also notified the defendant that the
reinsurance agreement as drafted by FNLIC did not
comply with Virginia or Mississippi law; that the
transfer of $44.795 million from Settlers to FNLIC on
April 9, 1999, constituted an invalid encumbrance of
those assets under Article 4, Chapter 14, Title 38.2,

---

[3]On May 18, 2000, this court entered an order allowing plaintiff to substitute Settlers as
party plaintiff. In December, 1999, the Guardian Life Insurance Company entered into a
purchase agreement with Commissioner Gross as receiver of Settlers. On December 15, 1999,
the change of control of Settlers was approved by the State Corporation Commission of the
Commonwealth of Virginia. National Guardian was issued stock in Settlers and the founders'
stock in Settlers was canceled. As a result of this change of control to National Guardian, the
Receiver and Commissioner Gross, as deputy receiver, were discharged. As a result of the
discharge of the receiver and deputy receiver and the provisions of the purchase agreement with
National Guardian, National Guardian agreed to allow the founders of Settlers to pursue claims
against the persons who caused the loss to Settlers, including the right to pursue claims against
the defendants in this action. On September 27, 2000, this court entered an order allowing the
plaintiff to reflect the change in name of Settlers to Huff-Cook, Inc.

[4]Defendant Dale was appointed Liquidator for FNLIC. He was given control over all
assets of FNLIC. FNLIC no longer exists independently from defendant Dale as Liquidator of
FNLIC.

of the Code of Virginia, and that FNLIC thus accepted those assets subject to a superior, perfected, and preferential lien in favor of the policyholders of Settlers.  Settlers also takes the position that any portion of the $44.795 million which is now, or subsequently comes into the possession of defendant Dale, belongs to plaintiff as an asset of the estate of Settlers.

Next, plaintiff alleges that defendant Dale notified the former plaintiff, Commissioner Gross, that defendant Dale rejected Settlers' claim and did not intend to make payments to Settlers under the reinsurance agreement. Defendant Dale then notified plaintiff of his intention to assert a prior and superior claim to any part of the $44,795,476.00 which may be, or come into the possession of defendant, and will hold such funds as a general asset of the estate of FNLIC for distribution to other creditors.  Dale has also canceled the reinsurance agreement with

9

Sidley & Austin    4/3/01  5:39: PAGE 012/31    RightFAX

Settlers and will not pay the claims under the policies of insurance which were to be assumed by FNLIC.

The plaintiff makes four claims for relief in the complaint. The first two ask the court to invoke its equitable powers and the third and fourth claims are civil claims for damages under the Federal RICO statutes, specifically 18 U.S.C. §§ 1962(a), (b), (c), and (d). The equitable relief sought by plaintiff asks that this court enter a declaration pursuant to 28 U.S.C. § 2201, of Settlers' rights and legal relationship with defendant Dale. Specifically, the plaintiff asks that this court enter a declaration with the force and effect of a final judgment that: (1) the reinsurance agreement between Settlers and FNLIC, was obtained by fraud, is illegal, and is void, or in the alternative, that Settlers is entitled to a recission of that agreement; (2) that the transfer of $44,795,476.00 from Settlers to FNLIC on April 9,

10

1999, was obtained by fraud or material

misrepresentations or omissions, and should be set

aside, or, in the alternative was made in violation of

law, and that any portion of such funds which are in

the possession of, or come into the possession of, the

defendant Dale are subject to a prior, perfected and

superior lien in favor of the policyholders of

Settlers; and (3) that defendant Dale has no right,

title or interest in any portion of the $44,795,476.00

which is now in the possession of, or which may

subsequently come into the possession of defendant

Dale, and that such funds are to be held in trust as

the separate property of plaintiff. The second claim

for equitable relief sought by the plaintiff is the

imposition of a constructive trust by this court.

Specifically, the plaintiff asks that this court

exercise its equitable powers by imposing a

constructive trust in favor of plaintiff on any

portion of the funds transferred by Settlers to FNLIC

11

on April 9, 1999, which are now in the possession of

the defendants Dale or Frankel, and the court enter an

order and judgment requiring restitution of the stolen

funds to the plaintiff.

## III. Discussion

The defendant has asked the court to dismiss the

plaintiff's claim based upon the <u>Burford</u> abstention

doctrine. The defendant argues that the main issue in

this action is whether this court or the Mississippi

chancery court, which has already taken jurisdiction

in the case of FNLIC and entered a Liquidation Order

pursuant to the Mississippi Insurers Rehabilitation

and Liquidation Act[5] should decide who owns the $44.795

---

[5]On June 29, 1999, the chancery court of the First Judicial district of Hinds County entered a Liquidation Order dealing with the insolvency of FNLIC. Specifically the court found that FNLIC was insolvent as defined by Miss. Code Ann. § 83-24-7, and that Commissioner Dale is appointed as liquidator of FNLIC's assets. The order contains provisions that all persons are prohibited from obtaining any preference, judgment, attachment, garnishment of lien against FNLIC or its assets, wherever located, or the commencement, prosecution or further prosecution of any suit action or proceeding having any such purpose of effect. The order also states that no action at law or equity or in arbitration may be brought against the company [FNLIC] or Liquidator whether in Mississippi or elsewhere. Such existing actions may not be maintained or further presented or prosecuted after issuance of this liquidation order. All claims must be presented throughout the claims process. The court notes that the instant action was filed on July 9, 1999, after the liquidation order entered by the Mississippi Chancery Court.

million that forms the basis of this action.    In

short, it is the opinion of this court that the

Mississippi courts should determine the outcome of

this situation.    Therefore, for the reasons stated

below the motion to dismiss is denied, and this action

is stayed pending the outcome of the proceedings

pursuant to the Liquidation Order entered by the

Mississippi Chancery Court.

Defendants argue that this court should dismiss the

instant action based on abstention grounds.

Specifically, defendants argue that under United

States Supreme Court precedent delivered in Burford v.

Sun Oil Co., this court should abstain from exercising

jurisdiction and dismiss this case.    In Burford, the

Supreme Court recognized that the federal courts have

the power to refrain from taking jurisdiction in cases

that would hinder or disrupt state administrative

decisions.    Burford v. Sun Oil Co., 319 U.S. 315, 317-

318(1943).  The Burford Court said, "Although a federal

equity court does have jurisdiction of a particular

proceeding, it may, in its sound discretion, whether

its jurisdiction is invoked on the ground of diversity

of citizenship or otherwise, refuse to enforce or

protect legal rights, the exercise of which may be

prejudicial to the public interest for it is in the

public interest that federal courts of equity should

exercise their discretionary power with proper regard

for the rightful independence of state governments in

carrying out their domestic policy." <u>Burford v. Sun</u>

<u>Oil Co.</u>, 319 U.S. 315, 317-318 (1943) (citations

omitted). The defendants argue that in fact the

continuation of this case on the docket of this court

would hinder and disrupt the proceedings and decisions

of the Mississippi Chancery Court which has already

taken jurisdiction in an action involving essentially

the same parties as the instant case.  This argument

is well taken by the court.

In <u>Myles Lumber Co. v. CNA Financial Corp.</u>, the

14

Fourth Circuit Court of Appeals  addressed the
abstention doctrine.  In <u>Myles</u>, the plaintiff filed
suit in state court against the defendant CNA seeking
declaratory judgment of Myles' rights under an
insurance policy and damages from breach of contract
and unfair trade practices.  CNA removed the state
action to federal court pursuant to diversity of
citizenship.  The district court abstained from
exercising jurisdiction and remanded the case back to
the state court.  In its opinion the Fourth Circuit
Court of Appeals held that claims for damages were not
subject to remand and that the remand of the
declaratory judgment claim was an abuse of discretion.
<u>Myles Lumber Co. v. CNA Financial Corp</u>., 233 F.3d 821,
822(4th Cir. 2000).  In his opinion, Judge Wilkins
stated,"[d]istrict courts ordinarily have a strict
duty to exercise the jurisdiction that is conferred on
them by Congress.  However, when a suit involves
equitable or discretionary relief, a district court

15

may either stay the suit in favor of state court
action or 'decline to exercise jurisdiction altogether
by ... dismissing the suit or remanding it to state
court.' In contrast a district court may stay an
action seeking damages but generally may not subject
it to 'outright dismissal or remand'." Id. at 823
(citing Quackenbush v. Allstate Ins. Co., 517 U.S.
706, 716, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996).
Therefore, the issues presented by the instant case
are: (1)whether this court should abstain and decline
to exercise jurisdiction on plaintiff's equitable
claims for declaratory judgment and constructive
trust; (2)whether this court should dismiss the claims
for equitable relief or stay them pending the outcome
of the proceedings in the Mississippi court; (3)
whether this court should abstain from exercising
jurisdiction on plaintiff's claims for damages under
the civil RICO statute and; (4)whether the court
should stay the plaintiff's claims under the civil

16

RICO statute pending the outcome of the proceedings in the Mississippi court.

This court must consider four factors in deciding whether to exercise its discretion to hear the declaratory judgment action. See Id. at 824. These four factors are: (1) the strength of the states' interest in having the issues decided in state courts; (2) whether the issues raised before the federal court can be more efficiently determined in the state court action that is pending; (3) whether permitting the federal action to go on would result in the entanglement of state and federal court systems, because of the presence of overlapping law and fact and; (4) whether the declaratory judgment action is being used as a tool of forum shopping or procedural fencing. See Id. at 824.

The first factor this court must consider is the strength of the states' interest in having the issues in this case decided in state court. The use of the

17

<u>Burford</u> abstention doctrine has been long held by

federal courts to apply in actions against an

insurance company subject to state delinquency

proceedings.  See <u>Charleston Area Med. Center, Inc. v.</u>

<u>Blue Cross & Blue Shield</u>, 6 F.3d 243, 250 (4th Cir.

1993); <u>Universal Marine Ins. Co. v. Beacon Ins. Co.</u>,

768 F.2d 84, 88 (4th Cir. 1985).  In <u>Universal</u>, the

court said: "[r]eorganization of insolvent insurance

companies is a mater of state law and is handled

through insolvency proceedings in state court."

<u>Universal Marine Ins. Co.</u>, 768 F.2d at 88.  (citing

<u>Blackhawk Heating & Plumbing Co., Inc. v. Geeslin</u>, 530

F.2d 154, 159 (7th Cir. 1976); <u>Motlow v. Southern</u>

<u>Holding & Securities Corp.</u>, 95 F. 2d 721, 725-26 (8th

Cir.), cert. denied, 305 U.S. 609, 59 S.Ct. 68, 83

L.Ed. 388 (1938)).  In this case it is clear that the

State of Mississippi has enacted a regulatory scheme

to deal with reorganization of insolvent insurance

companies and has set a schedule for the repayment of

18

creditors of the insolvent insurance company.
Therefore, it is the opinion of this court that
Mississippi has a very strong interest in having this
matter decided in state court.

The next factor for this court to consider is
whether the issues raised before this court can be
more efficiently determined in the state court action
in Mississippi. In the  Myles case, Judge Wilkins
stated that the fact that there was no state action
pending weighed heavily in favor of retaining
jurisdiction and not abstaining in the case.  Myles
Lumber Co., 233 F.3d at 824.  In Myles, the case was
before the district court pursuant to removal by the
defendant based on diversity of citizenship, therefore
there was no state action pending at the time the
district court entered its ruling.  Id. at 824.  In
contrast, in the case before this court there has been
a state court action pending in Mississippi that was
initiated before the instant case.  The Mississippi

19

Chancery Court of Hinds County exercised jurisdiction over this matter and entered a stay prohibiting all persons from obtaining any preference, judgment, attachment, garnishment or lien against FNLIC or its assets, wherever located, or the commencement, prosecution or further prosecution of any suit, action or proceeding having any such purpose or effect. The order also states that no action at law or equity or in arbitration may be brought against the company or liquidator whether in Mississippi or elsewhere.

In <u>Centennial Life Ins. Co. v. Poston</u>, the court stated that the efficiency factor favored abstention when a pending state action would settle the entire matter but a federal declaratory judgment action would not. <u>Centennial Life Ins. Co. v. Poston</u>, 88 F. 3d 255, 258 (4th Cir. 1996). In <u>Poston</u>, the court found it significant that the state court action contained a defendant and a number of issues not present in the federal action. <u>See Id</u>. at 258. This is similar to

20

the case before this court in that not only are there
numerous other parties involved in the state action
but there are issues that have not even been addressed
that would be affected by a ruling by this court.
Therefore, it is the opinion of this court that the
issues raised in this case can be more efficiently
determined in the state court action that is pending
and the second factor weighs strongly in favor of
abstention.

The third factor for this court to consider is
whether permitting the federal action to go forward
would result in the entanglement of state and federal
court systems, because of the presence of overlapping
law and fact. In Myles, the court was again persuaded
by the fact that there was no pending action in state
court. Myles Lumber Co., 233 F.3d at 824. In the
instant case, however, there is an action pending in
the Mississippi courts which began before this court
was asked to exercise its jurisdiction. Because there

21

was a order placing FNLIC in liquidation by the Mississippi Court and a stay was issued to prevent the plaintiff from seeking redress in a forum other than the Mississippi chancery court, any action by this court would necessarily cause an entanglement of the state and federal court systems. Any decision at this time would greatly affect all the parties to the action in the Mississippi chancery court and would also affect the amount of redress that any creditor of FNLIC could recover under the state insolvency proceedings. Therefore, an analysis under the third factor also weighs heavily in favor of abstention.

The fourth and final factor for this court to consider is whether the declaratory judgment action is being used as a tool of forum shopping or procedural fencing. One fact that is particularly salient to this issue is the fact that this action was filed after the Mississippi Chancery Court had issued an order placing FNLIC into liquidation and entering a

22

stay preventing any form of redress other than in the Mississippi Chancery Court. This fact inclines this court to adopt the theory that the plaintiff was not happy with the priority its claim would receive under the liquidation proceedings pending in Mississippi and therefore, sought to have its rights determined in a federal jurisdiction. It seems that there is but one possible motive that the plaintiff could have in filing this claim, and that is to avoid the judgment and priority scheme of the Mississippi court. These facts indicate the plaintiff did not consider the forum in Mississippi sufficient to address its claims and therefore chose to file this action. The court finds that this action was filed to enable the plaintiff to avail itself of the jurisdiction of this court which would not have the same priority scheme, and limitations as the Chancery Court in Mississippi. For these reasons the court finds that an analysis of the fourth factor leans toward abstention.

23

After consideration of the four factors discussed above the court finds that it would be proper to abstain from exercising jurisdiction in this case at this time.  However, this brings up the issue as to whether this court should dismiss plaintiff's claims for equitable relief or stay them pending the outcome of the state insolvency proceedings in Mississippi.  If these claims were the only claims advanced by the plaintiff, it would be within this court's discretion to dismiss the claims.  However, along with the claims for equitable relief, the plaintiff has set fourth a claim under the Federal civil RICO statute against the defendants.  The plaintiff's claims under the civil RICO statute prevent this court from dismissing this part of the action.  In Quakenbush v.  Allstate Ins. Co., the Supreme Court addressed the issue of abstention dealing with claims for money damages.  See Quakenbush v.  Allstate Ins. Co., 517 U.S. 706, 135 L. Ed. 2d 1 (1996).  In particular the Court said that,

24

[w]e have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court.  By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.

Quakenbush v.  Allstate Ins. Co., 517 U.S. 706, 721,

135 L. Ed. 2d 1 (1996).

Upon further exploration of the principles laid

down by the Supreme Court in Quakenbush, the Fifth

Circuit Court of Appeals in Webb. v. B.C. Rogers

Poultry, Inc., stated that Quakenbush, imposes an

"ironclad" bar to dismissing or remanding a damages

action. Webb. v. B.C. Rogers Poultry, Inc., 174 F. 3d.

697, 701 (5th Cir. 1999).  The court tends to agree

with the court in Webb, in that while an action for

damages may be stayed based on abstention grounds, an

outright dismissal would tear completely against the

25

Supreme Court's ruling in <u>Quakenbush</u>.    Therefore, the

claim for damages under the civil RICO statute

advanced by the plaintiff cannot be dismissed pursuant

to abstention grounds.    However, it is the judgment of

this court that the claim for relief under the civil

RICO statute should be stayed pending the outcome of

the proceedings in the Mississippi Chancery Court.

This leaves the final issue as whether this court

should dismiss the plaintiff's claims for equitable

relief or stay them pending the outcome of the

proceedings in the Mississippi Chancery Court.    In

<u>Myles</u>, the Fourth Circuit said if a district court

must retain jurisdiction over the damages claims then

it would be more efficient for the court to retain

jurisdiction over all claims.    <u>Myles Lumber Co.</u>, 233

F.3d at 824. (citing <u>Gov't. Employees Ins. Co. v.</u>

<u>Dizol</u>, 133 F. 3d. 1220, 1225-26 (9th Cir. 1998))

(stating that, to avoid piecemeal litigation, a

district court generally should not remand or decline

26

to entertain a declaratory relief claim when other claims are joined with the claim for declaratory relief).

Accordingly, it is the judgment of this court that while it would be suitable for this court to dismiss plaintiff's equitable claims if they stood on their own, it would be improper for this court to dismiss these claims because they are joined with an action at law for damages. Therefore, plaintiff's claims for equitable relief are also stayed pending the outcome of the proceedings in the Mississippi Chancery Court.

## IV. Conclusion

For the reasons set forth above, defendants' motion to dismiss is hereby DENIED. It is the JUDGMENT of this court that all of plaintiff's claims in this action are STAYED pending the outcome of current litigation in the Chancery Court of Hinds, County Mississippi.

27

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTER: This _18_ day of March, 2001.

*[signature]*

SENIOR UNITED STATES DISTRICT JUDGE

TRUE COPY, TES:
JAN E. SCOTT, JR., C.

*[signature]*

DEPUTY CLERK