IN THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT
OF HINDS COUNTY, MISSISSIPPI

GEORGE DALE, COMMISSIONER OF
INSURANCE OF THE STATE OF MISSISSIPPI

PLAINTIFF

V.                                                                              CIVIL ACTION NO. G99-908S2

FIRST NATIONAL LIFE INSURANCE COMPANY
OF AMERICA, A MISSISSIPPI DOMICILED
INSURANCE COMPANY                                                 DEFENDANT

## PETITION FOR DECLARATORY RELIEF OF
## HUFF-COOK, INC., PEOPLES BENEFIT LIFE INSURANCE COMPANY
## AND VETERANS LIFE INSURANCE COMPANY

Huff-Cook, Inc. ("Settlers"), Peoples Benefit Life Insurance Company ("Peoples"), and Veterans Life Insurance Company ("Veterans") (collectively, the "Petitioners") submit this Petition seeking a declaration by this Court that certain property owned by the Petitioners in which the Honorable George Dale, Commissioner of Insurance for the State of Mississippi (the "Liquidator"), in his capacity as Liquidator of First National Life Insurance Company ("First National Life"), asserts an interest is not part of the estate of First National Life. Instead, that property is impressed with a constructive or other equitable trust in favor of the Petitioners. In the alternative, Petitioners seek a declaration by this Court that Petitioners are secured creditors of First National Life. In further support, Petitioners allege as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to Mississippi Insurers Rehabilitation and Liquidation Act. Miss. Code Ann.

2. This Court also has jurisdiction over this matter pursuant to Mississippi Rule of Civil Procedure 57.

000053

FNL-R.E.001

14. Frankel and Atnip have been indicted by a federal grand jury and charged with numerous counts of wire fraud and money laundering, as well as participating in a Racketeer Influenced and Corrupt Organization, conspiracy to participate in a Racketeer Influenced and Corrupt Organization, and securities fraud based, in part, on their role in First National Life's theft of approximately $60 million from Settlers, Peoples and Veterans. Atnip improperly received approximately $700,000 directly from Account 70026 at Banque SCS Alliance in Geneva, Switzerland.

15. Pursuant to a number of warrants, the United States has seized a number of assets that are proceeds of the fraudulent scheme. These assets are the subjects of a number of forfeiture proceedings currently pending before Judge Burns in the United States District Court for the District of Connecticut including United States v. $29,035,500.00, Civil No. 3:01CV1515(EBB) and United States v. $11,014,165.20, Civil No. 3:99CV02589(EBB).

16. The Petitioners have filed Verified Statements of Interest or Right and sought to intervene in a number of these forfeiture proceedings.

17. The forfeiture proceedings have been consolidated before Judge Burns in the United States District Court for the District of Connecticut. By order dated October 31, 2000, Judge Burns denied Peoples and Veterans motion to intervene in the forfeiture proceedings. United States v. One 1995 Turbo Commander, No. 3:99-CV-2590, No. 3:99-CV-2589, 2000 WL 18388334, *2. The United States Court of Appeals for the Second Circuit affirmed the denial of Peoples and Veterans' motion to intervene and directed Peoples and Veterans to pursue their constructive trust claims in the

000063

FNL-R.E.005

present First National Life receivership proceeding. <u>United States v. Peoples Benefit Life Ins. Co.</u>, 271 F.3d 411, 416-17 (2d Cir. 2001).

18. Through bank records, the Petitioners can trace substantial portions of the funds stolen from them by First National Life to assets in these forfeiture proceedings initiated by the United States government in federal court in Connecticut.

**B.   First National Life Defrauded Settlers Out of Nearly $44.8 Million**

19. As of the beginning of 1998, Settlers had a group of existing policies (a "book of business") of burial insurance called the "Care Plan" book. Settlers had discontinued selling this type of policy and was holding approximately $46 million as reserves for the payment of claims of the policyholders for this "book of business." As Settlers no longer sold this type of policy, it was interested in selling this book to another insurance company.

20. In early 1999, representatives of First National Life approached Settlers regarding entering into an agreement with Settlers to acquire the Care Plan book of business by an assumption reinsurance transaction. First National Life agreed to pay $1.75 million for the Care Plan book of business. This payment was to take the form of a "ceding commission" which would be deducted from the reserves for the book, which Settlers would transfer to First National Life. In other words, Settlers would transfer to First National Life approximately $46 million in liabilities associated with the Care Plan business and $44,795,000 in cash reserves (the "Settlers Reserve Fund").

21. Settlers was fraudulently induced to enter into the assumption reinsurance agreement ("Settlers Agreement," a copy of which is attached hereto as Exhibit A), in part by First National Life's misrepresentations that it was a solvent and prosperous company. More important, First