Westlaw.

974 P.2d 1017    Page 1
89 Hawai'i 427, 974 P.2d 1017
**(Cite as: 89 Hawai'i 427, 974 P.2d 1017)**

C

Supreme Court of Hawai'i.
FOUR STAR INSURANCE AGENCY, INC.; J.D. Jenkins & Co., Inc.;
Insurance Hawaii, Inc.; Big Island Insurance Agency, Inc.; and Pyramid
Insurance, Plaintiffs-Appellants,
v.
HAWAIIAN ELECTRIC INDUSTRIES, INC.; Hei Diversified, Inc.; The Hawaiian
Insurance & Guaranty Company, Limited; United National Insurance Company,
Limited; Hawaiian Underwriters Insurance Co., Ltd.; Robert F. Clarke; Edward
J. Blackburn; Thomas S. Adams; Gary L. Kirby; David L. Ward; Neal H.
Kunde; Robert F. Mougeot; Reynaldo D. Graulty [FN1], only in his capacity
as Insurance Commissioner of the State of Hawai'i and Rehabilitator and/or
Liquidator of Hawaiian Insurance & Guaranty Company, Limited, United National
Insurance Company, Ltd. and Hawaiian Underwriters Insurance Co., Ltd.,
Defendants-Appellees, and DOES 1 through 100, Defendants

FN1. Linda Chu Takayama and Lawrence M. Reifurth are no longer in the position of Insurance Commissioner, Department of Commerce and Consumer Affairs of the State of Hawai'i. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1), Reynaldo D. Graulty has been substituted automatically in this case.

No. 20710.

Feb. 26, 1999.

Insurance Commissioner brought suit against parent company of insolvent insurers undergoing liquidation or rehabilitation and entered into settlement on behalf of creditors, policyholders and others. Independent insurance agents who were owed commissions by defunct insurers or their parent then brought suit against parent to recover premiums earned. The First Circuit Court entered summary judgment for insurer, and agents appealed. The Supreme Court, Ramil, J., held that Insurance Commissioner had exclusive standing to pursue parent on behalf of creditors and policyholders of defunct insurers, and thus suit by agents was barred.

Affirmed.

West Headnotes

**[1] Appeal and Error** 893(1)
30k893(1) Most Cited Cases
The interpretation of a statute is a question of law reviewable de novo.

**[2] Insurance** 1405
217k1405 Most Cited Cases
Insurance Commissioner, as liquidator of insolvent insurer, has the power to prosecute any and all lawsuits on behalf of the insurer and all creditors, shareholders, policyholders, or members of the insurer. HRS § § 431:15-310, 431:15-313.

**[3] Insurance** 1405
217k1405 Most Cited Cases
Insurance Commissioner, as liquidator of insolvent insurer, has broad powers to prosecute and settle any action to protect the rights of interested parties. HRS § § 431:15-310, 431:15-313.

**[4] Insurance** 1405
217k1405 Most Cited Cases

**[4] Insurance** 1412
217k1412 Most Cited Cases
Insurers Supervision, Rehabilitation and Liquidation Act (ISRLA) was intended to grant Insurance Commissioner broad powers to facilitate orderly liquidation of insolvent insurer and to ensure equitable apportionment between creditors of any losses that may result. HRS § 431:15-310.

**[5] Insurance** 1405
217k1405 Most Cited Cases
Insurance Commissioner has exclusive standing to assert claims arising out of liquidation or rehabilitation of insolvent insurer under Insurers Supervision, Rehabilitation and Liquidation Act (ISRLA) on behalf of not only insolvent insurer, but also its policyholders, creditors and other interested parties. HRS § 431:15-310.

**[6] Insurance** 1412

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

974 P.2d 1017 Page 2
89 Hawai'i 427, 974 P.2d 1017
**(Cite as: 89 Hawai'i 427, 974 P.2d 1017)**

217k1412 Most Cited Cases
Insurance Commissioner's exclusive standing to assert all claims against parent of insolvent insurers on behalf of policyholders and creditors, and Commissioner's institution of suit against insolvent insurers' parent for misrepresentation and mismanagement, precluded subsequent suit by independent insurance agents seeking payment of earned commissions from parent.
HRS § 431:15-310.

 **\*\*1018 \*428** David K. Lum and Keith S. Agena, of Char, Sakamoto, Ishii, Lum & Ching; Honolulu, Philip Borowsky, pro hac vice, of San Francisco; Jani Iwamoto, pro hac vice, of San Francisco, on the briefs, for Plaintiffs-Appellants Four Star Insurance Agency, Inc.; J.D. Jenkins & Co., Inc.; Insurance Hawaii, Inc.; Big Island Insurance Agency, Inc.; and Pyramid Insurance Agency.

 Jeffrey S. Portnoy and Mitchell C. Sockett, of Cades Schutte Fleming & Wright, Honolulu, on the briefs, for Defendants-Appellees Hawaiian Electric Industries, Inc.; HEI Diversified, Inc.; Robert F.Clarke and Robert F. Mougeot

 Clifford K. Higa, Joseph N. Kiyose, Rod S. Aoki, John A. Kodachi, of Kobayashi, Sugita & Goda, Honolulu, on the briefs, for Defendants-Appellees United National Insurance Company, Limited, and Hawaiian Underwriters Insurance Co., Ltd.

 George W. Playdon, Jr. and Kelvin H. Kaneshiro, of Reinwald, O'Connor & Playdon, Honolulu, on the briefs, for Defendants-Appellees Thomas S. Adams, Gary L. Kirby, David L. Ward, and Neal H. Kunde,Deborah Day Emerson and David A. Webber, Deputy Attorneys General, for Defendant-Appellee Reynaldo D. Graulty, only in his capacity as Insurance Commission of the State of Hawai'i

 Jerrold Y. Chun, of Chun Chipchase Takayama Nagatani, Honolulu, on the briefs, for Defendants-Appellees Linda Chu Takayama and Lawrence M. Reifurth, in their respective capacities as Rehabilitators and/or Liquidators of the Hawaiian Insurance & Guaranty Company, Limited, United National Insurance Company, Ltd., and Hawaiian Underwriters Insurance Co., Ltd, join answering brief of Defendants-Appellees United National Insurance Company, Limited and Hawaiian Underwriters Insurance Co., Ltd.

 MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

 Opinion of the Court by RAMIL, J.

 This appeal arises from the rehabilitation of defendant-appellee The Hawaiian Insurance & Guaranty Company, Ltd. (HIGC), and the liquidation of defendants-appellees Hawaiian Underwriters Insurance Co., Ltd. (HUI) and United National Insurance Company, Limited (UNICO). Shortly after the insolvency of HIGC, HUI, and UNICO, the Insurance Commissioner (the Commissioner) seized the assets of HIGC, HUI, and UNICO, and eventually settled all claims against HIGC, HUI, UNICO. The Commissioner also obtained a thirty-two million dollar cash settlement against defendant-appellee Hawaiian Electric Industries, Inc. (HEI), the parent company of HIGC, HUI, and UNICO. Thereafter, plaintiffs-appellants Four Star Insurance Agency, Inc., et al. (collectively, Plaintiffs) brought their own action against HIGC, HUI, UNICO, HEI, and various directors and officers (collectively, Defendants) for alleged unpaid commissions. The circuit court granted Defendants' motions for summary judgment and entered judgment in favor of Defendants. From this judgment, Plaintiffs appealed.

 On appeal, Plaintiffs contend, *inter alia,* that the Commissioner did not have authority to settle their claims because: (1) the claims were "unique and personal" to Plaintiffs; and (2) the unpaid commissions were held "in trust" for Plaintiffs. Because we hold that the Commissioner had exclusive standing to assert Plaintiffs' claims arising out of the insolvency of HIGC, HUI, and UNICO, we affirm the circuit court's judgment filed April 25, 1997.

I. BACKGROUND
A. *The Parties*
 Defendants HIG, HUI, and UNICO were insurance companies in Hawai'i that sold property insurance, vehicle insurance, general casualty insurance, and other types of insurance policies. Defendants HIGC, HUI, and UNICO operated collectively as The Hawaiian Insurance Group (HIG). HIGC, HUI, and UNICO were wholly owned subsidiaries of defendant-appellee HEI Diversified, Inc. (HEIDI). In turn, HEIDI was a wholly **\*\*1019 \*429** owned subsidiary of HEI. [FN2]

> FN2. In addition to HIGC, HUI, UNICO, HEIDI, and HEI, the other defendants in this case are Robert Clarke, Robert Mougeot, Thomas Adams, Gary Kirby, David Ward, and Neal Kunde. Robert Clarke is the president and CEO of HEI and was HIGC's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

former chairman and director. Robert Mougeot is HEI's Financial Vice-President and was a former HIGC director. Thomas Adams, Gary Kirby, David Ward, and Neal Kunde were former HIGC officers.

Plaintiffs are independent insurance agents that serviced HIG's customers. [FN3] Plaintiffs had a "direct billing" arrangement with HIG. Under this arrangement, Plaintiffs would sell HIG's policies. HIG would then bill its customers directly and collect premiums accordingly. In turn, HIG would then pay Plaintiffs a specified percentage of the collected premiums as Plaintiffs' earned commissions.

> FN3. The Plaintiffs in this appeal are: (1) Four Star Insurance Agency, (2) J.D. Jenkins & Company, Insurance Hawaii, (3) Big Island Insurance Agency, and (4) Pyramid Insurance Agency.

### B. *Hurricane Iniki*

On September 11, 1992, Hurricane Iniki caused major property damage to the Island of Kaua'i and parts of O'ahu. As a result of the hurricane, homeowners and property owners flooded HIG and other insurance companies with hurricane-related damage claims. Eventually, the claims overwhelmed HIG's financial resources. In response to these damage claims, on December 3, 1992, HEI announced that it would not contribute additional capital to HIG.

### C. *The HIG Lawsuit & the Reorganization/Liquidation Plan*

On December 18, 1992, the circuit court granted then-Insurance Commissioner Linda Chu Takayama's (the Commissioner) motion to take possession and control of all of HIG's assets. On December 24, 1992, the circuit court placed HIG in rehabilitation and appointed the Commissioner as rehabilitator. As rehabilitator, the Commissioner was directed to take possession of and administer HIG's assets under the court's supervision.

On April 12, 1993, the Commissioner, in her capacity as rehabilitator, filed a motion for approval of a plan for reorganization of HIGC and for liquidation of UNICO and HUI (the plan) in a special proceeding entitled *Takayama v. The Hawaiian Insurance & Guaranty Company, Ltd., et al.* (the HIG lawsuit). The circuit court approved the plan, which set forth an exclusive procedure whereby policyholders, claimants and creditors of HIG could file proofs of claim for resolution and payment of any monies allegedly due.

The plan gave creditors three options. Under the first option, the creditor would participate in the plan and be entitled to receive twenty-five percent of its claim within ninety days after filing a claim form. The balance of the claim would be paid if and when such sums became available. Under the second option, the creditor would participate in the plan and be entitled to receive fifty percent of its claim within 90 days after filing a claim form. This payment would be paid "in full satisfaction of all sums due such creditor." Under the third option, the creditor would not participate in the plan and be entitled to receive a pro-rata payment only from such sums as may become available in the future.

All of the Plaintiffs elected to participate in the plan by selecting either the first or second option. None of the Plaintiffs selected the third option. Accordingly, each Plaintiff was paid at least fifty percent of the amount claimed.

In addition to the three creditor payment options, the plan stated that the Commissioner would commence and pursue a lawsuit against HEI, HEIDI, and some or all of the officers and directors of HIGC. The plan also stated that the Commissioner could settle such a lawsuit upon terms the Commissioner deemed appropriate, subject to court approval.

### D. *The HEI Lawsuit*

On April 12, 1993, the Commissioner, in her capacity as rehabilitator/liquidator, filed a complaint entitled *Takayama v. Hawaiian Electric Industries, Inc., et al.* (the HEI **1020 *430 lawsuit). The Commissioner subsequently amended the HEI lawsuit to reflect that the action was brought on behalf of all creditors, potential creditors, policyholders, and claimants of HIG. The HEI lawsuit consisted of thirteen causes of action and alleged, in relevant part, that HEI, HEIDI, and a number of their corporate officers (the HEI defendants) had: (1) misled HIG's creditors, policyholders and the public regarding HEI's and HEIDI's financial support of HIG; and (2) mismanaged and drained financial assets from HIG.

On February 10, 1994, the Commissioner and the HEI defendants signed a global settlement agreement and general release. Under this settlement, HEI agreed to immediately pay thirty-two million dollars in cash to the Commissioner. The payment was intended to help reduce an anticipated seventy million dollar deficit facing HIG. In effect, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

974 P.2d 1017                                                                                                                   Page 4
89 Hawai'i 427, 974 P.2d 1017
**(Cite as: 89 Hawai'i 427, 974 P.2d 1017)**

payment would be available for distribution to HIG's policyholders, creditors, and claimants in accordance with the plan's claims settlement procedure. In exchange for the immediate cash payment, the Commissioner, in her capacity as rehabilitator/liquidator and on behalf of all the policyholders, claimants and creditors of the HIG Group, agreed to release and discharge each of the HEI defendants.

On March 3, 1994, Insurance Commissioner Lawrence M. Reifurth, who succeeded Commissioner Takayama, filed a motion for approval of the settlement agreement. Prior to the hearing on the motion, notice of the court hearing on the settlement agreement was addressed and sent to all known policyholders, claimants and creditors of HIG, including Plaintiffs. [FN4] The notice stated that approval of the settlement agreement would result in a release "of any and all claims held by the Commissioner/Rehabilitator/Liquidator and by HIG in their representative capacities" on behalf of the policyholders, claimants and creditors of HIG. On April 6, 1994, having received no objections from Plaintiffs and there being no appearance by Plaintiffs at the hearing, the circuit court granted Reifurth's motion for approval of the settlement agreement finding that it was fair and reasonable. The court also found that

> FN4. Although Plaintiffs contend that they never received notice of the hearing on the Commissioner's motion for approval of the settlement agreement, the circuit court specifically found that appropriate notices were mailed to all policyholders, claimants, and creditors of HIG. In addition, notice of the hearing was published in a newspaper of general circulation.

> [t]he Settlement Agreement has been entered into in good faith, represents the compromise of disputed claims, and the terms thereof are fair, reasonable and in the respective best interests of the public, the past, present and future policyholders, claimants and creditors....

Consequently, the HEI lawsuit was later dismissed with prejudice.

E. *Plaintiffs' Lawsuit Against The HEI Defendants*
On December 2, 1994, after the HEI lawsuit had been settled and dismissed, Plaintiffs filed a complaint against HEI, HEIDI, HIGC, UNICO, HUI, various officers and directors of HIGC and HEI, and Insurance Commissioners Takayama and Reifurth (Plaintiffs' lawsuit). Like the HEI lawsuit, Plaintiffs' lawsuit alleged, *inter alia,* that the HEI Defendants had: (1) misled Plaintiffs regarding HEI's and HEIDI's financial support of HIG; and (2) mismanaged and drained financial assets from HIG.

Defendants brought various motions for summary judgment. The circuit court granted summary judgment in favor of all defendants named in Plaintiffs' suit and entered judgment in favor of all defendants. From this judgment, Plaintiffs filed a timely appeal.

II. *STANDARDS OF REVIEW*
A. *Summary Judgment*
We review [a] circuit court's award of summary judgment de novo under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

**\*\*1021 \*431** [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.* (citations and internal quotation marks omitted); see Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted). *Konno v. County of Hawai'i,* 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997) (quoting *Dunlea v. Dappen,* 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996) (citations omitted)) (brackets in original). In addition,

"The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina,* 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)). In other words, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." *Maguire,* 79 Hawai'i at 112, 899 P.2d at 395 (citation omitted).

*State Farm Mut. Auto Ins. Co. v. Murata,* 88 Hawai'i 284, 287-88, 965 P.2d 1284, 1287-88 (1998) (quoting *Estate of Doe v. Paul Revere Ins. Group,* 86 Hawai'i 262, 269-70, 948 P.2d 1103, 1110-11 (1997))

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(brackets in original).

### B. *Statutory Construction*

[1] The question of whether the Commissioner had exclusive standing to prosecute and settle each cause of action alleged in Plaintiffs' complaint involves the interpretation of HRS § 431:15-310. The interpretation of a statute is a question of law reviewable *de novo*. *Shimabuku v. Montgomery Elevator Co.,* 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995) (citation omitted).

### III. *DISCUSSION*

Defendants contend that the Commissioner, as liquidator under HRS § 431:15- 310, had exclusive standing to assert common claims on behalf of HIG, its policyholders and creditors against third parties. We agree.

### A. *Applicable Rules of Statutory Construction*

Although we obtain the intention of the legislature primarily from the language of the statute itself,

> we have rejected an approach to statutory construction which limits us to the words of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction, does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

*Bragg v. State Farm Mut. Auto. Ins. Co.,* 81 Hawai'i 302, 306, 916 P.2d 1203, 1207 (1996) (quoting *Sato v. Tawata,* 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995)). In addition, "[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction and illogicality." *State v. Malufau,* 80 Hawai'i 126, 137, 906 P.2d 612, 623 (1995) (citation and internal quotation marks omitted). Finally, "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." *State v. Ake,* 88 Hawai'i 389, 395, 967 P.2d 221, 227 (1998) (quoting HRS § 1-16 (1993)).

**\*\*1022 \*432** B. *Scope of Insurance Commissioner's Authority*

[2] HRS § 431:15-310 is part of the Insurers Supervision, Rehabilitation and Liquidation Act (ISRLA). *See* HRS ch. 431:15 (1993). HRS § 431:15-310(a) provides in relevant part:

> The liquidator shall have the power to:
>
> ....
>
> (13) Prosecute *any* action which may exist *on behalf of the creditors, members, policyholders or shareholders of the insurer against any officer of the insurer, or any other person;*
>
> ....
>
> (19) *Exercise and enforce all the rights, remedies, and powers of any creditor, shareholder, policyholder, or member,* including any power to avoid any transfer or lien that may be given by the general law and that is not included with section 431:15-315 through section 431:15-317; [and]
>
> ....
>
> (22) Exercise all powers now held or hereafter conferred upon receivers by the laws of this State not inconsistent with the provisions of this article.

(Emphases added.) Likewise, HRS § 431:15-313(b) (1993) provides in relevant part:

> *The liquidator may,* upon or after an order for liquidation, within two years or such time in addition to two years as applicable law may permit, *institute an action or proceeding on behalf of the estate of the insurer upon any cause of action* against which the period of limitation fixed by applicable law has not expired at the time of the filing of the petition upon which such order is entered.

(Emphases added.) Based upon the plain language of HRS §§ 431:15-310 and 431:15-313, the Commissioner, as liquidator of an insurer undergoing liquidation, has the power to prosecute any and all lawsuits on behalf of the insurer and all creditors, shareholders, policyholders, or members of the insurer.

[3] In addition to the broad powers conferred by HRS §§ 431:15-310 and 431:15-313, HRS § 431:15-310(b) (1993) provides:

> The enumeration, in this section, of the powers and authority of the liquidator shall not be construed as a limitation upon the liquidator, nor shall it exclude in any manner the liquidator's right to do such other acts not herein specifically enumerated, or otherwise provided for, as may be necessary or appropriate for the accomplishment of or in aid of the purpose of liquidation.

Therefore, read *in pari materia* with HRS §§ 431:15-310(a) and 431:15- 313(b), HRS ch. 431:15

974 P.2d 1017                                                                                                      Page 6
89 Hawai'i 427, 974 P.2d 1017
**(Cite as: 89 Hawai'i 427, 974 P.2d 1017)**

affords broad powers to the Commissioner, as liquidator, to prosecute and settle any action to protect the rights of all interested parties.

The legislature enacted the ISRLA to facilitate the orderly and fair liquidation of an insolvent insurer for the "protection of the interests of insureds, claimants, creditors, and the public generally[.]" HRS 431:15-101(d) (1993). To achieve the ISRLA's purposes, the legislature designed the ISRLA to result in:

(3) Enhanced efficiency and economy of liquidation, through clarification of the law, to *minimize legal uncertainty and litigation;*
(4) *Equitable apportionment of any unavoidable loss;* [and]
(5) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside this State[.]

HRS § 431:15-101(d) (emphases added). The ISRLA further mandates that the provisions of HRS ch. 431:15 "be liberally construed" to protect the interests of policyholders, claimants, creditors, and the public generally. See HRS § 431:15-101(c) (1993).

[4] To promote the legislature's goals to minimize litigation and equitably apportion any unavoidable loss, the ISRLA provides for an automatic stay of all proceedings against the insolvent insurance company and the liquidator. HRS § 431:15-313(a) provides in relevant part:

**\*\*1023 \*433** *Upon issuance of an order appointing a liquidator ..., no action at law or equity shall be brought against the insurer or liquidator,* whether in this State or elsewhere, *nor shall any such existing actions be maintained or further presented after issuance of such order.* The courts of this State shall give full faith and credit to injunctions against the liquidator or the company or the continuation of existing actions against the liquidator or the company, when such injunctions are included in an order to liquidate an insurer issued pursuant to corresponding provisions in other states.

(Emphases added.) In addition, HRS § 431:15-307(a) (1993) provides:

*An order to liquidate the business of a domestic insurer* shall appoint the commissioner and the commissioner's successors in office liquidator, and *shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the general supervision of the court. The liquidator shall be vested by operation of law with the title to all of the property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated,* wherever located, as of the entry of the final order of liquidation.

(Emphases added.) Based upon the statutory scheme and the underlying purposes of the ISRLA, the legislature intended to grant the Commissioner the broad powers to facilitate an orderly liquidation of an insolvent insurance company and to ensure an equitable apportionment between creditors of any losses that may result.

The Hawai'i legislature adopted the ISRLA in 1987, patterning it, in part, after the Uniform Insurers Liquidation Act (UILA) created by the National Association of Insurance Commissioners (NAIC). *See Insurers Rehabilitation and Liquidation Model Act* (National Association of Insurance Commissioners 1995). The provisions of New York's insurance laws regarding the liquidation of an insolvent insurance agency are similar to the provisions contained in Hawaii's ISRLA. *See* N.Y. Ins. Law § 7405(b) (McKinney 1985). [FN5] Accordingly, because Hawai'i appellate courts have not yet addressed the scope of the insurance commissioner's powers in rehabilitating/liquidating an insolvent insurer, New York's interpretation of their insurance law's provisions governing liquidation is useful in construing HRS ch. 431:15.

> FN5. N.Y. Ins. Law § 7405(b) (McKinney 1985) provides in relevant part:
> *The superintendent and his successors shall be vested by operation of law with the title to all property, contracts and rights of action of such insurer* as of the date of the entry of the order so directing them to liquidate. The filing or recording of such order in any record office of the state shall impart the same notice that a deed, bill of sale or other evidence of title duly filed or recorded by such insurer would have imparted. *The rights and liabilities of any such insurer and of its creditors, policyholders, shareholders, members and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date the order* is entered in the office of the clerk of the county where such insurer had its principal office on the date the proceeding commenced....
> (Emphases added.) Similarly, HRS § 431:15-307 provides in relevant part:

> *The liquidator shall be vested by operation of law with the title to all of the property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated,* wherever located, as of the entry of the final order of liquidation. The filing or recording of the order with the clerk of the circuit court of the first judicial circuit and at the bureau of conveyances shall impart the same notice as evidence of title.... Upon issuance of the order, *the rights and liabilities of any such insurer and of its creditors, policyholders, shareholders, members and all other persons interested in its estate shall become fixed as of the date of entry of the order of liquidation ....*
>
> (Emphases added.)

In *Corcoran v. Frank B. Hall & Co., Inc.,* 149 A.D.2d 165, 545 N.Y.S.2d 278 (N.Y.App.Div.1989), the Appellate Division of the Supreme Court of New York held that the superintendent of insurance, as liquidator of an insolvent insurance company, had exclusive standing to assert claims on behalf of the insurance company, its policyholders and creditors against third parties. *Id.* at 280-81. The liquidator in *Corcoran* brought an action against the parent company of the insolvent insurer, its subsidiaries, and its former officers and directors. *Id.* at 279. The **1024 *434** liquidator brought the action on behalf of the insolvent insurer and its policyholders and creditors. *Id.* The liquidator's claims sought to hold the parent company of the insolvent insurer responsible for fraud and misrepresentation as to the insurer's true financial condition and breach of fiduciary duty. *Id.* at 279-80. Subsequent to the liquidator's action, the creditors in *Corcoran* brought a separate action against the parent company of the insolvent insurer that alleged virtually the same claims as those raised by the liquidator's suit. *Id.*

In rejecting the creditors' argument that the liquidator did not have standing to sue on behalf of the creditors of the insolvent insurer, the court noted that the liquidation provisions were designed to

> furnish a "comprehensive, economical, and efficient method for the winding up of the affairs" of ... insurance companies by the ... [liquidator]. [The liquidation] provisions ... "are *exclusive* in their operation and furnish a complete procedure for the protection of the rights of all parties interested." ... The ... [liquidation court], in the liquidation proceeding, must take cognizance of the interests of the policyholders, creditors, stockholders, and the public ... and it may issue such orders "as may be deemed necessary to prevent interference with the ... [liquidator] or the proceeding, or waste of the assets of the insurer".... Clearly does the plan emerge that the ... [liquidation court], with the agency of the ... [liquidator], was intended to have exclusive jurisdiction of claims both for and against an insurance company in liquidation.

*Id.* at 282 (quoting *Knickerbocker Agency, Inc. v. Holz,* 4 N.Y.2d 245, 173 N.Y.S.2d 602, 607, 149 N.E.2d 885 (1958)) (some alterations in original and some added) (emphasis in original). The court also concluded that the "pre-eminent purpose" of the liquidation provisions, which was the equitable treatment of all creditors and the avoidance of preferences, would be frustrated if creditors were allowed to bring separate actions in addition to that brought by the liquidator. See *id.* at 282-83. Therefore, the court held, pursuant to N.Y. Ins. Law § 7405(b), [FN6] that: (1) the liquidator had paramount and exclusive standing to assert claims on behalf of its policyholders and creditors; and (2) the statute's liquidation provisions were exclusive and furnish a complete procedure to protect the rights of all interested parties. *Id.* at 280-84.

> FN6. *See supra* note 5.

We agree with the reasoning of *Corcoran.* As discussed above, the relevant liquidation provisions of ISRLA are similar to those in New York's Insurance Law. *See supra* note 5 (comparing N.Y. Ins. Law § 7405(b) with HRS § 431:15-307). In fact, by expressly granting the Commissioner the power to "[p]rosecute *any* action which may exist on behalf of the creditors" and to "[e]xercise and enforce *all* the rights, remedies, and powers of any creditor," the ISRLA contemplates even broader powers for our insurance commissioner than does the New York statute for New York's superintendent of insurance. HRS §§ 431:15-310(a)(13) and 431:15-310(a)(19) (emphases added). [FN7]

> FN7. Unlike Hawaii's ISRLA, New York's Insurance Law does not expressly grant the liquidator of an insolvent insurance company powers similar to those in HRS §§ 431:15-310(a)(13) and 431:15-310(a)(19).

[5] Like the "pre-eminent purpose" discussed in *Corcoran,* the underlying purposes of the ISRLA include the equitable treatment of all creditors and the avoidance of preferences. Indeed, a flood of claims arising from an insurer's insolvency brought by each creditor of the insolvent insurer would

974 P.2d 1017                                                                                                                Page 8
89 Hawai'i 427, 974 P.2d 1017
**(Cite as: 89 Hawai'i 427,  974 P.2d 1017)**

potentially result in an award to one creditor that could be disproportionate to that of another creditor. Under such a system, which encourages creditors to race to the courthouse, it is difficult to imagine how a party faced with the prospect of numerous lawsuits from various creditors would be able to settle the multitude of lawsuits in an orderly and equitable manner.  Such a construction of the ISRLA would be inconsistent to its purposes of ensuring the equitable apportionment of losses and minimizing litigation. Because we presume that the legislature did not intend such an absurd result, the exclusivity **1025 *435 of the Commissioner's standing is necessary to minimize litigation and to ensure the equitable apportionment of losses.  Given these considerations and considering the statutory scheme of the ISRLA, we hold that the Commissioner has exclusive standing to assert claims arising out of the liquidation or rehabilitation of an insurance company on behalf of not only the insolvent insurer, but also its policyholders, creditors, and all other interested parties.

 Having adopted the reasoning of the *Corcoran* court, we now turn to the facts of this case.  In this case, the material facts, which are undisputed, are exactly the same as those in *Corcoran.*  Like the liquidator in *Corcoran,* who brought an action against the parent company of the insolvent insurer, the Commissioner, in this case, brought an action against HEI, which was the parent company of HIGC, HUI, and UNICO.  Like the lawsuit against the parent company in *Corcoran,* the lawsuit against HEI was brought on behalf of all creditors, potential creditors, policyholders, and claimants of HIG, including Plaintiffs.  The Commissioner in this case also asserted claims that were similar to those brought by the liquidator in *Corcoran* (*i.e.,* that the parent company of the insolvent insurer intentionally undercapitalized the insurer and misled the insurer's creditors, policyholders and the public).

 [6]  The Commissioner's lawsuit against HEI concluded in a thirty-two million dollar settlement in favor of HIG. The proceeds from this settlement were used to help reduce an anticipated seventy million dollar shortfall in HIG's estate.   In effect, the Commissioner's settlement with HEI was used to pay the claims of HIG's creditors, including Plaintiffs, in accordance with the plan's claims settlement procedure. [FN8]

> FN8. Plaintiffs assert that the Commissioner had no authority to retain the "earned" commissions that were "vested" in Plaintiffs and held in "trust" by the Commissioner. Plaintiffs assertion is without merit and is not relevant to the issue of whether Plaintiffs had standing to bring an action against the parent company of HIG.
> HRS § 431:15-103(a)(8) defines "general assets" as "all property, real, personal, or otherwise, not *specifically* mortgaged, pledged, deposited, or otherwise encumbered for the security or benefit of specified persons or classes of persons." (Emphasis added.)   In this case, the record indicates that the premiums paid by the insureds were paid directly to HIG and were the property of HIG. In turn, HIG would pay Plaintiffs a commission based on a percentage of the amount of premiums collected. Because the premiums collected by HIG were not *specifically* set aside (*i.e.,* encumbered) for the benefit of the Plaintiffs, the commissions collected were part of HIG's general assets.  In addition, Plaintiffs have not cited to any section of HRS ch. 431:15 that would support their contention that earned commissions of agents are to be treated differently from general assets. Therefore, inasmuch as the Commissioner takes possession of the assets of the insurer and administers them under the general supervision of the court once the liquidation order is filed, we reject Plaintiffs' contention that part of the premiums collected by HIG were earned commissions held in trust for the benefit of Plaintiffs.

 Despite the Commissioner's success in securing a settlement from HEI, Plaintiffs subsequently filed their own complaint against HEI for essentially the same causes of action as that brought against HEI by the Commissioner.  Like the Commissioner's complaint against HEI, the Plaintiffs alleged, in essence, that HEI:  (1) misled HIG's creditors, policyholders and the public regarding HEI's and HEIDI's financial support of HIG;  and (2) mismanaged and drained financial assets from HIG. Indeed, like the creditors in *Corcoran,* Plaintiffs brought this suit after the conclusion of a similar suit brought by the liquidator.  The complaint filed by Plaintiffs against HEI alleged similar causes of action as the suit brought by the Commissioner.

 Given the factual similarity between this case and *Corcoran,* we hold as a matter of law that the Commissioner in this case had exclusive standing to assert all claims arising out of HIG's liquidation and

974 P.2d 1017 Page 9
89 Hawai'i 427, 974 P.2d 1017
**(Cite as: 89 Hawai'i 427, 974 P.2d 1017)**

rehabilitation on behalf of not only HIG, but also its creditors, including Plaintiffs. [FN9] Because Defendants **1026 *436 were entitled to judgment as a matter of law and there being no genuine issues of material fact, the circuit court properly granted summary judgment in favor of Defendants.

> FN9. In addition, Plaintiffs argue that the Commissioner did not have authority to settle their claims against HEI because: (1) the Commissioner lacked authority to file Plaintiffs' alter ego claims against the HEI defendants; and (2) the Commissioner had authority to prosecute and settle only "common" claims, as opposed to "unique and personal" claims. However, inasmuch as the plain language of HRS §§ 431:15-310(a)(13) and (19) expressly state that the liquidator has the power to "[p]rosecute *any* action which may exist on behalf of the creditors" and "exercise and enforce *all* the rights, remedies, and powers of any creditor," we reject Plaintiffs' argument that the Commissioner did not have authority to file alter ego claims against the HEI. HRS §§ 431:15-310(a)(13) and (19) (emphases added). In addition, because all of Plaintiffs' claims against HEI stem from the insolvency of HIG, we reject Plaintiffs' contention that their claims against HEI were "unique and personal" as compared to the claims of other HIG creditors.

### IV. *CONCLUSION*

For the reasons discussed above, we affirm the circuit court's judgment filed April 25, 1997.

89 Hawai'i 427, 974 P.2d 1017

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.