Westlaw.

545 N.Y.S.2d 278                                Page 1
149 A.D.2d 165, 545 N.Y.S.2d 278
**(Cite as: 149 A.D.2d 165, 545 N.Y.S.2d 278)**

Supreme Court, Appellate Division, First Department, New York.
James P. CORCORAN, Superintendent of Insurance of the State of New York, as
Liquidator of Union Indemnity Insurance Company of New York, Plaintiff-
Respondent,
v.
FRANK B. HALL & CO., INC., et al., Defendants-Appellants,
Marvin J. Cashion and John J. Tickner, Defendants.
Action No. 1.
CONNECTICUT INSURANCE GUARANTY ASSOCIATION, et al., Plaintiffs-Appellants
v.
FRANK B. HALL & CO., INC., et al., Defendants-Appellants. Action No. 2.
AMERICAN CENTENNIAL INSURANCE COMPANY, et al., Plaintiffs-Appellants,
v.
FRANK B. HALL & CO., INC., Defendants-Appellants. Action No. 3.

Aug. 17, 1989.

Superintendent of insurance, as liquidator of insolvent insurance company, brought action on behalf of company, its policyholders and creditors against holding company, its subsidiaries, former directors and officers of company and holding company, and former auditor of company and holding company, for operating company for sole benefit of other businesses. Guaranty association and insurance companies brought action against same defendants which were consolidated with superintendent's action. The Supreme Court, New York County, Gammerman, J., denied defendants' motions to dismiss and stayed guaranty association's and insurance companies' actions pending further order. Defendants appealed. The Supreme Court, Appellate Division, Asch, J., held that: (1) superintendent had paramount and exclusive standing to assert claims on behalf of company, its policyholders and creditors; (2) creditors could not submit themselves to jurisdiction of liquidation court and thereafter assert claims stemming from insolvency outside jurisdiction of that court; and (3) superintendent could bring action to pierce corporate veil.

Affirmed.

West Headnotes

**[1] Insurance** 1407
217k1407 Most Cited Cases
    (Formerly 217k72.6)
Superintendent of insurance, as liquidator of insolvent insurance company, had exclusive standing to assert claims on behalf of insurance company, its policyholders and creditors against third parties. McKinney's Insurance Law § 7401 et seq.

**[2] Insurance** 1407
217k1407 Most Cited Cases
    (Formerly 217k72.7)
Standing of Superintendent of Insurance to bring action on behalf of insurance company, policyholders, and creditors, as liquidator of insolvent insurance company, was not limited to preferential or fraudulent transfer claims. McKinney's Insurance Law § § 1501 et seq., 1505(a, b), 1507(a), 7419, 7425(c).

**[3] Insurance** 1413
217k1413 Most Cited Cases
    (Formerly 217k72.6)
Creditors of insolvent insurer, after having filed proof of claim in liquidation and submitted themselves to jurisdiction of liquidation court, could not assert claims, stemming from the insolvency, outside jurisdiction of liquidation court.

**[4] Insurance** 1407
217k1407 Most Cited Cases
    (Formerly 217k72.7)
Superintendent of insurance, as liquidator of insolvent insurer, could bring action for breach of fiduciary duty against insurer's holding company and directors and officers of holding company and insurer.

**[5] Insurance** 1407
217k1407 Most Cited Cases
    (Formerly 217k72.7)
Superintendent of insurance, as liquidator of insolvent insurance company, could bring action for benefit of company's creditors to pierce corporate veil of company and its holding company.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

545 N.Y.S.2d 278 Page 2
149 A.D.2d 165, 545 N.Y.S.2d 278
**(Cite as: 149 A.D.2d 165, 545 N.Y.S.2d 278)**

**[6]** Insurance 1407
217k1407 Most Cited Cases
   (Formerly 217k72.7)

Superintendent of insurance, as liquidator of insolvent insurance company, could bring action against former officers and directors of insurance company who were officers, directors, or employees of company's holding company at same time, based on possibility of conflict of interest in their actions.

**\*\*279 \*168** R. Mark Keenan, of counsel (Anna S. Chacko, Randall E. Cooper, Philippa M. Haggar and J. Sicilianio, with him on the brief; Anderson, Russell, Kill & Olick, New York City, attorneys) for plaintiff-respondent.

Joseph S. Allerhand, of counsel (Weil, Gotshal & Manges and Baer, Marks & Upham, New York City, attorneys), for defendants-appellants in Action No. 1 other than Touche Ross & Co. and Cloherty, Cullen, Holmes & Wiedemann.

Joseph C. Tanski, of counsel (Andrew C. Jacobson with him on the brief; Whitman & Ransom and Hutchins & Wheeler, New York City, attorneys), for plaintiffs-appellants in Action No. 2.

Jed Ringel, of counsel (Laurence Greenwald and Nelson A. Boxer with him on the brief; Stroock & Stroock & Lavan, New York City, attorneys), for plaintiffs-appellants in Action No. 3.

Mark E. Davidson, of counsel (Leon P. Gold, Harold Langsam and Resa Goldstein with him on the brief; Shea & Gould, New York City, attorneys), for defendant-appellant, Touche Ross & Co.

Daniel P. Levitt, of counsel (Steven G. Yudin with him on the brief; Reid & Priest, New York City, attorneys), for defendants-appellants, Cloherty, Cullen, Holmes and Wiedemann.

Before SULLIVAN, J.P., and ASCH, ROSENBERGER and ELLERIN, JJ.

ASCH, Justice.

Union Indemnity Insurance Company of New York ("Union") became insolvent and the Supreme Court entered an order placing it in liquidation, pursuant to article 74 of the New York State Insurance Law. Plaintiff in Action No. 1, James Corcoran, as Superintendent of Insurance of the State of New York, was appointed Union's Liquidator, "vested with title to all the property, licenses, corporate charter, contracts and rights of action of Union...."

Thereafter, the Superintendent commenced Action No. 1, asserting claims on behalf of Union, its policyholders and creditors against Union's parent and sole shareholder, defendant Frank B. Hall & Co. ("Hall"), its subsidiaries (collectively the "Hall Group"), the former directors and officers of Union and Hall (the "D & O defendants") and the former auditors of Hall and Union, defendant Touche Ross & Co. ("Touche") to recover $140,000,000 representing the full extent of the insolvency. The complaint alleges that after acquiring Union in 1977, the Hall Group, with the active participation of the **\*169** D & O defendants, operated Union as a "loss leader" for the sole benefit of the Hall Group's other businesses. Since Union's own profitability was considered of secondary importance, this directly resulted in its insolvency. The complaint further alleges that the defendants concealed this insolvency for some time from Union itself, Union's policyholders and creditors, and the regulatory authorities. When this insolvency was finally uncovered by the Superintendent in 1985, Union and Union's policyholders and other creditors had to bear the costs for which defendants were allegedly responsible.

After the Superintendent commenced Action No. 1, the Connecticut Insurance Guaranty Association, the Massachusetts Insurers Insolvency Fund, the New Hampshire Insurance Guaranty Association and the Rhode Island Insurers Insolvency Fund (the "Guaranty Funds"), which had all previously filed proofs of claim in the Union liquidation proceeding, commenced an action against the same defendants named in Action No. 1, seeking to recover $3,710,200 which they allegedly paid to a number of policyholders. Also, after the Superintendent's Action No. 1 was commenced, three insurance companies, American Centennial Insurance Company, International Fidelity Insurance Company and Ranger Insurance Company (collectively referred to as "American"), all of which had also previously filed proofs of claim in the liquidation proceeding, began an action against Hall and others to recover $54.9 million in connection with claims arising out of Union's **\*\*280** agreements to reinsure certain insurance risks of these three plaintiffs. Claims raised in Actions Nos. 2 and 3 are virtually identical to those raised in Action No. 1. These three actions were consolidated pursuant to stipulation.

All of the defendants moved to dismiss the Superintendent's action under several theories. The Superintendent cross-moved to shift the burden of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

545 N.Y.S.2d 278 Page 3
149 A.D.2d 165, 545 N.Y.S.2d 278
**(Cite as: 149 A.D.2d 165, 545 N.Y.S.2d 278)**

proof on various issues. The IAS court denied defendants' motions and the Superintendent's cross motion, but stayed Actions Nos. 2 and 3 pending further order of the court.

The main issue on this appeal is whether the Superintendent of Insurance as Liquidator has standing to maintain his action *on behalf of Union* as against the third parties. An ancillary issue is whether the Superintendent as Liquidator also has exclusive authority to bring actions "belonging" to the creditors of the insolvent insurer, against the third parties.

**\*170** While we have been advised that a settlement was entered into by the Superintendent of Insurance as Liquidator of Union and defendants Hall, the Hall Group and the former directors and officers of Hall and Union in Action No. 1, since plaintiffs in Actions Nos. 2 and 3 continue as appellants (besides defendant Touche Ross & Co.), the issues dealt with herein have not been rendered academic.

[1] The arguments of defendants are simply stated. They assert the Liquidator lacks the capacity to sue. They contend that the Liquidator's powers are derived from section 7405 of the New York Insurance Law and the Order of Liquidation. Thus, section 7405(b), which the Order of Liquidation tracks, vests the Liquidator "by operation of law with the title to all property, contracts and *rights of action of such insurer* as of the date of the entry of the order so directing ... to liquidate" (emphasis added). Defendants assert that this language restricts the Liquidator to rights of action of the insurer, *not* creditors. Further, sections 7425 and 7419 of the Insurance Law provide the Liquidator with standing to pursue creditors' actions which arise out of voidable "transfers" or "liens". Thus, when these sections are read in conjunction with section 7405, defendants contend the Liquidator's power to pursue claims belonging to policyholders and creditors is solely limited to claims under sections 7425 and 7419. Moreover, defendants assert that in over 100 years the courts have consistently held that the Liquidator "stands in the shoes" of the insolvent insurer and can only step out of those shoes in the limited instances involving fraudulent conveyance or preferential transfers (*see, Hyde v. Lynde,* 4 N.Y. 387; *Bohlinger v. Zanger,* 306 N.Y. 228, 117 N.E.2d 338). In *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195, a leading bankruptcy decision, the United States Supreme Court rejected a trustee's attempt to assert claims which belonged to the corporation's creditors ("Debenture Holders") against a third party ("the Indenture Trustee") for the latter's misconduct in failing to fulfill obligations under an indenture. The court found (at 428, 92 S.Ct. 1678) that the statutory scheme made no provision for a Trustee in Bankruptcy to "assume the responsibility of suing third parties on behalf of debenture holders". Thus, defendants analogize, as in *Caplin,* the Liquidator's standing must be confined within statutory limits, i.e., the pursuit of claims which belong to the insolvent insurer, Union, not those of creditors or policyholders.

While defendants make out an arguable case for their position, we agree that the IAS court properly determined **\*171** that the Superintendent had paramount and *exclusive* standing to assert claims not only on behalf of Union, but also on behalf of its policyholders and creditors.

We have previously said, quoting *Pink v. Title Guarantee & Trust Co.,* 274 N.Y. 167, 171, 8 N.E.2d 321, that the "pre-eminent purpose" of article 74 "is to 'insure equitable treatment for its creditors and to avoid preferences' ... upon the liquidation of an insurer by providing that any matter affecting the assets available for distribution be the subject of a single integrated administration" *(Knickerbocker Agency, Inc. v. Holz,* 4 A.D.2d 71, 73, 162 N.Y.S.2d 822, aff'd, 4 N.Y.2d 245, 173 N.Y.S.2d 602, 149 N.E.2d 885). And further, the Court of **\*\*281** Appeals noted in that case, that the paramount purpose of article 74 "is the preservation and enhancement of [the estate's] assets to the end that the interests of all its creditors, policyholders, stockholders and the public will be subserved" *(Knickerbocker Agency, Inc. v. Holz, supra,* 4 N.Y.2d at 253, 173 N.Y.S.2d 602, 149 N.E.2d 885). Thus, the Court of Appeals found there that the statutory scheme of New York's insurance laws confers upon "the Supreme Court with the agency of the superintendent ... exclusive jurisdiction of claims both for and against an insurance company" *(id.* at 250, 173 N.Y.S.2d 602, 149 N.E.2d 885). Other cases have held that the right of the Superintendent of Insurance to bring an action is paramount and exclusive (*see, Gallin v. Burdick,* 152 Misc. 468, aff'd, 241 A.D. 888, 271 N.Y.S. 1086, aff'd, 265 N.Y. 492, 193 N.E. 286; *In re Allcity Insurance Co.,* 66 A.D.2d 531, 534-535, 413 N.Y.S.2d 929, *appeal dismissed in part, denied in part,* 48 N.Y.2d 629, 421 N.Y.S.2d 192, 396 N.E.2d 474). In *Caplin v. Marine Midland Grace Trust Co. (supra ),* which is relied upon by the defendants and discussed above, the Supreme Court determined that the Trustee in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

545 N.Y.S.2d 278                                                                                                                      Page 4
149 A.D.2d 165, 545 N.Y.S.2d 278
**(Cite as: 149 A.D.2d 165, 545 N.Y.S.2d 278)**

Reorganization did not have standing for reasons which are not present in this action. The court found that Congress had not intended for the Trustee in Reorganization to assume the responsibility of suing third parties on behalf of Debenture Holders. Thus, the Supreme Court construed specific federal statutory provisions which are not applicable to our case. In addition, the court found there was specific legislative intent by the Congress *against* granting the Trustee standing, while here, there is no express legislative intent in New York withholding exclusive standing to the Superintendent under the Insurance Law for the assertion of claims on behalf of policyholders and creditors of an insurer which is in liquidation. Another rationale for the court's decision in *Caplin* was that the Trustee did not contend he was acting on behalf of the insolvent company. Here, on the other hand, the Superintendent has brought suit against defendants **\*172** on behalf of Union, the insolvent insurer, *as well* as its creditors and policyholders. Moreover, in *Caplin,* the Trustee asserted personal creditor claims possessed by only a few creditors, whereas here, the Superintendent asserts general creditor claims possessed by *all* of Union's creditors and policyholders.

[2] Defendants' contention set forth above, that the Superintendent may only assert those creditors' rights specified in sections 7419 and 7425(c) of the Insurance Law, impermissibly narrows the intent and scope of the Insurance Law. Defendants, in effect, are asserting that the Superintendent may bring creditor claims involving assets improperly *diverted* from Union, but not creditor claims for liabilities improperly *imposed* upon Union. However, the liabilities imposed by defendants, as alleged by the plaintiff Superintendent, did as much harm to Union, its creditors and policyholders as would an embezzlement of its assets. The allegations of the complaint clearly allege a claim for fraudulent misconduct, including fraudulent transfers and imposition of liabilities upon Union. Moreover, the complaint clearly sets forth violations of article 15 of the Insurance Law (the New York Insurance Holding Company Act), which expressly contemplates actions against holding companies, such as the Hall Group, owning and controlling an insurance company. Thus, the complaint alleges that the defendants violated three provisions of article 15, sections 1505(a) and (b) and section 1507(a), which among them contain basically all of the misconduct attributed to the defendants. Section 1507(a) mandates that officers and directors of a controlled insurer so manage the insurer as to assure its separate operating identity. Since there is no express limitation of the Superintendent's standing, do sections 7419 and 7425 impliedly limit that standing, as defendants contend, solely to preferential or fraudulent transfers?

"When interpreting the statute we should look to the enactment as a whole, to discern 'the purpose and policy underlying the statute, and [give] the words a meaning which serves, rather than defeats, the ends intended by the Legislature' (*MVAIC v Eisenberg,* 18 NY2d 1, 3) [271 N.Y.S.2d 641, 218 N.E.2d 524]" **\*\*282**(*In re Allcity, supra,* 66 A.D.2d at 535, 413 N.Y.S.2d 929). The New York insurance laws have been interpreted uniformly to confer *expansive* jurisdiction upon the Superintendent in liquidation and rehabilitation proceedings. Thus, according to the New York Court of Appeals in the *Knickerbocker* case (*supra*), the purpose of New York's liquidation provisions is to

> furnish a "comprehensive, **\*173** economical, and efficient method for the winding up of the affairs" of ... insurance companies by the Superintendent of Insurance [citation omitted]. [The liquidation] provisions ... "are *exclusive* [emphasis added] in their operation and furnish a complete procedure for the protection of the rights of all parties interested." ... The Supreme Court, in the liquidation proceeding, must take cognizance of the interests of the policyholders, creditors, stockholders, and the public ... and it may issue such orders "as may be deemed necessary to prevent interference with the superintendent or the proceeding, or waste of the assets of the insurer".... Clearly does the plan emerge that the Supreme Court, with the agency of the Superintendent of Insurance, was intended to have exclusive jurisdiction of claims both for and against an insurance company in liquidation.

(*Knickerbocker, supra,* 4 N.Y.2d at 250, 173 N.Y.S.2d 602, 149 N.E.2d 885).

Public policy and judicial economy are considerations which also impel the conclusion that the Superintendent have such exclusive standing to assert claims on behalf of not only Union, but also its policyholders and its creditors. This would simply further the "pre-eminent purpose" of article 74, i.e., the equitable treatment of all creditors and the avoidance of preferences. While the argument is made by defendant Touche that potential conflicts exist in this action if the Superintendent is given exclusive standing to assert creditor claims, there is no validity in that contention. The law is clear that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

545 N.Y.S.2d 278                                                                                                    Page 5
149 A.D.2d 165, 545 N.Y.S.2d 278
**(Cite as: 149 A.D.2d 165, 545 N.Y.S.2d 278)**

the Superintendent as Regulator and the Superintendent as Liquidator are distinct and separate legal entities. Thus, any claim of conflict of interest regarding the Superintendent as Regulator versus Superintendent as Liquidator is irrelevant in an action such as this (*see, In re Ideal Mutual Insurance Co., 140 A.D.2d 62 at 67-68, 532 N.Y.S.2d 371; Corcoran v. National Union Fire Insurance Co. of Pittsburgh, Pa., 143 A.D.2d 309, 532 N.Y.S.2d 376).* Further, the contention that the Superintendent cannot represent the interests of Union's creditors and policyholders in an action against Union's former officers, directors and accountants, while also administering the creditors' claims against Union's estate and recommending to the liquidation court the manner in which Union's assets should be distributed, is also without merit. The liquidation court, not the Superintendent, is the final arbiter of whether a creditor's claim is rejected or not (*see, Matter of Knickerbocker Agency, supra, 4 N.Y.2d at 252, 173 N.Y.S.2d 602, 149 N.E.2d 885).*

 [3] In addition, it is well established that in filing a proof of claim in liquidation, a claimant submits itself to the jurisdiction *174 of the liquidation court (*In re Emmet, 164 A.D. 586, 150 N.Y.S. 398, appeal dismissed, Matter of Empire State Sur. Co., 214 N.Y. 659, 108 N.E. 1093).* All the plaintiffs herein have filed claims with the liquidation court, as noted above. Article 74 of the New York Insurance Law vests the liquidation court with the exclusive jurisdiction to determine all these claims involving the assets available for distribution of a defunct insurer. Union's creditors, therefore, cannot submit themselves to the jurisdiction of the liquidation court and thereafter assert claims stemming from the insolvency against any of the defendants here outside of the jurisdiction of that court.

 The IAS court's finding that the Superintendent has standing to pursue even claims of creditors and policyholders exclusively is not necessary to our affirmance since, even if the Superintendent did not have such comprehensive standing in this case, all the causes of action in the Superintendent's complaint belong to Union. Therefore, the Superintendent, standing in Union's shoes, can assert these causes of action.

 [4] The Superintendent's complaint explicitly alleges breaches of fiduciary duty **283 claims against the Hall Group and the D & O defendants. It is black letter law that a dominant or controlling stockholder *or a sole shareholder* has a fiduciary relationship to the corporation, which is also true of directors and officers of the corporation. Upon bankruptcy, the corporation's right to sue for breach of fiduciary duties devolves upon the trustee or, as here, upon the Liquidator (*see, Pepper v. Litton, 308 U.S. 295, 307, 308, 60 S.Ct. 238, 245, 246, 84 L.Ed. 281;* Gallin v. Burdick, supra*).*

 [5] The Superintendent's complaint further charges the Hall Group and the D & O defendants with failing to maintain the corporate identity of Union and maintain separate operations, and thus seeks to pierce the corporate veil of the Hall Group. While the defendants assert that a corporation may never pierce its own veil in this state (*see, Colin v. Altman, 39 A.D.2d 200, 201, 333 N.Y.S.2d 432),* there is an obvious difference between an "alter ego" action brought by a Liquidator or Receiver for a defunct corporation and that brought by an operating corporation. When a functioning corporation sues on its own behalf, it is in essence suing for the benefit of its shareholders. Thus, a suit by a viable corporate entity seeking to pierce its own veil is the equivalent of a suit by a corporation for the benefit of its shareholders brought against its shareholders, an absurdity. This is the clear and compelling rationale why courts have failed to recognize such an action. Where, however, the corporate entity is in receivership or insolvent, the receiver's suit is *175 *for the benefit of the company's creditors* and not its shareholders. In the alter ego case, therefore, it has been held that a trustee can bring an action piercing the corporate veil (*see, Koch Refining v. Farmers Union Cent. Exch. (C.A.7), 831 F.2d 1339, 1346, cert. denied, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237).* Defendant's contention, therefore, that under New York law the corporate veil is never pierced for the benefit of the corporation debtor is a misstatement. The Court of Appeals for the Second Circuit has noted in this regard:

> Such a blanket statement is not quite accurate, however, for there are New York cases involving corporations owned by estates in which the separate status of the corporation was disregarded for the benefit of the owner, or in which the question of whether this should be done was not closed as a matter of law.

 (*Musico v. Champion Credit Corp., 764 F.2d 102, 108.)* Further, as the IAS court noted, this alter ego claim is a "subspecies" of the earlier breach of fiduciary duty claims alleged by the Superintendent on behalf of Union (*see, United States v. Dial, 757 F.2d 163, 168, cert. denied, 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95).*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Misrepresentations as to Union's true financial condition concealed Union's financial condition and its eventual insolvency, and caused Union to assume additional risks and thereby increase the extent of its exposure to creditors. The complaint alleges that the defendants responsible for the concealment of Union's widening financial deficits, leading to its insolvency and causing Union to assume additional risks and increase its final financial exposure, committed common-law fraud and violated New York's insurance laws related to disclosure, etc. Contrary to defendants' contention that such conduct injured only Union's creditors, we have previously found (in an affirmance without opinion) that failure to disclose the insolvency of an insurance company is an injury to that corporation for which the Superintendent may institute an action (*see, Corcoran v Ambassador Group, Inc.,* No. 28412/85, sl opn, *aff'd,* 131 A.D.2d 983, 516 N.Y.S.2d 568, *motion for leave to appeal dismissed,* 70 N.Y.2d 927, 524 N.Y.S.2d 434, 519 N.E.2d 345). The New York County Supreme Court in that case found that the concealment of facts by accountants, which might have caused Regulators to take action to protect an insurer, its policyholders, claimants and creditors from a deteriorating financial condition, gave rise to a cause of action by the Superintendent as Liquidator of the insurer, and we affirmed that holding. While defendant Touche claims that its alleged misconduct was not the precipitating cause of the insolvency, that is not the alleged wrongdoing, but rather, the failure of Touche to **\*176** disclose the true financial condition **\*\*284** of Union that prevented Union itself, and the Regulators, from taking corrective measures, through Rehabilitation, which may have prevented the $140,000,000 insolvency. As noted by the IAS court: "To posit that there was no injury to Union under these circumstances belies the very reality that Union no longer exists as a consequence of the failure to check the spread of the financial ills when the company might have been saved" (*cf. Kelly v Overseas Investors, Inc.,* 18 N.Y.2d 622, 272 N.Y.S.2d 773, 219 N.E.2d 288, applying Pennsylvania law).

While the defendants also claim that no private cause of action is proper under the Insurance Law, the IAS court was correct to find such a private right of action. Whether private causes of action are intended by the Legislature for violation of a statute that is silent on this issue is discussed by the Court of Appeals in *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 325, 464 N.Y.S.2d 712, 451 N.E.2d 459. The Superintendent here is "one of the class for whose especial benefit the statute was enacted" (*id.,* at 325, 464 N.Y.S.2d 712, 451 N.E.2d 459, quoting *Motyka v. City of Amsterdam,* 15 N.Y.2d 134, 139, 256 N.Y.S.2d 595, 204 N.E.2d 635). The Superintendent represents the class protected by the applicable Insurance Law provisions, namely, Union and its creditors and policyholders, as well as the general public. The provisions which the defendants are charged with violating (sections 307, 1219, 1301, 1303, 1305, 1306, 1307[b], 1408, 1505, 1507, 7419 and 7425) concern disclosure, accounting and maintenance of assets, liabilities, reserves and surpluses. In addition, they deal with the fairness of transactions between a holding company and a controlled insurer, preferential transfers and fraudulent insolvency. Granting a private right of action clearly would further the evident purpose of these sections to protect insurance companies, policyholders and the public.

Another consideration set forth in *Burns* is "what indications there are in the statute or its legislative history of an intent to create (or conversely to deny) such a remedy and, most importantly, the consistency of doing so with the purposes underlying the legislative scheme" (*id.,* 59 N.Y.2d at 325, 464 N.Y.S.2d 712, 451 N.E.2d 459, quoting *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26). As the IAS court found, such an intention is expressly found under section 7425 of the Insurance Law permitting the Liquidator to bring actions relating to fraudulent transfers or preferences that might have been avoided by any creditor, shareholder or member. Further, and more importantly, article 15 of the Insurance Law, discussed *supra,* presents an expansive and detailed plan for regulating, among other things, the registration, reporting, **\*177** examination, acquisition and control by holding companies of an authorized insurance company. As set forth *supra,* the allegations in the complaint which allege violations of sections 1505(a) and (b) and 1507(a) under this article 15 include practically all of the misconduct complained of, and article 15 expressly contemplates actions against holding company systems "for the recovery of compensatory damages" or "for other appropriate relief" (§ 1510[b]). Further, as found by the IAS court, the remaining provisions of the Insurance Law would lack substance if no private right of action were implied. "This is particularly true, as to their overlap with the accounting requirements of Article 15 and their interplay with Article 74, which grants the Liquidator broad authority over the property rights of action and business of the insurer."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

545 N.Y.S.2d 278 Page 7
149 A.D.2d 165, 545 N.Y.S.2d 278
**(Cite as: 149 A.D.2d 165, 545 N.Y.S.2d 278)**

Thus, since all of the Superintendent's claims belong to Union, whether or not the Superintendent would have exclusive standing to bring actions *belonging to creditors,* the Superintendent would have exclusive standing to bring the action *on behalf of* Union, its policyholders and its creditors.

Even though the conduct of the defendants might have constituted independent wrongs both against Union and also against the plaintiffs in Actions Nos. 2 and 3, all of the claims are, nevertheless, inextricably interwoven with the allegations that Union served as a "loss leader" to generate money for the Hall Group and that the misrepresentations made and allegedly relied upon by the plaintiffs in Actions **\*\*285** Nos. 2 and 3 were simply a part of a massive, ongoing fraud. Section 7419(b) of the Insurance Law provides, *inter alia,* that the "court or justice may at any time during a proceeding under this article issue such other injunctions or orders [as distinct from orders under section 7419(a) to restrain waste of the property of the insurer] as it deems necessary to prevent interference with the superintendent or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions, the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the insurer, its assets or any part thereof". Therefore, the Supreme Court properly exercised its discretion in holding that the Superintendent's claim should go forward exclusively and that any claim which is raised by plaintiffs in Actions Nos. 2 and 3, which possibly might exist independently, should be stayed pending final disposition of Action No. 1.

[6] The remaining arguments are those of defendants Cloherty, Cullen, Holmes and Wiedemann, who are former officers **\*178** or directors of Union and who move to dismiss for failure to state a claim as to any of them, as well as lack of personal jurisdiction. Although each of these defendants claims that he severed his relationship with Union prior to the fraudulent acts alleged herein, each of them were officers, directors or employees of Hall at the same time that they were directors of Union. Thus, as argued by the Superintendent, there is a serious possibility of a conflict of interest in their actions as directors of both. Further, the issue of whether they conducted business with Union or others in New York, and the amount of said business during the period encompassed by the complaint, was properly referred for a hearing and report.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered December 20, 1988, which, *inter alia,* denied the motions of defendants in Action No. 1 and plaintiffs in Actions Nos. 2 and 3 to dismiss the claims of plaintiff in Action No. 1 and which stayed Actions Nos. 2 and 3 pending further order of the court, should be affirmed, without costs or disbursements.

Order, Supreme Court, New York County, entered on December 20, 1988, unanimously affirmed, without costs and without disbursements.

All concur.

149 A.D.2d 165, 545 N.Y.S.2d 278

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.