**Westlaw**

812 P.2d 688                                                                                                          Page 1
812 P.2d 688
**(Cite as: 812 P.2d 688)**

Colorado Court of Appeals,
Div. IV.
NORTHWESTERN NATIONAL INSURANCE
COMPANY, Plaintiff-Appellant,
v.
John KEZER, Insurance Commissioner for the State
of Colorado, and Robert D.
Balzano, Special Deputy Commissioner of Insurance
and Receiver for Aspen
Indemnity Corporation, in Liquidation, a Colorado
domestic insurer, Defendants-
Appellees.
**No. 89CA1188.**

Dec. 6, 1990.
Rehearing Denied Jan. 17, 1991.
Certiorari Denied July 9, 1991.

Insurer, which agreed to reinsure all risks assumed under certain policies issued by primary insurer, was placed in liquidation. Primary insurer brought declaratory judgment action seeking statutory preference for its cause of action for reimbursement of claims it paid to insureds under reinsured policies. The District Court, City and County of Denver, Daniel B. Sparr, J., declared that primary insurer's claims were not entitled to preference. Primary insurer appealed. The Court of Appeals, Criswell, J., held that: (1) any equitable lien upon liquidated insurer's assets was not entitled to preference; (2) primary insurer was not an "organization" that was similar to the Insurance Guaranty Association; and (3) reinsurance contract did not constitute policy of insurance under preference statute.

Affirmed.

West Headnotes

**[1]** Insurance  1367
217k1367 Most Cited Cases
   (Formerly 217k72.5)
Section of Uniform Insurers Liquidation Act is classifying claims against delinquent insurer for preference purposes both specific and comprehensive and leaves no room for judiciary to add type of claims to be preferred or to establish method of preference not created by statute. West's C.R.S.A. § 10-3-507(3).

**[2]** Insurance  1367
217k1367 Most Cited Cases
   (Formerly 217k72.5)
Any equitable lien upon delinquent insurer's assets arising from foreign insurer's payment of claims reinsured by delinquent insurer was not entitled to statutory preference under Uniform Insurers Liquidation Act since Act did not specify equitable liens as preferred claims. West's C.R.S.A. § § 10-3-501 et seq., 10-3-507(3)(c).

**[3]** Insurance  1494
217k1494 Most Cited Cases
   (Formerly 217k8)

**[3]** Insurance  1497
217k1497 Most Cited Cases
   (Formerly 217k8)
Claims of any reinsurer or any insurer's subrogated claim are specifically excluded from those to be paid by the Colorado Insurance Guaranty Association. West's C.R.S.A. § 10-4-503(4).

**[4]** Insurance  1367
217k1367 Most Cited Cases
   (Formerly 217k72.5)
Primary insurer's cause of action for reimbursement against reinsurer in liquidation, for claims paid under reinsured policies, was not entitled to preference against assets of liquidated reinsurer under Uniform Insurers Liquidation Act since, even if reinsurer was regarded as primary obligor and primary insurer was a guarantor, primary insurer was not an "organization" that was similar to Insurance Guaranty Association. West's C.R.S.A. § § 10-3- 507(3)(c), 10-4-502, 10-4-503(4), 10-4-506, 10-4-508.

**[5]** Insurance  1367
217k1367 Most Cited Cases
   (Formerly 217k72.5)
Primary insurer's cause of action for reimbursement against reinsurer in liquidation, for claims paid under reinsured policies, was not entitled to statutory preference on theory that primary insurer was subrogated to claims of insureds, since reinsurance contract did not constitute a policy of insurance and primary insurer's reimbursement claim was not claim of "policyholders, beneficiaries, and insureds," under Uniform Insurers Liquidation Act. West's C.R.S.A. § 10-3-507(3)(c).

**\*689** Wittman and McCord, Sherwin V. Wittman, II,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

812 P.2d 688                                                                                                         Page 2
812 P.2d 688
**(Cite as: 812 P.2d 688)**

Colorado Springs, Cynthia J. Hyman, Denver, for plaintiff-appellant.

Frank & Finger, P.C., Thomas Frank, Evergreen, for defendants-appellees.

Opinion by Judge CRISWELL.

In delinquency proceedings under the Uniform Insurers Liquidation Act, § 10-3-501, et seq., C.R.S. (1987 Repl.Vol. 4A), the plaintiff, Northwestern National Insurance Co., appeals from the trial court's declaratory judgment that denied preference under § 10-3-507(3)(c), C.R.S. (1987 Repl.Vol. 4A) to its claims against defendant, Robert D. Balzano, as the receiver for Aspen Indemnity Corp. (Aspen). We agree with the trial court that plaintiff's claims are not entitled to preference and, therefore, affirm its judgment.

The trial court's judgment was based upon the facts contained with a written stipulation of the parties. That stipulation disclosed the following:

Aspen was formed as a "captive" insurance company to provide liability and workers' compensation insurance to a group of Caterpillar and other heavy equipment dealers. *See* § 10-6-101, et seq., C.R.S. (1987 Repl.Vol. 4A). Later, however, it was licensed under Colorado law as a multi-line fire, property, and casualty insurance company, and it began insuring property and casualty risks for parties unrelated to the members of the original group.

Later still, Aspen began to do business as a direct multi-line insurer in other states. However, because it was not licensed for such purpose in certain states, in order to do business in those states, it entered into an agreement with plaintiff and one of its subsidiaries, which were licensed in those states.

The basic agreement between the parties took the form of a "reinsurance" agreement. Under its terms, plaintiff acted as the primary insurer and issued its policies of insurance to the individual insureds. However, except for a small fee, all of the premiums charged for the policies were paid to Aspen which agreed to reinsure 100% of the risks assumed by plaintiff's policies. In addition, Aspen formed a subsidiary corporation and plaintiff entered into an agency agreement with that corporation whereby it acted to place and to administer the policies is sued.

All of the policies were issued in plaintiff's name. According to the parties' stipulation, each of them contained a provision that, upon payment under its terms, plaintiff would become subrogated to "any and all rights of the insured in reference to any and all payments it made."

After Aspen was placed in liquidation and a receiver appointed, plaintiff paid various claims asserted under the policies issued pursuant to the reinsurance agreement with Aspen. It then sought reimbursement from Aspen's receiver and asserted that its claims for reimbursement were entitled to the statutory preference described in § 10-3-507(3)(c).

Section 10-3-507(3) is a part of the Uniform Insurers Liquidation Act. That statute creates four general classes of claims, and it directs that the assets of the insolvent ***690*** insurer be distributed in accordance with the priorities established by it.

The third class of claims, which are to be paid after payment of the first two classes, are described in § 10-3-507(3)(c) as follows:

"Claims by *policyholders, beneficiaries,* and *insureds,* liability claims against insureds covered under insurance policies and insurance contracts issued by the Company, and claims of the Colorado insurance guaranty association and *any similar organization* in another state...." (emphasis added)

I.

Plaintiff first argues that it is entitled to have the claims asserted by it treated as class 3 claims either because it is entitled to an "equitable lien" upon Aspen's assets or because it is an organization similar to an insurance guaranty association. We disagree.

A.

[1] The statute classifying claims for preference purposes is both specific and comprehensive. It leaves no room for the judiciary to add to the type of claims to be preferred or to establish a method of preference not created by the statute.

[2] Thus, even if we were to assume, arguendo, that the relationship between the plaintiff and Aspen might otherwise give rise to the judicial imposition of an equitable lien upon Aspen's assets, such a claim, not being described by § 10-3-507(3)(c), would not be entitled to the preference mandated by that statute. *See Cummings Wholesale Electric Co. v. Home Owners Insurance Co., 492 F.2d 268 (7th Cir.1974), cert. denied,* 419 U.S. 883, 95 S.Ct. 149, 42 L.Ed.2d 123 (1974) (claim of policyholder against reinsurer not preferred claim); *Knickerbocker Agency, Inc. v. Holz,* 4 N.Y.2d 245, 173 N.Y.S.2d 602, 149 N.E.2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

812 P.2d 688   Page 3
812 P.2d 688
**(Cite as: 812 P.2d 688)**

885 (1958) (liquidation statute grants court exclusive jurisdiction over assets to exclusion of arbitrator's authority under private contract with insolvent insurance company).

Nor are we persuaded to the contrary by any language employed by the court in *Skandia American Reinsurance Corp. v. Barnes,* 458 F.Supp. 13 (D.Colo.1978). The question presented there was whether proceeds from a reinsurer were to be paid directly to a California insurance guaranty association, in accord with a California statute, or to the Colorado domiciliary receiver under the Colorado statutes. Consistent with our analysis of the Colorado statute, the court held that, to allow the direct payment to the California association would be to subvert the underlying purpose of the Colorado preference statute. The court's remark that the California's association's contentions could form the basis for the assertion of an equitable lien "to be adjudicated by the Colorado courts" indicated only that its decision did not preclude such an assertion; the comment expressed no opinion as to the validity of that assertion.

B.

We are also convinced that plaintiff's claims are not entitled to a preference under the statute on the basis that it is an "organization" that is "similar" to the Colorado Insurance Guaranty Association (Association), as it asserts it is.

The Association is a non-profit, unincorporated, legal entity created by § 10-4-506, C.R.S. (1987 Repl.Vol. 4A). Under § 10-4-506, all insurance companies providing casualty, liability, or workers' compensation insurance coverage must be members of the Association as a condition to transacting business in this state.

[3] The Association's purpose is to provide a mechanism for the payment of losses to claimants or policyholders when a primary insurer becomes insolvent. Section 10-4-502, C.R.S. (1987 Repl.Vol. 4A). This purpose is accomplished by having the Association assume the obligations of the insolvent insurer (subject to specified monetary limitations) and by assessing the insurer members a proportionate share of the amount of the claims paid and expenses incurred. Section 10-4-508, C.R.S. (1987 Repl.Vol. 4A). Specifically excluded from **\*691** the claims to be paid by the Association are those of any reinsurer or any insurer's subrogated claim. Section 10-4-503(4), C.R.S. (1987 Repl.Vol. 4A). *See Colonial Penn Insurance Co. v. Colorado Insurance Guaranty Ass'n,* 799 P.2d 448 (Colo.App.1990).

[4] In contrast to the purpose of the Association to protect claimants and policyholders by assuming an insolvent insurer's obligation, plaintiff's obligations here arose out of the reinsurance agreement. The terms of that agreement disclose no altruistic intent to protect claimants and policyholders; its purpose was to create a mutually beneficial business arrangement between plaintiff and Aspen.

Indeed, on the face of the reinsurance agreement, it was *Aspen* which guaranteed 100% of the obligations assumed by plaintiff when it issued its policies. And, if it may be said that one of the parties to a reinsuring arrangement bears some similarity to the Association, it would be Aspen, the reinsurer, and not plaintiff, that would be assuming somewhat similar obligations.

Plaintiff argues, nevertheless, that we may go behind the face of the parties' agreement and conclude that the parties' motive and intent was to make Aspen the primary obligor and plaintiff the guarantor. Even if we were to reach this conclusion, however, we would still conclude that a reinsurer or a guarantor, which assumes an obligation as a result of a business transaction, is not an organization that is similar to the Association. Thus, plaintiff's claims cannot be treated as class 3 claims under § 10-3-507(3)(c) for this reason. *Accord Foremost Life Insurance Co. v. Department of Insurance,* 274 Ind. 181, 409 N.E.2d 1092 (1980).

II.

Plaintiff also asserts that, even if its claims are not entitled to preference because of its own status, it is, nevertheless, entitled to assert its claims as the subrogee of the insureds to whom it made payment. As such subrogee, it argues, it is entitled to step into the shoes of those insureds, who must be considered to be "policyholders, beneficiaries, [or] insureds" under the statute. We reject this argument.

The payments made by plaintiff were made under policies issued by it, not by Aspen. And, since Aspen did not issue these policies, its only liability to these claimants would be grounded upon the terms of the reinsurance agreement between plaintiff and it.

Plaintiff concedes that, as a general rule, a claimant under an insurance policy has no claim against a reinsurer of the risks covered by that policy because such a reinsurance agreement is normally looked upon as a mere contract of indemnity. However,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

812 P.2d 688                                                                                                                              Page 4
812 P.2d 688
**(Cite as: 812 P.2d 688)**

plaintiff argues that, if the reinsurance contract goes beyond a mere indemnity agreement, so that the reinsurer assumes the reinsured's liability, a direct action by a claimant under the primary policy will lie against the reinsurer. In support of this argument, plaintiff cites *People ex rel. Kane v. National Surety Co.,* 68 Colo. 231, 188 P. 653 (1920).

Plaintiff further argues that by the reinsurance agreement involved here Aspen assumed its liability, rather than merely agreeing to reimburse plaintiff's payments. Thus, it says, claimants under the policies issued by it were possessed of two claims--one against plaintiff under the insurance policies and one against Aspen as third-party beneficiaries under the reinsurance agreement with plaintiff. It concludes, therefore, that, when it paid the claimants under its policies, it became subrogated to those claimants' claims against Aspen, so that those subrogated claims were the claims of "policyholders, beneficiaries, [or] insureds" under the statute and entitled to the statutory preference provided for.

We shall assume, solely for the purpose of the issue here presented, that the reinsurance agreement should be interpreted so as to allow the assertion of direct claims against Aspen by the claimants under plaintiff's policies. We shall also assume that plaintiff's payment of those claims resulted in plaintiff acquiring subrogated claims against Aspen. Nevertheless, we **\*692** conclude that such subrogated claims are not claims of the type described in § 10-3-507(3)(c).

[5] There have been several instances in which a reinsured company has sought to obtain preference for claims against the insolvent reinsurer under statutes similar to the one here under consideration. And, while the theories advanced in support of such preference have varied, the requested preference has uniformly been denied. See *In re Liquidation of Reserve Insurance Co.,* 122 Ill.2d 555, 120 Ill.Dec. 508, 524 N.E.2d 538 (1988) (a reinsured is not an "insured ... under insurance policies or insurance contracts" for purpose of preference statute); *State ex rel. Long v. Beacon Insurance Co.,* 87 N.C.App. 72, 359 S.E.2d 508 (1987) (statute that excluded claims of "reinsurers" from preference was intended to exclude claims of all parties to reinsurance contract); *Neff v. Cherokee Insurance Co.,* 704 S.W.2d 1 (Tenn.1986) (reinsured's claim is not a claim for "benefits under policies"); *Foremost Life Insurance Co. v. Department of Insurance, supra* (reinsured is not a "policyholder" or a "guaranty association"); *Aetna Casualty & Surety Co. v. International Reinsurance Co.,* 117 N.J.Eq. 190, 175 A. 114 (1934) (reinsured is not a "policyholder").

Similarly, in the case of an insolvent reinsured, this court has refused to allow the reinsurer to set off against its liability under the reinsurance agreement the amount of premiums unpaid by the reinsured. *Balzano v. Bluewater Insurance Ltd.,* 801 P.2d 1 (Colo.App.1990). There, we concluded that the claim was not one that was entitled to preference under § 10-3-507(3)(a), (b), or (c) and, hence, allowing a set-off would result in an improper preference.

In considering the various legal theories advanced by the reinsureds, all the courts were influenced by the underlying purpose of the liquidation statutes, in general, and the preference statute in particular. That purpose is to provide preferred protection to individual policyholders and claimants who, unlike a reinsured company, had little means of analyzing the risks involved in dealing with the now insolvent concern. Based upon these considerations, the courts have uniformly agreed that a reinsurance contract does not constitute a policy of insurance under the preference statute. *See, e.g., In re Liquidation of Reserve Insurance Co., supra.*

In light of these underlying policy considerations, we also conclude that plaintiff's claims are not the claims of a policyholder, beneficiary, or insured under § 10-3-507(3)(c), even if those claims are considered to be the subrogated claims of claimants under policies issued by plaintiff.

The reinsurance agreement to which Aspen was a party is not a policy of insurance, and plaintiff is not a policyholder; yet, its only direct claim against Aspen is based upon this agreement. Likewise, Aspen issued no policy of insurance to any individual claimant; the sole basis for Aspen's alleged liability to such claimants is also grounded upon the reinsurance contract.

Therefore, irrespective whether plaintiff is asserting the claims against Aspen in its own right or as the subrogee of the claimants who were paid by it, the basis for Aspen's liability is the same in either event. In both cases, it is the reinsurance agreement, and not a policy of insurance, upon which the asserted liability is based.

We conclude, therefore, that neither plaintiff's direct claims against Aspen for breach of contract nor the claimants' third-party beneficiary claims for breach of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

812 P.2d 688 Page 5
812 P.2d 688
**(Cite as: 812 P.2d 688)**

contract constitute claims of a "policyholder, beneficiary, or insured" under § 10-3-507(3)(c). Thus, they are not entitled to the preference granted by that statute.

Judgment affirmed.

MARQUEZ and DAVIDSON, JJ., concur.

812 P.2d 688

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.