UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| Plaintiff, | : |
| v. | : Civil No. 3:01 CV 1515 (EBB) |
| $29,035,500 IN ACCOUNT NUMBER 20X6875(06), HELD IN THE NAME OF U.S. CUSTOMS SUSPENSE ACCOUNT AT THE FEDERAL RESERVE BANK OF NEW YORK, et al. | : |
| Defendants. | : |

**THIRD PARTY CLAIMANTS' MEMORANDUM IN OPPOSITION TO
RECEIVER CLAIMANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii
INTRODUCTION ............................................................................................................. 2
ARGUMENT .....................................................................................................................8
I. THE THIRD PARTY CLAIMANTS ARE ENTITLED TO CONSTRUCTIVE TRUSTS TO RECOVER THEIR PROPERTY..........................................................................................9
   A. Constructive Trusts Have Long Been Recognized as a Remedy for Fraud and Breaches of Confidence ...............................................................................................................9
   B. Constructive Trusts Are Routinely Applied by Courts in Insolvency Proceedings...........11
   C. Because of FNL's Fraud and Breach of Duty, Third Party Claimants Have Stated Claims for Constructive Trusts and to Establish Title in Third Party Claimants' Property...................13
      1. The Third Party Claimants Have Adequately Alleged Facts Supporting Their Claim that FNL Fraudulently Induced Them to Enter into the Reinsurance Agreements ...............14
      2. The Third Party Claimants Have Adequately Alleged Facts Supporting Their Claim that FNL Breached Its Duty of Utmost Good Faith...............................................................15
      3. The Third Party Claimants Are Able to Trace Their Property to the Forfeiture Proceedings ..................................................................................................................16
   D. Third Party Claimants' Constructive Trusts Arose at the Time of FNL's Fraudulent Acts, Prior to FNL Being Placed into Rehabilitation and Liquidation .............................................17
II. THE LIQUIDATION OF FNL DOES NOT SEVER THIRD PARTY CLAIMANTS' PROPERTY RIGHTS IN THEIR FORFEITED ASSETS...................................................18
   A. The Assets of the FNL Estate Are Defined by Mississippi Property Law .......................18
   B. The Receiver Claimants Cannot Assert Property Rights Greater Than Those Provided to the FNL Estate Under the Mississippi Liquidation Act.........................................................19
   C. The Mississippi Priority Statute Does Not Apply to the Funds Being Held in the Forfeiture Proceedings ..........................................................................................................20
   D. Only "Assets of the Insurer" Are Subject to the Priority Scheme for Distribution by FNL's Receiver.....................................................................................................................22
   E. Because the Property Never Passed to FNL, the FNL Receiver Has No Right to Title in the Third Party Claimants' Property......................................................................................24
   F. The Receiver Claimants Themselves Have Asserted Constructive Trust Claims to Recover Property in an Insurance Liquidation Proceeding in Tennessee...............................27
   G. The Third Party Claimants' Constructive Trust Claims Are Not Indirect and Contingent 29
III. PUBLIC POLICY IS NOT SERVED BY RATIFYING FRAUD OR DEPRIVING THE RIGHTFUL OWNERS OF THEIR PROPERTY ............................................................30
IV. CONCLUSION............................................................................................................31

# **TABLE OF AUTHORITIES**

**CASES**

Anderson v. Yates, 99 So. 499, 501 (Miss. 1924) .................................................................. 15
Begier v. I.R.S., 496 U.S. 53, 59 (1990) ................................................................................ 12
Belisle v. Plunkett, 877 F.2d 512, 515 (7th Cir. 1989) .......................................................... 22
Bennett v. Glacier General Assurance Co., 857 P.2d 683, 685 (Mont. 1993) ...................... 26
Butner v. United States, 440 U.S. 48, 55 (1979) ........................................................ 20, 22, 25
Chemical Bank v. Dana, 234 B.R. 585, 589 (D.Conn. 1999) ................................................ 12
Cockrell v. Grimes, 740 P.2d 746, 749 (Okla. Ct. App. 1987) .............................................. 31
Commercial Nat'l Bank v. Superior Court, 14 Cal. App. 4th 393, 17 (1993) ....................... 12
Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 43 (1st Cir. 2000) ......... 15
Covington v. University Hospitals of Cleveland, 778 N.E.2d 54, 57 (Ohio Ct. App. 2002) ....... 12
East v. Crowdus, 302 F.2d 645, 649-650 (8th Cir. 1962) ................................................ 12, 30
Eisenberg v. Grand Bank for Savings, FSB, No. 02-60695, 2003 WL 21683600, *5 (5th Cir. Jul. 18, 2003) ............................................................................................. 5, 11, 16, 24
FDIC v. Ernst & Young, 967 F.2d 166, 171 (5th Cir. 1992) ................................................. 15
First Nat'l Bank of Jackson v. Huff, 441 So. 2d 1317, 1320-21 (Miss. 1983) ................ 17, 25
Georgia Pacific Corp. v. Sigma Serv. Corp., 712 F.2d 962, 968 (5th Cir. 1983) ................. 12
Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 250 (2000) ....... 3, 10
In re Advanced Cellular Systems, 235 B.R. 713, 717-18 (Bankr. D. Puerto Rico 1999) ...... 11
In re Edelman, 295 F.3d 171 (2d Cir. 2002) .......................................................................... 23
In re Howard's Appliance Corp., 874 F.2d 88, 93 (2d Cir. 1989) ......................................... 12
In re K Chemical Corp., 188 B.R. 89, 97 (Bankr. D.Conn. 1995) ........................................ 12
In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352-53 (2d Cir. 1992) ...................... 3
In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1576 (9th Cir. 1985) ........... 30
In re Wade, 287 B.R. 874, 880 n.8 (S.D. Miss. 2001) ..................................................... 20, 25
In the Matter of Anjopa Paper & Board Manufacturing Co., 269 F. Supp. 241, 260 n.23 (S.D.N.Y. 1967) ................................................................................................................ 31
In the Matter of First Columbia Life Ins. Co., 724 So. 2d 790, 795 (La. Ct. App. 1998) .... 12
In the Matter of Haber Oil Co., 12 F.3d 426, 435 (5th Cir. 1994) ........................................ 12
In the Matter of Maple Mortg., Inc., 81 F.3d 592, 596 (5th Cir. 1996) .......................... 12, 25
In the Matter of Midland Ins. Co., 590 N.E.2d 1186, 1192 (N.Y. 1992) ...................... 5, 20, 26
In the Matter of Paragon Sec. Co., 589 F.2d 1240, 1242 (3d Cir. 1978) .............................. 12
In the Matter of Pinetree, Ltd., 876 F.2d 34, 36-37 (5th Cir. 1989) ............................... 20, 25
In the Matter of Quality Holstein Leasing, 752 F.2d 1009, 1012 (5th Cir. 1985) ................ 25
Lackey v. Lackey, 691 So. 2d 990, 995 (Miss. 1997) ............................................................ 19
McDonough Caperton Shepherd Group, Inc. v. Academy of Medicine, 888 F.2d 1392, 1989 WL 128675, *4 (6th Cir. Oct. 30, 1989) ....................................................................... 19, 23
McNeil v. Hester, No. 97-CA-00048-SCT (¶ 25), 753 So. 2d 1057, 1064 (2000) ............... 14
Milliken & Michaels, Inc. v. Fred Netterville Lumber Co., 676 So. 2d 266, 271 (Miss. 1996) .. 14
Munich American Reinsurance Co. v. Crawford, 141 F.3d 585, 593 (5th Cir. 1998) .......... 23
Nichols v. American Risk Management, Inc., No. 89 Civ. 2999 (JSM), 2002 WL 31556384, *1 (S.D.N.Y. Nov. 18, 2002) ................................................................................................ 15
Nicklaus v. Bank of Russellville, 336 F.2d 144, 145 (8th Cir. 1964) ............................... 12, 15

Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 165 (2d Cir. 2003).................................................................................................. 15
Pine Top Ins. Co. v. Republic Western Ins. Co., 123 B.R. 277, 281 (N.D.Ill. 1990).................... 12
Planters Bank & Trust Co. v. Sklar, 555 So. 2d 1024, 1034 (Miss. 1990).................................. 10
Rawlings v. American Oil Co., 161 So. 851, 854 (Miss. 1935) ............................................... 5, 20
Russell v. Douglas, 243 Miss. 497 (Miss. 1962) ........................................................................ 10
S.E.C. v. Levine, 881 F.2d 1165, 1173 (2d Cir. 1989) ................................................................ 17
Sanders v. Neely, 19 So. 2d 424, 426 (Miss. 1944).................................................................... 26
Saulsberry v. Saulsberry, 78 So. 2d 758, 760 (1955) ................................................................... 3
Sender v. Simon, 84 F.3d 1299, 1307 (10th Cir. 1996)............................................................... 20
Shell Pipe Line Corp. v. West Texas Marketing Corp., 540 F. Supp. 1155, 1160 (S.D. Tex. 1982) ................................................................................................................................. 19
Simmons v. Atkinson & Lampton Co., 69 Miss. 862, 867 (Miss. 1896) ..................................... 11
Smith v. United States, 508 U.S. 223, 228 (1993)...................................................................... 23
Sojourner v. Sojourner, 153 So. 2d 803, 807 (1963) .................................................................. 10
Stephens v. American Home Ins. Co., 811 F. Supp. 937, 947, (S.D.N.Y. 1993) ..................... 5, 21
United Fire & Cas. Co. v. Arkwright Mut. Ins. Co., 53 F. Supp. 2d 632, 642 (S.D.N.Y. 1999).. 15
United States v. $29,035,500.00, Civil No. 3:01 CV 1515 (EBB) ........................................... 2, 6
United States v. 277 Diamonds, Civil No. 3:02 CV 889 (EBB)................................................... 2
United States v. Peoples Benefit Life Insurance Company, 271 F.3d 411 (2d Cir. 2001) ..... 11, 29
Whelan v. Johnston, 6 So. 2d 300, 303 (Miss. 1942) (in banc).................................................. 23
Wholey v. Cal-Maine Foods, Inc., 530 So. 2d 136, 140-41 (Miss. 1988)................................... 17
Williams v. Logue, 122 So. 490, 491 (Miss. 1929)..................................................................... 24

## STATUTES

§ 83-24-1....................................................................................................................................... 4
§ 83-24-3..................................................................................................................................... 30
§ 83-24-35............................................................................................................................. passim
11 U.S.C. § 541............................................................................................................................ 13

## TREATISES

5 Collier on Bankruptcy (15th rev. ed. 2001) ¶ 541 .................................................................... 13
54 Am. Jur., Trusts, § 218........................................................................................................... 10
65 Am. Jur. 2d, Receivers § 199................................................................................................. 13
75 C.J.S. Receivers § 105 ........................................................................................................... 20
75 C.J.S. Receivers § 106 ........................................................................................................... 20
**76 Am Jur 2d, Trusts, § 21 at 446 (1975)**................................................................................. 10
89 C.J.S. Trusts, § 142 ................................................................................................................ 10
Rest. (1st) Restitution § 161........................................................................................................ 12
Rest. (1st) Restitution § 202........................................................................................................ 13

## INTRODUCTION

Martin Frankel and First National Life Insurance Company of America ("FNL") defrauded Huff-Cook, Inc. ("Settlers"), Peoples Benefit Life Insurance Company ("Peoples"), and Veterans Life Insurance Company ("Veterans") (collectively, "Third Party Claimants") out of approximately $60 million. FNL fraudulently induced the Third Party Claimants into entering into reinsurance agreements whereby approximately $60 million in reserve funds were transferred to FNL. Some of the funds obtained by FNL's fraud and breach of the duty of utmost good faith now may be traced to two forfeiture proceedings pending before this Court captioned United States v. 277 Diamonds, Civil No. 3:02 CV 889 (EBB) and United States v. $29,035,500.00, Civil No. 3:01 CV 1515 (EBB) (collectively, the "Forfeiture Proceedings"). The fraud FNL and Frankel perpetrated upon the Third Party Claimants is the only possible source of most of the funds held in these Forfeiture Proceedings. The funds in these two cases belong to the Third Party Claimants and are not now, nor have they ever been, property of FNL or its estate or of any of the other Frankel-controlled insurance companies now in receivership.

At the time Frankel's fraudulent scheme was uncovered in the spring of 1999, the insurance companies owned and controlled by Frankel, including FNL, were placed into receivership and the insurance commissioners from the five respective states for each of the insurance companies were appointed the liquidators or receivers for the companies (collectively, "Receiver Claimants"). The Third Party Claimants and the Receiver Claimants filed answers and statements of interest in support of their claims to the forfeited assets. On December 10, 2004, a status hearing was held in these cases at which time the Receiver Claimants and the United States Attorney asked this Court to set a trial date. By order dated December 16, 2004, a September 9, 2005 trial date was set for these cases.

**Error! Unknown document property name.**

On February 11, 2005, the Receiver Claimants filed a motion to dismiss the Third Party Claimants from these Forfeiture Proceedings. The Receiver Claimants primarily argued that the Third Party Claimants claims were barred by *res judicata* based on a decision rendered by the trial court in Mississippi that was then on appeal to the Mississippi Supreme Court granting the FNL Receiver summary judgment. The Receiver Claimants also argued that the Third Party Claimants' claims in these cases must be resolved by the Mississippi court.

On May 5, 2005, the Mississippi Supreme Court vacated the summary judgment ordered rendering the Receiver Claimants' *res judicata* argument moot. On May 16, 2005, during a telephonic status hearing in this case, the Receiver Claimants then asked this Court to decide the key legal issue as part of the Receiver Claimants' pending motion to dismiss: whether a party defrauded by a failed insurer may assert a constructive trust claim in opposition to the competing constructive trust claims of the failed insurer's receiver? The Receiver Claimants asked this Court to set the current briefing schedule, to which all parties agreed.

These cases involve straightforward property disputes among the parties. Both the Receiver Claimants for the Frankel-controlled insurance companies and the Third Party Claimants have asserted constructive trust claims to funds held in the Forfeiture Proceedings. It is black-letter law that property obtained by fraud or through a breach of duty is subject to a constructive trust and remains the property of the victim of the fraud. Courts have consistently imposed constructive trusts as a remedy for unjust enrichment, fraud and breach of confidence. Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 250 (2000); In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352-53 (2d Cir. 1992); South Mississippi Finance Co. v. Mississippi State Tax Comm'n, 605 So. 2d 736, 739 (Miss. 1992); Saulsberry v. Saulsberry, 78 So. 2d 758, 760 (1955).

3

**Error! Unknown document property name.**

The Third Party Claimants have alleged facts which, when proven at trial, will demonstrate that Frankel and FNL fraudulently induced the Third Party Claimants to enter the reinsurance agreements. The agreements were void *ab initio* and were obtained through FNL's breach of the duty of utmost good faith owed to the Third Party Claimants. Because the funds the Third Party Claimants were fraudulently induced to transfer to FNL in Mississippi comprise the vast majority of the funds in the Forfeiture Proceedings, Mississippi property law requires imposition of a constructive trust on the traceable proceeds of FNL's fraud.

Nothing in the Mississippi Liquidation Act strips the Third Party Claimants of their property rights under Mississippi law in the funds held by this Court in the Forfeiture Proceedings. The funds held in the Forfeiture Proceedings were never FNL's property and are not now part of the FNL estate or the estate of any of the other insolvent insurance company claimants. Therefore, the Third Party Claimants have properly stated a claim to constructive trusts over <u>their</u> assets held in these proceedings.

The Third Party Claimants are not asking this Court to create rights for the Third Party Claimants that the Third Party Claimants do not already possess. Rather, the Third Party Claimants are simply asking this Court for the chance to have well-established principles of property law applied to determine who owns the funds in the Forfeiture Proceedings. The Receiver Claimants' argument that the forfeited assets are subject to the priority scheme in the Mississippi Insurers Rehabilitation and Liquidation Act (§ 83-24-1 <u>et seq.</u> ("Liquidation Act"); § 83-24-83) assumes that the property law question of who actually owns the property has already been answered in their favor. However, this Court must first decide the question of ownership of the forfeited assets before any of those assets are subject to the Mississippi Liquidation Act.

The Mississippi Liquidation Act does not alter Mississippi property law principles to

4

provide a windfall to a liquidator by allowing him to withhold fraudulently obtained assets from their rightful owners. To the contrary, the Mississippi Liquidation Act places the liquidator in the shoes of the failed insurer, directing the liquidator "to take possession of <u>the assets of the insurer</u>" and vesting title in the liquidator with respect to "all of the property . . . <u>of the insurer</u> ordered liquidated . . . ." § 83-24-35(1) (emphasis added). <u>See also</u> <u>Stephens v. American Home Ins. Co.</u>, 811 F. Supp. 937, 947 (S.D.N.Y. 1993), <u>rev'd on other grounds</u>, 70 F.3d 10, 12 (2d Cir. 1995) ("The general rule is that a Receiver of an insurance company 'stands in the shoes' of the insolvent, <u>gaining no greater rights than the insolvent had</u>.") (emphasis added); <u>In the Matter of Midland Ins. Co.</u>, 590 N.E.2d 1186, 1192 (N.Y. 1992) ("[L]iquidation cannot place the liquidator in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation."); <u>Rawlings v. American Oil Co.</u>, 161 So. 851, 854 (Miss. 1935) ("The Mississippi receiver [], of course, had no greater right in these funds than the company itself.").

As a principal perpetrator of Frankel's fraud, FNL never obtained title to the approximately $60 million it obtained from the Third Party Claimants through FNL's fraud and breach of duty. <u>Eisenberg v. Grand Bank for Savings, FSB</u>, No. 02-60695, 2003 WL 21683600, *5 (5th Cir. Jul. 18, 2003) ("Mississippi case law is clear that a thief does not obtain title to stolen property."). The Receiver Claimants cannot present any persuasive argument to support their theory that they have a right to property which the insolvent FNL obtained only by virtue of fraudulently inducing the Third Party Claimants to enter reinsurance contracts that FNL never had any intention or means of performing.

5

**Error! Unknown document property name.**

## Summary of Facts Giving Rise to Third Party Claimants' Claims

This Court heard telling testimony from the late Jack Harmon,[1] the former President of Settlers, at the criminal trial of one of Frankel's accomplices, Mona Kim. (Mona Kim Trial 1/17/03 Tr., p. 48-64, a copy of which is located at Exhibit 1 in the Third Party Claimants' Appendix.) Mr. Harmon testified that FNL, acting through John Hackney, defrauded Settlers out of approximately $45 million. (*Id.* at 57, 59.) Peoples and Veterans were similarly defrauded out of approximately $15 million. The facts relating to FNL's fraud and breach of duty and tracing the Third Party Claimants funds to these Forfeiture Proceedings have been set forth in great detail in the Verified Statement of Interest or Right of Peoples Benefit Life Insurance Company and Veterans Life Insurance Company and Jury Demand and the Verified Statement of Interest or Right of Huff-Cook, Inc. or, in the Alternative, of Settlers Life Insurance Company and Jury Demand (collectively "Verified Statements") filed in the United States v. 277 Diamonds on April 10, 2003, copies of which are located at Exhibits 2 and 3 in the Third Party Claimants' Appendix,[2] and in the Third Party Claimants' Memorandum in Opposition to the Receivers' Motion to Dismiss and in Support of the Motion for Limited Abstention Pending a Ruling on the State Law Question by the Mississippi Supreme Court ("Memorandum in Opposition to the Receivers' Motion to Dismiss") and will not be repeated in full here.

Settlers owned a block of existing policies for burial insurance called the "Care Plan" business. As Settlers no longer sold this type of policy, it was interested in selling this business to another insurance company. (Verified Statement, Exh. 1, ¶ 19.) In early 1999, FNL agreed to

---

[1] Mr. Harmon passed away in February of 2004.

[2] The Third Party Claimants also filed Verified Statements in United States v. $29,035,500.00 on September 13, 2001. However, the Verified Statements in United States v. 277 Diamonds, filed after discovery had been conducted in these and other related cases, include greater details of FNL's fraud and the facts tracing the Third Party Claimants property to these Forfeiture Proceedings.

6

Error! Unknown document property name.

pay $1.75 million for the Care Plan business. This payment was to take the form of a "ceding commission" which would be deducted from the reserves, which Settlers would transfer to FNL. In other words, Settlers would transfer to FNL approximately $46 million in liabilities associated with the Care Plan business and $44,795,476 in cash reserves. (Verified Statement, Exh. 1, ¶ 20.)

To induce Settlers to enter into the reinsurance agreement, FNL, under the control of Frankel and his accomplices, including Hackney and Atnip, provided Settlers with false and misleading information regarding FNL's financial condition and investment strategy. For example, FNL misrepresented that it was a solvent and prosperous company. (Verified Statement, Exh. 1, ¶¶ 21, 72.) FNL failed to inform Settlers of FNL's true financial condition, failed to disclose that FNL had sent its own funds to an investment company secretly controlled by Frankel whose broker-dealer license had been permanently revoked in 1992, failed to disclose Frankel's control of FNL, and failed to disclose that Frankel and FNL planned to use the funds associated with the block of Settlers' policies for the personal benefit of Frankel and others, rather than administering and paying claims under the insurance policies. (Verified Statement, Exh. 1, ¶ 21.)

On April 9, 1999, Settlers transferred a total of $44,795,476 to FNL's account at First Tennessee Bank. FNL intended from the first to defraud Settlers and to immediately misappropriate the Settlers Reserve Fund for the benefit of certain of FNL's insiders, *e.g.*, Frankel, Hackney and Atnip. FNL acted quickly to consummate the fraud by transferring the Settlers fund from First Tennessee Bank to Frankel's Banque SCS Alliance Account. (Verified Statement, Exh. 1, ¶ 23.)

FNL's immediate misappropriation of Settlers' funds for the use of FNL's insiders, rather

7

*Error! Unknown document property name.*

than as a reserve to pay claims and administer the book of business, was disastrous for Settlers. Settlers was still liable to the policyholders on the subject book of business, even though FNL had sent the reserve funds for those policies to Frankel. As a result, by order of the Circuit Court of Richmond, Virginia, Settlers was forced into liquidation proceedings in Virginia, and its individual owners who had built up Settlers over the course of nearly half a century lost a company that had had an estimated $20 million in equity prior to the fraud perpetrated by FNL. (Verified Statement, Exh. 1, ¶ 3; Mona Kim Trial 1/17/03 Tr. Exhibit 1, p. 50-52, 59-60; Deposition of Jack F. Harmon 11/21/02, p. 35-39, 73-76, a copy of which is located as Exhibit 4 in the Third Party Claimants' Appendix.) Settlers' loss rendered Mr. Harmon's stock in the company worthless and prevented him from leaving it for the benefit of the Settlers' employees and the education of the employees' children. (Deposition of Jack F. Harmon, Exhibit 4, p.12, 37-38.)

## ARGUMENT

The Receiver Claimants' Motion to Dismiss should be denied and these cases allowed to proceed toward the September 9, 2005 trial of all claims of all parties to the forfeited assets. As the only Court with jurisdiction over the property and the parties, this Court is now the most appropriate, and only forum, for reaching a final decision binding on all claimants. On December 10, 2004, the Receiver Claimants and the United States Attorney requested the September 9, 2005 trial date currently set for these cases. On May 16, 2005, the Receiver Claimants themselves asked this Court to set the current briefing schedule to resolve the legal issue of whether a defrauded party can assert a constructive trust claim to counter the ownership claims of an insurer's receiver.

The Third Party Claimants are entitled to constructive trusts to recover the property taken from them through FNL's fraud and its breach of the duty of utmost good faith imposed as a

8

**Error! Unknown document property name.**

matter of law upon parties to a reinsurance agreement. It is not genuinely disputed that the Third Party Claimants were defrauded by FNL, Frankel and his accomplices. The evidence produced in discovery in this and other related cases also proves that the fraudulently obtained property can be traced from the Third Party Claimants to these Forfeiture Proceedings. The Receiver Claimants do not seriously contest these facts; rather, they claim that as a matter of law a victim of a fraud perpetrated by an insurance company that is subsequently placed into liquidation is not entitled to recover that property through a constructive trust. The Receiver Claimants' argument is not supported by the Mississippi Liquidation Act and ignores long-standing principles of insolvency, receivership, and bankruptcy law.

Placing FNL in liquidation did not confer upon the FNL Receiver greater property rights than FNL would have had absent liquidation. The funds FNL fleetingly obtained from the Third Party Claimants through fraud and breach of duty - which were then sent quickly to Frankel - were not the property of FNL prior to the date of liquidation. Under the Mississippi law, FNL was never the rightful owner of the funds FNL and Frankel obtained by fraud, and title thereto therefore, cannot be vested in FNL's Receiver.

## I.   THE THIRD PARTY CLAIMANTS ARE ENTITLED TO CONSTRUCTIVE TRUSTS TO RECOVER THEIR PROPERTY

As a matter of law, the Third Party Claimants have stated claims entitling them to constructive trusts in certain of the assets held in these Forfeiture Proceedings. When viewed in the light most favorable to the Third Party Claimants, the facts alleged in the Verified Statements clearly establish that the funds in the Forfeiture Proceedings are property of the Third Party Claimants and are subject to a constructive trust based upon FNL's fraudulent inducement and its breach of its duty of utmost good faith.

9

### A. Constructive Trusts Have Long Been Recognized as a Remedy for Fraud and Breaches of Confidence

Courts have consistently imposed constructive trusts as a remedy for unjust enrichment, fraud and breach of confidence. Harris Trust & Sav. Bank, 530 U.S. at 250; In re Koreag, 961 F.2d at 352-53. As the Mississippi Supreme Court has explained:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

Saulsberry, 78 So. 2d at 760 (emphasis added); see also In re Koreag, 961 F.2d at 353 (same); Chemical Bank v. Dana, 234 B.R. 585, 597-98 (D.Conn. 1999) (same); Planters Bank & Trust Co. v. Sklar, 555 So. 2d 1024, 1034 (Miss. 1990) (citing 76 Am Jur 2d, Trusts, § 21 at 446 (1975)) (constructive trusts are "raised by equity to satisfy the demands of justice."); Sojourner v. Sojourner, 153 So. 2d 803, 807 (1963) (citing 54 Am. Jur., Trusts, § 218); Russell v. Douglas, 243 Miss. 497 (Miss. 1962) ("[W]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."). The grounds for imposing a constructive trust are broad - "any transaction may provide an appropriate setting for creating a constructive trust where, for any reason, one party holds funds 'which in equity and good conscience should be possessed by' another party. Their forms and varieties 'are practically without limit.'" Planters Bank & Trust Co., 555 So. 2d at 1034 (quoting 89 C.J.S. Trusts, § 142 at 1027 (1955)). "The doctrine's applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." In re Koreag, 961 F.2d at 352 (quotation omitted).

A cardinal reason for imposing a constructive trust is that a thief cannot pass title to

10

stolen property. This rule is "as old as the hills and often enforced <u>without regard to context</u>, <i>viz.</i>, no thief, forger or other felonious fraud has power to pass title to his ill-gotten goods." <u>South Mississippi Finance Co.</u>, 605 So. 2d at 739 (emphasis added). See also <u>Eisenberg v. Grand Bank for Savings, FSB</u>, No. 02-60695, 2003 WL 21683600, *5 (5th Cir. Jul. 18, 2003) ("Mississippi case law is clear that a thief does not obtain title to stolen property," including stolen funds that are traceable). So strong is an owner's right to reclaim property obtained from him by fraud that even his own negligent treatment of the property does not forfeit his ability to reclaim it from one who purchased it from a thief. <u>Simmons v. Atkinson & Lampton Co.</u>, 69 Miss. 862, 867 (Miss. 1896). In <u>Simmons</u>, the court permitted a property owner to reclaim money paid out under the fraudulently altered terms of a promissory note even though the owner could have taken measures to prevent the alterations from occurring. <u>Id.</u>

Thus, a constructive trust should be imposed where (1) a party has obtained funds through fraud or (2) a party has obtained funds through a breach of a confidential relationship, as is imposed by law to parties to a reinsurance agreement. The facts alleged in the Verified Statements state a claim for constructive trusts under <u>both</u> of these theories.

### B. Constructive Trusts Are Routinely Applied by Courts in Insolvency Proceedings

Constructive trusts have long been recognized and applied by courts in insolvency proceedings, receiverships and in bankruptcy.[3] In insolvency, as in other contexts, a constructive

---

[3] This Court should look to bankruptcy law for guidance in interpreting the Mississippi Liquidation Act. The Receiver Claimants have already admitted that bankruptcy cases are instructive in the context of insurance insolvency proceedings. In their brief to the Second Circuit Court of Appeals in <u>United States v. Peoples Benefit Life Insurance Company</u>, 271 F.3d 411 (2d Cir. 2001), addressing Peoples' and Veterans' claims for constructive trusts, the Receiver Claimants argued that bankruptcy law was analogous to the cases at hand: "Under bankruptcy law, specifically as it relates to constructive trust claims, a creditor is not entitled to an express or constructive trust unless he can trace the actual funds he claims." (Brief of Claimants-Appellees at 12, a copy of which is located as Exhibit 5 to the Third Party Claimants' Appendix.). The Receiver Claimants went on to elaborate:
> Principles of bankruptcy law are often considered instructive in the context of insurance insolvency where analogous procedures and issues are concerned. <u>Commercial National Bank of Shreveport v. Superior</u>

11

Error! Unknown document property name.

trust gives the beneficiaries the right to recover the beneficiaries' property over creditors and policyholders. See e.g., In re Koreag, 961 F.2d at 352 (constructive trust confers on the beneficiary of the property an equitable interest in the property superior to that of the trustee); In re Howard's Appliance Corp., 874 F.2d at 93 (same); Chemical Bank, 234 B.R. at 598 (same); In re K Chemical Corp., 188 B.R. 89, 97 (Bankr. D.Conn. 1995) (same). Property in which a debtor holds only legal title and not an equitable interest becomes property of an insolvency estate only to the extent of a debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. In re Koreag, 961 F.2d at 351; In re Howard's Appliance Corp., 874 F.2d 88, 93 (2d Cir. 1989).[4]

In the present cases, the Receiver Claimants have neither legal title to nor an equitable interest in the funds held in these Forfeiture Proceedings. This black-letter rule is universally acknowledged:

---

Court, et al., 14 Cal. App. 4th 393, 17 Cal.Rptr.2d 884, 900 (1993); see also In re Advanced Cellular Systems, 235 B.R. 713, 717-18 (Bankr. D. Puerto Rico 1999) (bankruptcy proceedings and insurance company insolvency proceedings are considered fundamentally similar in that object of bankruptcy proceeding is to marshall debtor's assets into estate for distribution to creditors pursuant to prescribed priority scheme).
(Id. at 12 n.2.) Furthermore, a long line of cases have ruled that cases interpreting the Bankruptcy Code are especially helpful in interpreting state insurance liquidation acts. See e.g., In the Matter of First Columbia Life Ins. Co., 724 So. 2d 790, 795 (La. Ct. App. 1998) (looking to bankruptcy law to interpret state priority scheme similar to § 83-24-83); Pine Top Ins. Co. v. Republic Western Ins. Co., 123 B.R. 277, 281 (N.D. Ill. 1990); Covington v. University Hospitals of Cleveland, 778 N.E.2d 54, 57 (Ohio Ct. App. 2002). State insurance liquidation statutes are based on Federal bankruptcy law. In the Matter of First Columbia Life Ins. Co., 724 So. 2d at 795. Principles of bankruptcy law are considered instructive in the context of insurance insolvency where analogous procedures and issues are concerned. Commercial Nat'l Bank v. Superior Court, 14 Cal. App. 4th 393, 17 (1993).

[4] See also Begier v. I.R.S., 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); In the Matter of Maple Mortg., Inc., 81 F.3d 592, 596 (5th Cir. 1996); In the Matter of Haber Oil Co., 12 F.3d 426, 435 (5th Cir. 1994); In the Matter of Kennedy & Cohen, Inc., 612 F.2d at 965 ("Property held by a bankrupt in trust belongs to the beneficiary and never becomes a part of the bankruptcy estate."); In the Matter of Paragon Sec. Co., 589 F.2d 1240, 1242 (3d Cir. 1978); Nicklaus v. Bank of Russellville, 336 F.2d 144, 145 (8th Cir. 1964); East v. Crowdus, 302 F.2d 645, 649-650 (8th Cir. 1962) ("No creditor (can) justly demand that (a receivership) estate be augmented by a wrongful conversion of the property of another, . . . or the application to the general estate of property which never rightfully belonged to it) (citation and quotation omitted).

12

Error! Unknown document property name.

- "<u>Effect of insolvency</u>. A person having an equitable lien upon the property of another has an equitable interest in the property which will be protected . . . . The equitable claimant is entitled to priority over the creditors of the owner of the property . . . ." Rest. (1st) Restitution § 161 comment c.

- "<u>Effect of insolvency of the wrongdoer</u>. The claimant can reach the product of his property even though the wrongdoer is insolvent. This is true whether the claimant seeks to enforce a constructive trust upon the product or to impose an equitable lien upon it. The claimant has an equitable interest in the product, and his equitable interest is not cut off by the insolvency of the wrongdoer, since the creditors of the wrongdoer are not in the position of bona fide purchasers []. The creditors whose rights are no better than those of their debtor are not entitled to profit because of the wrongful acquisition of property by their debtor through the use of the claimant's property." Rest. (1st) Restitution § 202 comment e.

- "Where property subject to a trust is taken by a receiver, rights under the trust are enforceable against it. Thus, where collections by a receiver of an agent constitute a trust fund for the use and benefit of beneficiaries, they are entitled thereto, as against general creditors . . . ." 65 Am. Jur. 2d, Receivers § 199.

- "Property in which the debtor holds . . . only legal title and not an equitable interest, . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541 (d).

- "It is a fundamental rule that the estate succeeds only to the title and rights in the property that the debtor possessed . . . . Therefore, when the debtor is in possession of property impressed with a[] constructive [] trust . . ., the estate will generally hold such property subject to the outstanding interest of the beneficiaries. The assets held in trust will thus normally not be available to the debtor or the debtor's creditors." 5 Collier on Bankruptcy (15th rev. ed. 2001) ¶ 541[11][5].

Nothing in the Mississippi Liquidation Act precludes the Third Party Claimants from asserting their constructive trust claims in this case.

### C. Because of FNL's Fraud and Breach of Duty, Third Party Claimants Have Stated Claims for Constructive Trusts and to Establish Title in Third Party Claimants' Property

The Third Party Claimants have alleged facts entitling them to a constructive trust. The elements of a constructive trust under Mississippi law are:

(1) a benefit conferred upon the defendant by the plaintiff;
(2) appreciation by the defendant of the fact of such benefit; and

13

**Error! Unknown document property name.**

(3) acceptance and retention by the defendant of that benefit, under circumstances such that it would be inequitable to retain the benefit without payment of its value.

Milliken & Michaels, Inc. v. Fred Netterville Lumber Co., 676 So. 2d 266, 271 (Miss. 1996) (Sullivan J. concurring) (citing cases). See also In re Koreag, 961 F.2d at 352. A constructive trust can arise from a fraud or, even absent fraud, also can arise from the breach of a confidential relationship. McNeil v. Hester, No. 97-CA-00048-SCT (¶ 25), 753 So. 2d 1057, 1064 (2000). The facts alleged in the Verified Statements state a claim under each of these theories.

Any attempt by the Receiver Claimants to cast this case as one of simple breach of contract mischaracterizes the allegations in the Verified Statements. "A distinction exists between the breach of a promise not fraudulently made and a breach of a promise made with no intention of performing it." Saulsberry, 78 So. 2d at 760. Here, the Verified Statements expressly allege that FNL fraudulently induced the Third Party Claimants into entering into the reinsurance agreements and that FNL never had any intention of performing under those agreements. (Verified Statements, Exh. 1, ¶ 23 (FNL "had intended from the first to defraud Settlers and to immediately misappropriate the Settlers Reserve Fund for the benefit of certain of First National Life's insiders, e.g., Frankel, Hackney and Atnip."), ¶ 50 (FNL "never had any intention of honoring the P&V Agreements and intended from the first to defraud Peoples and Veterans out of the P&V Fund.").)

### 1. The Third Party Claimants Have Adequately Alleged Facts Supporting Their Claim that FNL Fraudulently Induced Them to Enter into the Reinsurance Agreements

As detailed above, the Third Party Claimants allege that FNL and its insiders defrauded them, that FNL and its insiders obtained Third Party Claimants' property through false pretenses, that Third Party Claimants' contracts with FNL were void *ab initio*, and that, as a result, the

14

Error! Unknown document property name.

funds traced to the Forfeiture Proceedings were not then and are not now FNL's assets. (Verified Statements, Exh. 1, ¶¶ 70-100.) For these reasons, it would be inequitable for FNL's Receiver, or the other Receiver Claimants, to receive the assets FNL wrongfully took from the Third Party Claimants.

As alleged in the Verified Statements, Frankel and his henchmen owned and controlled FNL and used FNL to perpetrate the fraud on the Third Party Claimants. (Verified Statements, Exh. 1, ¶¶ 9, 13-14). In fact, the key players at FNL, namely Frankel (secretly its owner), Hackney (its CEO), Atnip (its de facto CFO and member of FNL's "investment committee"), and John Jordan (its outside counsel), have all stood in this Court, pled guilty, and are all in federal prison. On these and other facts alleged in the Verified Statements, the conduct of FNL's owner, officers and director must be imputed to FNL. Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 165 (2d Cir. 2003) (where "the persons dominating and controlling the corporation orchestrated the fraudulent conduct, their knowledge is imputed to the corporation as principal under the sole actor rule") (quotation omitted); FDIC v. Ernst & Young, 967 F.2d 166, 171 (5th Cir. 1992) ("common sense" supports imputing knowledge of sole shareholder/owner who "dominated and controlled" the board of directors to the company); Anderson v. Yates, 99 So. 499, 501 (Miss. 1924).

### 2. The Third Party Claimants Have Adequately Alleged Facts Supporting Their Claim that FNL Breached Its Duty of Utmost Good Faith

"[R]einsurance relationships are governed by the traditional principle of 'utmost good faith.'" Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 43 (1st Cir. 2000); see also Nichols v. American Risk Management, Inc., No. 89 Civ. 2999 (JSM), 2002 WL 31556384, *1 (S.D.N.Y. Nov. 18, 2002) (parties to a reinsurance contract owe each other a duty of utmost good faith); United Fire & Cas. Co. v. Arkwright Mut. Ins. Co., 53 F. Supp. 2d 632,

15

Error! Unknown document property name.

642 (S.D.N.Y. 1999) ("the duty of utmost good faith is a mutual one; it is an obligation of the reinsurer as well as of the cedent"). The same facts supporting the Third Party Claimants' fraudulent inducement claims also state constructive trust claims based on FNL's breach of the duty of utmost good faith. FNL's misrepresentations and omissions about Frankel's role in owning and controlling FNL, the financial condition of FNL, the fact that FNL was insolvent at the time it entered into the reinsurance agreements, and FNL's plan to send the reserve funds to Frankel and Frankel-controlled shell companies state claims for breach of the duty of utmost good faith in a reinsurance agreement giving rise to the imposition of constructive trusts.

### 3.    The Third Party Claimants Are Able to Trace Their Property to the Forfeiture Proceedings

The Third Party Claimants are also entitled to recover their property because they are able to trace their funds to these Forfeiture Proceedings. Eisenberg, 2003 WL 21683600 at *5. In Eisenberg, the court affirmed a summary judgment order allowing the victims to recover fraudulently obtained funds transferred by the malefactor to a third party because no other funds had been transferred into the malefactor's account after the victims funds were deposited. The court held that the funds were traceable to the third party. Eisenberg, 2003 WL 21683600 at *5.

The Verified Statements set forth in great detail, and discovery in this case and related cases now has produced even more evidence, the path these funds took from the Third Party Claimants' bank accounts to the Forfeiture Proceedings. As in Eisenberg, FNL never gained title to funds it obtained from the Third Party Claimants by fraud and breach of duty, and, as in Eisenberg, the funds can be traced. (Verified Statements, Exh. 1, ¶¶ 31-46, 64-69). To take one telling example from the Verified Statements, the $26.5 million in the account seized by the authorities and now the subject of one of the Forfeiture Proceedings are readily traceable to the Settlers funds obtained by FNL's fraud. (Verified Statements, Exh. 1, ¶ 39.) Prior to the transfer

16

Error! Unknown document property name.

of Settlers' $44.8 million reserve fund to Frankel's Banque SCS Alliance Account in Switzerland, the Swiss account balance had been reduced to $931,946.62. The $26.5 million left in the Swiss account that is now part of one of these Forfeiture Proceedings is traceable to Settlers and there is no other possible source for most of those funds. Therefore, the Third Party Claimants are able to follow their property to the Forfeiture Proceedings.

### D. Third Party Claimants' Constructive Trusts Arose at the Time of FNL's Fraudulent Acts, Prior to FNL Being Placed into Rehabilitation and Liquidation

The Third Party Claimants are not asking this Court to create rights the Third Party Claimants do not already have. Under Mississippi property law, the Third Party Claimants' rights to recover their property that is currently held in these Forfeiture Proceedings vested at the time of FNL's fraud and breach of duty, long before Commissioner Dale sought to have FNL placed into receivership on May 10, 1999. The constructive trust over the Third Party Claimants' property arose at the time the funds were first transferred from the Third Party Claimants to FNL and Frankel. First Nat'l Bank of Jackson v. Huff, 441 So. 2d 1317, 1320-21 (Miss. 1983). As the court explained in Huff:

> A constructive trust and equitable lien arose by operation of law at that point in time. The [property] was then burdened with a constructive trust and equitable lien. "[T]he trust was not created by the decree of the court below declaring its existence, as contended by appellant, but the lien of the trust arose by operation of law from the misapplication of funds by the testator in acquiring the particular property, and existed from the time of such misappropriation, and the heirs and devisees acquired and held the property subject to the trust."

Id. (citation omitted). See also, S.E.C. v. Levine, 881 F.2d 1165, 1173 (2d Cir. 1989) (constructive trust arose at the time of the wrongdoing); Wholey v. Cal-Maine Foods, Inc., 530 So. 2d 136, 140-41 (Miss. 1988) ("[t]he right to enforce an implied or constructive trust accrues at the time of performance of the act from which the constructive trust results.")

The FNL Receiver has admitted that Frankel caused FNL to enter into reinsurance

17

**Error! Unknown document property name.**