agreements "[a]s part of his scheme" to defraud.  (Response in Opposition to Appellants' Motion

for Stay Pending Appeal at ¶ 2, a copy of which is located at Exhibit 6 to the Third Party

Claimants' Appendix.)  The reinsurance agreements were fraudulent from the first; and Frankel

always intended to misappropriate the Third Party Claimants' funds.  Id.  The Third Party

Claimants' rights to recover their property through a constructive trust therefore vested prior to

April 9, 1999 and prior to FNL's receivership.

## II.    THE LIQUIDATION OF FNL DOES NOT SEVER THIRD PARTY CLAIMANTS' PROPERTY RIGHTS IN THEIR FORFEITED ASSETS

The Receiver Claimants do not have greater rights to the funds in these Forfeiture

Proceedings than FNL had.  The premise underlying the Receiver Claimants' Motion to Dismiss

is that the Third Party Claimants' property obtained by FNL's fraud and breach of duty must

belong to FNL and thus becomes property of the FNL estate.  The Receiver Claimants' argument

that the Mississippi Liquidation Act extinguishes the Third Party Claimants' right to recover

their property seeks to (1) ignore the procedure for liquidating an insurance company set forth in

the Mississippi Liquidation Act, (2) set long-standing principles of insolvency, receivership and

bankruptcy law on their head, and (3) give the Receiver Claimants rights in the proceeds of

FNL's fraud, a result not contemplated by the Mississippi Liquidation Act.

### A.    The Assets of the FNL Estate Are Defined by Mississippi Property Law

The Mississippi Liquidation Act defines "general assets" as "all property, real, personal,

or otherwise, <u>not</u> specifically mortgaged, pledged, deposited or <u>otherwise encumbered</u> for the

security or benefit of specified persons or classes of persons." § 83-24-7(i) (emphasis added).

Thus, under the plain language of the Mississippi Liquidation Act, the FNL Receiver only has

rights to property that rightfully belongs to the insolvent insurer and that is not "otherwise

encumbered."  The question of whether the property in the Forfeiture Proceedings was obtained

**Error! Unknown document property name.**

from the Third Party Claimants through fraud or breach of duty and, therefore "otherwise encumbered," is for the trier of fact to decide. Until the issue of ownership in the property held in the Forfeiture Proceedings is determined, the property is not properly part of the FNL liquidation estate. In re Koreag, 961 F.2d at 349 ("It is unsatisfactory to say that the property should first be turned over, because it is the ascertainment that property is 'of [the] estate' under local law that defines the extent of the court's power"); McDonough Caperton Shepherd Group, Inc. v. Academy of Medicine, 888 F.2d 1392, 1989 WL 128675, *4 (6th Cir. Oct. 30, 1989) ("Until the issue of ownership of the *res* was determined, the *res* could not properly be a part of the liquidation proceedings. We do not agree with Ideal that because it and the Liquidator asserted a claim to the *res*, the adjudication of their claim to ownership had to take place in the [liquidation] court.").[5]

**B.    The Receiver Claimants Cannot Assert Property Rights Greater Than Those Provided to the FNL Estate Under the Mississippi Liquidation Act**

The Mississippi Liquidation Act only authorizes the FNL Receiver to take possession of the assets of the estate. The Mississippi Liquidation Act gives the FNL Receiver certain limited powers:

> An order to liquidate the business of a domestic insurer shall appoint the commissioner and his successors in office as liquidator, and shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the general supervision of the court. The liquidator shall be vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation.

---

[5] See also Shell Pipe Line Corp. v. West Texas Marketing Corp., 540 F. Supp. 1155, 1160 (S.D. Tex. 1982) ("The Chicago Bankruptcy Court does not have exclusive jurisdiction over the disputed 155,000 barrels of oil for the very reason that it has yet to be determined whether or not the oil was property of the bankrupt's (ECI's) estate at the commencement of the Chicago bankruptcy proceeding. The question raised by Shell in this interpleader action is precisely, to whom does the oil belong? This issue will be resolved at a full trial on the merits before this Court.").

Error! Unknown document property name.

§ 83-24-35 (1) (emphases added).  In seeking to recover assets of the FNL estate, the FNL

Receiver stands in the shoes of FNL and is subject to any claims that could have been asserted

against FNL.  Lackey, 691 So. 2d at 995.  "[L]iquidation cannot place the liquidator in a better

position than the insolvent company he takes over, authorizing him to demand that which the

company would not have been entitled to prior to liquidation."  In the Matter of Midland Ins.

Co., 590 N.E.2d 1186, 1192 (N.Y. 1992).  See also Rawlings v. American Oil Co., 161 So. 851,

854 (Miss. 1935) ("The Mississippi receiver [], of course, had no greater right in these funds than

the company itself.") (emphasis added); Sender v. Simon, 84 F.3d 1299, 1307 (10th Cir. 1996)

(trustee "stands in the shoes of the bankrupt . . . and has no greater rights than the [bankrupt] had

as of the bankruptcy filing"); In the Matter of Liquidation of Union Ind. Ins. Co., 674 N.E.2d

313, 320 (N.Y. 1996) (same).[6]

Nothing in the Mississippi Liquidation Act abrogates the general principles of state

property law.  See Butner v. United States, 440 U.S. 48, 55 (1979); In the Matter of Pinetree,

Ltd., 876 F.2d 34, 36-37 (5th Cir. 1989); In re Wade, 287 B.R. 874, 880 n.8 (S.D. Miss. 2001).

In seeking the funds that FNL fraudulently acquired from the Third Party Claimants, the

Receiver Claimants demand greater rights than FNL itself had to the funds.  Indeed, the Receiver

Claimants asks this Court to accept as a matter of law that FNL bears no corporate accountability

for its actions and those of its owner, Frankel, and other insiders.  The Receiver Claimants'

contention that FNL was a purely innocent actor is at odds with the Third Party Claimants'

allegations (and also at odds with the guilty pleas of FNL's principals).  As the Court well

---

[6] See also 75 C.J.S. Receivers § 105 (Receiver "cannot acquire any other, greater, or better interest than the debtor had in the property.  To this extent the receiver has been held to stand in the shoes of the debtor or insolvent; having the same right which the latter would have had, and being unable to set up any rights against claims which the debtor could not have set up."); 75 C.J.S. Receivers § 106 ("a receiver takes the property of the debtor in the same condition and subject to the same claims, priorities, equities and liens as existed against it in the hands of the person or corporation out of whose possession it was taken.").

Error! Unknown document property name.

knows, those allegations control at this stage of the case.

### C.    The Mississippi Priority Statute Does Not Apply to the Funds Being Held in the Forfeiture Proceedings

The Mississippi Priority Statute (§ 83-24-83) governs a receiver's distribution of the

defunct insurer's assets among creditors.  The Mississippi Priority Statute by its terms deals only

with how the receivership's own assets should be distributed; such a statute does not and cannot

create substantive property rights that the insurer itself never had.  Stephens v. American Home

Ins. Co., 811 F. Supp. 937, 947 (S.D.N.Y. 1993), rev'd on other grounds, 70 F.3d 10, 12 (2d Cir.

1995).  Certainly, nothing in the Mississippi Liquidation Act even remotely suggests that other

persons, such as the Third Party Claimants here, lose their right under Mississippi law to seek a

constructive trust in assets they lost through fraud or breach of duty merely because a receiver

also claims to own those assets.[7]   44 C.J.S. Insurance § 163 (a liquidation order does not deprive

third parties of their property rights).  *Nothing in the Mississippi Liquidation Act conveys*

*property to FNL's Receiver that under Mississippi property law would belong to another party.*

The Third Party Claimants are not asking to share in the assets of FNL's estate.  The

Mississippi Priority Statute is by its terms a limited avenue that deals only with how the property

of FNL's estate is distributed:  "The priority of distribution of claims from the insurer's estate . .

. ." § 83-24-83 (emphasis added).  As explained above, the Third Party Claimants' funds are not

assets or property of the FNL estate.  Rather, the Third Party Claimants seek a judgment from

this Court that the funds subject to the Forfeiture Proceedings belong to the Third Party

Claimants and not FNL or the other insolvent insurance companies.  The Third Party Claimants

---

[7] The Receiver Claimants may cite to the Rehabilitation and Liquidation Model Act adopted in part by the Mississippi legislature.  Section 47 - Priority of Distribution was amended in 1989 to state:  "No claim by a shareholder, policyholder or other creditor shall be permitted to circumvent the priority classes though the use of equitable remedies."  See Rehabilitation and Liquidation Model Act, § 47, located at Exhibit 7 to the Third Party Claimants' Appendix.  However, the Mississippi legislature did not adopt this language as part of the Mississippi Priority Statute.  See § 83-24-83.

Error! Unknown document property name.

position is similar to the claimant in <u>In re Koreag</u>:

> Refco is not merely asserting rights as an ordinary creditor or claimant in a bankruptcy proceeding.  Its position is that Mebco does not own the Disputed Funds.  A determination that the funds are not property of the estate therefore does not improperly affect other creditors of the estate, because they have valid claims only against the estate's bona fide assets.  The situation is clearly distinguishable from an effort by a normal bankruptcy creditor, without any plausible ownership claim to a specific asset, to gain a preferred position vis-à-vis other creditors . . . .

<u>In re Koreag</u>, 961 F.2d at 349-50.

Because the funds were never part of the FNL estate, the Third Party Claimants are not seeking to "leapfrog" ahead of FNL's creditors or policyholders nor do the Third Party Claimants seek a "super-priority" under the Mississippi Priority Statute.  The Third Party Claimants simply seek the return of their property taken from them through FNL's fraud.

In <u>Belisle v. Plunkett</u>, 877 F.2d 512, 515 (7th Cir. 1989), in answering the same question presented here - may a receiver bring into the estate property that is subject to a constructive trust for victims of the debtor's fraud? - the court reasoned:

> <u>If the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a judgment creditor, and . . . therefore would defeat the claims of all of the debtor's creditors.</u>   Whether or not we say that the debtor holds the ring in "constructive trust" for the owner is a detail.  Under state law the owner's claims are paramount;  the debtor could not defeat those rights by pledging or selling the ring, and the creditors in bankruptcy receive only what state law allows them.

<u>Id.</u> (citing <u>Butner</u>, 440 U.S. 48 (1979)) (emphasis added).  FNL took the Third Party Claimants' funds through fraud and breach of duty.  Funds in the Forfeiture Proceedings, traced from the Third Party Claimants to Frankel's Swiss account, other accounts, diamonds and gold coins, remain the property of the Third Party Claimants and defeat the claims of FNL, the other insolvent insurance companies, their policyholders and creditors.

**D.    Only "Assets of the Insurer" Are Subject to the Priority Scheme for Distribution by FNL's Receiver**

Error! Unknown document property name.

The Mississippi Liquidation Act provides a two-step process for liquidating an insurance company. First, the Mississippi Liquidation Act directs the liquidator to "take possession of the assets of the insurer." § 83-24-35(1). Section 83-24-35(1) goes on to provide that:

> The liquidator shall be vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation.

§ 83-24-35(1) (emphasis added). The Act does not contain a definition of "property." Under principles of statutory construction, "property" should therefore be given its clear and definite common law meaning. Leocal v. Ashcroft, 543 U.S. --, 125 S.Ct. 377, 382 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning") (quoting Smith v. United States, 508 U.S. 223, 228 (1993); In re Edelman, 295 F.3d 171, 177 (2d Cir. 2002) (individual words in a statute carry their ordinary, contemporary, common meaning); Whelan v. Johnston, 6 So. 2d 300, 303 (Miss. 1942) (in banc) ("words which have a clear and definite meaning at common law should be given that meaning when used in a statute, unless it is clear from the statute itself that they were used in a different sense"). Thus, what property constitutes "the assets of the insurer" can only be determined by reference to Mississippi property law.

The second step in liquidating an insurer, after determining which property is an asset of the estate and which property belongs to others, is to distribute the assets of the estate according to the priority scheme set forth in § 83-24-83. Munich American Reinsurance Co. v. Crawford, 141 F.3d 585, 593 (5th Cir. 1998). See also McDonough Caperton Shepherd Group, Inc, 888 F.2d 1392, 1989 WL 128675 at *4, 5 ("Until the issue of ownership of the *res* was determined, the *res* could not properly be a part of the liquidation proceedings." "[T]his interpleader action is an invitation to the Liquidator to come in and try to obtain more assets for [the insurer's] estate. The rightful owner of the *res* on deposit with the district court has never been adjudicated before

23

the New York state court."). Until this Court has made that determination, none of the forfeited assets is an asset or property of any of the seven insolvent insurance companies' estates. Section 83-24-83 provides for "[t]he priority of distribution of claims from the insurer's estate . . . ." Thus, on its face, § 83-24-83 only applies to the distribution of those assets that have been determined to be part of the insurer's estate. Obviously, property that is not part of "the insurer's estate" cannot be subject to distribution "from the insurer's estate" under this section.

The Receiver Claimants' citations to the Mississippi Priority Statute, and their contention that the Third Party Claimants are Class 6 creditors under that priority statute are misplaced. As discussed above, the priority statute is expressly limited to the distribution of assets "from the insurer's estate." § 83-24-83. Therefore, the treatment of general unsecured claims pursuant to the priority statute does not and cannot address the distribution of property that is not part of the FNL estate. The Third Party Claimants therefore seek to retrieve their own property, not to achieve a "super-priority" with respect to distributions from property of FNL's estate.

### E. Because the Property Never Passed to FNL, the FNL Receiver Has No Right to Title in the Third Party Claimants' Property

The Mississippi Liquidation Act is clear: the liquidator is only vested by operation of law with title to all of the property of the insurer as of the entry of the final order of liquidation. § 83-24-35(1) (quoted above). Under Mississippi property law, because FNL obtained the Third Party Claimants' property through fraud and breach of duty, title to those funds never vested with FNL. Therefore, under the Mississippi Liquidation Act, title never vested with the FNL Receiver. Eisenberg, 2003 WL 21683600, at *5 ("Mississippi case law is clear that a thief does not obtain title to stolen property," including stolen funds that are traceable); Williams v. Logue, 122 So. 490, 491 (Miss. 1929) ("the effect is not only to return the title to the true owner, but the reversion will, in cases of corrupt fraud, operate by relation so as to make the transaction void *ab*

Error! Unknown document property name.

*initio*, and, except as to the rights of third parties, to return the title to the true owner as if it had never been out of him").

Although the Mississippi Liquidation Act creates a "comprehensive" scheme for liquidating the assets of an insurer, the Mississippi Liquidation Act is not comprehensive with respect to Mississippi property law and is designed to embrace and to be applied harmoniously with consistent common law and equitable concepts. Pioneer Annuity Life Ins. Co., 765 P.2d at 555. The Mississippi Liquidation Act does not supplant property law; rather, the Act **depends** on property law to define the assets of the liquidation estate. Butner, 440 U.S. at 55; In re Koreag, 961 F.2d at 349, 352; In the Matter of Pinetree, Ltd., 876 F.2d 34, 36-37 (5th Cir. 1989); In re Wade, 287 B.R. 874, 880 n.8 (S.D. Miss. 2001).

The Mississippi Liquidation Act gives the Receiver title to property that "vested by operation of law" in FNL. § 83-24-35(1). "Property" includes the concept of constructive trusts. In re Koreag, 961 F.2d at 352; In the Matter of Maple Mortg., Inc., 81 F.3d at 596 (constructive trust defines property rights to encompass both legal and equitable title); In the Matter of Quality Holstein Leasing, 752 F.2d 1009, 1012 (5th Cir. 1985) (property right to equitable title subject to constructive trust). Constructive trusts arise "by operation of law" and vest property rights in the beneficiary as of the date of the wrong-doing. United States v. Fontana, 528 F.Supp. 137, 146 (S.D.N.Y. 1981) (quoting 5 Scott, Trusts (3d ed.) § 462.4) ("Where the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises.... It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court."); First Nat'l Bank of Jackson v. Huff, 441 So. 2d 1317, 1320-21 (Miss. 1983) (constructive trust "arose by operation of law from the misapplication of funds by the testator in acquiring the particular

Error! Unknown document property name.

property, and existed from the time of such misappropriation").

The Third Party Claimants' right to a constructive trust therefore vested at the time FNL misappropriated the Third Party Claimants' property on April 9, 1999 (Verified Statements, Exh. 1, ¶ 24), March 2, 1999 (Verified Statements, Exh. 1, ¶ 59), January 20, 1999 (Verified Statements, Exh. 1, ¶ 57), and November 10, 1998 (Verified Statements, Exh. 1, at ¶ 52) and before the date on which the Chancery Court entered the liquidation order. § 83-24-35(1). Therefore, the FNL Receiver only assumed those rights in the property that FNL possessed, rights which were subject to a constructive trust in favor of the Third Party Claimants. § 83-24-35(1). As the New York Court of Appeals held in applying a similar insurer liquidation statute:

> [L]iquidation cannot place the liquidator in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation.

In the Matter of Midland Ins. Co., 590 N.E.2d 1186, 1192 (N.Y. 1992) (emphasis added).

Any argument that the Mississippi Liquidation Act abrogates equitable principles of common law property rights turns long-standing rules of statutory construction on their head. As the Mississippi Supreme Court long ago explained:

> The presumption is that the Legislature does not intend to make alterations in the law beyond what it explicitly declares, either by express terms or by necessary implication, and does not intend to overthrow fundamental principles or to infringe existing rights, without expressing or clearly implying such intention.

Sanders v. Neely, 19 So. 2d 424, 426 (Miss. 1944). If the Legislature seeks to abrogate common law principles and property rights through legislation, it must do so in clear and unambiguous language. Nowhere does the Mississippi Liquidation Act clearly state that long-standing property rights are being stripped from claimants.

In a case very much on point, the Supreme Court of Montana allowed a defrauded claimant to pursue a claim to recover property in an insurance liquidation proceeding. Bennett v.

26

Glacier General Assurance Co., 857 P.2d 683, 685 (Mont. 1993).  In Bennett, the Missoula Hotel

Development Associates ("MHDA") paid a total of $1,028,950 in advance premium and a

deposit to Glacier for a financial guarantee bond on a loan.  Id. at 684.  Glacier deposited the

MHDA check in Glacier's general operating account.  Id.  After Glacier was placed in

liquidation, MHDA filed a proof of claim with the liquidator for the unearned portion of the

prepaid premium and the entire deposit, asserting preference over claims by other Glacier

creditors.  Id. at 685.  MHDA alleged that the retained deposit was held in trust for MHDA and

was not available for distribution by the liquidator.  Id.  MHDA also alleged that the prepaid

premium had been fraudulently obtained by Glacier.  Id.  Although the court ultimately affirmed

the finding that MHDA's trust property was extinguished because MHDA was not able to trace

its trust funds, MHDA was allowed to pursue its trust claim.  Id. at 685-86.  In so holding the

court explained: "if MHDA could trace the $250,000 from the general operating account to the

purchase of another asset, it would be entitled to impress a trust upon the substituted property."

Id. at 687.

        The legal principles in Bennett apply equally here.  The Third Party Claimants have

alleged that they were fraudulently induced into entering into the reinsurance agreements with

FNL and to transfer their funds to FNL. (Verified Statements, Exh. 1, ¶¶ 21, 48, 72, 81).  Like

the funds in Bennett, the Third Party Claimants' funds were transferred to FNL's general

account.  The funds obtained by fraud are subject to a constructive trust for the benefit of the

Third Party Claimants.  However, unlike the claimant in Bennett, the Third Party Claimants can

trace their funds to the Forfeiture Proceedings. (Verified Statements, Exh. 1, ¶¶ 31-46, 64-69).

Just as the claimant in Bennett was allowed to have its trust claim heard, so too should the Third

Party Claimants be given a chance to prove their claims to the funds in the Forfeiture

Error! Unknown document property name.

Proceedings.

**F.     The Receiver Claimants Themselves Have Asserted Constructive Trust Claims to Recover Property in an Insurance Liquidation Proceeding in Tennessee**

The Receiver Claimants through their own actions have demonstrated that even they do not believe that property rights created by constructive trusts are abrogated by insurance liquidation acts.  Four of the Receiver Claimants, acting on behalf of FNL and some of the other Frankel-controlled insurance companies, filed a constructive trust claim asserting FNL's and the other insurance companies' alleged property rights to funds being held in the liquidation of Franklin American Life Insurance Company ("FALIC") in Tennessee.  In obtaining approval of the settlement, the FNL Receiver described his claims in the FALIC liquidation to the Chancery Court in Mississippi as follows:

> the $57 million was removed from funds that were owned by [FALIC] and the other aforementioned insurance companies [including FNL] in an account commingled by LNS [Liberty National Securities, the Frankel-controlled investment entity] and <u>subject to a constructive trust</u> and equitable distribution.

(Petition for Order Approving Compromise and Settlement of Potential Interstate Claims at ¶ 5 (emphasis added), located as Exhibit 8 to Third Party Claimants' Appendix.)  The Chancery Court in Mississippi approved the settlement based upon the constructive trust claims asserted by the Receiver in the FALIC liquidation.

Any attempt by the FNL Receiver to distinguish his constructive trust to property held in the FALIC liquidation by arguing that he was collecting money "for FNL" instead of "from FNL" is beside the point.  Although the FNL Receiver was attempting to collect money <u>for</u> FNL, he was attempting to collect it <u>from</u> the FALIC liquidation proceeding through a constructive trust claim.  The FNL Receiver asserted the very same type of claim for a constructive trust in the FALIC liquidation that the Receiver Claimants now claim does not exist in the insurance

28

liquidation proceedings.

Constructive trust claims have long been a part of property law as a means of preventing fraud and restoring property to its rightful owner. The Mississippi Liquidation Act relies on property law to define the assets of the estate. Just as the Receiver Claimants were able to recover property in the FALIC liquidation through a constructive trust claim, so too should the Third Party Claimants be able to pursue their constructive trust claims to the funds taken from them by FNL through FNL's fraud and breach of FNL's duty of utmost good faith.

### G.     The Third Party Claimants' Constructive Trust Claims Are Not Indirect and Contingent

The Receiver Claimants will likely cite to the Second Circuit's opinion in <u>United States v. Peoples Benefit Life Insurance Company</u>, 271 F.3d 411 (2d Cir. 2001), to argue that the Third Party Claimants' constructive trust claims are "indirect and contingent, and therefore not cognizable." That case involved different forfeiture cases, different properties, and different facts. In all events, the Second Circuit explicitly refrained from addressing the merits of the Third Party Claimants' constructive trust claims. The court expressly stated that its ruling would <u>not</u> affect the Third Party Claimants' property rights in the forfeited assets:

> In view of our decision to affirm, [Third Party Claimants] are not parties to the forfeiture proceedings and therefore any ruling that the district court may make concerning the ownership of the Property does not affect [Third Party Claimants'] rights.

<u>Id.</u> at 417 n.5.

As noted above, the Second Circuit's decision dealt with entirely different cases. When Peoples and Veterans filed their motions to intervene in those cases, they did not have the benefit of the documents that have since been produced or otherwise obtained through informal discovery. Because Peoples and Veterans could not trace their funds to the property in those cases at that time, the court reasoned that Peoples and Veterans were not entitled to intervene in

29

**Error! Unknown document property name.**

those cases. Peoples Benefit Life Ins. Co., 271 F.3d at 416.

The record in these two Forfeiture Proceedings is entirely different. As reviewed in the Summary of Facts above, it is beyond serious question that the majority of the funds at issue in these Forfeiture Proceedings are traceable as the proceeds of the fraud perpetrated by FNL and Frankel on the Third Party Claimants. Nothing in the Second Circuit's opinion suggests that the Third Party Claimants are not entitled to pursue their claims in these cases.

## III.    PUBLIC POLICY IS NOT SERVED BY RATIFYING FRAUD OR DEPRIVING THE RIGHTFUL OWNERS OF THEIR PROPERTY

Although it is true that allowing the Third Party Claimants to recover their property held in these Forfeiture Proceedings would prevent the Receiver Claimants from using the Third Party Claimants' property to reimburse the National Organization of Life and Health Guaranty Associations and the state guaranty associations, the guaranty associations have no right to the Third Party Claimants' property. Any argument that it would be unfair to allow the Third Party Claimants to recover their property simply because, unlike other victims of FNL's fraud, the Third Party Claimants are able to trace their property to the Forfeiture Proceedings is nothing more than a naked appeal to this Court to disregard the law and to disregard the facts which show beyond any sensible dispute that the funds in the Forfeiture Proceedings belong to the Third Party Claimants, not to any other victim.

The Receiver Claimants cannot truly believe that the people of Mississippi or any of the other four states are best served by ratifying fraud and breaches of duty; but that is exactly what they have argued in the past. The Third Party Claimants agree that the purpose of the Mississippi Liquidation Act is to protect "the interests of insureds, claimants, creditors and the public generally." § 83-24-3. However, the insureds, creditors and the public generally have no interest in property acquired through FNL's fraud and breach of duty. In re North American

30

Coin & Currency, Ltd., 767 F.2d 1573, 1576 (9th Cir. 1985) ("trustees have . . . no interest in property acquired by fraud of bankrupts, as against the rightful owners of the property [] . . . the creditors should not benefit from fraud at the expense of those who have been defrauded.") (citations omitted); East, 302 F.2d at 650 ("No creditor (can) justly demand that (a receivership) estate be augmented by a wrongful conversion of the property of another, . . . or the application to the general estate of property which never rightfully belonged to it.") (citation omitted); In the Matter of Anjopa Paper & Bd. Manuf. Co., 269 F. Supp. 241, 260 n.23 (S.D.N.Y. 1967) (creditors of the wrongdoer cannot object to allowing the innocent party to recover its funds). The protection of policyholders of an insolvent insurer may not be done at the expense of the property rights of others. Cockrell v. Grimes, 740 P.2d 746, 749 (Okla. Ct. App. 1987).

The Receiver Claimants simply are not authorized to seize "other people's money" to reimburse the guaranty associations. And that is really the interest the Receiver Claimants seek to serve in these cases -- reimbursing the guaranty associations. However, paying the guaranty associations with property obtained by fraud and breach of duty is not authorized by the Mississippi Liquidation Act, violates principles of property law, and does not serve any valid public interest.

## IV.    CONCLUSION

For all the above reasons, the Third Party Claimants are entitled to pursue their constructive trust claims to recover their property obtained through FNL's fraud and breach of duty. Accordingly, the Receiver Claimants' Motion to Dismiss should be denied.

Dated: June 3, 2005

31

Error! Unknown document property name.

Respectfully submitted,

PEOPLES BENEFIT LIFE INSURANCE
COMPANY, VETERANS LIFE
INSURANCE COMPANY, HUFF-COOK,
INC.

/s/

David N. Rosen (00169)
400 Orange Street
New Haven, CT 06511
Telephone: (203) 787-3513
Telecopy: (203) 789-1605
*Of Counsel*
Forrest B. Lammiman (CT 21508)
Randall A. Hack (CT 14314)
Brian I. Hays (CT 21601)
LORD, BISSELL & BROOK LLP
115 S. LaSalle Street
Chicago, IL 60603
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

**Error! Unknown document property name.**

## Certificate of Service

I hereby certify that on June 8, 2005, a true and correct copy of the foregoing was served by U.S. Mail, first class postage pre-paid to the following:

| | |
|---|---|
| **Plaintiff U.S.A.**<br>Julie G. Turbert<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>157 Church Street<br>P.O. Box 1824<br>23rd Floor<br>New Haven, CT   06510<br>(203) 821-3700 | |
| **Claimants**<br>James A. Lenes, Esq.<br>Douglas S. Skalka, Esq.<br>Neubert, Pepe, Monteith<br>195 Church Street<br>13th Floor<br>New Haven, CT   06510-2026<br>(203) 821-2000 | Susan Loving, Esq.<br>Lest, Loving & Davies<br>1701 South Kelly<br>Edmund, OK   73013 |
| Andrew B. Campbell, Esq.<br>Graham Matherne, Esq.<br>Wyatt Tarrant & Combs<br>2525 West End Avenue<br>Suite 1500<br>Nashville, TN   37203<br>(615) 244-0020 | Charles G. Copeland, Esq.<br>Copeland, Cook, Taylor & Bush, P.A.<br>1062 Highland Colony Parkway<br>Suite 200<br>P. O. Box  6020<br>Ridgeland, MS   39157 |
| Douglas J. Schmidt, Esq.<br>Blackwell Sanders Peper Martin, LLP<br>4801 Main Street<br>Suite 1000<br>Kansas City, MO   64112 | |

/s/ David N. Rosen

33

**Error! Unknown document property name.**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :
                                  :
        Plaintiff,                :
                                  :
    v.                            :    Civil No. 3:01 CV 1515 (EBB)
                                  :
$29,035,500 IN ACCOUNT NUMBER     :
20X6875(06), HELD IN THE NAME OF U.S. :
CUSTOMS SUSPENSE ACCOUNT AT THE   :
FEDERAL RESERVE BANK OF NEW       :
YORK, et al.                      :
                                  :
        Defendants.               :


## THIRD PARTY CLAIMANTS' APPENDIX