# EXHIBIT A

## INSURANCE BUSINESS

This page represents the list of insurance business, attached hereto, to be transferred by Peoples Benefit Life Insurance Company (formerly Providian Life and Health Insurance Company) and Veterans Life Insurance Company to First National Life Insurance Company of America and the applicable date of transfer.

12

EXHIBIT A

| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) | (13) | (14) | (15) | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Deferred Agency Annuity Policies | Agency Life Policies with Deferred Annuity Riders | Agency Immediate Annuities (SPIA's) | Agency SCILC/ SCNILC Annuities | MBNA Annuity | Agency Life Par Policies Paying Dividends | Agency Life Policies With PDF Rider | Agency UL (Co's 601 & 602) | Other UL PLH (Co. 605) | Other UL VLIC (Co. 604) | Kroger Life (Co. 605) | VLIC IRA | Kroger IRA | VLIC SPDA | Agency Life Policies Issued < 1950 | Total |
| Administrative System | CH V | CH V | "Shoebox" | "Shoebox" | Database | CH V/ Shoebox | CH V | LifeCom | LifeCom | LifeCom | LifeCom | Life70 | Vantage 1 | "Shoebox" | CH V | |
| **Statistics** | | | | | | | | | | | | | | | | |
| Life Base Prem. Paying Policy Reserves | | 425,052 | | | | 409,426 | 1,350,000 | 1,947,517 | 353,825 | 50,855 | 120,935 | | | | 214,255 | 4,871,865 |
| Life Rider Prem. Paying Policy Reserves | | | | | | | | | | | | | | | | |
| Life Paid Up Policy Reserves | | | | | | 76,910 | | | | | | | | | | 76,910 |
| Annuity Base Policy Reserves | 5,548,019 | | 300,000 | 500,000 | 522,210 | | | | | | | 30,503 | 319,614 | 17,069 | | 7,237,415 |
| Annuity Rider Policy Reserves | | 2,034,957 | | | | | | | | | | | | | | 2,034,957 |
| PDF Base Policy Reserves | | | | | | | | | | | | | | | | |
| PDF Rider Policy Reserves | | | | | | | 1,171,348 | | | | | | | | | 1,171,348 |
| Accumulated Dividends | | | | | | 109,684 | | | | | | | | | | 109,684 |
| Supplemental Benefits Policy Reserve | | 4,039 | | | | 103 | 3,796 | | | | | | | | | 7,938 |
| Substandard Policy Reserves | | 1,843 | | | | 104 | 590 | | | | | | | | | 2,537 |
| Net Deferred Premium | | 18,955 | | | | 2,142 | 29,926 | | | | | | | | 84 | 51,107 |
| Net Due Premium | | 1,154 | | | | 418 | 4,175 | | | | | | | | 17 | 5,764 |
| Advance Premium | | 103 | | | | 153 | 2,576 | | | | | | | | 7 | 2,839 |
| WoP Reserve - Disabled Lives | 242 | 22,766 | | | | | | | | | | | | | | 23,008 |
| IPC/Non-Deduction | | | | | | | | | | | | | | | | |
| Policy Loans | | | | | | 105,911 | 38,825 | 275,183 | 38,226 | 14,328 | | | | | | 472,473 |
| Total | 5,548,261 | 2,468,850 | 300,000 | 500,000 | 522,210 | 487,889 | 2,455,382 | 1,672,334 | 315,599 | 38,527 | 120,935 | 30,503 | 319,614 | 17,069 | 214,181 | 15,009,135 |
| | | | | | | | | | | | | | | | | 1,015,856 |
| APIF (000's) | 200,000 | 142,211 | | | | 15,228 | 222,985 | 367,614 | 60,012 | 7,808 | | | | | 318 | 3,853 |
| # Policies | 2,033 | 378 | | | 54 | 167 | | 615 | 98 | 14 | 124 | 8 | 45 | 1 | | 919 |
| # Riders | | 919 | | | | | | | | | | | | | | 919 |
| As of date: | 7/31/98 | 6/30/98 | estimated | estimated | 6/30/98 | 6/30/98 | 6/30/98 | 7/31/98 | 7/31/98 | 7/31/98 | 6/30/98 | 6/30/98 | 6/30/98 | 6/30/98 | 6/30/98 | |

Note: Some of the above amounts are estimates. The exact amounts will be determined for each block as of the effective date of the transfer.

# EXHIBIT B

## REINSURANCE AGREEMENT

between

### PEOPLES BENEFIT LIFE INSURANCE COMPANY
### (f/k/a Providian Life and Health Insurance Company)
### AND
### VETERANS LIFE INSURANCE COMPANY
(hereinafter referred to collectively as "Company")

and

### FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA
(hereinafter referred to as "Reinsurer")

For and in consideration of the mutual covenants herein contained, the parties agree to enter into this Reinsurance Agreement as follows:

## ARTICLE I

In recognition of the mutual covenants contained herein, effective at 12:01 am EST on October 30, 1998 (the "Agreement Effective Date"), the Company hereby agrees to transfer, and the Reinsurer agrees to accept as reinsurance, be liable to and reimburse Company on a Quota Share basis, for one hundred percent (100%) of all liability for every insured under the policy and certificate forms constituting the "Insurance Business," as defined in the Master Agreement.

Company shall transfer, and Reinsurer shall accept as reinsurance, such Insurance Business pursuant to the provisions and timeframe set forth in the Master Agreement. As Reinsurer provides notification of its readiness to administer certain Insurance Business, Company shall transfer those portions of the Insurance Business which Reinsurer can administer and Reinsurer shall accept as portion reinsurance, effective as of the first day of the month immediately following notification by Reinsurer. The premium revenue of Reinsurer, under said reinsurance, shall follow the premium revenue of Company.

The liability of Reinsurer, under said insurance, shall follow the liability of Company. With respect to the Insurance Business, the Reinsurer agrees to establish and maintain as a liability on its statutory statements not less than the statutory reserves and claim reserves as required by all applicable regulatory authorities, including the State Insurance Department of Pennsylvania, and

as calculated in accordance with sound actuarial principles and insurance accounting principles prescribed or permitted.

The Reinsurer is a corporation duly organized as a capital stock legal reserve life insurance company, validly existing under the laws of the State of Mississippi, and possesses the Certificate of Authority and is licensed to transact insurance business in all states in which it is currently doing business. The Reinsurer has the full corporate power and authority to carry out and perform its undertakings and obligations under this Agreement in those states. The execution and delivery by the Reinsurer of this Agreement and the consummation by the Reinsurer of the transactions contemplated by this Agreement have been duly authorized by all proper and requisite proceedings and will not conflict with, constitute a default under, or breach of: (a) any provision of the Articles of Incorporation or Bylaws of the Reinsurer; (b) any provision of any other material instrument to which the Reinsurer is a party or by which it is bound; (c) any law, rule or regulation of any governmental body applicable to the Reinsurer; (d) any order, writ, injunction or decree of any court or governmental body directed against the Reinsurer, or its Certificate of Authority. This Agreement has been duly and validly executed and delivered by the Reinsurer. Assuming due authorization, execution and delivery by the Company, this Agreement is the legal, valid and binding obligation of the Reinsurer, enforceable against the Reinsurer in accordance with its terms. The Reinsurer shall at all times maintain in force all such legal and regulatory authorizations as may be necessary or appropriate for the performance of its obligations under this Agreement.

## ARTICLE II

This Agreement applies to all risks, as hereinbefore specified, insured by the Company for which certificates of coverage in effect on or after the Agreement Effective Date have been or will be issued. This Agreement and the attachments thereto are the legal framework accepted by the Company and the Reinsurer. The Reinsurer accepts all liabilities arising from the forms of insurance coverage constituting the Insurance Business to the level of quota-share liability as set forth above herein in Article I of this Agreement.

## ARTICLE III

Company has furnished to Reinsurer through Exhibit "A" to the Master Agreement and attached hereto a listing of the Insurance Business. Company reserves the right to make changes in such forms, from time to time, but shall promptly notify Reinsurer and obtain the prior approval of the Reinsurer, of all such changes, and provide Reinsurer with copies thereof and the intended effective date of such material changes. The Reinsurer shall have the right to accept or exclude the change from coverage under the terms and conditions of this Agreement; provided, however, the Reinsurer must provide coverage and may not disapprove a change in policy form if such a change is required for the Company to comply with legal requirements.

2

## ARTICLE IV

All premiums collected by Company with a due date on or after the applicable Transfer Effective Date shall be payable to Reinsurer. All payments by Company of claims or losses incurred on or after the Transfer Effective Date and within the limits of the policy shall be binding upon the Reinsurer. Payment of claims and losses is understood to mean payments by the Company in settlement of claims and/or benefits under the Policy. It shall also mean satisfaction of judgments (including those awarding extra-contractual or punitive damages that are permitted but only in accordance with and subject to the provisions of Article V below), costs and legal expenses (including reasonable attorney's expenses).

Reinsurer acknowledges and agrees that Company has certain obligations and reporting requirements regarding the Insurance Business. Reinsurer shall cooperate and provide Company with all information necessary for Company to complete its reporting obligations.

## ARTICLE V

Subject to the final paragraph of this Article V, the Reinsurer shall not participate in punitive or compensatory damages or statutory penalties (hereinafter called "extra-contractual obligations"), awarded against the Company that arise from any deliberate act, omission, or course of conduct committed by or on behalf of the Company in connection with the insurance reinsured under this Agreement, unless the Reinsurer has been made aware of and has concurred in writing, in accordance with the provision set forth below, with the actions taken by the Company which lead to the awarding of extra-contractual obligations.

The Company must notify the Reinsurer of any impending claim likely to involve extra-contractual obligations as soon as practicable by registered letter, and such notification shall include a suggested course of action or inaction for the Reinsurer's review. The Reinsurer then has the obligation to notify the Company of its decision to concur or not concur in the Company's suggested actions to be taken or not taken within fifteen (15) business days following the receipt of written notification from the Company. If the Reinsurer concurs with the Company's action, the Reinsurer shall participate in any extra-contractual award under the policy involved in the same proportion as the Reinsurer reinsures the underlying insurance; unless, however, the Reinsurer is administering the Insurance Business or is obligated for the administration of the Insurance Business; in which event, the Company has no liability for any extra-contractual liability, specifically including punitive damages.

For the purposes of this provision, the following definitions shall apply:

(1)  "Punitive damages" are those damages awarded as a penalty, the amount of which is not governed, nor fixed by the statute.

(2)  "Statutory penalties" are those amounts that are awarded to as a penalty but fixed in amount by statute.

3

(3) "Compensatory damages" are those amounts awarded to compensate for the actual damages sustained, and are not awarded as a penalty nor fixed in amount by statue.

The language of this article shall be deemed effective only as and to the extent permitted by the law of any applicable jurisdiction.

An extra-contractual obligation shall be deemed to have occurred on the same date as the loss covered or alleged to be covered under the policy.

Notwithstanding anything stated herein, this Agreement shall not apply to any extra-contractual obligation incurred by the Company as a result of any gross negligence and any fraudulent and/or criminal act by any officer or director of the Company acting individually or collectively or in collusion with any individual or corporation or any other organization or party involved in the presentation, defense, or settlement of any claim covered hereunder.

Recoveries from any form of insurance or reinsurance that protects the Company against claims that are the subject matter of this Article shall inure to the benefit of this Agreement.

## ARTICLE VI

### INSOLVENCY

In the event of the declared insolvency of the Company and the appointment of a liquidator, receiver, conservator, or statutory successor for the Company (hereinafter collectively referred to as "Receiver"), this reinsurance will be payable directly to the Company or to the Receiver on the basis of the liability of the Company as a result of claims allowed against the Company by any court of competent jurisdiction or any liquidator, receiver, conservator, or statutory successor having authority to allow such claims without diminution because of the insolvency of the Company or because the Receiver has failed to pay all or a portion of any claim.

The reinsurance will be payable by the Reinsurer to the Company or to the Receiver or, to such payees where: (a) the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of the Company; or (b) the Reinsurer with the consent of the direct insured or insureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company.

## ARTICLE VII

Each party acknowledges that it has read this Agreement and agrees to be bound by its terms and further agrees that, in conjunction with the Master Agreement of October 30, 1998 between these parties, this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals, contracts, or agreements, either oral, or written, and all other communications between the parties relating to the subject matter of

4

To the Company:

> PEOPLES BENEFIT LIFE INSURANCE COMPANY
> (formerly known as Providian Life and Health Insurance Company)
> 20 Moores Road
> Frazer, Pennsylvania 19355
>
> Attention: Gilbert Fein, Assistant Vice President

With a copy to:     Stephanie A. Fox, Counsel

> VETERANS LIFE INSURANCE COMPANY
> 20 Moores Road
> Frazer, Pennsylvania 19355
>
> Attention: Gilbert Fein, Assistant Vice President

With a copy to:     Stephanie A. Fox, Counsel

### ARTICLE XII

Inadvertent delays, errors or omissions made in connection with this Agreement or any transaction hereunder shall not relieve either party from any liability which would have attached had such delay, error or omission not occurred provided always that such delay, error or omission will be rectified as soon as possible after discovery.

IN WITNESS WHEREOF, the said Peoples Benefit Life Insurance Company, a Missouri corporation, and Veterans Life Insurance Company, an Illinois corporation, and First National Life Insurance Company of America, a Mississippi corporation, have, by their respective officers, executed and delivered this Reinsurance Agreement, in duplicate, on the dates shown below.

| WITNESS | PEOPLES BENEFIT LIFE INSURANCE COMPANY. (formerly known as Providian Life and Health Insurance Company) |
|---|---|
| [signature] | By: [signature] |
| | Date: November 2, 1998 |

6

| WITNESS | VETERANS LIFE INSURANCE COMPANY |
|---|---|
| *[signature]* | By: *[signature]* |
| | Date: November 2, 1998 |
| WITNESS | FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA |
| Dennis J. Roy *[signature]* | By: *[signature]* |
| | Date: 10/30/98 |

h:\legal\saf\firstnat.doc

7

## EXHIBIT C

## AGREEMENT OF ASSUMPTION

THIS AGREEMENT, made and entered into on this 30th day of October, 1998, by and among FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA (hereinafter referred to as "First National"), PEOPLES BENEFIT LIFE INSURANCE COMPANY (formerly known as Providian Life And Health Insurance Company) (hereinafter referred to as "Peoples") and VETERANS LIFE INSURANCE COMPANY (hereinafter referred to as "Veterans").

## RECITALS

WHEREAS, Peoples and Veterans wish to transfer to First National and First National wishes to assume certain "Insurance Business" as defined in the Master Agreement and identified in Exhibit A; and

WHEREAS, under the respective Articles of Incorporation, By-Laws and under applicable laws, Peoples and Veterans are authorized and empowered to transfer through assumption, and First National is authorized and empowered to assume through said arrangement the Insurance Business and all liabilities, obligations, and rights arising out of or relating to such insurance contracts; and

WHEREAS, it is the desire of the parties hereto that the terms and conditions pertaining to the assumption of the Insurance Business covered hereunder be set forth in writing.

## WITNESSETH

NOW, THEREFORE, for and in consideration of the mutual benefits to be received by the respective parties and the mutual agreements and undertakings herein set forth to be performed by the parties hereto, Peoples, Veterans and First National do hereby agree as follows:

Section 1.    Peoples and Veterans hereby transfer to First National, and First National hereby assumes as direct obligations, certain Insurance Business, copies of which are attached hereto (hereinafter referred to as the "Assumed Policies"), subject to the terms and conditions of this Agreement of Assumption (the "Agreement"). On the designated Assumption Date, as referenced below, First National shall be the successor to Peoples and Veterans thereunder, as if

named in place of Peoples and Veterans, including all rights, obligations, privileges, and prerogatives previously held by Peoples and Veterans.

The term "Assumption Date", as referenced herein, shall govern the effective date that the Insurance Business subject to this Agreement is assumed by First National and shall be no later than December 31, 1998, except as to any state where regulatory approval is required, in which case the Assumption Date shall be the first day of the month immediately following the month upon which such approval is received.

Section 2. First National, as an insurance carrier, assumes the liability under the Assumed Policies for all claims incurred on or after the designated Assumption Date. First National shall pay one hundred percent (100%) of all losses and attendant expenses of whatever type incurred by First National relating to any claim incurred under any such Assumed Policy arising on or after the designated Assumption Date. First National shall have the sole right and at its own expense, to the exclusion of Peoples and Veterans, to investigate, settle, compromise, defend against or otherwise deal with claims for which First National is liable by the terms of this Agreement.

Section 3. Each party agrees to indemnify, defend, and hold each other harmless from and against any loss, costs, liability or damages, including punitive or extra-contractual damages resulting from its negligence, action, act or omission in connection with the Assumed Policies.

In order for either party to invoke the provisions of this Section and seek indemnification, that party must: (a) promptly notify the other party of the potential loss, costs, liability or damage; (b) take any action necessary to preserve the rights of the other party; and (c) take no action which could prejudice the rights of the other party.

Section 4. The consideration for First National undertaking the Peoples and Veterans Insurance Business assumed under this Agreement is the cost incurred by First National in its participation in such assumption arrangement.

Section 5. First National, as the assuming insurance carrier, is entitled to 100% of all premiums due with respect to any Assumed Policy on or after the Assumption Date. If Peoples or Veterans receives premiums, it shall promptly remit such premiums to First National along with pertinent information. If any Insurance Business reverts to Peoples or Veterans, First National shall remit to Peoples or Veterans all premium collected prior to and subsequent to such reversion.

Section 6. First National, Peoples and Veterans agree to cooperate in obtaining all the consents and/or approvals of insurance regulatory authorities deemed necessary with respect to this Agreement.

After the designated Assumption Date, First National will issue to each insured an Assumption Endorsement which will be in the format as set forth in Attachment "1-A"

2

or Attachment "1-B" with respect to group coverages or as set forth in Attachment "2-A" or Attachment "2-B" with respect to individual coverages. First National warrants that the Assumption Endorsement will be issued within one hundred twenty (120) days after the designated Assumption Date. The format of the Assumption Endorsements, as set forth in Attachment "1-A" and "1-B" and Attachment "2-A" and "2-B", shall be modified when state regulations dictate that the consent or acknowledgment of the insured be obtained by the assuming insurance carrier.

Section 7. No amendment or modification of, or supplement to, this Agreement shall be binding unless in writing and duly executed and delivered by each of the parties hereto. This Agreement sets forth the full and complete understanding of the parties hereto. Nothing contained herein shall be construed as constituting a partnership or joint venture between the parties.

Section 8. Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered telexed or sent by facsimile transmission or sent by certified, registered or express mail. Any such notice shall be deemed given when so delivered as follows:

IF TO PEOPLES:

**PEOPLES BENEFIT LIFE INSURANCE COMPANY**
(formerly known as Providian Life and Health Insurance Company)
20 Moores Road
Frazer, Pennsylvania 19355

Attention:   Gilbert Fein, Assistant Vice President

With a copy to:   Stephanie A. Fox, Counsel

IF TO VETERANS:

**VETERANS LIFE INSURANCE COMPANY**
20 Moores Road
Frazer, Pennsylvania 19355

Attention:   Gilbert Fein, Assistant Vice President

With a copy to:   Stephanie A. Fox, Counsel

3

IF TO FIRST NATIONAL:

        FIRST NATIONAL LIFE INSURANCE
        COMPANY OF AMERICA
        377 Riverside Drive
        Suite 400
        Franklin, Tennessee 37064

    Attention:    Wade Willis, Assistant Secretary

**Section 9.** This Agreement shall be construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement of Assumption to be executed as of the day and year first-above written.

WITNESS:        PEOPLES BENEFIT LIFE
        INSURANCE COMPANY
        (formerly known as Providian Life and Health Insurance Company)

_[signature]_    By: _[signature]_

WITNESS:        VETERANS LIFE INSURANCE COMPANY

_[signature]_    By: _[signature]_

WITNESS:        FIRST NATIONAL LIFE INSURANCE
        COMPANY OF AMERICA

_[signature]_    By: _[signature]_

4

## ATTACHMENT "1-A"

## NOTICE OF ASSUMPTION AND ENDORSEMENT TO CERTIFICATE

You are hereby notified that First National Life Insurance Company of America has agreed, effective 12:01 a.m. Eastern Standard Time, to assume liability for your certificate of Insurance coverage you have with Peoples Benefit Life Insurance Company (formerly known as Providian Life and Health Insurance Company).

Notice of claims or inquiries, and all premium payments should be submitted to:

> FIRST NATIONAL LIFE INSURANCE
> COMPANY OF AMERICA
> 377 Riverside Drive
> Suite 400
> Franklin, Tennessee 37064
>
> ATTN: [ ? ]

This Notice and Endorsement, effective _____, 1998, forms a part of the above insurance and should be attached to your insurance certificate issued to you by Peoples Benefit Insurance Company.

IN WITNESS WHEREOF, Peoples Life and Health Insurance Company and the above assuming insurer have caused this Agreement to be duly signed.

| PEOPLES BENEFIT LIFE INSURANCE COMPANY (f/k/a Providian Life and Health Insurance Company) | FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA |
|---|---|
| By: _____ | By: _____ |
| Date: _____ | Date: _____ |

5

## ATTACHMENT "1-B"

## NOTICE OF ASSUMPTION AND ENDORSEMENT TO CERTIFICATE

    You are hereby notified that First National Life Insurance Company of America has agreed, effective 12:01 a.m. Eastern Standard Time, to assume liability for your certificate of Insurance coverage you have with Veterans Life Insurance Company.

    Notice of claims or inquiries, and all premium payments should be submitted to:

> **FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA**
> 377 Riverside Drive
> Suite 400
> Franklin, Tennessee 37064
>
> ATTN: [ ? ]

    This Notice and Endorsement, effective _____, 1998, forms a part of the above insurance and should be attached to your insurance certificate issued to you by Veterans Life Insurance Company.

    IN WITNESS WHEREOF, Veterans Life Insurance Company and the above assuming insurer have caused this Agreement to be duly signed.

| VETERANS LIFE INSURANCE COMPANY | FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA |
|---|---|
| By: _____ | By: _____ |
| Date: _____ | Date: _____ |

## ATTACHMENT "2-A"

## NOTICE OF ASSUMPTION AND ENDORSEMENT TO POLICY

You are hereby notified that First National Life Insurance Company of America has agreed, effective 12:01 a.m. Eastern Standard Time, to assume liability for your policy of Insurance coverage you have with Peoples Benefit Life Insurance Company (formerly known as Providian Life and Health Insurance Company).

Notice of claims or inquiries, and all premium payments should be submitted to:

FIRST NATIONAL LIFE INSURANCE
COMPANY OF AMERICA
377 Riverside Drive
Suite 400
Franklin, Tennessee 37064

ATTN: [ ? ]

This Notice and Endorsement, effective _____, 1998, forms a part of the above insurance and should be attached to your insurance policy issued to you by Peoples Benefit Life Insurance Company.

IN WITNESS WHEREOF, Peoples Benefit Life Insurance Company and the above assuming insurer have caused this Agreement to be duly signed.

| | |
|---|---|
| PEOPLES BENEFIT LIFE<br>INSURANCE COMPANY<br>(f/k/a Providian Life and Health<br>Insurance Company) | FIRST NATIONAL LIFE INSURANCE<br>COMPANY OF AMERICA |
| By: _____ | By: _____ |
| Date: _____ | Date: _____ |

7