### A.    People's Failure to File a Verified Claim Defeats its Right to Intervene in this Action.

Peoples never filed a verified claim in the subject forfeiture actions, nor did it ask the district court for an extension of time to file a verified claim, nor has it offered an explanation for its failure to do so. Peoples' unexplained and unexcused default in complying with the Supplemental Rule, standing alone, defeats its motions to intervene. United States v. Cambio Exacto, S.A., 166 F.3d 522, 529 (2d Cir. 1999). In a forfeiture context, the "timely filed motion" of which Rule 24(a)(2) speaks can only be a verified claim filed pursuant to Rule C(6) of the Supplemental Rules of Civil Procedure, as it is the only method prescribed for asserting a claim in a forfeiture action. Failure to file a verified claim within the ten day period operates to deny a potential claimant statutory standing to contest the forfeiture. See U.S. v. Premises Known as 281 Syosset Woodbury Road, Woodbury, New York, 791 F.Supp. 61, 63-64 (E.D.N.Y. 1992). On this basis, Peoples' motion to intervene should be denied.

### B.    Peoples Does Not Have a Significant Interest in the Defendant Properties.

"In order to intervene as of right, a movant must possess 'an interest relating to the property or transaction which is the subject of the action.' This interest must 'be direct, substantial, and legally protectable.'" New

York News, Inc., 972 F.2d at 486 (citations omitted). See also Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). Interests that are remote or contingent on certain events happening do not satisfy this requirement.   See Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990).

### 1.   *Only the Thunor Insurance Companies have a direct interest in the forfeited properties.*

Peoples' loss was directly and solely caused by FNLIC's insolvency. Peoples transferred funds to FNLIC under a written contract.  When FNLIC was adjudged insolvent, it was ordered to cease all insurance operations and, as such,  FNLIC could not fulfill its end of the bargains it had made – either to Peoples or all of its thousands of other creditors and policyholders. Thus, Peoples was unfortunately stuck with insurance obligations to its policyholders but without the reinsurance for which it had contracted with FNLIC.

Peoples stands in the same position as all the Thunor Insurance Companies' other disappointed creditors and policyholders.  Peoples is the *indirect* victim of the looting by Frankel and his associates.  As the Third Circuit has stated in explaining why a creditor who has suffered as a result of a fraud on an insurance company does not have standing to sue an alleged tortfeasor:

> If the injury ... is primarily to the corporation, and is an injury to the ... creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee.

University of Maryland at Baltimore v. Peat Marwick Main & Co., 923 F.2d 265, 273 (3d. Cir. 1991), quoting In re Western World Funding, Inc., 52 B.R. 743, 755 (Bankr. D. Nev. 1985). See also Manson v. Stacescu, 11 F.3d 1127 (2d Cir. 1993) (RICO claim brought by creditors of looted corporation dismissed for lack of standing to sue.); and Boedeker v. Rogers, No. 74929, 2000 WL 504115 (Ohio Ct. App. Apr. 27, 2000) (liquidator of insolvent insurer has sole authority to prosecute causes of action inuring to the benefit of the insurer's creditors). Peoples' interest is not sufficiently direct to support intervention.

In their brief, Peoples sheepishly suggests that the victimized companies were somehow complicit in Frankel's scheme. This assertion reveals Peoples' fundamental misapprehension of the facts of the case and its refusal to accept the plain meaning of "innocent owner" as that term is defined in Title 18 USC § 981, et seq. Peoples never had direct contact with Frankel at any time during the reinsurance transaction. Had regulators not stepped in when they did, it is sheer speculation whether or when, if ever, Peoples would have suffered any loss as a result of Frankel's acts. The harm

to FNLIC's and FALIC's creditors, including Peoples, is indirect and exists only to the extent these companies are now unable to pay their policyholders and creditors in full. The Thunor Insurance Companies stand alone as direct victims of Frankel's fraud.

Peoples does not have a legally protectable right to the subject property. To the extent that assets taken from FNLIC may be traced - whether from Peoples or from any other FNLIC source - those assets are part of the FNLIC receivership estate.[1] Peoples' repeated reference to its former "ownership" of the so-called Reserve Fund simply amounts to a refusal to recognize this fact.

> **2.     *Peoples cannot prove an interest based on a constructive trust.***

In support of its position that it remains the current owner, Peoples contends that FNLIC once held the Reserve Fund in constructive trust for its benefit pending regulatory approval. Appellants' Brief, p. 21.

---

[1] A general asset of the liquidation estate is defined as "all property, real, personal or otherwise, not specifically mortgage, pledged, deposited or otherwise encumbered for the security or benefit of specified persons or classes of persons." As to specifically encumbered property, 'general assets' includes all such property or its proceeds in excess of the amount necessary to discharge the sum or sums secured thereby. Tenn. Code. Ann. § 56-9-103(9).  See also  Miss. Code. Ann. § 83-24-7(i); Mo. Rev. Stat. § 375.1152(11); Ark. Code. Ann. § 23-68-102(9); and Okla. Stat. tit. 36, § 1901(9).

Under bankruptcy law, specifically as it relates to constructive trust claims, a creditor is not entitled to an express or constructive trust unless he can trace the actual funds he claims.[2] In re Carrozzella & Richardson, 247 B.R. 595, 601 (2d Cir. BAP Conn. 2000). Peoples' labeling of the cash as a "Reserve Fund" does not create any presumption that the funds are distinguishable, traceable or identifiable. In fact, Peoples itself speculates whether the required tracing is even possible at this point. See Appellants' Brief, p. 13. Such tracing, Peoples concedes, "will require, if even possible, the 'untangling of Frankel's numerous transactions.'" Appellants' Brief, p. 16.

In Carrozzella, a client had transferred funds to the debtor law firm to be held in an interest bearing account. No escrow or segregated accounts were maintained for the money that the clients gave the debtor. Id. The debtor paid its operating expenses from the account and also used the money to invest in various ventures. Id. The Bankruptcy Court allowed the client's

---

[2] Principles of bankruptcy law are often considered instructive in the context of insurance insolvency where analogous procedures and issues are concerned. Commercial National Bank in Shreveport v. Superior Court, et al., 14 Cal.App.4th 393, 17 Cal.Rptr.2d 884, 900 (1993); see also In re Advanced Cellular Systems, 235 B.R. 713, 717-18 (Bankr. D. Puerto Rico 1999) (bankruptcy proceedings and insurance company insolvency proceedings are considered fundamentally similar in that object of bankruptcy proceeding is to marshall debtor's assets into estate for distribution to creditors pursuant to prescribed priority scheme).

funds to be impressed with a constructive trust. The Bankruptcy Appellate Panel reversed the Bankruptcy Court's decision because the client could not trace the funds he had transferred to any particular asset in the debtor's estate.

As the court observed, without a tracing requirement, insolvent debtors, who have converted estate assets in the bankrupt's estate for their own use or purpose, would be able on the eve of bankruptcy to choose who would be repaid and who would not. Id. at 601. "Thus, similarly situated creditors would receive disparate treatment ... Such an outcome is antithetical to the bankruptcy process."Id. at 601-02, See also Time Warner v. M.D. Electronics, Inc., 101 F.3d 278, 282 (2d Cir. 1996)(imposition of a constructive trust would result in great prejudice to bankruptcy estate and other creditors). Carrozella also observed that where a debtor wrongfully disposes of property so that it cannot be found, "the claim is for the wrongful act, and is a claim upon the estate like that of any other creditor." Id. at 602 (citation omitted). This rule, the Court emphasized, "makes sense in a case such as this, in which the estate is insolvent and a [debtor] has commingled trust assets with its own. In such a case, it is simply unfair for a court to impose a trust for the benefit of one creditor over others." Id.

The same policy objective exists under the bankruptcy and insurance insolvency laws – to treat similarly situated creditors similarly. Even where tracing is possible, the courts have refused to impose a constructive trust on forfeited assets where to do so would give one policyholder or creditor an advantage over other similarly situated claimants in an insurer's estate. For example, in a case involving the assets of another insolvent insurance company, U.S. v. BCCI Holdings, Luxembourg, S.A., 69 F.Supp.2d 36 (D.D.C. 1999), the court refused to impress forfeited assets with a constructive trust. Noting that a constructive trust is an equitable remedy, the court concluded that even if all of the other elements of a constructive trust were satisfied, a constructive trust should not be imposed "if to do so would disrupt liquidation proceedings designed to distribute forfeited property equitably, and to provide an advantage to some victims at the expense of others." Id. at 61. Peoples' request to intervene in the forfeiture proceedings is a transparent attempt to obtain an advantage in the payment of its claims that it would not otherwise be entitled to under the insurance insolvency statutes.

Peoples has no more ability to trace the fungible cash it transferred than any other of FNLIC's general creditors. Further, Peoples has made no

showing that it could ever trace any of the assets subject to forfeiture back to this so-called "Reserve Fund."

Even if Peoples could trace specific forfeited assets to the Reserve Fund and such assets were impressed with a constructive trust, they are properly included as a general asset of the Thunor Insurance Companies insolvency estates pursuant to the applicable liquidation statutes. Under each of the statutes, "general assets" are broadly defined. See fn. 1. Thus, no matter how Peoples chooses to describe the underlying transactions or its interest, the so-called Reserve Fund and any assets traceable to it are general assets of the Thunor Insurance Companies' liquidation estates. Impressing the $14.7 million with a constructive trust would disrupt the liquidation proceedings which are intended to protect the Thunor Insurance Companies' policyholders and creditors — not just those, like Peoples, who have the sophistication and resources to pursue tort damages outside the Liquidation Courts.

In short, Peoples does not have a direct interest in the so-called Reserve Fund under a constructive trust theory, because it cannot trace its $14.7 million dollars in the estate or to the forfeited properties. Even if it could trace that money, it is not entitled to a constructive trust because as a

matter of equity, courts will not assist one creditor's greedy attempt to gain an advantage over similarly situated creditors.

### 3. *Peoples is similarly situated with every other general creditor of the Insurance Companies.*

Peoples' status as a creditor[3] does not confer any elevated priority in these forfeiture proceedings or in the State Court insolvency proceedings. "The federal courts have consistently held that general, unsecured creditors do not have standing to contest the civil forfeiture of specific pieces of property seized from a debtor." U.S. v. $319,603.42 In United States Currency, 829 F.Supp. 1223, 1225 (D. Or. 1992). See also U.S. v. Ribadeneira, 105 F.3d 833, 835 (2d Cir. 1997); and U.S. v. $20,193.39 U.S. Currency, 16 F.3d 344, 346 (9th Cir. 1994).

Particularly, in U.S. v. United States Currency and Coin: $558,110.00, 626 F.Supp. 517 (S.D. Ohio 1985), the Court held that the general equitable lien of a creditor is not sufficient to challenge a forfeiture action. The Court stated:

> [T]he rights of judgment creditors are set forth [by statute]. Under Ohio law, a judgment creditor has the right to enforce his judgment through the attachment and sale of both the real and personal property of the judgment debtor. The judgment creditor is entitled to conduct various proceedings in aid of execution (debtor's examination, attachment, garnishment, et

---

[3] Peoples has not obtained judgments in any court against either FNLIC or FALIC and, as such, does not stand as a judgment creditor.

cetera) and to challenge any conveyance made by the judgment debtor of the property which is subject to the certificate of judgment filed with the County's Recorder's Office.

In short, under Ohio law, judgment creditors have many rights regarding a judgment debtor's property. Nonetheless, the Court does not consider the combination of all of these rights to be sufficient to give standing to these Intervenors. They have neither ownership nor a possessory interest in the currency. They have no more than a right to take advantage of certain state procedures in order to execute against any part or all of Claimant Stepp's property. In this Court's opinion, a person must have a specific interest in the actual property seized, such as a mortgage or recorded security agreement, in order to have standing to challenge the forfeiture. The general equitable lien of the judgment creditor is not such an interest.

Id. at 521. See also U.S. v. Premises Known as 2171-73 Bennett Road, Philadelphia, Pennsylvania, 1991 WL 236893 *1 (Oct. 21, 1991)("The rights of a judgment creditor do not provide standing to challenge the forfeiture action ... A judgment creditor has only a right to take advantage of certain state procedures to execute, but those rights do not grant the petitioner a specific right in the property."). Peoples' status as a creditor provides no support for its proposed intervention.

Peoples has no specific interest in the property subject to the forfeiture proceedings. Peoples is in the same situation as all the Thunor Insurance Companies' disappointed creditors and policyholders who must look to the Thunor Insurance Companies – the direct victims of Frankel's conduct. As noted above, in explaining why a creditor who has suffered as a result of

fraud on an insurance company does not have standing directly to sue an alleged tortfeasor, the Third Circuit stated:

> If the injury ... is primarily to the corporation, and is an injury to the ... creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee.

University of Maryland at Baltimore v. Peat Marwick Main & Co., 923 F.2d at 273.

In the present action, Peoples seeks to assert a claim against the assets that are subject of the forfeiture action for the same amount Peoples transferred to the Insurance Company -- $14,689,593.00. The assets that are the subject of this forfeiture action were purchased with funds traceable from the coffers of the Thunor Insurance Companies. The $14.7 million is just a portion of the hundreds of millions Frankel stole *directly* from the Thunor Insurance Companies.

There is nothing unique about Peoples' alleged interest in the property or transaction that is the subject of the forfeiture proceeding. Peoples is similarly situated with every other general creditor of the Thunor Insurance Companies. As a general creditor, Peoples' interest is a part of the collective interest of FALIC and FNLIC and is subsumed in every recovery action to which FALIC and FNLIC are parties. Like every other general creditor of

the Thunor Insurance Companies, Peoples was never a direct victim of Frankel's, merely because it contracted with one or more of the Thunor Companies. Any claim against assets Frankel stole from the Thunor Insurance Companies belongs exclusively to the Thunor Insurance Companies, to be pursued by their respective Receivers. Peoples has no protectable interest in the property that is sufficient to confer standing to intervene in this action. The district court, therefore, properly denied Peoples' Motion to Intervene.

### C.    *The Disposition of this Action Will Not Impair or Impede Peoples' Ability to Protect Any Interest it May Have in the Subject Property.*

The Receivers of the Thunor Insurance Companies' estates are charged with marshalling the assets of the Thunor Insurance Companies for ultimate distribution to policyholders and creditors, pursuant to the established statutory framework governing the priority of claims. See Ark. Code Ann. §§ 23-68-101, et seq.; Miss. Code Ann. §§ 83-24-1, et seq.; Mo. Rev. Stat. §§ 375.1150, et seq.; Okla. Stat. tit. 36, §§ 1901, et seq.; Tenn. Code Ann. §§ 56-9-307(a), 310(a)(8), 310(a)(11). Creditors of the Thunor Insurance Companies have a right to assert a claim against an estate, and therefore to be eligible to receive a distribution from the estate. This right is

exercised by filing a Proof of Claim with the appropriate receivership court. Id.

Peoples is not ignorant of this procedure; it filed claims in both the Mississippi and the Tennessee receivership proceedings. Should Peoples' claims be denied, judicial review is available. By filing claims in the Mississippi and Tennessee receiverships, Peoples voluntarily submitted itself and the adjudication of its claim to the jurisdiction of these two receivership courts. See State of Arizona, ex rel. Low v. Imperial Ins. Co., 140 Ariz. 426, 432, 682 P.2d 431, 437 (1984).

Peoples should not be allowed to intervene in this forfeiture proceeding for the purpose of circumventing the priority statutes enacted by each of those states. Allowing creditors to "leapfrog ahead of all other claimants" by means of a separate federal action would cause the administrative structure of the state receivership proceedings to "swiftly crumble." Clark v. FitzGibbons, 105 F.3d 1049, 1051 (5th Cir. 1997). Peoples is no more entitled to sidestep the statutory receivership schemes of the states than is any other creditor who suffered loss as a result of the Thunor Companies' insolvency. Neither the size of Peoples' loss nor its dissatisfaction with the level of its priority as a creditor is relevant to the inquiry.

State legislatures have enacted laws to ensure that claims against insolvent insurers are paid according to a specific priority scheme. Peoples' claim will not be paid until the Receivers collect sufficient assets to satisfy other higher priority claims. That fact does not affect Peoples' right and ability to protect its *interest* in any assets the estates may recover, it affects only the amount of Peoples' potential *recovery* from those funds.

Through state insolvency laws, state legislatures have sought to avoid exactly the type of action Peoples now takes. Under these insolvency statutes, no shareholder, policyholder or other creditor is permitted to circumvent the priority classifications through the use of equitable remedies. See generally Mo. Rev. Stat. § 375.1218; see also Ark. Code Ann. §§ 23-68-129, 23-68-126(a)(2)-(3); Miss. Code Ann. §§ 83-24-83, 83-24-47(1); Okla. Stat. tit. 36, § 1927.1(A); Tenn. Code Ann. §§ 56-9-332, 56-9-330.

By seeking intervention, Peoples is simply attempting to grab funds to which it is not otherwise entitled under state insolvency statute. But Peoples' request to intervene must be weighed against the applicable state liquidation statutes' fundamental policy of ratable distribution among all creditors. As a general creditor of the liquidation estates, Peoples is in a creditor class under each respective statute that is lower in priority than policyholders. These statutory provisions establish a rule of absolute

priority: no succeeding class of claimants may share in the distribution of assets until the allowed claims of all senior interests have been satisfied in full. See In re Liquidation of Security Casualty Co, 127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 434, 444 (1989) (applying comparable insurance insolvency statute). Peoples is not entitled under the law to "reclassify" the statutory priority of its claim. That is a function reserved for liquidation courts.

The United States Supreme Court has expressed its disapproval of creditors' attempts to circumvent a priority statute, noting:

> [T]he insolvency of the victim directly injured adds a further concern to those already expressed, since a suit by an indirectly injured victim could be an attempt to circumvent the relative priority its claim would have in the directly injured victim's liquidation proceedings.

Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 274, 112 S. Ct. 1311, 1320-1321 (1992).

Any litigation involving the amount or the priority of Peoples' claim must occur in the receivership proceedings. Munich American Reins. Co., supra; Davister Corp., supra. To allow Peoples to intervene in this action would enable this creditor (and open the door for other creditors) to undermine state receivership laws and, potentially, deprive other creditors of the receivership estate of their right to recover under the priority statutes.

Additionally, the consequences of allowing Peoples to intervene here could give rise to multiple claims from other creditors, not only in this action, but also in other actions throughout the country, likely with inconsistent and conflicting results.  Finally, allowing Peoples to intervene in this action would result in the unnecessary expenditure of limited funds that could be used instead to satisfy outstanding claims.  Such results would deny policyholders and other creditors the recovery to which they are entitled under the state insolvency laws.  As the Seventh Circuit has written in an analogous context, "in effect, [plaintiff] is attempting to jump ahead of [the insurer's] other creditors by filing a lawsuit outside the state rehabilitation proceedings."  Hartford Cas. Ins. Co. v. Borg-Warner Corp., 913 F.2d 419, 426 (7th Cir. 1990).

The Receivers recognize Peoples' concerns, as they do the concerns of the thousands of policyholders and creditors affected in this matter.  Nevertheless, Peoples is in the business of insurance.  It transferred funds to FNLIC knowing full well that in making such transfers it became a creditor of FNLIC.  Peoples also knew that the transaction was subject to the insurance laws -- including insolvency statutes -- of the states in which it transacted its business.

Peoples should be required to follow the same claims procedure as the Thunor Insurance Companies' policyholders and other creditors, and to share in the insolvency estates' assets in accordance with state law. Peoples is trying to get more than its statutory share of the assets seized by the United States. Peoples should not be permitted to use this forfeiture proceeding to undermine the Receivers' state insurance insolvency laws.

Peoples' ability to protect any interest it may have is protected through the receivership proceedings in which it has filed a claim. As the district court held, there is thus no basis under Rule 24(a) for Peoples to intervene in this action.

**D.   *Peoples' Interest Is Adequately Represented by the FNLIC and FALIC Receivers Whose Duties Are to Recover All Assets Belonging to Their Receivership Estates***

The FNLIC and FALIC Receivers are bound by the laws of their states and by their Orders of Liquidation or Receivership, to represent the policyholders and creditors of their insolvent insurers, and to act in their best interests. See FALIC's Consent Final Order of Liquidation, Finding of Insolvency, and Permanent Injunction, entered on October 25, 1999, by the Chancery Court of Davidson County, Tennessee; FNLIC Final Order of Liquidation and Finding of Insolvency, entered on June 29, 1999, by the Chancery Court of Hinds County, Mississippi. These Receivers are

empowered to take the necessary action to recover and to preserve the property of their insolvent estates for ultimate distribution to their policyholders and creditors. Id.  Receivership court supervision ensures that distributions to the policyholders and creditors are maximized. See Miss. Code Ann. § 83-24-35, et seq.; Tenn. Code Ann. § 56-9-101(d)(3)-(4). The court-appointed Receivers for FNLIC and FALIC are the only parties with standing to pursue recovery of that property, for the benefit of all their policyholders and creditors. See Miss. Code Ann. § 83-24-41(1)(o); Mo. Rev. Stat. § (1)(13).  Similarly, the court-appointed receivers of the other states in which Thunor Insurance Companies were located are entitled to pursue recovery of these assets for their estates, for the benefit of their policyholders and creditors. See Tenn. Code Ann. § 56-9-310(a)(15); Ark. Code Ann. § 23-68-113; and Okla. Stat. tit. 36, § 1911.

It is significant to the issue of standing that Peoples voluntarily transferred the Reserve Fund to FNLIC.  Specifically, in liquidation proceedings involving the marshalling and distribution of forfeited assets, courts have held that a person who voluntarily transfers his interest to a defendant becomes an unsecured creditor who lacks standing to contest a forfeiture in the ancillary proceeding. See U.S. v. BCCI Holdings, Luxembourg, S.A., 69 F.Supp.2d at 61.

The Tennessee and Mississippi Receivers are not competing with Peoples and the other claimants of their estates for these assets, but rather, are representing the interests of all their policyholders, creditors and claimants, including Peoples, in attempting to collect assets and to obtain a maximum recovery on behalf of every policyholder and creditor. Merely because the Receivers represent interests in addition to those of Peoples, does not mean that they are not adequately representing Peoples' interests in this action. Indeed, that is their only purpose in pursuing actions such as this. All creditors share the same interest in recovering assets for the receivership estates, and these Receivers are zealously representing all creditors. If that were not the case, no Receiver could ever fulfill his/her fiduciary obligation to fairly represent the interests of all of the estate's policyholders and creditors in any action to recover assets.

As Peoples has failed to comply with each and every requirement for intervention under Rule 24, and as the district court clearly recognized their failure to do so, this Court should affirm the district court's decision.

## II.    The District Court Properly Exercised its Discretion to Deny Peoples' Motion for Permissive Intervention.

This Court must review the district court's decision denying permissive intervention under an abuse of discretion standard. See In re Holocaust Victim Assets Litigation, 223 F.3d at 197. The district court's

discretion is very broad, and the appellate courts have given great deference to the district courts in this area.  Id.  See also U.S. v. City of New York, 198 F.3d 360, 367 (2d Cir. 1999).  "In fact a denial of permissive intervention has virtually never been reversed."  Catanzano by Catanzano, 103 F.3d at 233.

In order to be entitled to permissive intervention under Federal Rule of Civil Procedure 24(b)(2), three requirements must be met:  "(1) timely application; (2) a question of law or fact exists in common between the applicant's claim or defense and the main action; and (3) the intervention must not unduly delay or prejudice the adjudication of the rights of the original parties."  Mrs. W. v. Tirozzi, 124 F.R.D. 42, 44 (D. Conn. 1989).  See also In re Holocaust Victim Assets Litigation, 225 F.3d at 202.[4]  However, even when all the conditions under Federal Rule of Civil Procedure 24(b)(2) are met, the district court has the discretion to deny a motion for permissive intervention. See Continental Casualty Co. v. ZHA, Inc., 154 F.R.D. 281, 282 (M.D. Fla. 1994).

---

[4] Other factors that have been considered include "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication or the legal questions presented.'" H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc., 797 F.2d 85, 89 (2d Cir. 1986).

KC-856934-1

Peoples' allegations relate to two of the seven Thunor insurers - FNLIC and FALIC - in whose receivership proceedings Peoples has also made claims. Allowing Peoples to assert claims in this forum directly against the defendant properties violates the statutory claims procedures set forth in insolvency statutes of Mississippi and Tennessee. Peoples' relief, here, if any, would at best be an adjudication of some interest in the forfeited assets, the result of which would be to allow it to leapfrog over other creditors in the receivership estate. Because these states' statutory procedures are designed to administer all claims against the receivership estates as fairly and efficiently as possible, allowing Peoples to circumvent these procedures (or to "double dip" by both asserting a claim here and in those proceedings) significantly increases the cost of administration and recovery of assets, to the ultimate detriment of thousands of policyholders and other creditors. Further, allowing Peoples to deplete the funds available for claims payment, without any consideration of amounts owed to policyholders or the multitude of other creditors, is manifestly unfair to those claimants, represented by the Receivers, whose claims will be paid in accordance with each state's priority statute.

In addition, Peoples' Motion to Intervene is contrary to public policy as expressed in the states' insolvency statutes. These state laws dictate that

the states should be entitled to promulgate the rules and procedures for administering the business of insurance, including insurance insolvency procedures. Peoples' attempt to use this forum as a mechanism to avoid the established statutory procedures for asserting claims against the Insurance Companies is improper.

The state insurance insolvency statutes do not provide exceptions to the creditor priority classifications merely because a large sum is involved. This Court should not allow Peoples to do violence to well-established state laws, or to the McCarran Ferguson Act, that allows the states to regulate insurance receiverships, including claims by third parties to assets that the Receivers are charged with collecting and distributing to policyholders and creditors.

## III. Peoples' Intervention in this Case Would Violate the McCarran-Ferguson Act

Even if Peoples could satisfy all of the requirements for intervention under Rule 24, intervention would undermine the policy of the McCarran-Ferguson Act that the states regulate the business of insurance. The McCarran-Ferguson Act is a reverse preemption statute as well as a clear statement rule. See S.E.C. v. Waltzer and Associates, 122 F.3d 1057 (2d Cir. 1997). The Act "'preserves state statutes, enacted 'for the purpose of regulating the business of insurance,' from preemption and leaves the

regulation of the business of insurance to the states.'" Stephens v. American Intern. Ins. Co., 66 F.3d 41, 43 (2d Cir. 1995). Where a state statute that specifically regulates the business of insurance is "frustrated" or "disturbed" by a federal statute that does *not* relate to the business of insurance, then the state statute preempts the federal statute. Humana v. Forsyth, 525 U.S. 299 (1999).

In the instant case, the applicable state statutes specifically regulate the liquidation of insurance companies. The provisions of these statutes give the Receivers the exclusive right to bring actions for the benefit of the Thunor Insurance Companies and for the ultimate benefit of the estates' policyholders and creditors. See e.g. Ark. Code Ann. § 23-68-113(2); Miss. Code Ann. § 83-24-41(1)(o), (u); Mo. Rev. Stat. § 375.1176; Okla. Stat. tit. 36, §§ 1902, 1911, 1914; and Tenn. Code Ann. §§ 56-9-310(a)(15), (21). Reinsurance practices, such as the transactions between Peoples and the Insurance Companies, are part of the business of insurance. Id. at 44. As this Court observed in Stephens, "reinsurance is not merely 'an integral part of the policy relationship between the insurer and insured, it is the policy relationship between the two parties.'" Id. Allowing Rule 24 intervention in these federal court proceedings would be an unprecedented interpretation of the reverse preemption rule under McCarran-Ferguson.

This Court recognized in Stephens that "'it is crucial to the relationship between [an] insurance company and [a] policyholder' that both parties know that in the case of insolvency, the insurance company will be liquidated in an organized fashion.'" 66 F.3d at 45. This is the protection the applicable state liquidation statutes provide to policyholders and creditors of the insolvent Insurance Companies. Id. To allow Peoples to have its claim resolved in a forum other than the state receivership court conflicts with the state liquidation statutes. See Munich American Reinsurance Co. v. Crawford, 141 F.3d 585, 595 (5thCir. 1998) (reinsurers' action seeking arbitration was enjoined by applicable state insurance company liquidation statute).

Peoples' motion to intervene under Rule 24 is an attempt to circumvent the uniform procedures established under the state liquidation statutes for making claims against insolvent insurers. If Peoples is allowed to intervene in this proceeding, the district court will need to determine the validity of Peoples' claim, and its priority relative to all of the Thunor Insurance Companies' policyholders and other creditors. This invites the application of different standards and could yield conflicting results, all at unnecessary expense to the Thunor Insurance Companies' liquidation estates. Such a result is also likely to encourage other creditors to pursue

their claims outside the state liquidation courts. Allowing intervention under Rule 24 by Peoples would directly conflict with state regulation, and application of Rule 24 would both frustrate state policy and interfere with the state's administrative regime. Humana, 525 U.S. at 717. This is precisely what Congress intended to eliminate through the McCarran Ferguson Act that evinces a strong federal policy in favor of deferring to state regulation of insolvent insurance companies.

Rule 24 is merely a general rule of federal civil procedure, and has nothing to do with the business of insurance. State laws enacted for the purpose of regulating the business of insurance prevail over general federal rules, like Rule 24, which do not specifically relate to the business of insurance and which conflict with such state laws. Lovilia Coal Co. v. Williams, 143 F.3d 317, 324 (7th Cir. 1998).

Thus, regardless of whether Peoples can meet all of the qualifications for intervention, Rule 24 is reverse preempted under the McCarran-Ferguson Act.

## CONCLUSION

For the above stated reasons, Appellees respectfully ask that this Court affirm the ruling of the district court denying Appellants' motion to intervene.

Dated:    New Haven, Connecticut
             April 19, 2001

                          NEUBERT, PEPE & MONTEITH, PC


                          By: _____
                              Douglas S. Skalka

                          Attorneys for Appellees
                          195 Chuch Street, 13th Floor
                          New Haven, Connecticut  06510-2026
                          (203) 821-2000]
                          (203) 821-2009

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(c) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing brief is printed in Times New Roman 14 point font and contains 8,040 words.

_____

Douglas S. Skalka