# EXHIBIT 7

Rehabilitation and Liquidation Model Act

I.     All rights of counterparties under this Act shall apply to netting agreements and qualified financial contracts entered into on behalf of the general account or separate accounts if the assets of each separate account are available only to counterparties to netting agreements and qualified financial contracts entered into on behalf of that separate account.

## Section 47.     Priority of Distribution

The priority of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is set forth in this section. Every claim in each class shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment. Once such funds are retained by the liquidator and approved by the Court, the insurer's estate shall have no further liability to members of that class except to the extent of the retained funds and any other undistributed funds. No subclasses shall be established within any class except as provided in Section 24A(12). No claim by a shareholder, policyholder or other creditor shall be permitted to circumvent the priority classes through the use of equitable remedies. The order of distribution of claims shall be:

A.     Class 1. The costs and expenses of administration expressly approved by the receiver, including but not limited to the following:

(1)     The actual and necessary costs of preserving or recovering the assets of the insurer;

(2)     Compensation for all authorized services rendered in the conservation, rehabilitation or liquidation;

(3)     Any necessary filing fees;

(4)     The fees and mileage payable to witnesses; and

(5)     Authorized reasonable attorney's fees and other professional services rendered in the conservation, rehabilitation or liquidation.

B.     Class 2. The administrative expenses of guaranty associations. For purposes of this section these expenses shall be the reasonable expenses incurred by guaranty associations where the expenses are not payments or expenses which are required to be incurred as direct policy benefits in fulfillment of the terms of the insurance contract or policy, and that are of the type and nature that, but for the activities of the guaranty association otherwise would have been incurred by the receiver, including but not limited to evaluations of policy coverage, activities involved in the adjustment and settlement of claims under policies, including those of in-house or outside adjusters, and the reasonable expenses incurred in connection with the arrangements for ongoing coverage through transfer to other insurers, policy exchanges or maintaining policies in force. The receiver may in his or her sole discretion approve as an administrative expense under this section any other reasonable expenses of the guaranty association if the receiver finds:

(1)     The expenses are not expenses required to be paid or incurred as direct policy benefits by the terms of the policy, and

(2)   The expenses were incurred in furtherance of activities that provided a material economic benefit to the estate as a whole, irrespective of whether the activities resulted in additional benefits to covered claimants. The court shall approve such expenses unless it finds the receiver abused his or her discretion in approving the expenses.

If the receiver determines that the assets of the estate will be sufficient to pay all Class 1 claims in full, Class 2 claims shall be paid currently, provided that the liquidator shall secure from each of the associations receiving disbursements pursuant to this section an agreement to return to the liquidator such disbursements, together with investment income actually earned on such disbursements, as may be required to pay Class 1 claims. No bond shall be required of any such association.

C.   Class 3. All claims under policies including claims of the federal or any state or local government for losses incurred, ("loss claims") including third party claims, claims for unearned premiums, and all claims of a guaranty association, for payment of covered claims or covered obligations of the insurer. All claims of a guaranty association for reasonable expenses other than those included in Class 2. All claims under life and health insurance and annuity policies, whether for death proceeds, health benefits, annuity proceeds, or investment values shall be treated as loss claims. That portion of any loss, indemnification for which is provided by other benefits or advantages recovered by the claimant, shall not be included in this class, other than benefits or advantages recovered or recoverable in discharge of familial obligation of support or by way of succession at death or as proceeds of life insurance, or as gratuities. No payment by an employer to his employee shall be treated as a gratuity.

Notwithstanding the foregoing, the following claims shall be excluded from Class 3 priority:

(1)   Obligations of the insolvent insurer arising out of reinsurance contracts;

(2)   Obligations incurred after the expiration date of the insurance policy or after the policy has been replaced by the insured or canceled at the insured's request or after the policy has been canceled as provided in this Act;

(3)   Obligations to insurers, insurance pools or underwriting associations and their claims for contribution, indemnity or subrogation, equitable or otherwise;

(4)   Any claim which is in excess of any applicable limits provided in the insurance policy issued by the insolvent insurer;

(5)   Any amount accrued as punitive or exemplary damages unless expressly covered under the terms of the policy; and

**Drafting Note:** In some jurisdictions the courts have held that coverage for punitive or exemplary damages may not be excluded from liability policies.

(6)   Tort claims of any kind against the insurer, and claims against the insurer for bad faith or wrongful settlement practices.

© 1998 National Association of Insurance Commissioners

Rehabilitation and Liquidation Model Act

D.    Class 4.  Claims of the federal government other than those claims included in Class 3.

E.    Class 5.  Debts due employees for services, benefits, contractual or otherwise due arising out of such reasonable compensation to employees for services performed to the extent that they do not exceed two (2) months of monetary compensation and represent payment for services performed within six (6) months before the filing of the petition for liquidation or, if rehabilitation preceded liquidation, within one year before the filing of the petition for rehabilitation. Principal officers and directors shall not be entitled to the benefit of this priority except as otherwise approved by the liquidator and the court.  This priority shall be in lieu of any other similar priority which may be authorized by law as to wages or compensation of employees.

F.    Class 6.  Claims of any person, including claims of state or local governments, except those specifically classified elsewhere in this section. Claims of attorneys for fees and expenses owed them by a person for services rendered in opposing a formal delinquency proceeding. In order to prove the claim, the claimant must show that the insurer which is the subject of the delinquency proceeding incurred such fees and expenses based on its best knowledge, information and belief, formed after reasonable inquiry indicating opposition was in the best interests of the person, was well grounded in fact and was warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that opposition was not pursued for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation.

**Drafting Note**: The provision in former Class 6 for late filed claims, is no longer necessary due to the amendments to Section 39 which make appropriate provisions for such claims.

G.    Class 7.  Claims of any state or local government for a penalty or forfeiture, but only to the extent of the pecuniary loss sustained from the act, transaction or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby. The remainder of such claims shall be postponed to the class of claims under Subsection H.

H.    Class 8.  Surplus or contribution notes or similar obligations, premium refunds on assessable policies, interest on claims of Classes 1 through 7 and any other claims specifically subordinated to this class.

I.    Class 9.  Claims of shareholders or other owners arising out of their capacity as shareholders or other owners, or any other capacity except as they may be qualified in Class 3 or 6 above.

If any claimant of this state, another state or foreign country shall be entitled to or shall receive a dividend upon his or her claim out of a statutory deposit or the proceeds of any bond or other asset located in another state or foreign country, unless such deposit or proceeds shall have been delivered to the domiciliary liquidator pursuant to Section 57, then the claimants shall not be entitled to any further dividend from the receiver until and unless all other claimants of the same class, irrespective of residence or place of the acts or contracts upon which their claims are based, shall have received an equal dividend upon their claims, and after such equalization, such claimants shall be entitled to share in the distribution of further dividends by the receiver, along with and like all other creditors of the same class, wheresoever residing.

Model Regulation Service—January 1998

Upon the declaration of a dividend, the receiver shall apply the amount of the dividend against any indebtedness owed to the insurer by the person entitled to the dividend. There shall be no claim allowed for any deductible charged by a guaranty association or entity performing a similar function.

## Section 48.    Liquidator's Recommendations to the Court

A.    The liquidator shall review all claims duly filed in the liquidation and shall make such further investigation as deemed necessary. The liquidator may compound, compromise or in any other manner negotiate the amount for which claims will be recommended to the court except where the liquidator is required by law to accept claims as settled by any person or organization, including any guaranty association. Unresolved disputes shall be determined under Section 43. As soon as practicable, the liquidator shall present to the court a report of the claims against the insurer with his or her recommendations. The report shall include the name and address of each claimant and the amount of the claim finally recommended, if any. If the insurer has issued annuities or life insurance policies, the liquidator shall report the persons to whom, according to the records of the insurer, amounts are owed as cash surrender values or other investment value and the amounts owed.

B.    The court may approve, disapprove or modify the report on claims by the liquidator. Reports not modified by the court within a period of sixty (60) days following submission by the liquidator shall be treated by the liquidator as allowed claims, subject to later modification or to rulings made by the court pursuant to Section 43. No claim under a policy of insurance shall be allowed for an amount in excess of the applicable policy limits.

C.    After giving due consideration to the nature of the policies that were sold by the insurer, and the number of claims by policyholders for protection under their policies, and having considered actuarial estimates that substantial amounts of incurred-but-not-reported losses exist, the liquidator may, but need not, formulate a proposal, subject to approval of the court to allow such claims. The proposal may allocate or attribute all or a portion of the incurred-but-not-reported losses to individual policyholder claimants on a basis of reasonable expert opinion. The court shall approve the proposal and the allowance of the claims unless it finds that the basis of allocation is arbitrary or capricious.

D.    The liquidator is not required to process claims for any class until it appears reasonably likely that assets will be available for a distribution to that class. If there are insufficient assets to justify processing all claims for any class listed in Section 47, the liquidator shall report the facts to the court and make such recommendations as may be appropriate for handling the remainder of the claims.

## Section 49.    Distribution of Assets

Under the direction of the court, the liquidator shall pay distributions in a manner that will assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims, including third party claims. Distribution of assets in kind may be made at valuations set by agreement between the liquidator and the creditor and approved by the court.

© 1998 National Association of Insurance Commissioners

# EXHIBIT 8

IN THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT
HINDS COUNTY, MISSISSIPPI



FILED

JUL 22 1999

ALICE JAMES, Chancery Clerk
By_____D.C.

GEORGE DALE, COMMISSIONER
OF INSURANCE OF THE STATE OF
MISSISSIPPI                                                    PETITIONER

VS.                                                    CIVIL ACTION NO. G99-908

FIRST NATIONAL LIFE INSURANCE
COMPANY OF AMERICA, A MISSISSIPPI DOMICILED
INSURANCE COMPANY                                      RESPONDENT

PETITION FOR ORDER APPROVING COMPROMISE AND
SETTLEMENT OF POTENTIAL INTERSTATE CLAIMS

COME NOW, George Dale, Commissioner of Insurance for the State of Mississippi (the

"Commissioner"), as Liquidator (the "Liquidator") and Betty Cordial as Deputy Liquidator (the

"Deputy Liquidator") of First National Life Insurance Company of America ("FNL"), and file this

Petition for Order Approving Compromise and Settlement of Potential Interstate Claims and in

support hereof respectfully assert as follows:

1.

On June 29, 1999, this Court entered an Order of Liquidation for FNL, and among other

things appointed the Commissioner as Liquidator of FNL and appointed Betty Cordial as Deputy

Liquidator of FNL, to have and exercise the powers and responsibilities of a liquidator and deputy

liquidator, respectively, pursuant to Miss. Code Ann. §83-24-1 et seq. and other applicable laws.

2.

Among other things, the Order gives the Liquidator and Deputy Liquidator "possession

and control" of and vests them "with title to all tangible and intangible rights, property, and assets

of the Company," including any "rights of action." Order at p.6, ¶H. The Order also grants the Liquidator and Deputy Liquidator "[a]ll powers and duties enumerated in <u>Miss. Code Ann.</u> §83-24-41." Order at p.11, ¶EE. This statutory provision, in part, gives a liquidator the power "to collect all debts and monies due and claims belonging to the insurer, wherever located" and the power "to do such other acts as are necessary or expedient to collect, conserve or protect its assets or property, including the power to sell, compound, compromise or assign debts for the purposes of collection upon such terms and conditions as he deems best." <u>Miss. Code Ann.</u> §83-24-41(1)(h)(i). This statute also gives a liquidator the power "[t]o continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings in this state or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further." <u>Miss. Code Ann.</u> §83-24-41(1)(n).

3.

With regard to the present matter, there are three related Mississippi domestic insurance companies that are currently in liquidation. These companies are First National Life Insurance Company of America ("FNL"), Franklin Protective Life Insurance Company ("FPL"), and Family Guaranty Life Insurance Company ("FGL"). These Mississippi companies were under the ultimate control of the Thunor Trust (the "Trust"). The Trust was run by John A. Hackney, who was the sole trustee of the trust and who at most times relevant herein resided in Franklin, Tennessee. The Trust also had ultimate control of several insurance companies domesticated in other states that are relevant to the present matter: International Financial Services Life Insurance of America ("IFS"), a Missouri company; Farmers and Ranchers Life Insurance Company ("FRL"), an Oklahoma company; Old Southwest Life Insurance ("OSL"), an Arkansas company;

and Franklin American Life Insurance Company ("FAL"), a Tennessee company. All of these aforementioned companies are currently under receivership proceedings through their respective state regulators. Assets of each of these companies were supposedly deposited with and invested by Liberty National Securities, Inc. ("LNS").

4.

In April of 1999, at the insistence of the Tennessee Department of Commerce and Insurance, FAL had approximately $57,419,193.31 transferred from FAL's account with LNS to an FAL-controlled account with Prudential Securities, Inc. These funds are now in an account controlled by FAL and the State of Tennessee receiver.

5.

The receivers and insurance department officials in Mississippi, Oklahoma, Arkansas, and Missouri have questioned FAL's title to this $57 million, asserting that FAL is obligated to pay a portion of these funds to the aforementioned receiverships. Specifically, these officials contend, among other allegations, that (a) the $57 million was a payment to FAL in excess of the net money originally paid to LNS by FAL, (b) the $57 million was removed from funds that were owned by FAL and the other aforementioned insurance companies in an account commingled by LNS and subject to a constructive trust and equitable distribution, and (c) the remittance of the $57 million constituted a preference under federal bankruptcy law.

6.

FAL and the Tennessee receiver have denied that any other insurers or receivers have any interest in or right to any portion of the $57 million, and assert that the $57 million was recaptured as an administrative act of the Tennessee Department of Commerce and Insurance.

Page -3-

7.

The claims of the non-Tennessee receivers against the funds held by the FAL receiver would potentially present complex and conflicting issues of law and fact, including commingled funds, tracing, estoppel, receivership law, bankruptcy, federal/state comity, full faith and credit, supremacy of laws with respect to insurance regulation, and the exclusivity of *in rem* jurisdiction. The claims of the non-Tennessee receivers are unliquidated, doubtful, disputed, and cannot be collected without lengthy, expensive, and uncertain litigation.

8.

Based on the foregoing, the Liquidator and Deputy Liquidator, with the assistance of legal counsel, and the receivers and counsel from the other states, engaged in negotiations with Tennessee officials and the FAL receivers. These negotiations culminated in a proposed Compromise and Settlement Agreement of Potential Interstate Claims (the "Agreement"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference.

9.

As a condition precedent to the Agreement, all terms and conditions must be approved by "all appropriate receivership courts" in the States of Missouri, Mississippi, Arkansas, Oklahoma, and Tennessee.

10.

As set out in the Agreement, the Tennessee rehabilitators have agreed to pay an aggregate total of $17,500,000.00 to the receivers of the receiverships pending in Missouri, Mississippi, Arkansas, and Oklahoma. At this time, the distribution proportions among the recovering companies have not been determined. The parties to the Agreement further agree to cooperate

Page -4-

jointly in efforts to recover from all culpable parties all assets, settlements, and monetary judgments pertaining to the various receiverships, and to share in such recoveries on a proportionate basis.

### 11.

In consideration for the payment of the aforementioned funds, the receivers/liquidators of the respective states agree to waive all potential claims asserted against the Tennessee rehabilitators and FAL with respect to the $57 million or any portion thereof.

### 12.

While a possibility exists that more funds could be recovered on behalf of the Mississippi companies in this matter, the resolution of this matter more than likely would only be reached by adversarial, protracted, and costly litigation. If a settlement is not reached, extensive and expensive litigation will be the only alternative, resulting in waste and depletion of the assets of FNL, FGL, and FPL, along with the risks attendant to such litigation with regard to the uncertainty of the net ultimate outcome.

### 13.

Given these considerations, the Liquidator and Deputy Liquidator believe that the proposed settlement, and the Court approval of the Agreement, are in the best interests of FNL, FGL, and FPL, its policyholders, and its creditors.

WHEREFORE, PREMISES CONSIDERED, Liquidator and Deputy Liquidator respectfully request that this Court enter an Order:

(a)    Determining that the Liquidator and Deputy Liquidator entered into the Agreement as a result of good-faith negotiations;

(b)   Determining that the terms and conditions of the Compromise and Settlement Agreement of Potential Interstate Claims are in the best interests of FNL, FGL, and FPL, and their policyholders and their other creditors;

(c)   Declaring that the terms and conditions of the Compromise and Settlement Agreement of Potential Interstate Claims are accepted and approved by the Court;

(d)   Ordering and directing the Liquidator and Deputy Liquidator to enter into, and to abide by, the Compromise and Settlement Agreement of Potential Interstate Claims and all of its terms, which shall become binding upon them and their official successors upon the acceptance and approval of all appropriate receivership/liquidation courts in the States of Missouri, Arkansas, Oklahoma, and Tennessee; and

(e) Directing and authorizing the Liquidator and Deputy Liquidator to take all other necessary and reasonable actions with regard to the approval of and subsequent compliance with the Agreement.

This the 22ND day of July, 1999.

Respectfully submitted,

GEORGE DALE, AS COMMISSIONER OF
INSURANCE FOR THE STATE OF MISSISSIPPI
IN HIS CAPACITY AS LIQUIDATOR OF FIRST
NATIONAL LIFE INSURANCE COMPANY

AND

BETTY CORDIAL, AS DEPUTY LIQUIDATOR
OF FIRST NATIONAL LIFE INSURANCE
COMPANY OF AMERICA

BY: _Robert C. Richardson_
COPELAND, COOK, TAYLOR & BUSH, P.A.
Counsel to Liquidator and Deputy Liquidator
Charles G. Copeland, Esq., MSB #6516
Robert C. Richardson, Esq., MSB #5330

OF COUNSEL:
Copeland, Cook, Taylor & Bush, P.A.
200 Concourse, Suite 200
1062 Highland Colony Parkway
Post Office Box 6020
Ridgeland, Mississippi 39158
Telephone: 601/856-7200
Facsimile: 601/856-7626

## CERTIFICATE OF SERVICE

I, Robert C. Richardson, do hereby certify that I have this date caused to be mailed, by U.S. Mail, first class, postage prepaid, a true and correct copy of the above and foregoing document to:

Kristina M. Johnson
Watkins, Ludlam, Winter & Stennis
P.O. Box 427
Jackson, Mississippi 39205-0427

Attorney for Intervener, Mississippi Life and Health Insurance Guaranty Association


Robert C. Richardson

Dated: July 22, 1999

## COMPROMISE AND SETTLEMENT AGREEMENT
## OF POTENTIAL INTERSTATE CLAIMS

This Compromise and Settlement Agreement is made as of this 2nd day of July, 1999, by, and between, (1) DOUGLAS SIZEMORE, Commissioner of Commerce and Insurance for the State of Tennessee, in his official capacity as Receiver of FRANKLIN AMERICAN LIFE INSURANCE COMPANY ("FAL"), and (2) the court-appointed Receivers (listed below) of the following insurance entities: INTERNATIONAL FINANCIAL SERVICES LIFE INSURANCE COMPANY ("IFS"), FARMERS AND RANCHERS LIFE INSURANCE COMPANY ("FRL"), OLD SOUTHWEST LIFE INSURANCE COMPANY ("OSL"), FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA ("FNL"), FAMILY GUARANTY LIFE INSURANCE COMPANY ("FGL"), and FRANKLIN PROTECTIVE LIFE INSURANCE COMPANY ("FPL") (collectively the "Recipient Companies")

### RECITALS

WHEREAS, on May 11, 1999, the Chancery Court for the Twentieth Judicial District for the State of Tennessee in Davidson County issued an Order of Rehabilitation in the action State of Tennessee, by and through Douglas M. Sizemore v. Franklin American Life Insurance Company, 99-1326-II (McCoy, Ch.), which -- among other things -- appointed Commissioner Sizemore as the Receiver of FAL and vested title to all assets of FAL with Commissioner Sizemore;

WHEREAS, FAL is a corporation based in Franklin, Tennessee, and is part of a much larger corporate structure. Other insurance corporations related to FAL are subject to similar receivership proceedings now pending in Mississippi, Missouri, Arkansas, and Oklahoma. These affiliated insurers, and the situs and dates of receivership for these insurers are as follows:

| Insurer | Date/Situs of Receivership |
|---|---|
| International Financial Services Life Insurance Company | 5/12/99 (Missouri) |
| Farmers and Ranchers Life Insurance Company | 5/12/99 (Oklahoma) |
| Old Southwest Life Insurance | 5/17/99 (Arkansas) |
| Franklin Protective Life Insurance Company | 5/10/99 (Mississippi) |
| Family Guaranty Life Insurance Company | 5/10/99 (Mississippi) |
| First National Life Insurance Company | 5/10/99 (Mississippi) |

WHEREAS, the out-of-state Receivers of the Recipient Companies are asserting claims to certain proceeds of approximately $57,000,000, which had been remitted to the FAL Receiver by Prudential, and which are currently under the control and supervision of the Davidson County Chancery Court pursuant to the FAL receivership proceedings.

WHEREAS, without stipulating to the validity of the aforementioned claims, Commissioner Sizemore and the out-of-state Receivers for the Recipient Companies have reached an agreement as the resolution of such claims, and desire to settle such claims, which have arisen as of this date of settlement;

WHEREAS, it is understood and agreed by the undersigned that no provision of this agreement or obligation agreed to herein is to be construed as an admission on the part of any party; and no party admits any liability whatsoever, but expressly denies the same;

NOW, THEREFORE, in consideration of the mutual covenants, conditions, promises, undertakings, and releases stated herein, the sufficiency of which consideration is hereby acknowledged, the Parties hereby agree, each with the other, as follows:

## I.

Franklin American Life Insurance Company (FAL) will immediately pay an aggregate of $17.5 million (from the $57 million remitted by Prudential) to International Financial Services Life Insurance Company (IFS), Farmers and Ranchers Life Insurance Company (FRL), Old Southwest Life Insurance Company (OSL), First National Life Insurance Company of America (FNL), Family Guaranty Life Insurance Company (FGL), and Franklin Protective Life Insurance Company (FPL) (collectively the "Recipient Companies"). In consideration of the foregoing payment and all other obligations, conditions and terms set forth herein, the Recipient Companies hereby compromise and settle all potential claims asserted by the Recipient Companies that (a) the $57 million was a payment to FAL allegedly in excess of the net money paid to Liberty National Securities, Inc., (LNS) by FAL, (b) the $57 million was removed from funds that were owned by FAL and the Recipient Companies in an account allegedly commingled by LNS and allegedly subject to a constructive trust and equitable distribution, and (c) the remittance of $57 million allegedly constitutes a preference under the bankruptcy law (collectively referred to as the "Recipient Companies' Claims").

## II.

FAL and the Recipient Companies will undertake cooperative efforts to recover their lost assets from LNS, fidelity bond coverage, officers and directors liability coverage, persons and entities in possession of assets of FAL and the Recipient Companies, victim recovery funds, negligent or wrongful parties, and any and all other sources against which a claim or cause of action may be legitimately brought.

## III.

FAL and the Recipient Companies will share all assets jointly recovered or damages or settlement proceeds recovered from any joint source and proceeding in an amount to be equitably

3

determined later, but in no event will FAL's share be less than 8% of the assets/amounts recovered. Disputes concerning percentages of other companies and whether FAL receives greater than 8% will be settled through binding arbitration, with the prevailing party to recover all reasonable costs, expenses, and attorneys' fees. In the event that, and at such time that, FAL and/or any of the other individual Recipient Companies have recovered sufficient assets, judgment proceeds, and/or settlement proceeds to make such company or companies whole, such company or companies shall defer in all further recoveries until such time as all remaining companies have been made whole.

## IV.

Joint recovery as described in part III above would not include any claims that any Recipient Company or FAL has that are unique to such company. Recovery from unique claims would be credited against such company's participation in the prorated distribution of jointly recovered funds.

## V.

The law firm of Wyatt, Tarrant & Combs shall be counsel representing FAL regarding litigation jointly pursued by the Tennessee Receiver. The other receivers will be represented by their own counsel who will also be joint counsel in the litigation. Counsel will cooperate in an effort to minimize costs and maximize the likelihood of recovery. Each receiver has the right to pursue separately any claims that the other receivers decline to pursue, or claims that are unique for that receiver.

## VI.

FAL and the Recipient Companies shall issue a joint press release pertaining to this compromise. Until such issuance, the terms of this compromise and settlement shall remain confidential, except as is necessary for each receiver to obtain requisite court approval.

4

## VII.

In the event that the Tennessee Receiver, in the exercise of his statutory duties, subsequently petitions the Davidson County Chancery Court for an order to place FAL into liquidation, and such petition is granted by the Chancery Court, this agreement shall remain binding upon all parties hereto. In the event that any Recipient Company, currently in rehabilitation, is subsequently placed into liquidation by any appropriate receivership court, this agreement shall remain binding upon all parties hereto.

## VIII.

The signatures of all participating Commissioners and Directors of Insurance, in their official capacities as Receivers of their respective insurance entities, shall be required.

## IX.

This agreement, and all terms and conditions contained herein, are contingent upon the approval of the Davidson County Chancery Court and all appropriate receivership courts in the States of Missouri, Mississippi, Arkansas, and Oklahoma. In this regard, FAL and its Receiver and Deputy Receiver and their counsel agree that this settlement, and the terms of this settlement, are in the best interest of FAL and all persons claiming through FAL and the receiver's estate and that they will so represent to the Davidson County Chancery Court considering approval of this compromise agreement. The respective receivers for the Recipient Companies also agree that this settlement, and the terms of this settlement, are in the best interest of each of the Recipient Companies and all persons claiming through such companies and the receivers' estates and that they will so represent to their respective receivership courts considering approval of this compromise agreement.

## X.

This Settlement Agreement may be executed in counterparts, which, when signed, will be regarded as an original and binding agreement upon the signing party. The agreements and

settlements contained in this Agreement are solely for the benefit of the parties hereto.  This Agreement does not release the liability or obligation of any person or entity not a party hereto.

     IN WITNESS WHEREOF, the Parties hereto have caused this Compromise and Settlement Agreement to be executed by themselves on the dates hereinafter subscribed.

Date: 7/2/99 _____

_____
DOUGLAS SIZEMORE, Commissioner of Commerce and Insurance for the State of Tennessee, in his official capacity as Receiver of Franklin American Life Insurance Company

Date: _____

_____
GEORGE DALE, Commissioner of Insurance for the State of Mississippi, in his official capacity as Receiver of Franklin Protective Life Insurance Company, Family Guarantee Life Insurance Company, and First National Life Insurance Company of America

Date: _____

_____
KEITH WENZEL, Director of the Department of Insurance for the State of Missouri, in his official capacity as Receiver of International Financial Services Life Insurance Company

Date: _____

_____
CARROLL FISHER, Insurance Commissioner for the State of Oklahoma, in his official capacity as Receiver of Farmers and Ranchers Life Insurance Company

Date: _____

_____
MIKE PICKENS, Insurance Commissioner for the State of Arkansas, in his official capacity as Receiver of Old Southwest Life Insurance Company

claiming through such companies and the receivers' estates and that they will so represent to their respective receivership courts considering approval of this compromise agreement.

## X.

This Settlement Agreement may be executed in counterparts, which, when signed, will be regarded as an original and binding agreement upon the signing party. The agreements and settlements contained in this Agreement are solely for the benefit of the parties hereto. This Agreement does not release the liability or obligation of any person or entity not a party hereto.

IN WITNESS WHEREOF, the Parties hereto have caused this Compromise and Settlement Agreement to be executed by themselves on the dates hereinafter subscribed.

Date: _____      _____

DOUGLAS SIZEMORE, Commissioner of Commerce and Insurance for the State of Tennessee, in his official capacity as Receiver of Franklin American Life Insurance Company

Date: 7-2-99      _____

GEORGE DALE, Commissioner of Insurance for the State of Mississippi, in his official capacity as Receiver of Franklin Protective Life Insurance Company, Family Guarantee Life Insurance Company, and First National Life Insurance Company of America

Date: _____      _____

KEITH WENZEL, Director of the Department of Insurance for the State of Missouri, in his official capacity as Receiver of International Financial Services Life Insurance Company

6

claiming through such companies and the receivers' estates and that they will so represent to their respective receivership courts considering approval of this compromise agreement.

## X.

This Settlement Agreement may be executed in counterparts, which, when signed, will be regarded as an original and binding agreement upon the signing party. The agreements and settlements contained in this Agreement are solely for the benefit of the parties hereto. This Agreement does not release the liability or obligation of any person or entity not a party hereto.

IN WITNESS WHEREOF, the Parties hereto have caused this Compromise and Settlement Agreement to be executed by themselves on the dates hereinafter subscribed.

Date: _____

_____

**DOUGLAS SIZEMORE,** Commissioner of Commerce and Insurance for the State of Tennessee, in his official capacity as Receiver of Franklin American Life Insurance Company

Date: _____

_____

**GEORGE DALE,** Commissioner of Insurance for the State of Mississippi, in his official capacity as Receiver of Franklin Protective Life Insurance Company, Family Guarantee Life Insurance Company, and First National Life Insurance Company of America

Date: 7-2-99

_____

**KEITH WENZEL,** Director of the Department of Insurance for the State of Missouri, in his official capacity as Receiver of International Financial Services Life Insurance Company

6

Date: July 2, 1999 _____        *Carroll Fisher*
                                    _____

                                    CARROLL FISHER, Insurance Commissioner for the
                                    State of Oklahoma, in his official capacity as Receiver
                                    of Farmers and Ranchers Life Insurance Company

Date: _____                _____

                                    MIKE PICKENS, Insurance Commissioner for the
                                    State of Arkansas, in his official capacity as Receiver
                                    of Old Southwest Life Insurance Company

7

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that I have served a true copy of the foregoing

Response by forwarding a copy by United States mail, postage prepaid, to the following counsel:

Charles G. Copeland, Esq.
Janet G. Arnold, Esq.
COPELAND, COOK, TAYLOR & BUSH, P.A.
1062 Highland Colony Parkway, Suite 200
Post Office Box 6020
Ridgeland, Mississippi 39158

ATTORNEY FOR GEORGE DALE, COMMISSIONER OF INSURANCE OF THE
STATE OF MISSISSIPPI

Kristina M. Johnson, Esq.
WATKINS LUDLAM WINTER & STENNIS, P.A.
633 North State Street
Post Office Box 427
Jackson, Mississippi 39205

Charles T. Richardson, Esq.
BAKER & DANIELS
805 15th Street, N.W., Suite 700
Washington  D.C.  20005

C. York Craig, Jr., Esq.
Ricky G. Luke, Esq.
CRAIG HESTER LUKE & DODSON, P.A.
Post Office Box 12005
Jackson, Mississippi 39236-2005

Lee Harrell, Esq.
David C. Scott, Esq.
Mississippi Department of Insurance
550 High Street, 18th Floor
Post Office Box 79
Jackson, Mississippi 39205

This the 20 day of October, 2003.

Alex A. Alston, Jr.