UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:01cv01515 (EBB) |
| | ) | |
| $29,035,500.00 IN ACCOUNT NUMBER | ) | |
| 20X6875(06), HELD IN THE NAME OF | ) | |
| U.S. CUSTOMS SUSPENSE ACCOUNT | ) | |
| AT THE FEDERAL RESERVE BANK OF | ) | |
| NEW YORK, WHICH REPRESENTS A | ) | |
| WIRE TRANSFER FROM ACCOUNT | ) | |
| NUMBER 70026, AT BANQUE SCS | ) | |
| ALLIANCE, GENEVA, SWITZERLAND | ) | |
| HELD IN THE NAME OF BLOOMFIELD | ) | |
| INVESTMENTS, LTD. | ) | |
| et al. | ) | |
| | ) | |
| Defendants | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
<u>RECEIVER-CLAIMANTS' MOTION TO DISMISS</u>**

**<u>INTRODUCTION</u>**

The Receiver-Claimants ("Receivers") submit this Reply Memorandum in support of their motion to dismiss the claims of Peoples Benefit Life Insurance Company, Veterans Life Insurance Company, and Huff-Cook, Inc./Settlers Life Insurance Company ("PVS").

The memorandum submitted by PVS in opposition to the Receivers motion to dismiss clearly demonstrates two things.  First, PVS lack a direct interest in the property subject to forfeiture in this action.  All of the claims lodged by PVS, and all of their arguments, focus on a claim of constructive trust alleged against FNL as a result of breached reinsurance

agreements between FNL and PVS. The breached reinsurance agreement only give PVS an interest in assets recovered by the FNL liquidation estate – not a direct and substantial interest in the property subject to forfeiture. *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415-17 (2d Cir. 2001). As the Second Circuit held, "the constructive trust might give Peoples a direct interest in assets recovered by FNLIC, but it would only give Peoples an indirect interest in the property subject to forfeiture." *Id.* at 417.

Second, abstention is appropriate as to PVS's claims. Every other federal court that has addressed the PVS's claims has abstained in deference to the FNL liquidation court.[1] The federal courts that have previously addressed the question have declined to exercise jurisdiction over PVS's claims in deference to the only FNL receivership court – the only court that can afford complete relief as between PVS and the other creditors of FNL.

As to the controlling question of state law, PVS misperceive the scope and purpose of the Uniform Insurers Rehabilitation and Liquidation Act ("Uniform Liquidation Act") as adopted by Mississippi and other states. By putting in place a comprehensive and exclusive system for handling liquidation of insolvent insurance companies, the Uniform Liquidation Act <u>does</u> supersede and abrogate the common law. It expressly prohibits actions at law or equity against the liquidator or liquidation estate assets of an insolvent insurer outside the receivership court.

---

[1] PVS acknowledged in response to the Receivers motion to dismiss that abstention by this Court, at least in part, is proper. *See* PVS Motion for Limited Abstention dated March 4, 2005.

Despite PVS's rhetoric, enforcement of the Uniform Liquidation Act will not condone a fraud nor will it allow FNL to somehow retain funds or benefits of the reinsurance contracts it entered into with PVS. The Uniform Liquidation Act treats all insolvencies identically, no matter the cause. All assets marshalled into the estate are redistributed to creditors of the insolvent insurance company under a legislatively-enacted system of priorities that considers the ability of the creditors to protect themselves in arms-length dealings with the insurance company.[2] As all marshalled asserts will be distributed, the FNL liquidation estate will ultimately retain nothing. Despite this comprehensive procedure for distribution, PVS, who are sophisticated reinsurers, are the only claimants seeking to keep the Defendant Properties, which is to the detriment of other FNL creditors whose claims are not before this Court. PVS's claim to the Defendant Properties is also to the detriment of the taxpayers who will ultimately reimburse the guaranty associations for any losses through tax credits. *See, e.g.*, Miss. Code Ann. § 83-23-218.

PVS, like FNL's other creditors, filed their claims as part of the liquidation process. Those claims have been accepted and assigned a priority of Class 6, which covers the claims of "ceding insurers." Miss. Code Ann. § 83-24-83. PVS are simply dissatisfied with this classification and seek a preference for their claim that is not recognized and is in fact precluded by the Uniform Liquidation Act. Such efforts to assert claims outside the Uniform Liquidation Act have been rejected by other courts that have considered similar issues, just as

---

[2] Since policyholders are those creditors who were least able to protect themselves, their claims, now represented by the guaranty associations that covered them, are granted Class 2 priority. By comparison, the claims of shareholder/owners, who are most able to protect themselves in arms-length dealings, are granted Class 10 priority.

PVS's efforts should be rejected here.

## ARGUMENT

### A. PVS Lack a Substantial, Direct Interest In the Defendant Properties.

PVS's arguments are made against FNL, based on the failure of the reinsurance agreements they entered into with FNL. It is undisputed that PVS entered into contracts with FNL and as part of those contracts paid money to FNL. The money went into FNL's general account to be controlled by FNL. PVS did not pay money to Frankel. They did not contract with Frankel. No matter what other allegations PVS make, the money flowed through FNL. Since PVS's claims are against FNL and not the nominal owner of the Defendant Properties (Frankel), PVS have only an interest in assets recovered by FNL, rather than an interest in the Defendant Properties. *Peoples Benefit Life Ins. Co.*, 271 F.3d at 417.

The Second Circuit's opinion was not based simply on inability to trace funds, as PVS argue. While the Second Circuit first noted that ability to trace was a necessary pre-requisite to assertion of a constructive trust claim, *id.* at 416, the court then went on to assume, *arguendo*, that PVS could satisfy the tracing requirements for a constructive trust claim under applicable state law. Even making that assumption, the Second Circuit held that Peoples and Veterans had only an indirect and contingent interest in the subject property, since their only direct interest would be in assets recovered by FNL. *Id.* at 417.

Since PVS's claims, like those of Peoples and Veterans, are "indirect and contingent, and therefore not cognizable," *id.*, PVS's claims should be dismissed.

**B.     Abstention As To PVS's Claims Is Appropriate.**

Two other federal courts to which PVS have presented their claims in an attempt to avoid Mississippi's Liquidation Act have abstained from hearing those claims. *Huff-Cook, Inc. v. George Dale, et al.*, Civil Action No. 1:99CV0109 (W.D. Va. March 29, 2001); *Peoples Benefit Life Insurance Co. v. Dale et al.*, Civil Action No. 3:99CV537BN, 1999 WL 33545578 (S.D. Miss. Dec. 29, 1999). Even PVS have moved this Court to abstain from the controlling legal issue.

In this case, dismissal of PVS's claims on abstention principles is appropriate on the same grounds that other federal courts have declined to hear those claims: it allows PVS to "circumvent the state receivership proceedings [regarding FNL] and potentially gain an advantage over other creditors and policyholders of FNLIC." *Peoples Benefit Life Ins. Co.*, 271 F.3d at 417. The Second Circuit noted that entertaining claims such as those here risks undermining state insurance receivership laws. *Id.*

Moreover, PVS's claims are detrimental to other creditors of FNL who are not before this Court. Despite PVS's arguments that they are the only other interested parties regarding the seized property, they are not. There are other creditors of FNL. Some of them are larger than PVS. Some are policyholders whose claims are not covered by the guaranty associations. The FNL liquidation court is the only place where all creditors of FNL are joined. The Liquidation Court is the only court that can afford complete relief to all creditors interested in the FNL insolvency resulting from Martin Frankel's activities.[3] That is why there is a Uniform

---

[3] The other Receivers, aside from the FNL Liquidator, are protected by having PVS's claims heard by

Liquidation Act and why it creates a logical and comprehensive method to make the best of a bad situation for all creditors.

### C. PVS Have No Constructive Trust Claim.

PVS's attempt to convince this Court that they have a constructive trust over the Defendant Properties fails for a number of reasons.

*i. PVS's own allegations establish that the Defendant Properties are part of FNL's Liquidation Estate*

PVS contend that the Defendant Properties are not a part of the FNL liquidation estate. This argument is directly contrary to the allegations and the statements made in their verified claims filed in this Court. PVS allege, as a factual matter, that they paid the consideration for their reinsurance agreements with FNL into FNL's general account. There were admittedly no restrictions placed on these funds. After FNL received the funds into its general account, those funds were stolen by Martin Frankel and his co-conspirators. *See, e.g.*, Verified Statement of Interest of Peoples-Veterans at ¶ 10 and of Settlers at ¶ 9.

PVS's own admissions establish that the funds were paid to FNL and became the property of FNL, pursuant to the terms of the reinsurance agreements with PVS. The Defendant Properties are, in fact, an asset of the FNL liquidation estate, subject to being marshalled by the FNL liquidation estate for distribution to FNL's creditors, including PVS.

---

FNL's liquidation court. The Receivers have entered into a settlement agreement which deals with the issue of commingling of funds resulting from Frankel's theft of their assets. Any recovery of assets by the FNL Liquidator is subject to that agreement, which has been approved by the applicable receivership courts.

PVS are simply dissatisfied with their creditor classification under the Mississippi Act's priority scheme, which is the same as or similar to most of the states. PVS cannot avoid application of the priority statute.

### ii. The Uniform Liquidation Act is comprehensive and exclusive.

The Mississippi Insurer's Rehabilitation and Liquidation Act abrogates the common law with regard to insurance insolvencies. The Act provides that one of its purposes is to provide "a *comprehensive* scheme for the . . . liquidation of insurance companies." Miss. Code Ann. § 83-24-3 (emphasis added). *See Northwestern Nat'l Ins. Co. v. Kezer*, 812 P.2d 688, 690 (Colo. Ct. App. 1990) (claim classification section of act is specific, comprehensive, and leaves no room for judiciary to add type of claims to be preferred or establish method of preference not created by statute); *In re Security Cas. Co.*, 537 N.E.2d 775, 780 (Ill. 1989) (code provides comprehensive scheme for distribution of assets of liquidating insurers).

Although the Mississippi Uniform Act does not specifically use the phrase "constructive trust" in barring common law actions regarding a liquidation estate, it actually goes even farther, stating:

> Upon issuance of an order appointing a liquidator of a domestic insurer or of an alien insurer domiciled in this state, *no action at law or equity or in arbitration shall be brought against the insurer or liquidator, whether in this state or elsewhere, nor shall any such existing actions be maintained or further presented* after issuance of such order.

Miss. Code Ann. § 83-24-47 (emphasis added). Thus, all common law actions – whether at law or at equity – are prohibited once an insurance company has entered the process of liquidation. The sole governance of that process is found in the Act and its priority statutes for

distribution of the assets of the insolvent insurance company's estate.

Section 83-24-83 of the Mississippi Code provides that Class 6 in the priority of distribution is comprised of "[c]laims of general creditors including claims of ceding and assuming companies in their capacity as such." Miss. Code Ann. § 83-24-83(6). The claims asserted by PVS are based on events in which they were ceding insurers having reinsurance agreements with FNL. As such, they are Class 6 claimants – general creditors – as previously determined by the FNL Liquidator when their claims were accepted by the Liquidator.

### iii. Claims of fraud do not render Mississippi's Uniform Liquidation Act inapplicable.

The Mississippi Uniform Liquidation Act provides no exception for persons or entities claiming to have been defrauded by an insurance company. To do so would obliterate the purpose and use of the Uniform Liquidation Act. Despite this, PVS repeatedly argue that they were defrauded by the activities of Martin Frankel and his associates. They claim that the funds they voluntarily transferred to FNL "are not now, nor have they ever been, property of FNL or its estate." Opposition Memorandum at 2.

In this regard, PVS are like nearly <u>every other creditor of FNL</u>. Virtually <u>every</u> creditor of FNL was "defrauded" by Frankel. Indeed, as a consequence of Frankel's conduct, policyholders voluntarily bought policies and paid premiums for insurance coverage FNL could not provide.[4] PVS are no different. Despite this, they continually fail to recognize (or acknowledge) that it is the FNL Receiver who has the exclusive statutory standing to assert

---

[4] Guaranty associations were able to cover most – but not all – of the policyholder claims. Over 2,900 policyholder claims were not fully covered.

claims for assets on behalf of all creditors of the estate. *See, e.g.*, *Insurance Commissioner of Michigan v. Arcillio*, 221 Mich. App. 54, 561 N.W.2d 412, 427-18 (1997) (enjoining three class actions for fraud and negligent misrepresentation in federal and state courts by policyholders of insolvent insurer and acknowledging the "exclusive authority" of the receiver to bring such claims). *See also Four Star Insurance Agency v. Hawaiian Electric Industries, Inc.*, 974 P.2d 1017, 1025 (Haw. 1999) (recognizing the "exclusive standing" of the receiver to assert claims on behalf of creditors of insolvent insurer, and precluding third party suit brought by creditor insurance agents) and *Cordial v. Ernst & Young*, 483 S.E.2d 248, 256-57 (W. Va. 1996) (recognizing the "representative capacity" fulfilled by the receiver for all creditors of insolvent insurer). By maintaining their claim in this action, PVS attempt "to 'leapfrog' over every other worthy (and sometimes worthier) claimant to an as yet limited amount of funds." *United States v. One 1995 Turbo Commander Aircraft*, 2000 WESTLAW 1838334 at *1 (D. Conn. 2000), *aff'd sub nom.*, 271 F.3d 411 (2nd Cir. 2001). This should not be permitted. All claimants – equally defrauded by Frankel's scheme – are equally subject to the statutory priorities regarding asset distribution as set forth by the Mississippi Legislature.

      iv.    *Other courts have upheld the principles of the Uniform Liquidation Act.*

Other courts that have considered whether constructive trust claims can be asserted to avoid the Uniform Liquidation Act have held that constructive trusts cannot be imposed. *See, e.g.*, *Benjamin v. Credit General Ins. Co.*, No. 03 AP- 1117, ¶1, 2004 WL 3090181, *1 (Ohio Ct. App. Dec. 30, 2004); *Swiss Re Life Co. America v. Gross*, 479 S.E.2d 857, 861 (Va. 1997); *Northwestern Nat'l Ins. Co. v. Kezer*, 812 P.2d 688, 690 (Colo. Ct. App. 1990); and *In*

re *Security Casualty Co.*, 537 N.E.2d 775, 780 (Ill. 1989). PVS cite only one case, *Bennett v. Glacier Gen. Assur. Co.*, 857 P.2d 683, 685 (Mont. 1993), that they argue is contrary. This 1993 Montana case is an anomaly which has never been cited and can be distinguished from this case. The *Bennett* decision is contrary to the better-reasoned modern decisions that support the principles of the Uniform Liquidation Act. By ignoring the comprehensive nature of the Uniform Liquidation Act, the *Bennett* court undermines the system adopted by the states and instead encourages and promotes a race to the courthouse.

> *v.*   The Bankruptcy Act, unlike the Uniform Liquidation Act, explicitly allows constructive trusts as a method to remove property from the debtor's estate.

Similarly, none of the bankruptcy cases cited by PVS is relevant here. Courts interpreting state insurance insolvency statutes only look to bankruptcy cases for guidance when the statutory schemes are similar. On the issue of equity-based claims outside the statutory provisions of the Uniform Liquidation Act, the Bankruptcy Act and the Uniform Liquidation Act are divergent. Thus, any reliance on bankruptcy law in that regard is misplaced. The Bankruptcy Act expressly allows for equitable claims, and its legislative history specifically mentions the use of a constructive trust as a mechanism of a bankruptcy. 11 U.S.C. § 101(5)(defining claim to include equitable remedies); 11 U.S.C. § 541(d)(distinguishing legal and equitable title regarding assets of bankruptcy estate); 1978 U.S.C.C.A.N. 5963, 5787, 5868, 6324 (discussing Bankruptcy Act and specifically mentioning constructive trusts); and *In re Koreag*, 961 F.2d 341, 352 (2d Cir. 1992) (defining the bankruptcy estate to explicitly exclude property subject to a constructive trust). The Mississippi

Liquidation Act contains no such provisions and has no such history.

PVS should not be allowed to circumvent Mississippi's Uniform Liquidation Act and thereby avoid taking their proper place in line with other creditors of FNL pursuant to the applicable statutory priority scheme. To allow them to avoid that legislatively established priority scheme and pocket the Defendant Properties on the basis of a non-statutory preference will destroy the purpose and benefit of the Uniform Liquidation Act. If that occurs, once again there will be a race to the courthouse to file suits where claimants with numerous attorneys and numerous accountants will prevail over more deserving claimants without such a professional arsenal.

## CONCLUSION

For the foregoing reasons, as well as those previously stated in their Motion to Dismiss and supporting Memorandum, the Receivers respectfully request that the claims asserted by PVS to the Defendant Properties be dismissed.

Respectfully submitted, this 14th day of June, 2005.

/s/ James A. Lenes
James A. Lenes (Fed Bar No. 10408)
Douglas S. Skalka (Fed. Bar No. 00616)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510-2026
Telephone: (203) 821-2000
Facsimile: (203) 821-200

and

Douglas J. Schmidt (MO Bar #34266)
Terrance M. Summers (MO Bar #38319)
Tessa K. Jacob (MO Bar #44708)

−11−

BLACKWELL SANDERS PEPER MARTIN, LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080

C. Philip Curley
Alan F. Curley
Cynthia H. Hyndman
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone: (312) 663-3100

Counsel for
**W. DALE FINKE**, Director of the Department of Insurance for the State of Missouri, in his official capacity as Liquidator of **INTERNATIONAL FINANCIAL SERVICES LIFE INSURANCE COMPANY**

and

Charles G. Copeland (MBN 6516)
Rebecca Blunden (MBN 99611)
COPELAND, COOK, TAYLOR & BUSH, P.A.
200 Concourse, Suite 200
1062 Highland Colony Parkway
Ridgeland, Mississippi 39158
Telephone: (601) 856-7200

Counsel for
**GEORGE DALE,** Commissioner of Insurance for the State of Mississippi, in his official capacity as Receiver of **FRANKLIN PROTECTIVE LIFE INSURANCE COMPANY, FAMILY GUARANTY LIFE INSURANCE COMPANY,** and **FIRST NATIONAL LIFE INSURANCE COMPANY OF AMERICA**

and

Andrew B. Campbell (TN 14258, CT Fed. 21433)
Graham Matherne, Esq.

WYATT, TARRANT & COMBS
2525 West End Avenue, Suite 1500
Nashville, Tennessee  37203
Telephone:  (615) 244-0020

Counsel for
**PAULA A. FLOWERS**, Commissioner of Commerce and Insurance for the State of Tennessee, in her official capacity as Receiver of **FRANKLIN AMERICAN LIFE INSURANCE COMPANY**

and

Susan Loving (OK Bar #160)
LESTER, LOVING & DAVIES
1701 South Kelly
Edmund, Oklahoma  73013
Telephone:  (405) 844-9900

Counsel for
**KIM HOLLAND,** Insurance Commissioner for the State of Oklahoma, in her official capacity as Receiver of **FARMERS AND RANCHERS LIFE INSURANCE COMPANY, IN LIQUIDATION**

and

Steve A. Uhrynowycz (AR Bar #82162)
Liquidation Division
1023 West Capitol Avenue, Suite 2
Little Rock, Arkansas  72201
Telephone:  (501) 371-2776

Counsel for
**JULIE BENAFIELD BOWMAN**, Insurance Commissioner for the State of Arkansas, in her official capacity as Receiver of **OLD SOUTHWEST LIFE INSURANCE COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by U.S. Mail, first class postage pre-paid, to the following:

John B. Hughes, Esq.
David X. Sullivan, Esq.
United States Attorney's Office
P.O. Box 1824
New Haven, CT  06508

Forrest B. Lammiman, Esq.
Randall A. Hack, Esq.
Brian I. Hays, Esq.
Lord, Bissell & Brook
115 S. LaSalle Street
Chicago, IL  60603

David N. Rosen, Esq.
Rosen & Dolan, P.C.
400 Orange Street
New Haven, CT 06511

Douglas J. Schmidt, Esq.
Blackwell Sanders Peper Martin, LLP
4801 Main Street, Suite 1000
Kansas City, MO  64112

This the 14th day of June 2005.

    /s/ James A. Lenes
James A. Lenes (ct10408)